## EXHIBIT A

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| DYNEGY HOLDINGS, LLC, et al.,[1] | : | Case No. 11-38111 (___) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |

---------------------------------------------------------- x

### INTERIM ORDER (I) AUTHORIZING DYNEGY HOLDINGS, LLC TO PROVIDE INTERCOMPANY POST-PETITION FINANCING TO ITS DEBTOR SUBSIDIARIES UNDER SECTIONS 362, 363 AND 364 OF THE BANKRUPTCY CODE, (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c), AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion, dated November 7, 2011 (the "Motion"), of

Dynegy Holdings, LLC ("Dynegy Holdings" or the "Lender") and the direct and indirect

subsidiaries of the Lender, that are debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned cases (the "Chapter 11 Cases") commenced on November 7,

2011 (the "Petition Date") for interim and final orders under sections 105, 362, 363 and 364 of

title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001, 6003, 6004, and

9013 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and

Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Bankruptcy Court"), seeking entry of this Interim Order,

among other things:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

NY1 7880062

(I)        authorizing the Lender to provide intercompany financing, on a revolving post-petition basis (the "Intercompany Credit Facility"), to Debtors Dynegy Northeast Generation, Inc. ("DNE"), Hudson Power, L.L.C. ("Hudson Power"), Dynegy Danskammer, L.L.C. ("Danskammer") and Dynegy Roseton, L.L.C. ("Roseton", and together with DNE, Hudson Power and Danskammer, the "Borrower Debtors") on the terms and conditions set forth in this interim order (this "Interim Order"), the Final Order (as defined in part (VIII) below) and the Intercompany Revolving Loan Agreement by and among the Borrower Debtors and the Lender (substantially in the form annexed to the Motion as Exhibit B, and as hereafter amended, supplemented or otherwise modified from time to time, the "Intercompany Credit Agreement");[2]

(II)        authorizing each of the Borrower Debtors to guarantee, on a joint and several basis, the Intercompany Credit Facility Obligations (as defined in paragraph 3(f) below);

(III)        authorizing the Borrower Debtors and the Lender to perform all of their respective obligations under the terms and conditions of the Intercompany Credit Agreement and the Financing Orders;

(IV)        authorizing the Borrower Debtors to grant to the Lender the Intercompany Credit Facility Liens (as defined in paragraph 7 below);

(V)        authorizing the Borrower Debtors to provide the Lender the Intercompany Credit Facility Superpriority Claims (as defined in paragraph 6 below) in respect of all Intercompany Credit Facility Obligations;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Intercompany Credit Agreement.

NY1 7880062

(VI)    authorizing the Lender to accelerate the Loans and seek any other remedies available under the Intercompany Credit Agreement (subject to the terms thereof) and this Interim Order upon the occurrence and continuance of an Event of Default;

(VII)    scheduling, pursuant to Bankruptcy Rule 4001(c), an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of this Interim Order (a) authorizing the Borrower Debtors, on an interim basis, to borrow under the Intercompany Credit Agreement pursuant to the Approved Budget (as defined in paragraph 5 below) up to an aggregate principal amount of $7,500,000 on an interim basis prior to the entry of the Final Order, which funds shall be used for working capital, general corporate purposes and payment of certain administrative expenses incurred in the Chapter 11 Cases of the Borrower Debtors;

(VIII)  scheduling, pursuant to Bankruptcy Rule 4001(c), a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Borrower Debtors on a final basis to utilize the Intercompany Credit Facility in the aggregate principal amount of $15,000,000 subject to the terms and conditions of the Intercompany Credit Agreement and the Final Order;

(IX)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the

terms and provisions of the Intercompany Credit Agreement and this Interim Order;

(X)    waiving any applicable stay of the effectiveness of this Interim Order and providing for the immediate effectiveness of this Interim Order; and

(XI)    authorizing certain other related relief.

The Interim Hearing having been held by this Court on _____, 2011, and upon consideration of the Motion and all pleadings related thereto, including the Declaration of Kent R. Stephenson pursuant to Local Bankruptcy Rule 1007-2 in Support of the First Day Motions and Applications (the "Stephenson Declaration") filed contemporaneously with the Motion; and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the admission into evidence of the Stephenson Declaration, and the arguments of counsel made at the Interim Hearing, and good and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper.

(a)    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

(b)    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4

(c)    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases.  Notice of this Motion has been provided to:  (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the Attorney General for the State of New York; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the Ad Hoc Bondholder Committee; (vii) Wilmington Trust Company, the indenture trustee for each series of Dynegy Holdings, LLC's prepetition unsecured notes; (viii) counsel to U.S. Bank National Association, the successor lease indenture trustee for the pass-through certificate holders; (ix) counsel to PSEG; and (x) the representative of Local Union 320 of the International Brotherhood of Electrical Workers, AFL-CIO.  The Debtors submit that no other or further notice need be provided.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c), and no other or further notice of the relief sought at the Interim Hearing is necessary or required.

3.    *Findings Regarding the Intercompany Credit Facility.*

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The Borrower Debtors have an immediate need to obtain the financing under the Intercompany Credit Facility, in order to, among other things, permit the orderly continuation of their businesses for the purposes described in the Stephenson Declaration, including the satisfaction of payroll obligations and other working capital and

5

general corporate purposes, and pay for certain administrative expenses incurred in their Chapter 11 Cases.

(c)    The Borrower Debtors are unable to obtain financing on more favorable terms from sources other than the Lender pursuant to, and for the purposes set forth in, the Motion and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Borrower Debtors are also unable to obtain credit without (i) granting the Intercompany Credit Facility Liens and (ii) providing the Intercompany Credit Facility Superpriority Claims, in each case on the terms and conditions set forth in this Interim Order.

(d)    The Lender's use of the property of its estate to provide post-petition financing to the Borrower Debtors through the Intercompany Credit Facility reflects the Lender's prudent exercise of its business judgment consistent with its fiduciary duties, and is permitted under section 363(b)(1) of the Bankruptcy Code.

(e)    The terms of the Intercompany Credit Facility pursuant to this Interim Order are fair and reasonable, reflect the Borrower Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are appropriate under the circumstances and constitute reasonably equivalent value and fair consideration.

(f)    All of the Debtors' obligations and indebtedness arising under or in connection with the Intercompany Credit Facility, including without limitation (i) all Loans made to the Borrower Debtors pursuant to the Intercompany Credit Agreement and (ii) all other obligations of the Borrower Debtors under the Intercompany Credit Agreement and the Interim Order now and hereafter owing to the Lender (collectively, the "Intercompany Credit Facility Obligations"), shall be deemed to have been extended by the Lender in "good faith" as such term

is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Interim Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(g)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2) and 6003(b).  Absent granting the interim relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Intercompany Credit Facility in accordance with this Interim Order and the Intercompany Credit Agreement is, therefore, in the best interests of the Debtors' estates.

4.     *Authorization of the Intercompany Credit Facility.*

(a)     The Debtors are hereby authorized to enter into and perform under the Intercompany Credit Agreement including, but not limited to, in the case of the Borrower Debtors, to (i) borrow under the Intercompany Credit Agreement pending entry of the Final Order up to an aggregate principal amount of $7,500,000 for working capital, general corporate purposes, and certain administrative expenses incurred in the Chapter 11 Cases of the Borrower Debtors, including, without limitation, to pay interest in connection with the Intercompany Credit Facility, (ii) guaranty, on a joint and several basis, all Intercompany Credit Facility Obligations, and (iii) grant the Intercompany Credit Facility Liens and provide the Intercompany Credit Agreement Superpriority Claims pursuant to this Interim Order.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents reasonably required or necessary for the Debtors' performance of their obligations under the Intercompany Credit Agreement, including without limitation:

(i)       the execution, delivery and performance of the

Intercompany Credit Agreement; and

(ii)      the performance of all other acts required under or in

connection with the Intercompany Credit Agreement.

(c)       Upon execution and delivery of the Intercompany Credit

Agreement and entry of this Interim Order, the Intercompany Credit Agreement shall constitute

valid and binding obligations of the Debtors, enforceable against each Debtor in accordance with

the terms of this Interim Order and the Intercompany Credit Agreement.  No obligation,

payment, transfer or grant of security under the Intercompany Credit Agreement or this Interim

Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under

any applicable non-bankruptcy law (including without limitation, under sections 502(d) or 548 of

the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act or similar statute or common law), or subject to any defense,

reduction, setoff, recoupment or counterclaim.

5.       *Budget and Use of Proceeds of Intercompany Credit Facility*.  Loans will

be advanced under the Intercompany Credit Facility pursuant to, and proceeds thereof will be

used in accordance with the initial 13-week operating budget prepared by the Borrower Debtors

and approved by the Lender (the "Initial Approved Budget"), a copy of which is attached hereto

as Schedule 1, and a subsequent 13-week operating budget prepared by the Borrower Debtors

and approved by the Lender, which shall be provided to the Lender no later than January 20,

2012 (the "Additional Approved Budget" and together with any update (a "Supplemental

Approved Budget") approved by the Lender, and in the aggregate, without duplication, of all

items in the Initial Approved Budget and the Additional Approved Budget and any Supplemental

Approved Budgets, the "Approved Budget"). Such funds shall be used in accordance with the terms of the Intercompany Credit Agreement and the Financing Orders, (a) for the payment of working capital, including but not limited to the transition costs described in the Motion (including prepetition payments to certain critical vendors identified by the Debtors to the extent set forth in the Approved Budget and as authorized by the Bankruptcy Court pursuant to orders approving the first day motions filed by the Debtors), and other general corporate needs of the Borrower Debtors in the ordinary course of business and (b) for the payment of certain administration costs associated with the Borrower Debtors' Chapter 11 Cases.

6.    *Intercompany Credit Facility Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Intercompany Credit Facility Obligations shall constitute allowed senior, superpriority administrative expense claims (the "Intercompany Credit Facility Superpriority Claims") against the Borrower Debtors with priority over any and all claims against the Borrower Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

7.    *Intercompany Credit Facility Liens.*  As security for the Intercompany Credit Facility Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Lender of any property, the following

9

security interests and liens are hereby granted to the Lender (the "<u>Collateral</u>").  All such liens

and security interests granted to the Lender, for its benefit, pursuant to this Interim Order, shall

be the "<u>Intercompany Credit Facility Liens</u>".

        (a)     <u>First Lien on Certain Unencumbered Property of the Borrower</u>

<u>Debtors</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority lien on, and security interest in, all of the Borrower

Debtors' rights, title and interest in, to and under, all accounts, instruments, chattel paper,

payment intangibles and other accounts receivable or rights to payment arising from the sale of

electricity and related products and services or otherwise arising under any electricity sale

contract, all supporting obligations in respect thereof and all proceeds and products of any or all

of the foregoing.

        (b)     <u>Liens Senior to Certain Other Liens</u>.  The Intercompany Credit

Facility Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is

avoided and preserved for the benefit of the Borrower Debtors and their estates under section

551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, or (ii) subordinated

to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the

Bankruptcy Code or otherwise.

        8.     *Remedies After Event of Default.*  The automatic stay under section 362 of

the Bankruptcy Code is vacated and modified to the extent necessary to permit the Lender to

exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default,

all rights and remedies under the Intercompany Credit Agreement, other than those rights and

remedies against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and

during the continuance of an Event of Default, and following the giving of five (5) Business

10

Days' prior written notice to the Borrower Debtors (with a copy to lead counsel to the

Committee (if any) and to the U.S. Trustee), all rights and remedies against the Collateral

provided for in the Intercompany Credit Agreement and this Interim Order.  In any hearing

regarding any exercise of rights or remedies, the only issue that may be raised by any party in

opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing.

In no event shall the Lender be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the Collateral.  The Lender's delay or failure to exercise rights and

remedies under the Intercompany Credit Agreement or this Interim Order shall not constitute a

waiver of the Lender's rights hereunder, thereunder or otherwise, unless any such waiver is

pursuant to a written instrument executed in accordance with the terms of the Intercompany

Credit Agreement.

   9. *Payments Free and Clear.*  Any and all payments or proceeds remitted to

the Lender pursuant to the provisions of the Intercompany Credit Agreement or this Interim

Order or any subsequent order of this Court shall be received free and clear of any claim, charge,

assessment or other liability.

   10. *Perfection of Intercompany Credit Facility Liens.*

   (a) The Lender is hereby authorized, but not required, to file or record

financing statements, intellectual property filings, mortgages, notices of lien or similar

instruments in any jurisdiction, take possession of or control over, or take any other action in

order to validate and perfect the liens and security interests granted to it hereunder.  Whether or

not the Lender shall, in its sole discretion, choose to file such financing statements, intellectual

property filings, mortgages, notices of lien or similar instruments, take possession of or control

over, or otherwise confirm perfection of the liens and security interests granted to it hereunder,

such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order.

(b)      A certified copy of this Interim Order may, in the discretion of the Lender (a) be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording or (b) be delivered to any depositary bank or brokerage or securities firm as evidence of the Lender's control over the Collateral.

(c)      The Borrower Debtors shall execute all such agreements, financing statements, instruments and other documents in order to evidence, confirm, validate or perfect the Intercompany Credit Facility Liens.

11.      *Preservation of Rights Granted Under this Interim Order.*

(a)      No claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the Lender shall be granted or allowed and the Intercompany Credit Facility Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      The Debtors shall not seek, and it shall constitute an Event of Default under the Intercompany Credit Agreement if any of the Borrower Debtors seek, or if there is entered, (i) any modification of this Interim Order without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence

12

by the Lender, or (ii) an order converting or dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Debtors' Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the Intercompany Credit Facility Superpriority Claims and the Intercompany Credit Facility Liens shall continue in full force and effect and their priorities shall be maintained as provided in this Interim Order until all Intercompany Credit Facility Obligations shall have been paid and satisfied in full (and that such Intercompany Credit Facility Superpriority Claims and Intercompany Credit Facility Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) of this paragraph.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any Intercompany Credit Facility Obligations incurred prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacatur, or (ii) the validity, priority or enforceability of the Intercompany Credit Facility Liens.  Notwithstanding any such reversal, stay, modification or vacatur, any Intercompany Credit Facility Obligations incurred by the Borrower Debtors to the Lender prior to the actual receipt of written notice by the Lender of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the Intercompany Credit Agreement.

NY1 7880062

(d)        Except as expressly provided in this Interim Order or in the

Intercompany Credit Agreement, the Intercompany Credit Facility Liens, the Intercompany

Credit Facility Superpriority Claims and all other rights and remedies of the Lender granted by

this Interim Order and the Intercompany Credit Agreement shall survive, and shall not be

modified, impaired or discharged by (i) the entry of an order converting any of the Chapter 11

Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases

or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization

in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the

Borrower Debtors having waived any discharge as to any remaining Intercompany Credit

Facility Obligations.  The terms and provisions of this Interim Order and the Intercompany

Credit Agreement shall continue in the Chapter 11 Cases, in any successor cases if the Chapter

11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the

Bankruptcy Code, and the Intercompany Credit Facility Liens, Intercompany Credit Facility

Obligations, Intercompany Credit Facility Superpriority Claims and all other rights and remedies

of the Lender granted by this Interim Order and the Intercompany Credit Agreement shall

continue in full force and effect until all Intercompany Credit Facility Obligations are

indefeasibly paid in full in cash.

12.        *Limitation on Use of Funding Under Intercompany Credit Facility.*

Subject to entry of the Final Order, the Borrower Debtors shall use the financing provided under

the Intercompany Credit Facility solely as provided in this Interim Order and the Intercompany

Credit Agreement.  Notwithstanding anything herein or in any other order of this Court to the

contrary, no Loans under the Intercompany Credit Facility Agreement or the Collateral may be

used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or

14

enforceability of any amount due under the Intercompany Credit Agreement or the security

interests, liens or superpriority claims granted under this Interim Order, (b) assert any Claims and

Defenses or any other causes of action against the Lender or its respective agents, affiliates,

subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or

otherwise delay the Lender's assertion, enforcement or realization on the Collateral in

accordance with the Intercompany Credit Agreement or this Interim Order, (d) seek to modify

(whether directly or indirectly) by any motion, pleading or otherwise, any of the rights granted to

the Lender hereunder or under the Intercompany Credit Agreement, in the case of each of the

foregoing clauses (a) through (d), without Lender's prior written consent or (e) pay any amount

on account of any claims arising prior to the Petition Date unless such payments are (i) approved

by an Order of this Court and (ii) set forth in the Approved Budget and permitted under the

Intercompany Credit Agreement.

13.    *Order Governs*.  In the event of any inconsistency between the provisions

of this Interim Order and the Intercompany Credit Agreement, the provisions of this Interim

Order shall govern.

14.    *Binding Effect; Successors and Assigns*.  The Intercompany Credit

Agreement and the provisions of this Interim Order, including all findings herein, shall be

binding upon all parties-in-interest in the Chapter 11 Cases, including without limitation, the

Committee (if any), and the Debtors and their respective successors and assigns (including any

chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an

examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary

appointed as a legal representative of any of the Debtors or with respect to the property of the

15

estate of any of the Debtors) and shall inure to the benefit of the Debtors and their respective

successors and assigns.

15.     *Effectiveness*.  This Interim Order shall constitute findings of fact and

conclusions of law and shall take effect immediately upon execution hereof as of the Petition

Date, and there shall be no stay of execution of effectiveness of this Interim Order.

16.     *Bankruptcy Rule 6003*.  The requirements of Bankruptcy Rule 6003(b) are

satisfied.

17.     *Bankruptcy Rule 6004*.

(a)     The (i) the fourteen (14) day stay under Bankruptcy Rule 6004(h),

if applicable, is hereby waived with respect to this Interim Order and (ii) the terms and

conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

(b)     The requirements set forth in Bankruptcy Rule 6004(a) are waived.

18.     *Retained Jurisdiction*.  This Court shall retain jurisdiction to hear and

determine all matters arising from or related to this Interim Order.

19.     *Final Hearing*.  The Final Hearing, if required, on the Motion will be held

on _____, 2011 at __:__ [a][p].m., prevailing Eastern time_____, 2011, at __:___

__.m. Eastern Time, before this Court.

20.     *Final Hearing Notice*.  The Debtors shall promptly mail copies of this

Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having

been given notice of the Interim Hearing, and to any other party that has filed a request for

notices with this Court and to the Committee if the same has been appointed, or Committee

counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief

sought at the Final Hearing shall serve and file written objections; which objections shall be

NY1 7880062

served upon (a) Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019,

Attention: Paul S. Caruso, Esq., and Andrew F. O'Neill, Esq., attorneys for the Debtors, and (b)

the Office of the U.S. Trustee for the Southern District of New York, Attention: _____,

Esq. and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of

New York, in each case to allow actual receipt by the foregoing no later than _____,

2011, at __:___ __.m. Eastern Time.  If no objections are filed with respect to the Motion, this

Court may enter a Final Order on the Motion without further notice or hearing.


Dated:   _____, 2011
         Poughkeepsie, New York


_____
UNITED STATES BANKRUPTCY JUDGE

17

NY1 7880062

## SCHEDULE 1

**Initial Approved Budget**

Confidential

11/7/2011

($ in millions)

| Week Number | Notes: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Weeks 1-13 Total Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | | 11/11/2011 | 11/18/2011 | 11/25/2011 | 12/2/2011 | 12/9/2011 | 12/16/2011 | 12/23/2011 | 12/30/2011 | 1/6/2012 | 1/13/2012 | 1/20/2012 | 1/27/2012 | 2/3/2012 | |
| **Receipts** | | | | | | | | | | | | | | | |
| Power Settlements | | $0.2 | $0.0 | $1.7 | $2.7 | $3.7 | $3.6 | $2.5 | $2.5 | $4.6 | $4.2 | $8.4 | $1.2 | $4.5 | $39.8 |
| Other Receipts | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Receipts** | | **$0.2** | **$0.0** | **$1.7** | **$2.7** | **$3.7** | **$3.6** | **$2.5** | **$2.5** | **$4.6** | **$4.2** | **$8.4** | **$1.2** | **$4.5** | **$39.8** |
| **Disbursements** | | | | | | | | | | | | | | | |
| Fuel Settlements / Other | | $0.0 | ($0.0) | ($2.0) | ($0.1) | ($1.6) | ($0.0) | ($0.4) | ($2.0) | ($1.0) | ($1.2) | ($0.5) | ($4.0) | ($0.5) | ($13.4) |
| Plant Operating Expenses | | 0.0 | (0.4) | (0.4) | (0.4) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (2.9) |
| Salaries, Wages & Benefits | | 0.0 | (0.4) | (0.2) | (0.7) | (0.2) | (0.4) | (0.2) | (0.7) | (0.2) | (0.4) | (0.2) | (0.4) | (0.4) | (4.5) |
| Pension | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (0.7) | 0.0 | 0.0 | 0.0 | (0.7) |
| Capex | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (0.4) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (0.4) |
| Insurance | | 0.0 | 0.0 | 0.0 | (0.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) |
| Property Taxes | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (7.3) | (7.3) |
| Services and EMA Expenses | | 0.0 | 0.0 | 0.0 | (0.1) | 0.0 | (0.6) | 0.0 | 0.0 | (0.0) | 0.0 | (0.5) | 0.0 | (0.0) | (1.2) |
| Other Non-Operating Activity | (a) | 0.0 | (0.3) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (0.3) |
| Facility and trustee fees | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Total Disbursements** | | **$0.0** | **($1.1)** | **($2.6)** | **($1.3)** | **($2.0)** | **($1.3)** | **($0.8)** | **($3.3)** | **($1.3)** | **($2.5)** | **($1.3)** | **($4.6)** | **($8.4)** | **($30.6)** |
| **Net Operating Cash Flows** | | **$0.2** | **($1.1)** | **($0.9)** | **$1.4** | **$1.7** | **$2.3** | **$1.6** | **($0.9)** | **$3.3** | **$1.7** | **$7.1** | **($3.4)** | **($3.9)** | **$9.2** |
| Professional & Advisor Fees | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Intercompany Creditor Facility Borrowing / (Paydowns) | | 0.0 | 1.1 | 0.9 | (1.4) | (0.6) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Net Cash Flows** | | **$0.2** | **($0.0)** | **$0.0** | **$0.0** | **$1.1** | **$2.3** | **$1.6** | **($0.9)** | **$3.3** | **$1.7** | **$7.1** | **($3.4)** | **($3.9)** | **$9.2** |
| Beginning DNE Cash Balance as of 11/8/11 | | $0.8 | $1.0 | $1.0 | $1.0 | $1.0 | $2.1 | $4.4 | $6.1 | $5.2 | $8.5 | $10.2 | $17.4 | $14.0 | $0.8 |
| Net Cash Flow | | 0.2 | (0.0) | 0.0 | 0.0 | 1.1 | 2.3 | 1.6 | (0.9) | 3.3 | 1.7 | 7.1 | (3.4) | (3.9) | 9.2 |
| **Ending DNE Cash Balance** | | **$1.0** | **$1.0** | **$1.0** | **$1.0** | **$2.1** | **$4.4** | **$6.1** | **$5.2** | **$8.5** | **$10.2** | **$17.4** | **$14.0** | **$10.1** | **$10.1** |
| **Intercompany Creditor Facility Summary** | | | | | | | | | | | | | | | |
| Beginning Balance | | $0.0 | $0.0 | $1.1 | $2.0 | $0.6 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Borrowing / (Repayment) | | 0.0 | 1.1 | 0.9 | (1.4) | (0.6) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Ending Balance** | | **$0.0** | **$1.1** | **$2.0** | **$0.6** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** |
| **Net Cash (Intercompany Creditor Facility - Debt)** | | **$1.0** | **($0.1)** | **($1.0)** | **$0.4** | **$2.1** | **$4.4** | **$6.1** | **$5.2** | **$8.5** | **$10.2** | **$17.4** | **$14.0** | **$10.1** | **$10.1** |

**Notes:**
(a) Payout of Utility deposit.