# **EXHIBIT B**

**Intercompany Credit Agreement**

## INTERCOMPANY REVOLVING LOAN AGREEMENT

This **INTERCOMPANY REVOLVING LOAN AGREEMENT** (this "Agreement"), dated as of November ____, 2011, is entered into by and between Dynegy Northeast Generation, Inc., a Delaware corporation, as a debtor-in-possession ("DNE"), Hudson Power, L.L.C., a Delaware limited liability company, as a debtor-in-possession ("Hudson"), Dynegy Danskammer, L.L.C., a Delaware limited liability company, as a debtor-in-possession ("Danskammer"), Dynegy Roseton, L.L.C., a Delaware limited liability company, as a debtor-in-possession ("Roseton" and, collectively with DNE, Hudson and Danskammer, "Borrowers"), and Dynegy Holdings, LLC, a Delaware limited liability company ("Lender").

### W I T N E S S E T H:

**WHEREAS**, on November 7, 2011 (the "Petition Date"), Borrowers commenced Chapter 11 Case Nos. _____ (the "Chapter 11 Cases") by filing a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  Borrowers continue to operate their businesses and manage their property as debtors and debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

**WHEREAS**, Borrowers have requested that Lender provide a secured revolving credit facility to Borrowers to fund the working capital and general corporate requirements, including certain costs of administration of the Chapter 11 Cases, of Borrowers during the pendency of the Chapter 11 Cases in accordance with the Approved Budget (as defined below);

**WHEREAS,** Lender shall from time to time, upon the request of Borrowers, make loans to Borrowers hereunder in an aggregate amount not to exceed the Maximum Amount (as defined below);

**WHEREAS**, Borrowers have agreed to secure all of their obligations under this Agreement by granting to Lender, under and pursuant to the Financing Orders (as defined below), a security interest in and lien upon the Collateral having the priority specified in the Financing Orders; and

**WHEREAS**, Borrowers have agreed to provide Lender superpriority administrative expense claims against Borrowers for their obligations to Lender under this Agreement and the Financing Orders with priority over any and all administrative expenses and all other claims against Borrowers.

**NOW, THEREFORE,** in consideration of the foregoing recitals, and of the mutual covenants, conditions and provisions hereinafter set forth, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Borrowers hereby agree as follows:

NY1 7880062

1. <u>Definitions</u>. As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

"<u>Business Day</u>" shall mean any day other than a Saturday, Sunday or a public or bank holiday or the equivalent for banks generally under the laws of New York.

"<u>Change of Control</u>" shall occur if Lender shall fail to own or control, directly or indirectly, 100% of the outstanding capital stock or membership interests, as applicable, of any Borrower.

"<u>Collateral</u>" shall have the meaning assigned to such term in the Financing Order.

"<u>Interest Rate</u>" means, as of any date of determination, a per annum rate equal to 9.25%.

"<u>Interim Order</u>" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after an interim hearing (assuming satisfaction of the standards prescribed in Sections 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001 and other applicable law), together with all extensions, modifications, and amendments thereto, in form and substance satisfactory to Lender, which, among other matters but not by way of limitation, authorizes, on an interim basis, Borrowers to execute and perform under the terms of this Agreement.

"<u>Final Order</u>" means, collectively, the order of the Bankruptcy Court entered in the Chapter 11 Cases after a final hearing under Bankruptcy Rule 4001(c)(2) or such other procedures as approved by the Bankruptcy Court which order shall be satisfactory in form and substance to Lender (including such additional provisions not present in the Interim Order as Lender shall require), and from which no appeal or motion to reconsider has been timely filed, or if timely filed, such appeal or motion to reconsider has been dismissed or denied (unless Lender waives such requirement), together with all extensions, modifications and amendments thereto, which, among other matters but not by way of limitation, authorizes Borrowers to obtain credit, incur and guaranty debt, and grant Liens under this Agreement and provide for the super priority of Lender's claim.

"<u>Financing Order</u>" means the Interim Order or the Final Order, whichever is in effect at the time of any determination hereunder, and "<u>Financing Orders</u>" means the Interim Order and the Final Order, collectively.

"<u>Governmental Authority</u>" means any nation or government, any state, city, province or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"<u>Lien</u>" means any mortgage, pledge, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge, or preference, priority or other security interest or preferential arrangement in the nature of a security interest of any kind or nature whatsoever.

"Maximum Amount" means, as of any date of determination, an amount equal to the Revolving Commitment as of that date or, if less, from and after entry of the Interim Order until entry of the Final Order, $7,500,000 or such lower amount as the Bankruptcy Court may determine to be necessary to prevent immediate and irreparable harm to Borrowers pending the entry of the Final Order.

"Maturity Date" means the earliest of (a) May 6, 2012, (b) the date of acceleration of the Obligations of Borrowers hereunder pursuant to Section 7 and (c) the date of the closing of a sale of all or substantially all of any Borrower's assets pursuant to Section 363 of the Bankruptcy Code or confirmation of a plan of reorganization with respect to any Borrower.

"Obligations" means all unpaid principal of and accrued and unpaid interest on the Loans and all other expenses, reimbursements, indemnities and other obligations of Borrowers to Lender hereunder and under the Financing Orders.

"Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or Governmental Authority.

"Revolving Commitment" means $15,000,000.

2.    Revolving Facility.

(a)    Loans.  Lender shall, upon request of Borrowers in accordance with Section 2(b), make loans (each a "Loan" and collectively, the "Loans") to Borrowers from time to time prior to the Maturity Date; provided, that after giving effect to any such Loan the aggregate principal amount of Loans outstanding under this Agreement shall not exceed the Maximum Amount.  Borrowers may borrow, repay, and reborrow amounts hereunder in accordance with the terms hereof.

(b)    Borrowing Requests.  Borrowers may from time to time request a Loan under Section 2(a) by providing Lender with a borrowing request in writing or by telephone (or as otherwise agreed between Borrowers and Lender) specifying (i) the amount of the requested Loan and (ii) the requested date thereof, which shall be a Business Day.  Lender will make such Loan to the applicable Borrower by wire transfer in accordance with the instructions provided by such Borrower (or as otherwise agreed between such Borrower and Lender).

(c)    Interest.

(i)    Each Loan evidenced by this Agreement shall bear interest from the respective date of borrowing until the date of repayment by maturity, acceleration or otherwise.  Interest shall accrue on the principal balance of each Loan from time to time outstanding hereunder at the Interest Rate.

3

    (ii) Interest on the Loans shall be paid in kind in arrears on the last Business Day of each calendar month, and such interest shall be capitalized and added to the outstanding principal amount then outstanding under the Loans, it being understood that all accrued interest that is capitalized shall be deemed to be added to and constitute principal as of the relevant payment date for all purposes hereunder without further action on the part of any Borrower or Lender and shall bear interest as provided herein from such date.  In addition, on any partial or complete payment or prepayment of principal of the Loans, Borrowers shall pay in cash the accrued and unpaid interest on any portion of the Loans so paid or prepaid.

    (iii) Upon the occurrence and during the continuance of an Event of Default, (x) the outstanding principal amount of the Loans (and any overdue interest) shall bear interest at the Interest Rate <u>plus</u> 2.00% per annum, computed and payable as provided above and (y) Lender may require the payment in cash of accrued interest on demand or at regular intervals more frequent than monthly.

    (iv) In no event shall the interest rate under this <u>paragraph (c)</u> exceed the maximum rate permitted under applicable law.

3. <u>Payment.</u>

  (a) <u>Payment at Maturity</u>.  All Loans shall be repaid in cash by Borrowers on the Maturity Date together with any accrued and unpaid interest on the principal being repaid on the Maturity Date.

  (b) <u>Voluntary Prepayments</u>.  Borrowers may, from time to time, without notice to Lender, prepay all or any portion of the Loans without premium or penalty of any type.

  (c) <u>Mandatory Prepayment</u>.  If at any time the unrestricted cash of Borrowers shall exceed $1,000,000 in the aggregate, Borrowers shall notify Lender and, immediately upon the request of Lender, make a prepayment of the Loans in an aggregate amount equal to such excess.

  (d) <u>Method of Payment</u>.  All payments hereunder, including without limitation all payments of principal of and interest on the Loans, shall be made to Lender at its address referred to in <u>Section 9(a)</u> (or as otherwise agreed between Borrowers and Lender) in immediately available funds.  Whenever any payment hereunder becomes due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day and such extension of time shall be included in the computation of the interest due.  Any payment made to Lender shall be applied in the following order: first, to the payment of interest on the Loans; second, to the payment of the principal amount of the Loans outstanding; and third, to any other amounts owing to Lender hereunder.

4

4.      Conditions to Effectiveness.  This Agreement shall become effective as of the date first above written upon satisfaction of each of the following (unless otherwise waived by Lender):

(a)     Agreement.  This Agreement or counterparts hereof shall have been duly executed by, and delivered to, Borrowers and Lender.

(b)     Approvals.  Lender shall have received satisfactory evidence that Borrowers have obtained all required consents and approvals of all Persons, including all requisite Governmental Authorities, to the execution, delivery and performance of this Agreement.

(c)     Automatic Stay.  The automatic stay shall have been modified to permit the creation and perfection of Lender's Liens, as more fully set forth in the Interim Order.

(d)     Interim Order.  The Interim Order in form and substance satisfactory to Lender shall have been entered by the Bankruptcy Court.

(e)     Initial Approved Budget.  Lender shall have received a cash forecast for Borrowers for the 13-week period commencing November 7, 2011, setting forth projected cash receipts and cash disbursements, to be in form, scope and substance acceptable to Lender (the "Initial Approved Budget").

5.      Approved Budget.

(a)     Not later than January 20, 2012, Borrowers shall provide to Lender a cash forecast for Borrowers for the 13-week period commencing February 6, 2012, setting forth projected cash receipts and cash disbursements, to be in form, scope and substance acceptable to Lender (the "Additional Approved Budget").

(b)     The Initial Approved Budget and Additional Approved Budget may be updated at any time with the written consent of Lender (any such approved update, a "Supplemental Approved Budget"; the Initial Approved Budget, the Additional Approved Budget and any Supplemental Approved Budgets, collectively, shall constitute the "Approved Budget").

(c)     Commencing with the calendar week ending December 23, 2011, Borrowers shall not permit, as of the end of any calendar week, either (i) the aggregate cash receipts of Borrowers for the period from November 14, 2011 through the end of such calendar week to be less than 75% of the aggregate cash receipts of Borrowers set forth in the Approved Budget for such period or (ii) the aggregate operating cash disbursements of Borrowers for the period from November 14, 2011 through the end of such calendar week to be greater than 125% of the aggregate operating cash disbursements of Borrowers set forth in the Approved Budget for such period.

(d)     Borrowers shall use proceeds of the Loans in accordance with the Approved Budget and the Financing Order.

5

(e) No later than ten Business Days after the end of each calendar week, Borrowers shall provide to Lender a report describing in reasonable detail the aggregate actual cash receipts, cash disbursements, net cash flow and cash balance of Borrowers for such calendar week and a comparison to the Approved Budget for such calendar week.

6. Events of Default.  Each of the following events shall be referred to herein as an "Event of Default":

(g) failure to make any payment of any installment of principal of or interest upon any Loan when due and payable; or

(h) failure of Borrowers to comply with Section 5(c); or

(i) failure of any Borrower to perform or observe any other term, covenant or agreement contained in this Agreement and such default shall continue unremedied for a period of five (5) Business Days;

(j) the occurrence of any Change of Control; or

(k) Lender or any Borrower shall have failed to receive, as and when required, any consent or approval from any Governmental Authority necessary in order for such party to perform its obligations hereunder in accordance with all applicable laws, rules and regulations; or

(l) the occurrence of any of the following in any Chapter 11 Case:

(i) the entry of, or any Borrower shall seek, an order amending, supplementing, staying, vacating or otherwise modifying this Agreement or the Interim Order or the Final Order without the written consent of Lender (other than the replacement of the Interim Order with the Final Order);

(ii) the appointment of an interim or permanent trustee or the appointment of a responsible person or an examiner with expanded powers to operate or manage the financial affairs, the business, or reorganization of any Borrower;

(iii) the dismissal of any Chapter 11 Case or conversion from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code;

(iv) the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (x) to allow any creditor to execute upon or enforce a Lien on any Collateral or (y) to permit the perfection of any Lien on the Collateral;

(v) the entry of an order avoiding or requiring repayment of any portion of the payments made on account of the Obligations owing under this Agreement;

6

    (vi) the entry of an order granting any other super priority administrative claim or Lien equal or superior to that granted to Lender; or

    (vii) the Financing Order ceases to be in full force and effect.

7. <u>Remedies</u>.

  (a) <u>Certain Action Following a Default</u>.  If any Event of Default shall occur and be continuing, upon compliance with the terms and conditions of the Financing Order, then Lender may, in its sole discretion (i) by notice in writing to Borrowers, (A) declare its commitment to make additional Loans hereunder to be terminated and (B) declare all or any part of the unpaid balance of the Loans then outstanding to be immediately due and payable and (ii) exercise any rights and remedies provided to Lender under this Agreement, under the Financing Order or at law or equity.  Upon the occurrence and during the continuance of an Event of Default, the Lender shall have, in addition to all other rights and remedies provided herein, in the Financing Order or at law or equity, the rights and remedies of a secured party under the Uniform Commercial Code as in effect in the State of New York.

  (b) <u>Cumulative Remedies</u>.  To the extent not prohibited by applicable law which cannot be waived, all of Lender's rights hereunder and under any other document between Lender and Borrowers shall be cumulative.  No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

  (c) <u>Waivers</u>.  To the extent that such waiver is not prohibited by the provisions of applicable law that cannot be waived, each Borrower hereby waives (1) all presentments, demands for performance, notices of nonperformance (except to the extent required by this Agreement), protests, notices of protest and notices of dishonor; (2) any requirement of diligence or promptness on the part of Lender in the enforcement of its rights under this Agreement; (3) any and all notices of every kind and description which may be required to be given by any statute or rule of law; and (4) any defense (other than indefeasible payment in full) which it may now or hereafter have with respect to its liability under this Agreement.

8. <u>Indemnification</u>.  Borrowers agree, jointly and severally, to indemnify, defend, and hold and save harmless Lender and its employees, agents, directors, members, management, officers or other affiliates (collectively, "<u>Indemnitees</u>") from any losses, damages, claims, actions, demands, or lawsuits of any kind whatsoever (including reasonable attorneys' fees) arising in any way directly or indirectly out of the transactions contemplated by this Agreement, except such as may be caused by the gross negligence or willful misconduct of the applicable Indemnitee.  This <u>Section 8</u> shall survive termination of this Agreement.

7

9.      Miscellaneous.

(a)     Notices.  Any communication, notice or demand required or permitted to be given hereunder shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopier at the address or telecopier number set forth in Schedule I hereto.  Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; notices sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next Business Day for the recipient).

(b)     Entire Agreement; Severability.  This Agreement sets forth the parties' entire agreement and understanding in respect of the subject matter contained herein.  Notwithstanding the foregoing, however, the Financing Order shall continue to govern the terms and conditions of the transactions contemplated hereby to the extent inconsistent with, or address matters not addressed in, this Agreement.  If any term or provision hereof, or its application to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such terms to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby and each term hereof shall be valid and enforceable to the fullest extent permitted by applicable law.

(c)     Assignment.  Neither this Agreement nor any of the rights, interests or obligations of Borrowers hereunder shall be assigned or otherwise transferred by any Borrower, nor may any Borrower delegate performance hereunder, except with Lender's prior written consent.

(d)     Amendments; Waivers.  All amendments, supplements or other modifications hereof must be made by written agreement of the parties hereto.

(e)     APPLICABLE LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK.  EACH PARTY HERETO HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN LENDER AND ANY BORROWER PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT; PROVIDED, THAT LENDER AND BORROWERS ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; PROVIDED FURTHER, THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF LENDER.

(f) WAIVER OF VENUE. EACH BORROWER IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY COURT REFERRED TO IN SECTION 9(e). EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(g) SERVICE OF PROCESS. EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN SECTION 9(a). NOTHING IN THIS AGREEMENT WILL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

(h) WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

(i) Counterparts. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement. A facsimile copy of a signature hereto shall have the same effect as the original of such signature.

(j) Reinstatement. In the event that any payment hereunder, or any part thereof, is rescinded, reduced, restored or returned, the Obligations shall be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k) Binding Agreement. This Agreement and all Liens created hereby or pursuant hereto shall be binding upon each Borrower, the estate of each Borrower, and any trustee or successor in interest of any Borrower in the Chapter 11 Cases or any subsequent case commenced under Chapter 7 of the Bankruptcy Code. This Agreement shall be binding upon, and inure to the benefit of, the successors of Lender and its assigns, transferees and endorsees. The Liens and superpriority claims created by this Agreement and the Financing Orders shall be and remain valid and perfected in the event of the substantive consolidation or conversion of any Chapter 11 Case or any other bankruptcy case of any Borrower to a case under Chapter 7 of the Bankruptcy Code or in the event of dismissal of any Chapter 11 Case or the release of any Collateral from the jurisdiction of the Bankruptcy Court for any reason, without the necessity that Lender file

financing statements or otherwise perfect its security interests or Liens under applicable law.

10.     Guaranty.

(a)     Guaranty.  Each Borrower hereby agrees that such Borrower is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to Lender and its successors and assigns, the full and prompt payment (whether at stated maturity, by acceleration or otherwise) and performance of, all Obligations owed or hereafter owing to Lender by each other Borrower.  Each Borrower agrees that its guaranty obligation hereunder is a continuing guaranty of payment and performance and not of collection, that its obligations under this Section 10 shall not be discharged until payment and performance, in full, of the Obligations has occurred and this Agreement has terminated, and that its obligations under this Section 10 shall be absolute and unconditional.  Each Borrower shall be regarded, and shall be in the same position, as principal debtor with respect to the Obligations guaranteed hereunder.

(b)     Benefit of Guaranty.  Each Borrower agrees that the provisions of this Section 10 are for the benefit of Lender and its successors, transferees, endorsees and assigns, and nothing herein contained shall impair, as between any other Borrower and Lender, the obligations of such other Borrower under this Agreement.

(c)     Waiver of Subrogation, Etc.  Notwithstanding anything to the contrary in this Agreement, each Borrower hereby expressly and irrevocably waives any and all rights at law or in equity to subrogation, reimbursement, exoneration, contribution, indemnification or set off and any and all defenses available to a surety, guarantor or accommodation co-obligor.  Each Borrower acknowledges and agrees that this waiver is intended to benefit Lender and shall not limit or otherwise affect such Borrower's liability hereunder or the enforceability of this Section 10, and that Lender and its successors and assigns are intended third party beneficiaries of the waivers and agreements set forth in this Section 10(c).

The remainder of this page is intentionally blank.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be duly executed as of the date first above written.

### LENDER

DYNEGY HOLDINGS, LLC

By: _____
Name:
Title:

**BORROWERS**

HUDSON POWER, L.L.C.


By: _____
Name:
Title:

DYNEGY DANSKAMMER, L.L.C.


By: _____
Name:
Title:

DYNEGY ROSETON, L.L.C.


By: _____
Name:
Title:

DYNEGY NORTHEAST GENERATION, INC.


By: _____
Name:
Title:

*Signature Page to*
*Intercompany Revolving Loan Agreement*

SCHEDULE I

Notice Information

Borrowers

Dynegy Northeast Generation, Inc.
Hudson Power, L.L.C.
Dynegy Danskammer, L.L.C.
Dynegy Roseton, L.L.C.
1000 Louisiana Street, Suite 5800
Houston, Texas 77002
Attention:  Catherine Callaway
            Clint Freeland
Telephone: (713) 507-6400
Facsimile: (713) 767-5181

Lender

Dynegy Holdings, LLC
1000 Louisiana Street, Suite 5800
Houston, Texas 77002
Attention:  Catherine Callaway
            Clint Freeland
Telephone: (713) 507-6400
Facsimile: (713) 767-5181