## EXHIBIT A

*Execution Copy*

---

# FACILITY LEASE AGREEMENT

Dated as of May 8, 2001

between

## ROSETON OL LLC,
as Owner Lessor

and

## DYNEGY ROSETON, L.L.C.,
as Facility Lessee

---

## ROSETON UNITS 1 AND 2

---

CERTAIN OF THE RIGHT, TITLE AND INTEREST OF THE OWNER LESSOR IN AND TO THIS LEASE AND THE RENT DUE AND TO BECOME DUE HEREUNDER HAVE BEEN ASSIGNED AS COLLATERAL SECURITY TO, AND ARE SUBJECT TO A SECURITY INTEREST IN FAVOR OF THE CHASE MANHATTAN BANK, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS LEASE INDENTURE TRUSTEE UNDER AN INDENTURE OF TRUST, MORTGAGE AND SECURITY AGREEMENT, DATED AS OF MAY 8, 2001, BETWEEN SAID LEASE INDENTURE TRUSTEE, AS SECURED PARTY, AND THE OWNER LESSOR, AS DEBTOR.   SEE SECTION 21 HEREOF FOR INFORMATION CONCERNING THE RIGHTS OF THE ORIGINAL HOLDER AND THE HOLDERS OF THE VARIOUS COUNTERPARTS HEREOF.

# TABLE OF CONTENTS

Page

SECTION 1.   DEFINITIONS ............................................................................................. 1

SECTION 2.   LEASE OF THE FACILITY ...................................................................... 1

Section 2.1.   Lease .................................................................................................. 1

Section 2.2.   Personal Property ............................................................................. 2

SECTION 3.   FACILITY LEASE TERM AND RENT ...................................................... 2

Section 3.1.   Basic Lease Term .............................................................................. 2

Section 3.2.   Rent .................................................................................................. 2

Section 3.3.   Supplemental Lease Rent ................................................................. 3

Section 3.4.   Adjustment of Lease Schedules ........................................................ 4

Section 3.5.   Manner of Payments ......................................................................... 6

SECTION 4.   DISCLAIMER OF WARRANTIES; RIGHT OF QUIET
ENJOYMENT ............................................................................................... 7

Section 4.1.   Disclaimer of Warranties .................................................................. 7

Section 4.2.   Quiet Enjoyment ............................................................................... 8

SECTION 5.   RETURN OF FACILITY ........................................................................... 8

Section 5.1.   Return ............................................................................................... 8

Section 5.2.   Condition Upon Return .................................................................... 9

Section 5.3.   Environmental Reports; Clean-up ................................................... 10

SECTION 6.   LIENS ........................................................................................................ 11

SECTION 7.   MAINTENANCE; REPLACEMENTS OF COMPONENTS ..................... 11

Section 7.1.   Maintenance ..................................................................................... 11

Section 7.2.   Replacement of Components ............................................................ 12

Section 7.3.   Compliance with Environmental Laws ............................................. 12

SECTION 8.   MODIFICATIONS ..................................................................................... 13

Section 8.1.   Required Modifications .................................................................... 13

Section 8.2.   Optional Modifications .................................................................... 13

Section 8.3.   Title to Modifications ...................................................................... 13

SECTION 9.   NET LEASE ............................................................................................... 14

SECTION 10.   EVENTS OF LOSS ................................................................................. 16

Section 10.1.   Occurrence of Events of Loss ........................................................ 16

Section 10.2.   Payment of Termination Value; Termination of Periodic Lease
Rent and Renewal Lease Rent .......................................................................... 19

**TABLE OF CONTENTS**
**(continued)**

Page

| | | | |
|---|---|---|---|
| Section 10.3. | Rebuild or Replace | 21 |
| Section 10.4. | Application of Payments Not Relating to an Event of Loss | 24 |
| Section 10.5. | Certain Conditions to Termination | 24 |
| SECTION 11. | INSURANCE | 25 |
| Section 11.1. | Property Insurance | 25 |
| Section 11.2. | Liability Insurance | 25 |
| Section 11.3. | Provisions with Respect to Insurance | 25 |
| Section 11.4. | Reports | 26 |
| Section 11.5. | Additional Insurance by Owner Lessor | 26 |
| Section 11.6. | Amendment of Requirements | 26 |
| Section 11.7. | Application of Insurance Proceeds | 28 |
| SECTION 12. | INSPECTION | 28 |
| SECTION 13. | TERMINATION OPTION FOR BURDENSOME EVENTS | 29 |
| Section 13.1. | Election to Terminate | 29 |
| Section 13.2. | Solicitation of Offers; Payments Upon Termination | 30 |
| Section 13.3. | Procedure for Exercise of Termination Option | 31 |
| Section 13.4. | Assumption of the Lessor Notes | 32 |
| Section 13.5. | Certain Conditions to Termination | 32 |
| SECTION 14. | TERMINATION FOR OBSOLESCENCE | 33 |
| Section 14.1. | Termination | 33 |
| Section 14.2. | Solicitation of Offers | 33 |
| Section 14.3. | Right of Owner Lessor to Retain Unit | 34 |
| Section 14.4. | Procedure for Exercise of Termination Option | 35 |
| Section 14.5. | Certain Conditions to Termination | 37 |
| SECTION 15. | LEASE RENEWAL | 37 |
| Section 15.1. | First Wintergreen Renewal Lease Term | 37 |
| Section 15.2. | Second Wintergreen Renewal Lease Term | 38 |
| Section 15.3. | Fair Market Value Renewal Lease Terms | 38 |
| Section 15.4. | Renewal Lease Rent for the Renewal Lease Terms | 39 |
| Section 15.5. | Determination of Fair Market Rental Value | 39 |
| Section 15.6. | Termination Value During Renewal Lease Terms | 40 |

**TABLE OF CONTENTS**
(continued)

Page

SECTION 16.    EVENTS OF DEFAULT ..................................................................... 40

SECTION 17.    REMEDIES ...................................................................................... 43

Section 17.1.    Remedies for Lease Event of Default.................................. 43

Section 17.2.    Cumulative Remedies.......................................................... 46

Section 17.3.    No Delay or Omission to be Construed as Waiver.............. 46

SECTION 18.    SECURITY INTEREST AND INVESTMENT OF SECURITY
FUNDS    46

SECTION 19.    FACILITY LESSEE'S RIGHT TO SUBLEASE ........................ 47

SECTION 20.    OWNER LESSOR'S RIGHT TO PERFORM............................. 48

SECTION 21.    SECURITY FOR OWNER LESSOR'S OBLIGATION TO THE
LEASE INDENTURE TRUSTEE.................................................................. 48

SECTION 22.    MISCELLANEOUS.......................................................................... 49

Section 22.1.    Amendments and Waivers.................................................... 49

Section 22.2.    Notices.................................................................................. 49

Section 22.3.    Survival ................................................................................ 51

Section 22.4.    Successors and Assigns ....................................................... 51

Section 22.5.    "True Lease".......................................................................... 51

Section 22.6.    Governing Law..................................................................... 51

Section 22.7.    Severability........................................................................... 51

Section 22.8.    Counterparts ......................................................................... 51

Section 22.9.    Headings and Table of Contents .......................................... 51

Section 22.10.    Further Assurances.............................................................. 52

Section 22.11.    Effectiveness ...................................................................... 52

Section 22.12.    Limitation of Liability ........................................................ 52

Section 22.13.    Measuring Life .................................................................... 52

## TABLE OF CONTENTS
### (continued)

Page

SCHEDULE 1-A  – PERIODIC LEASE RENT AND SECTION 467 LOAN BALANCE
PERCENTAGES

SCHEDULE 2-A  – ALLOCATION, PROPORTIONAL RENT AND SECTION 467
INTEREST PERCENTAGES

SCHEDULE 3-A  – TERMINATION VALUE PERCENTAGES

EXHIBIT A-1    – DESCRIPTION OF FACILITY SITE

EXHIBIT A-2    – DESCRIPTION OF ADDITIONAL FACILITY SITE

EXHIBIT B      – DESCRIPTION OF THE FACILITY

EXHIBIT B-1    – DESCRIPTION OF FACILITY ASSETS OWNED BY OWNER LESSOR

EXHIBIT C      – DESCRIPTION OF RETAINED ASSETS

APPENDIX       – DEFINITIONS

# FACILITY LEASE AGREEMENT

This **FACILITY LEASE AGREEMENT**, dated as of May 8, 2001 (this "Facility Lease"), between **ROSETON OL LLC**, a Delaware limited liability company (the "Owner Lessor"), and **DYNEGY ROSETON, L.L.C.**, a Delaware limited liability company (the "Facility Lessee").

### WITNESSETH:

**WHEREAS**, pursuant to (i) the Deed of even date herewith that has been recorded with the Orange County Clerks Office, Orange County, New York on the date hereof, and (ii) the Bill of Sale of even date herewith, the Owner Lessor has acquired the Facility (as more fully described on Exhibit B from the Facility Lessee;

**WHEREAS**, pursuant to this Facility Lease, the Owner Lessor desires to lease the Facility to the Facility Lessee for the Basic Lease Term and the Renewal Lease Terms, if any, provided herein, and the Facility Lessee desires to lease the Facility from the Owner Lessor on such terms;

**WHEREAS**, the Facility is located on the Facility Site (as more particularly described on Exhibit A-1 hereto), but the Facility does not include the Facility Site or any part thereof, and no part of the Facility Site is being leased to the Facility Lessee under this Facility Lease; and

**WHEREAS**, pursuant to the Site Lease, the Facility Lessee has leased the Ground Interest to the Owner Lessor for the Site Lease Term and pursuant to the Site Sublease the Owner Lessor has subleased the Ground Interest to the Facility Lessee for the term equal to a term of this Facility Lease, including any renewals hereof;

**NOW, THEREFORE**, in consideration of the foregoing premises, the mutual agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## SECTION 1.  DEFINITIONS

Unless the context hereof otherwise requires, capitalized terms used in this Facility Lease, including those in the recitals, and not otherwise defined herein shall have the respective meanings set forth in Appendix A to the Participation Agreement, dated as of May 1, 2001, among the Facility Lessee, the Owner Lessor, Roseton OP LLC, Wilmington Trust Company, as Lessor Manager, and The Chase Manhattan Bank, as Lease Indenture Trustee and Pass Through Trustees. The general provisions of such Appendix A shall apply to this Facility Lease including the terms used herein.

## SECTION 2.  LEASE OF THE FACILITY

*Section 2.1. Lease.* The Owner Lessor hereby leases the Facility, upon the terms and conditions set forth herein, to the Facility Lessee for the Basic Lease Term and, subject to the Facility Lessee's exercise of the renewal option or options in Section 15, one or more Renewal

Lease Terms, and the Facility Lessee hereby leases the Facility, upon the terms and conditions set forth herein, from the Owner Lessor for such term. The Facility Lessee and the Owner Lessor understand and agree that this Facility Lease is subject to the Permitted Encumbrances. The Facility shall be subject to the terms of this Facility Lease from the date on which this Facility Lease is executed and delivered.

*Section 2.2. Personal Property.* Title to the Facility, and every portion thereof is severed, and shall be and remain severed, from title to the real estate constituting the Facility Site, and shall not, except as specifically contemplated by the Operative Documents, be affected in any way by any instrument dealing with the Facility Site or any part thereof. The Facility constitutes personal property for all purposes, other than possibly for the purposes of laws relating to ad valorem or property taxes.

SECTION 3.  FACILITY LEASE TERM AND RENT

*Section 3.1. Basic Lease Term.* The basic lease term of this Facility Lease for the Facility (the "Basic Lease Term") shall commence on the Closing Date and shall terminate at 11:59 p.m. (New York City time) on February 8, 2035, subject to earlier termination in whole pursuant to Section 10, 13, 14 or 17 hereof or with respect to either Unit pursuant to Section 10 or 14 hereof.

*Section 3.2. Rent.*

(a)     Payment of Rent. The Facility Lessee hereby agrees to pay to the Owner Lessor basic lease rent, payable with respect to the Basic Lease Term (the "Periodic Lease Rent") for the lease of the Facility as follows:  each payment of Periodic Lease Rent shall be payable on each Rent Payment Date in the amount equal to, subject to Section 3.4 hereof, the product of (x) the Purchase Price multiplied by (y) the Periodic Lease Rent Percentage set forth opposite such Rent Payment Date on Schedule 1-A hereto. In the event this Facility Lease shall have been terminated pursuant to Section 10 or 14 with respect to a Unit, Periodic Lease Rent payable on any Rent Payment Date thereafter shall be the amount calculated pursuant to the immediately preceding sentence multiplied by the Unit Percentage for the Unit that remains subject to this Facility Lease. Renewal Lease Rent shall be paid on the dates and in the amounts set forth in Section 15. All Periodic Lease Rent and Renewal Lease Rent to be paid pursuant to this Section 3.2 shall be payable in the manner set forth in Section 3.5.

(b)     Allocation of Rent. The Periodic Lease Rent allocated to each Rent Payment Period for the use by the Facility Lessee of the Facility shall be an amount equal to the product of the Purchase Price multiplied by the Allocation Percentage for the Facility as set forth in Schedule 2-A hereof (the "Allocated Rent"). In the event this Facility Lease shall have been terminated pursuant to Section 10 or 14 with respect to a Unit, the Allocated Rent with respect to the remainder of the Basic Lease Term shall be the amount computed pursuant to the immediately preceding sentence multiplied by the Unit Percentage for the Unit that remains subject to this Facility Lease. Notwithstanding that Periodic Lease Rent is payable in accordance with Section 3.2(a) hereof and without limiting the Facility Lessee's payment obligations under Section 3.2(a), the Allocated Rent calculated pursuant to this Section 3.2(b) shall represent and be the amount of Periodic Lease Rent for which the Facility Lessee becomes liable on account of

the use of the Facility for each calendar year included in whole or in part of the Basic Lease Term.

      (c)    Deduction/Inclusion of Rent and Interest Under Section 467 of the Code. It is the intention of the Owner Lessor and the Facility Lessee that the allocation of Periodic Lease Rent to each Rent Payment Period as provided in Section 3.2(b) constitutes a specific allocation of fixed rent within the meaning of Treasury Regulation Section 1.467-1(c)(2)(ii) with the effect that the Owner Lessor and the Facility Lessee, on any federal income tax returns filed by them (or, on any income tax returns on which their income is included), shall accrue the amounts of rental income and rental expense, respectively, set forth for each Rent Payment Period in an amount equal to the product of the Purchase Price multiplied by the percentage set forth for such Rent Payment Period in Schedule 2-A under the caption "Proportional Rent Percentage" (the "Proportional Rent"). In addition, (i) if, with respect to any Rent Payment Period, the percentage set forth for such Rent Payment Period under the caption "Section 467 Interest Percentage set forth in Schedule 2-A is positive, the Owner Lessor shall deduct interest expense and the Facility Lessee shall accrue interest income with respect to such period in an amount equal to the product of the Purchase Price multiplied by such percentage ("Lessor Section 467 Interest") and (ii) if, with respect to any Rent Payment Period, the percentage set forth for such Rent Payment Period under the caption "Section 467 Interest Percentage" set forth in Schedule 2-A is in parentheses, the Owner Lessor shall accrue interest income and the Facility Lessee shall deduct interest expense with respect to such period in an amount equal to the product of the Purchase Price multiplied by such percentage ("Lessee Section 467 Interest"). All Section 467 Loan principal and interest is already included as part of Periodic Lease Rent and Termination Values, is payable as a portion thereof, and has been taken into account in the calculation of the percentage set forth under the heading "Periodic Lease Rent Percentage" on Schedule 1-A hereto or under the heading "Termination Value Percentage" on Schedule 3-A hereto. In no event shall any principal or interest on any Section 467 Loan be separately payable (including upon any termination of this Facility Lease, and regardless of whether or not Termination Value shall be payable in connection with any such termination), it being agreed and understood that these items represent characterizations for Federal income tax purposes only, including in the case of any termination of this Facility Lease pursuant to Sections 10, 13, 14 and 17 where Termination Value is not payable. In the event that this Facility Lease shall have been terminated pursuant to Section 10 or 14 with respect to a Unit, the amounts otherwise computed pursuant this Section 3.2(c) with respect to the remainder of the Basic Lease Term shall be the amounts so computed multiplied by the Unit Percentage for the Unit which remains subject to this Facility Lease.

      (d)    Notwithstanding anything herein to the contrary but subject to Section 3.4(d), the Facility Lessee shall be permitted, so long as the Facility Lease remains in effect, to defer the Equity Portion of Periodic Lease Rent and Renewal Lease Rent by such amounts and to such dates as shall be permitted under Section 6(d) of the Tax Indemnity Agreement.

      *Section 3.3. Supplemental Lease Rent.* The Facility Lessee also agrees to pay to the Owner Lessor, or to any other Person entitled thereto as expressly provided herein or in any other Operative Document, as appropriate, any and all Supplemental Lease Rent, promptly as the same shall become due and owing, or where no due date is specified, promptly after demand by

the Person entitled thereto, and in the event of any failure on the part of the Facility Lessee to pay any Supplemental Lease Rent, the Owner Lessor shall have all rights, powers and remedies provided for herein or by law or equity or otherwise for the failure to pay Periodic Lease Rent or Renewal Lease Rent. The Facility Lessee will also pay as Supplemental Lease Rent, to the extent permitted by Applicable Law, an amount equal to interest at the Overdue Rate on any part of any payment of Periodic Lease Rent or Renewal Lease Rent not paid when due for any period for which the same shall be overdue and on any Supplemental Lease Rent not paid when due (whether on demand or otherwise) for the period from such due date until the same shall be paid. The Facility Lessee also agrees to pay as Supplemental Lease Rent an amount equal to any Make Whole Premium required to be paid pursuant to the Lease Indenture or any Note (other than any Make Whole Premium which may be payable after an assumption of the Notes by the Owner Participant pursuant to Section 11.4 of the Participation Agreement) and any amount required to be paid by the Owner Lessor pursuant to Section 5.4(a) of the Lease Indenture; *provided* that the Facility Lessee shall have the right to the exclusion of the Owner Lessor to agree with the Lease Indenture Trustee as to the amount of such compensation. All Supplemental Lease Rent to be paid pursuant to this Section 3.3 shall be payable in the manner set forth in Section 3.5.

Section 3.4. *Adjustment of Lease Schedules*.

(a)    The Facility Lessee and the Owner Lessor agree that Periodic Lease Rent, Allocated Rent, Proportional Rent, Section 467 Loan Balance, Section 467 Interest and Termination Values shall be adjusted, either upwards or downwards, to reflect (i) the issuance of any Additional Lessor Notes pursuant to Section 2.12 of the Lease Indenture in connection with a refinancing of the Lessor Notes pursuant to Section 11.2 of the Participation Agreement, and (ii) the issuance of Additional Lessor Notes pursuant to Section 2.12 of the Lease Indenture in connection with the financing of Modifications to the Facility pursuant to Section 11.1 of the Participation Agreement.

(b)    In the event that liquidated damages become payable with respect to any Lessor Note in accordance with the sixth paragraph of such Note ("Additional Interest"), Owner Lessor and Facility Lessee will institute an alternative rent schedule (the "Alternative Rent Schedule") to replace Schedules 1-A and 2-A attached hereto and an alternative termination value schedule (the "Alternative Termination Value Schedule") to replace Schedule 3-A attached hereto. The Alternative Rent Schedule will require amounts of Periodic Lease Rent during the Basic Lease Term ("Alternative Rent") to be paid that equal the sum of (x) the Periodic Lease Rent that would have been payable had Additional Interest never become payable and (y) an amount equal to the Additional Interest payable on the applicable Lessor Notes (the "Additional Rental Amount"). The Alternative Termination Value Schedule will reflect the increase on any Termination Date of the Additional Rental Amount. The Alternative Rent Schedule will allocate the Additional Rental Amount over the Basic Lease Term in accordance with the rules of Section 467 of the Code then in effect. At the time that Additional Interest becomes payable, the Alternative Rent Schedule and Alternative Termination Value Schedule will be based on the assumption that the Additional Interest and Additional Rental Amount will apply for the term of the applicable Lessor Notes. In the event that the requirement to pay Additional Interest ceases prior to the term of such Lessor Notes, or is reinstated after any such cessation, the schedules referenced above will be revised in accordance with the foregoing methodology to reflect any such subsequent increases or decreases in the amounts of Additional Interest required to be paid.

It is the intent of the Owner Lessor and the Facility Lessee that the Alternative Rent Schedule (and any substitute rent schedules prepared in accordance with the preceding sentence) constitute alternative payment schedules, within the meaning of Treas. Reg. § 1.467-1(h)(3)(v); and the Owner Lessor and Facility Lessee agree that, as of the Closing Date, neither believes that the alternative payment schedules are likely to apply.

(c)    Any adjustments pursuant to Section 3.4 (including with respect to any Alternative Rent Schedule and related adjustments pursuant to Section 3.4(b)) shall be calculated to preserve the Owner Participant's Net Economic Return through the end of the Basic Lease Term; *provided, however*, that to the extent consistent with preserving the Owner Participant's Net Economic Return, all adjustments shall at the option of the Facility Lessee be calculated to (x) maintain operating lease treatment for the Facility Lessee, (y) minimize the average annual Periodic Lease Rent over the Basic Lease Term for the Facility Lessee's GAAP accounting purposes and/or (z) minimize the present value to the Facility Lessee of the Periodic Lease Rent; *provided*, that no such adjustment shall require the Owner Participant to record a loss as of the date such adjustment is made or shall change such Owner Participant's book earnings for the year in which such adjustment is made and each of the succeeding four years by more than +/- 5%. Adjustments will be made using the same method of computation and assumptions, including Tax Assumptions and Pricing Assumptions, originally used (other than those that have changed as the result of the event giving rise to the adjustment) in the calculation of the Periodic Lease Rent and to comply with law including Section 467 of the Code (except to the extent that the original transaction did not comply therewith). The adjustments contemplated by Section 3.4 will result in corresponding adjustments to Allocated Rent, Proportional Rent, Section 467 Loan Balances, Section 467 Interest and Termination Values.

(d)    Anything herein or in any other Operative Document to the contrary notwithstanding, Periodic Lease Rent payable on any Rent Payment Date, whether or not adjusted in accordance with this Section 3.4, shall, in the aggregate, be in an amount at least sufficient to pay in full principal and interest payable on the Lessor Notes on such Rent Payment Date. Anything herein or in any other Operative Document to the contrary notwithstanding, Termination Values payable on any date under this Facility Lease, whether or not adjusted in accordance with this Section 3.4, shall in the aggregate, together with all other Rent due and owing on such date, exclusive of any portion thereof that is an Excepted Payment, be in an amount at least sufficient to pay in full the principal of, premium, if any, and accrued interest on the Lessor Notes payable on such date.

(e)    Any adjustment pursuant to this Section 3.4 shall initially be computed by the Owner Participant, subject to the verification procedure described in this Section 3.4(e). Once computed, the results of such computation shall promptly be delivered by the Owner Participant to the Facility Lessee. Within 20 days after the receipt of the results of any such adjustment, the Facility Lessee may request that a nationally recognized firm of accountants or lease advisors selected by the Owner Participant and reasonably satisfactory to the Facility Lessee (the "Verifier") verify, after consultation with the Owner Participant and the Facility Lessee, the accuracy of such adjustment in accordance with this Section 3.4. The Owner Participant and the Facility Lessee hereby agree, (i) each shall have the right to communicate with the Verifier, and (ii) subject to the execution by the Verifier of an appropriate confidentiality agreement, to provide the Verifier with all information and materials (other than

income tax returns or accounting records) as shall be necessary in connection therewith. If the Verifier confirms that such adjustment is in accordance with this Section 3.4, it shall so certify to the Facility Lessee, the Owner Lessor and the Owner Participant and such certification shall be final, binding and conclusive on the Facility Lessee, the Owner Participant and the Owner Lessor. If the Verifier concludes that such adjustment is not in accordance with this Section 3.4, and the adjustments to Periodic Lease Rent, Allocated Rent, Proportional Rent, Section 467 Loan Balance, Section 467 Interest or Termination Value calculated by the Verifier are different from those calculated by the Owner Participant, then it shall so certify to the Facility Lessee, the Owner Lessor and the Owner Participant and the Verifier's calculation shall be final, binding and conclusive on the Facility Lessee, the Owner Lessor and the Owner Participant. If the Facility Lessee does not request verification of any adjustment within the period specified above, the computation provided by the Owner Participant shall be final, binding and conclusive on the Facility Lessee, the Owner Lessor and the Owner Participant. The final determination of any adjustment hereunder shall be set forth in an amendment to this Facility Lease, executed and delivered by the Owner Lessor and the Facility Lessee and consented to by the Owner Participant; *provided, however,* that any omission to execute and deliver such amendment shall not affect the validity and effectiveness of any such adjustment. The reasonable fees, costs and expenses of the Verifier in verifying an adjustment pursuant to this Section 3.4 shall be paid by the Facility Lessee; *provided, however,* that, in the event that such Verifier determines that the present value of Periodic Lease Rent to be made under this Facility Lease as calculated by the Owner Participant is greater than the present value of the correct Periodic Lease Rent as certified by the Verifier, in each case, discounted semi-annually on each Rent Payment Date at the Discount Rate, by more than five basis points, then such expenses of the Verifier shall be paid by the Owner Participant. Notwithstanding anything herein to the contrary, the sole responsibility of the Verifier shall be to verify the calculations hereunder and matters of interpretation of this Facility Lease or any other Operative Document shall not be within the scope of the Verifier's responsibilities.

*Section 3.5. Manner of Payments.* All Rent (whether Periodic Lease Rent, Renewal Lease Rent or Supplemental Lease Rent) shall be paid by the Facility Lessee in lawful currency of the United States of America in immediately available funds to the recipient not later than 11:00 a.m. (New York City time) on the date due. All Rent payable to the Owner Lessor (other than Excepted Payments) shall be paid by the Facility Lessee to the Owner Lessor by payment to the Owner Lessor's Account, or to such other place as the Owner Lessor shall notify the Facility Lessee in writing; *provided, however,* that so long as the Lien of the Lease Indenture has not been discharged, the Owner Lessor hereby irrevocably directs (it being agreed and understood that such direction shall be deemed to have been revoked after the Lien of the Lease Indenture shall have been fully discharged in accordance with its terms), and the Facility Lessee agrees, that all payments of Rent (other than Excepted Payments) payable to the Owner Lessor shall be paid by wire transfer directly to the Lease Indenture Trustee's Account or to such other place as the Lease Indenture Trustee shall notify the Facility Lessee in writing pursuant to the Lease Indenture. Payments constituting Excepted Payments shall be made to the Person entitled thereto at the address for such Person set forth in the Participation Agreement, or to such other place as such Person shall notify the Facility Lessee in writing.

SECTION 4.  DISCLAIMER OF WARRANTIES; RIGHT OF QUIET ENJOYMENT

*Section 4.1.  Disclaimer of Warranties.*

(a)    Without waiving any claim the Facility Lessee may have against any manufacturer, vendor or contractor, THE FACILITY LESSEE ACKNOWLEDGES AND AGREES SOLELY FOR THE BENEFIT OF THE OWNER LESSOR AND THE OWNER PARTICIPANT THAT (i) THE FACILITY AND EACH COMPONENT THEREOF IS OF A SIZE, DESIGN, CAPACITY AND MANUFACTURE ACCEPTABLE TO THE FACILITY LESSEE, (ii) THE FACILITY LESSEE IS SATISFIED THAT THE FACILITY AND EACH COMPONENT THEREOF IS SUITABLE FOR THEIR RESPECTIVE PURPOSES, (iii) NEITHER THE OWNER LESSOR NOR THE OWNER PARTICIPANT IS A MANUFACTURER OR A DEALER IN PROPERTY OF SUCH KIND, (iv) THE FACILITY IS LEASED HEREUNDER TO THE EXTENT PROVIDED HEREBY FOR THE BASIC LEASE TERM AND THE RENEWAL LEASE TERMS, IF ANY, SPECIFIED HEREIN SUBJECT TO ALL APPLICABLE LAWS NOW IN EFFECT OR HEREAFTER ADOPTED, INCLUDING    (1) ZONING    REGULATIONS,    (2) ENVIRONMENTAL    LAWS    OR (3) BUILDING RESTRICTIONS, AND IN THE STATE AND CONDITION OF EVERY PART THEREOF WHEN THE SAME FIRST BECAME SUBJECT TO THIS FACILITY LEASE WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE OWNER LESSOR OR THE OWNER PARTICIPANT AND (v) THE OWNER LESSOR LEASES FOR THE BASIC LEASE TERM AND THE RENEWAL LEASE TERMS, IF ANY, SPECIFIED HEREIN AND THE FACILITY LESSEE TAKES THE FACILITY UNDER THIS FACILITY LEASE "AS-IS", "WHERE-IS" AND "WITH ALL FAULTS", AND THE FACILITY LESSEE ACKNOWLEDGES THAT NEITHER THE OWNER LESSOR, NOR THE OWNER PARTICIPANT MAKES NOR SHALL BE DEEMED TO HAVE MADE, AND EACH EXPRESSLY DISCLAIMS, ANY AND ALL RIGHTS, CLAIMS, WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VALUE, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, DESIGN, OPERATION, MERCHANTABILITY THEREOF OR AS TO THE TITLE OF THE FACILITY, THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREOF OR CONFORMITY THEREOF TO SPECIFICATIONS, FREEDOM FROM PATENT, COPYRIGHT OR TRADEMARK INFRINGEMENT, THE ABSENCE OF ANY LATENT OR OTHER DEFECT, WHETHER OR NOT DISCOVERABLE, OR AS TO THE ABSENCE OF ANY OBLIGATIONS BASED ON STRICT LIABILITY IN TORT OR ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT THERETO, except that the Owner Lessor represents and warrants that on the Closing Date, the Facility will be free of Owner Lessor's Liens.  It is agreed that all such risks, as between the Owner Lessor and the Owner Participant on the one hand and the Facility Lessee on the other hand are to be borne by the Facility Lessee with respect to acts, occurrences or omissions during the Facility Lease Term.  Neither of the Owner Lessor nor the Owner Participant shall have any responsibility or liability to the Facility Lessee or any other Person with respect to any of the following: (x) any liability, loss or damage caused or alleged to be caused directly or indirectly by the Facility or any Component or by any inadequacy thereof or deficiency or defect therein or by any other circumstances in connection therewith; (y) the use, operation or performance of the Facility or any Component thereof or any risks relating thereto; or (z) the delivery, operation, servicing, maintenance, repair, improvement, replacement or decommissioning of the Facility or

any Component thereof. The provisions of this paragraph (a) of this Section 4.1 have been negotiated, and, except to the extent otherwise expressly stated herein or in Sections 3.2(f) and 3.4(f) of the Participation Agreement, the foregoing provisions are intended to be a complete exclusion and negation of any representations or warranties of the Owner Lessor and the Owner Participant, express or implied, with respect to the Facility or any Components thereof that may arise pursuant to any Applicable Law now or hereafter in effect, or otherwise.

(b)    During the Facility Lease Term, so long as no Lease Event of Default shall have occurred and be continuing, the Owner Lessor hereby appoints irrevocably and constitutes the Facility Lessee its agent and attorney-in-fact, coupled with an interest, to assert and enforce, from time to time, in the name and for the account of the Owner Lessor and the Facility Lessee, as their interests may appear, but in all cases at the sole cost and expense of the Facility Lessee, whatever claims and rights the Owner Lessor may have in respect of the Facility or any Component thereof against any manufacturer, vendor or contractor, or under any express or implied warranties relating to the Facility or any Component thereof.

*Section 4.2. Quiet Enjoyment.* The Owner Lessor agrees that, notwithstanding any provision of any other Operative Document, so long as no Lease Event of Default shall have occurred and be continuing, it shall not interfere with or interrupt the quiet enjoyment of the use, operation and possession by the Facility Lessee of the interest in the Facility conveyed by this Facility Lease subject to the terms of this Facility Lease.

SECTION 5.  RETURN OF FACILITY

*Section 5.1. Return.*

(a)    Upon expiration or early termination of this Facility Lease with respect to any Unit (other than, if the Unit is being transferred to the Facility Lessee in connection with a termination pursuant to Section 10 or 13), the Facility Lessee, at its own expense, shall return such Unit (together with Modifications to such Unit that shall have vested in the Owner Lessor pursuant to the first sentence of Section 8.3) to the Owner Lessor or any transferee or assignee of the Owner Lessor by surrendering such Unit into the possession of the Owner Lessor or such transferee or assignee at the location of such Unit on the Facility Site. In connection with such return, the Facility Lessee shall:

(i)    assign, to the extent permitted by Applicable Law, and shall cooperate with all reasonable requests of the Owner Participant, the Owner Lessor or any transferee or assignee of either of such parties for purposes of obtaining, or enabling the Owner Participant, the Owner Lessor or such transferees or assignees to obtain, any and all licenses, permits, approvals and consents of any Governmental Entities or other Persons that are or will be required to be obtained by the Owner Participant, the Owner Lessor or such transferee or assignee in connection with the use, operation or maintenance of on or after such return in compliance with Applicable Law; *provided* that if (x) this Facility Lease was theretofore terminated with respect to a Unit, and any such license, permit, approval or consent also relates or applies to the Unit not being returned or (y) any such license, permit, approval or consent also relates to any other facilities,

the Facility Lessee and the Owner Lessor shall enter into mutually satisfactory arrangements so that both Units or the Facility and such other facilities may each be owned, operated and maintained in a commercially reasonable manner; and

(ii)    provide the Owner Lessor or a transferee or assignee of Owner Lessor copies of all documents, instruments, plans, maps, specifications, manuals, drawings and other documentary materials relating to the installation, maintenance, operation, construction, design, modification and repair of such Unit as shall be in the Facility Lessee's possession and shall be reasonably appropriate or necessary for the continued operation of such Unit. Upon such return, the right to use such Unit granted hereunder for the benefit of the Facility Lessee shall cease and terminate and in the case of the return of a Unit pursuant to Section 10 or 14, such Unit shall no longer be deemed to be a part of the Facility.

(b)    If both Units are being returned or the Unit not being returned was previously returned, all references in this Section 5 (other than references in the proviso in Section 5.1(a)(i)(x) and in Section 5.2(c) to "a Unit" or "such Unit" shall be deemed to mean "the Facility".

*Section 5.2. Condition Upon Return.* At the time of a return of a Unit by the Facility Lessee to the Owner Lessor or any transferee or assignee of the Owner Lessor pursuant to Section 5.1, the following conditions shall be complied with, all at the Facility Lessee's sole cost and expense; provided that clauses (a), (b) and (d) shall not apply to any return pursuant to Section 10 and clause (b) shall not apply to any return pursuant to Section 14:

(a)    such Unit shall be in the same condition as when delivered, ordinary wear and tear excepted, and shall be free and clear of all Liens (other than Permitted Liens of the type specified in (a), (b), (c) or (h) of the definition thereof);

(b)    such Unit shall be in compliance with Sections 7 and 8; and

(c)    if the Facility Lease is being terminated with respect to a Unit and such Unit is being transferred to a third party, the Facility Lessee, at the request of the Owner Lessor, shall enter into a site lease and an assignment agreement substantially in the form of the Site Lease and the Assignment and Reassignment of Facility Agreements (without reassignment) solely with respect to the Unit being returned with the transferee or assignee of the Owner Lessor or make other arrangements reasonably acceptable to the Owner Lessor to permit such third party access to and use of the Unit it is acquiring; and

(d)    the Facility Lessee, at the request of the Owner Lessor, shall sell to the Owner Lessor (or its designee) at the then Fair Market Sales Value thereof, determined by agreement between the Facility Lessee and the Owner Lessor, or absent agreement, by an appraisal conducted according to the Appraisal Procedure (x) any spare parts then held by the Facility Lessee at the Facility Site, the Other Facility Site or the adjoining properties which relate to or are useful in connection with the Unit being returned (other than spare parts which were designated for, or otherwise held for use in connection with, the Unit, if any, which remains subject to this Facility Lease, the Other Facility (to the extent then subject to the Other Facility