(b)     Renewal Lease Rent payable on each Rent Payment Date during any FMV Renewal Lease Term for the Facility shall be the Fair Market Rental Value for the Facility.

*Section 15.5. Determination of Fair Market Rental Value.* The Fair Market Rental Value of the Facility as of the commencement of any Renewal Lease Term shall be determined by agreement of the Owner Lessor and the Facility Lessee within six months after receipt by the Owner Lessor of the tentative notice from the Facility Lessee of its election to renew pursuant to Section 15.1, 15.2 or 15.3 (but not more than thirty-six (36) months before the commencement of such Renewal Lease Term) or, if they shall fail to agree within such six-month period, shall be determined by an Independent Appraiser in accordance with the Appraisal Procedures, which Independent Appraiser shall be selected by the Facility Lessee and reasonably acceptable to the Owner Lessor. The appraiser's fees and expenses shall be borne by the Facility Lessee.

*Section 15.6. Termination Value During Renewal Lease Terms.* The amounts which are payable during any Renewal Lease Term in respect of Termination Value shall be determined on the basis of the Fair Market Sales Value of the Facility as of the commencement of such FMV Renewal Lease Term, amortized on a straight-line basis over such Renewal Lease Term to the projected Fair Market Sales Value of the Facility as of the expiration of such Renewal Lease Term, as such Fair Market Sales Value in each case is determined prior to the commencement of such Renewal Lease Term, plus any amount of Renewal Lease Rent accrued and unpaid to the date of termination. In determining Fair Market Sales Value for any Renewal Lease Term, effect shall be given to the encumbrance on the Facility of any FMV Renewal Lease Term available or in force.

SECTION 16.     EVENTS OF DEFAULT

The following events shall constitute a "Lease Event of Default" hereunder (whether any such event shall be voluntary or involuntary or come about or be effected by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any Governmental Entity):

(a)     the Facility Lessee shall fail to make any payment of Periodic Lease Rent, Renewal Lease Rent, or Termination Value (or amounts computed by reference to Termination Value) after the same shall have become due and payable and such failure shall have continued for five (5) Business Days after the same shall become due; or

(b)     the Facility Lessee shall fail to make any payment of Supplemental Lease Rent (other than Excepted Payments, unless the Owner Participant shall have consented to such declaration or Termination Value (or amounts computed by reference to Termination Value) after the same shall have become due and such failure shall have continued from a period of 30 days after receipt by the Facility Lessee and the Lessee Guarantor of written notice of such default from the Owner Participant, the Owner Lessor, the Lease Indenture Trustee or the Pass Through Trustees; or

(c)     the Facility Lessee shall fail to observe or perform its obligation to maintain (or cause to be maintained) insurance in the amounts and on the terms set forth in Section 11; or

(d) the Facility Lessee or the Lessee Guarantor shall fail to perform or observe any covenant, obligation or agreement to be performed or observed by it under this Facility Lease or any other Operative Document (other than any covenant, obligation or agreement contained in the Tax Indemnity Agreement, the Cross Easement or the Exempt Facilities Agreement or any covenant, obligation or agreement referred to in any other clause of this Section 16) in any material respect, which shall continue unremedied for 30 days after receipt by the Facility Lessee and the Lessee Guarantor of written notice thereof from the Owner Participant, Owner Lessor, Lease Indenture Trustee or the Pass Through Trustees; *provided, however,* that if such condition cannot be remedied within such 30-day period, then the period within which to remedy such condition shall be extended up to an additional 180 days, so long as the Facility Lessee diligently pursues such remedy and such condition is reasonably capable of being remedied within such additional 180-day period; *provided, further,* that in the case of the Facility Lessee's obligation set forth in clause (a)(ii) of Section 7.1, if, to the extent and for so long as a test, challenge, appeal or proceeding shall be prosecuted in good faith by the Facility Lessee, the failure by the Facility Lessee to comply with such requirement shall not constitute a Lease Event of Default if such test, challenge, appeal or proceeding shall not involve (i) any danger of foreclosure, sale, forfeiture or loss of, or imposition of a Lien on, any part of the Facility or the impairment of the use, operation or maintenance of the Facility in any material respect (in each case, unless such risk is appropriately bonded), or (ii) any risk of criminal liability being asserted against the Owner Participant, the Owner Lessor, the Lease Indenture Trustee or the Pass Through Trustees or their respective Affiliates, or (iii) any material risk of the occurrence of any material adverse effect being incurred by the Owner Participant, Owner Lessor, or Lease Indenture Trustee, or the Pass Through Trustees, including subjecting the Owner Participant or the Owner Lessor or their Affiliates to regulation as a public utility under Applicable Law; and *provided, further,* that in the case of the Facility Lessee's obligation set forth in clause (a)(ii) of Section 7.1, if the noncompliance is not a type that can be immediately remedied, the failure to comply shall not be a Lease Event of Default if the Facility Lessee is taking all reasonable action to remedy such noncompliance and if, but only if, such noncompliance shall not involve any danger described in clause (i), (ii) or (iii) of the preceding proviso; and *provided, further,* such noncompliance, or such test, challenge, appeal or proceeding to review shall not extend beyond the date thirty-six (36) months prior to the scheduled expiration of the Basic Lease Term or any Renewal Lease Term then in effect or elected by the Facility Lessee; or

(e) any representation or warranty made by the Facility Lessee or the Lessee Guarantor in the Operative Documents (other than a Tax Representation) or in the certificate delivered by the Facility Lessee or the Lessee Guarantor at the Closing pursuant to Section 4(f) of the Participation Agreement shall prove to have been incorrect in any material respect when made and continues to be material and unremedied for a period of 30 days after receipt by the Facility Lessee and the Lessee Guarantor of written notice thereof from the Owner Participant, Owner Lessor, or Lease Indenture Trustee, or the Pass Through Trustees; *provided, however,* that if such condition cannot be remedied within such 30-day period, then the period within which to remedy such condition shall be extended up to an additional 120 days, so long as the Facility Lessee diligently pursues

such remedy and such condition is reasonably capable of being remedied within such additional 120-day period; or

(f)   a failure by the Facility Lessee or the Lessee Guarantor to comply in any material respect with the transfer provisions set forth in Sections 13.2 and 13.3 of the Participation Agreement; or

(g)   the Lessee Guarantor shall fail to perform any covenant set forth in Section 4 of the Lessee Guaranty in any material respect and such failure shall continue unremedied for 90 days after receipt by the Lessee Guarantor of written notice thereof from the Owner Participant, the Owner Lessor, the Lease Indenture Trustee, the Pass Through Trustees or a majority of the Certificateholders; or

(h)   the Facility Lessee shall repudiate any Operative Document to which it is a party; the Lessee Guarantor shall repudiate the Lessee Guaranty; or the Lessee Guaranty shall have become invalid or unenforceable; or

(i)   the entry by a court having jurisdiction in the premises of (A) a decree or order for relief in respect of the Facility Lessee or the Lessee Guarantor in an involuntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging the Facility Lessee or the Lessee Guarantor as bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Facility Lessee or the Lessee Guarantor under any applicable Federal or state law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Facility Lessee or the Lessee Guarantor or of any substantial part of the property of the Facility Lessee or the Lessee Guarantor, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order for relief or any such other decree or order unstayed and in effect for a period of 90 consecutive days; or

(j)   the commencement by the Facility Lessee or the Lessee Guarantor of a voluntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated bankrupt or solvent, or the consent by it to the entry of a decree or order for relief in respect of the Facility Lessee or the Lessee Guarantor in an involuntary case or proceeding under any applicable Federal or state bankruptcy, insolvency, reorganization or other similar law or the commencement of any bankruptcy or insolvency case or proceeding against the Facility Lessee or the Lessee Guarantor, or the filing by the Facility Lessee or the Lessee Guarantor of a petition or answer or consent seeking reorganization or relief under any applicable Federal or state law, or the consent by the Facility Lessee or the Lessee Guarantor to the filing of such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or similar official of the Facility Lessee or the Lessee Guarantor or of any substantial part of the property of the Facility Lessee or the Lessee Guarantor, or the making by the Facility Lessee or the Lessee Guarantor of any assignment for the benefit of creditors, or the admission by the Facility Lessee or the Lessee Guarantor in writing of

its inability to pay its debts generally as they become due, or the taking of corporate action by the Facility Lessee or the Lessee Guarantor in furtherance of any such action.

SECTION 17.    REMEDIES

*Section 17.1. Remedies for Lease Event of Default.* Upon the occurrence of any Lease Event of Default and at any time thereafter so long as the same shall be continuing, the Owner Lessor may, at its option, declare this Facility Lease to be in default by written notice to the Facility Lessee and the Lessee Guarantor; *provided* that upon the occurrence of a Lease Event of Default described in paragraph (i) or (j) of Section 16, this Facility Lease shall automatically be deemed to be in default without the need for giving any notice; and at any time thereafter, so long as the Facility Lessee shall not have remedied all outstanding Lease Events of Default, the Owner Lessor may do one or more of the following as the Owner Lessor in its sole discretion shall elect, to the extent permitted by, and subject to compliance with any mandatory requirements of, Applicable Law then in effect:

(a)    proceed by appropriate court action or actions, either at law or in equity, to enforce performance by the Facility Lessee, at the Facility Lessee's sole cost and expense, of the applicable covenants and terms of this Facility Lease or to recover damages for breach thereof;

(b)    by notice in writing to the Facility Lessee and the Lessee Guarantor, terminate this Facility Lease whereupon all right of the Facility Lessee to the possession and use under this Facility Lease of the Facility shall absolutely cease and terminate but the Facility Lessee shall remain liable as hereinafter provided; and thereupon, the Owner Lessor may demand that the Facility Lessee and the Lessee Guarantor, as the case may be, and the Facility Lessee, shall, upon written demand of the Owner Lessor and at the Facility Lessee's expense, forthwith return possession of the Facility to the Owner Lessor in the manner and condition required by, and otherwise in accordance with all of the provisions of Section 5, except those provisions relating to periods of notice; and the Owner Lessor may thenceforth hold, possess and enjoy the same free from any right of the Facility Lessee, or its successor or assigns, to use the Facility for any purpose whatever;

(c)    sell the Owner Lessor's Interest at public or private sale, as the Owner Lessor may determine, free and clear of any rights of the Facility Lessee under this Facility Lease and without any duty to account to the Facility Lessee with respect to such sale or for the proceeds thereof (except to the extent required by paragraph (f) below if the Owner Lessor elects to exercise its rights under said paragraph and by Applicable Law), in which event Allocated Rent shall cease to accrue and the Facility Lessee's obligation to pay Periodic Lease Rent and Renewal Lease Rent hereunder due for any periods subsequent to the date of such sale shall terminate (except to the extent that Periodic Lease Rent and Renewal Lease Rent is to be included in computations under paragraph (e) or (f) below if the Owner Lessor elects to exercise its rights under said paragraphs);

(d) hold, keep idle or lease to others the Owner Lessor's Interest as the Owner Lessor in its sole discretion may determine, free and clear of any rights of the Facility Lessee under this Facility Lease and without any duty to account to the Facility Lessee with respect to such action or inaction or for any proceeds with respect thereto, except that the Facility Lessee's obligation to pay Periodic Lease Rent and Renewal Lease Rent due for any periods subsequent to the date upon which the Facility Lessee shall have been deprived of possession and use of the Facility pursuant to this Section 17 shall be reduced by the net proceeds, if any, received by the Owner Lessor from leasing the Facility to any Person other than the Facility Lessee;

(e) whether or not the Owner Lessor shall have exercised, or shall thereafter at any time exercise, any of its rights under paragraph (b) above with respect to the Facility, the Owner Lessor, by written notice to the Facility Lessee and the Lessee Guarantor specifying a Termination Date that shall be not earlier than 10 days after the date of such notice, may demand that the Facility Lessee or the Lessee Guarantor, as the case may be, pay to the Owner Lessor, and the Facility Lessee or the Lessee Guarantor, as the case may be, shall pay to the Owner Lessor, on the Termination Date specified in such notice, any unpaid Periodic Lease Rent and Renewal Lease Rent due before such Termination Date, any Supplemental Lease Rent due and payable as of the payment date specified in such notice, plus as liquidated damages for loss of a bargain and not as a penalty (in lieu of the Periodic Lease Rent and Renewal Lease Rent due after the Termination Date specified in such notice), (i) an amount equal to the excess, if any, of the Termination Value for the Facility computed as of the Termination Date specified in such notice over the Fair Market Sales Value of the Owner Lessor's Interest as of the Termination Date specified in such notice, or (ii) an amount equal to the excess, if any, of Termination Value for the Facility computed as of the Termination Date specified in such notice over the Fair Market Rental Value of the Owner Lessor's Interest until the end of the Basic Lease Term or the then current Renewal Lease Term, after discounting such Fair Market Rental Value semiannually to present value as of the Termination Date specified in such notice at a rate equal to the Lease Debt Rate, or (iii) an amount equal to the Termination Value computed as of the Termination Date specified in such notice *provided* that upon payment of such Termination Value by the Facility Lessee pursuant to this clause (iii) and all other Rent then due and unpaid, or accrued and unpaid, by the Facility Lessee, the Owner Lessor shall proceed to exercise its commercially reasonable efforts promptly to sell the Facility at public or private sale and shall pay over to the Facility Lessee upon consummation of any such sale the net proceeds of such sale (after deducting from such proceeds all costs and expenses incurred by the Owner Lessor in connection therewith and all other amounts that may become payable to the Owner Lessor, the Owner Participant, the Lease Indenture Trustee or the Pass Through Trustees) and the Facility Lessee waives all claims against the Owner Lessor and the Owner Participant in connection with the sale of the Facility or the use of commercially reasonable efforts pursuant to this proviso; *provided* further that in lieu of paying an amount equal to the Termination Value pursuant to clause (iii) above, the Facility Lessee may make a rejectable offer in writing to the Owner Lessor (within 5 days following the Facility Lessee's receipt of notice by the Owner Lessor specifying a Termination Date) (an "Offer") to purchase the Facility at a purchase price equal to or greater than Termination Value (the "Offer Price"). If the Owner Lessor rejects such Offer in writing,

the Facility Lessee shall remain liable to pay Termination Value pursuant to clause (iii) above provided that (1) the Facility Lessee shall have no obligation to pay the costs and expenses incurred by the Owner Lessor solely in connection with any sale of the Facility and (2) the Owner Lessor shall proceed to exercise its best efforts promptly to sell the Facility at public or private sale and shall pay over to the Facility Lessee upon consummation of any such sale the proceeds of such sale, but not to exceed the sum of Termination Value paid by the Facility Lessee plus interest at the Applicable Rate from the Termination Date until the date of payment of such proceeds to the Facility Lessee. If the Facility Lessee has made an Offer and the Owner Lessor accepts such Offer or fails to respond to such Offer within two (2) Business Days prior to the date on which the Facility Lessee would have been required to pay Termination Value pursuant to clause (iii) above, the Facility Lessee shall pay to the Owner Lessor the Offer Price on or before the Termination Date and upon such payment of the Offer Price and all other Rent then due and unpaid, or accrued and unpaid, by the Facility Lessee, the Facility Lessee shall no longer remain liable to pay Termination Value or other amounts pursuant to clause (iii) above and the Owner Lessor shall forthwith transfer to the Facility Lessee (or its designee) in accordance with this Section 17.1(c)) hereof and Section 2.4 of the Site Lease on an "as is," "where is" and "with all fault" basis, without representation or warranty other than a warranty as to the absence of Owner Lessor's Liens accompanied by a warranty of the Owner Participant as to the absence of Owner Participant's Liens, all of its interest in the Owner Lessor's Interest and execute, acknowledge and deliver, and record and file (as appropriate), appropriate releases and shall use all reasonable efforts to cause the Indenture Trustee to release the Lien of the Lease Indenture, and all other documents or instructions necessary or desirable to effect the foregoing all in form and substance reasonably satisfactory to the Owner Lessor and at the cost and expense of the Facility Lessee, and upon payment of such amount under either clause (i), (ii) or (iii) of this paragraph (e), this Facility Lease, and Allocated Rent shall cease to accrue and the Facility Lessee's obligation to pay Periodic Lease Rent and Renewal Lease Rent hereunder due for any periods subsequent to the date of such payment shall terminate;

(f)   if the Owner Lessor shall have sold the Owner Lessor's Interest pursuant to paragraph (c) above, the Owner Lessor may, if it shall so elect, demand that the Facility Lessee or the Lessee Guarantor, pay to the Owner Lessor, and the Facility Lessee or the Lessee Guarantor shall pay to the Owner Lessor, as liquidated damages for loss of a bargain and not as a penalty (in lieu of the Periodic Lease Rent and Renewal Lease Rent due for any periods subsequent to the date of such sale), an amount equal to (i) any unpaid Periodic Lease Rent and Renewal Lease Rent due before the date of such sale and, (ii) if that date is not a Termination Date, the daily equivalent of Periodic Lease Rent or Renewal Lease Rent for the period from the preceding Termination Date to the date of such sale, plus (iii) the amount, if any, by which the Termination Value for the Facility computed as of the Termination Date next preceding the date of such sale or, if such sale occurs on a Rent Payment Date or a Termination Date then computed as of such date, exceeds the net proceeds of such sale, and, upon payment of such amount, this Facility Lease and the Facility Lessee's obligation to pay Periodic Lease Rent and Renewal Lease Rent for any periods subsequent to the date of such payment shall terminate; or

(g)    apply any amounts which are held by the Owner Lessor or the Lease Indenture Trustee under Section 10.2(d) or 11.7 as security for the Facility Lessee's obligations hereunder against any amounts owed by the Facility Lessee hereunder or under any other Operative Document.

In addition, the Facility Lessee shall be liable, except as otherwise provided above, for (i) any and all unpaid Periodic Lease Rent and Renewal Lease Rent due hereunder before or during the exercise of any of the foregoing remedies, and (ii) on an After-Tax Basis, for legal fees and other costs and expenses incurred by reason of the occurrence of any Lease Event of Default or the exercise of the Owner Lessor's remedies with respect thereto, including the repayment in full of any costs and expenses necessary to be expended in connection with the return of the Facility in accordance with Section 5 hereof, including, any costs and expenses incurred by the Owner Lessor, the Owner Participant, the Lease Indenture Trustee and the Pass Through Trustees in connection with retaking constructive possession of, or in repairing, the Facility in order to cause it to be in compliance with all maintenance standards imposed by this Facility Lease.

All payments of Rent under this Section 17.1(a) shall, to the extent required by Section 3.5(a), be made to the Lease Indenture Trustee.

Notwithstanding anything herein to the contrary, prior to any sale, lease or conveyance of the Facility, the Owner Lessor may, and the Facility Lessee shall, at the request of the Owner Lessor, give the applicable notice, if any, required by the Exempt Facilities Agreement or obtain a waiver thereof; *provided, however*, that no such sale, lease or conveyance shall occur unless and until the notice, if any, required by the Exempt Facilities Agreement shall have been given or waived.

*Section 17.2. Cumulative Remedies*.   The remedies in this Facility Lease provided in favor of the Owner Lessor shall not be deemed exclusive, but shall be cumulative and shall be in addition to all other remedies in its favor existing at law or in equity; and the exercise or beginning of exercise by the Owner Lessor of any one or more of such remedies shall not, except as specifically provided in this Section 17, preclude the simultaneous or later exercise by the Owner Lessor of any or all of such other remedies.  To the extent permitted by Applicable Law, the Facility Lessee hereby waives any rights now or hereafter conferred by statute or otherwise which may require the Owner Lessor to sell, lease or otherwise use the Facility or any Component thereof in mitigation of the Owner Lessor's damages as set forth in this Section 17 or which may otherwise limit or modify any of the Owner Lessor's rights and remedies in this Section 17.

*Section 17.3. No Delay or Omission to be Construed as Waiver*.   No delay or omission to exercise any right, power or remedy accruing to the Owner Lessor upon any breach or default by the Facility Lessee under this Facility Lease shall impair any such right, power or remedy of the Owner Lessor, nor shall any such delay or omission be construed as a waiver of any breach or default, or of any similar breach or default hereafter occurring; nor shall any waiver of a single breach or default be deemed a waiver of any subsequent breach or default.

SECTION 18.    SECURITY INTEREST AND INVESTMENT OF SECURITY FUNDS.

Any moneys received by the Owner Lessor or the Lease Indenture Trustee pursuant to Section 10.2(d) or 11.7 shall, until paid to the Facility Lessee in accordance with such Sections, be held by the Owner Lessor or the Lease Indenture Trustee, as the case may be, as security for the Facility Lessee's obligations under this Facility Lease and be invested in Permitted Instruments by the Owner Lessor or the Lease Indenture Trustee, as the case may be, at the sole risk of the Facility Lessee, from time to time as directed in writing by the Facility Lessee if such instruments are reasonably available for purchase. Any gain (including interest received) realized as the result of any such Permitted Instrument (net of any fees, commissions, taxes and other expenses, if any, incurred in connection with such Permitted Instrument) shall be applied or remitted to the Facility Lessee in the same manner as the principal invested.

SECTION 19.    FACILITY LESSEE'S RIGHT TO SUBLEASE

The Facility Lessee shall have the right to sublease the Facility (or a Unit thereof) without the consent of the Owner Lessor, the Owner Participant, the Lease Indenture Trustee or the Pass Through Trustees under the following conditions:

(a)    the sublessee (i) is a solvent corporation, partnership, business trust, limited liability company or other person or entity not subject to bankruptcy proceedings, (ii) is not involved in material pending and unresolved litigation with the Owner Participant (or any of its Affiliates), and (iii) is, or its operating and maintenance obligations under the sublease are guaranteed by, or such obligations are contracted to be performed by, an experienced, reputable operator of United States based electric generating assets similar to the Facility;

(b)    the Owner Lessor, the Owner Participant, and so long as the Lien of the Lease Indenture shall not have been terminated or discharged, the Lease Indenture Trustee and the Pass Through Trustees shall have received an opinion of counsel, which opinion and counsel shall be reasonably acceptable to each such recipient, to the effect that all regulatory approvals required to enter into the sublease have been obtained, and the Pass Through Trustees shall have received a copy of, and be permitted to rely upon, such opinion;

(c)    the sublease does not extend beyond the scheduled expiration of the applicable Basic Lease Term or any Renewal Lease Term then in effect or elected by the Facility Lessee (and may be terminated upon early termination of this Facility Lease) and is expressly subject and subordinate to this Facility Lease;

(d)    all terms and conditions of this Facility Lease and the other Operative Documents remain in effect and the Facility Lessee (and the Lessee Guarantor) remains fully and primarily liable for its obligations under this Facility Lease and the other Operative Documents;

(e)    no Significant Lease Default or Lease Event of Default shall have occurred and be continuing or be created thereby;

(f)     the sublease prohibits further assignment or subletting;

(g)     the sublease requires the sublessee to operate and maintain (or cause to be operated and maintained) the Facility in a manner consistent with this Facility Lease;

(h)     the Facility Lessee shall have given the applicable notice, if any, required by the Exempt Facilities Agreement or obtained a waiver thereof;

(i)     the Owner Participant shall have received either (i) a favorable legal opinion of its tax counsel satisfactory to the Owner Participant to the effect that such sublease does not result in any incremental tax risk to the Owner Participant, or (ii) an indemnity against such risk in form and substance reasonably satisfactory to the Owner Participant from the Facility Lessee; provided that the Facility Lessee or any Affiliate of such Facility Lessee that guarantees the Facility Lessee's obligations in respect of such indemnity meets the Minimum Credit Standard, or (iii) any other indemnity arrangement against such risk satisfactory to the Owner Participant; and

(j)     the sublease does not cause the property to become "tax-exempt use property" within the meaning of Section 168(h) of the Code (unless the Facility Lessee shall make a payment to the Owner Participant contemporaneously with the execution of the sublease that in the reasonable judgement of the Owner Participant compensates such Owner Participant for the adverse tax consequences resulting from the classification of the property as "tax-exempt use property").

The Facility Lessee shall provide the Owner Lessor, the Owner Participant, and, so long as the Lien of the Lease Indenture shall not have been terminated or discharged, the Lease Indenture Trustee with all documentation in respect of such sublease prior to entering into such sublease. The Facility Lessee shall pay, on an After-Tax Basis, all reasonable documented out-of-pocket expenses of the Owner Lessor, the Owner Participant, the Lease Indenture Trustee and the Pass Through Trustees in connection with such sublease.

SECTION 20.     OWNER LESSOR'S RIGHT TO PERFORM

If the Facility Lessee fails to make any payment required to be made by it hereunder or fails to perform or comply with any of its other agreements contained herein after notice to the Facility Lessee and the Lessee Guarantor and failure of the Facility Lessee or the Lessee Guarantor to so perform or comply within 10 days thereafter in the case of a failure to make any payment or 30 days thereafter in all other cases, the Owner Lessor may itself, or may cause the Owner Participant to, make such payment or perform or comply with such agreement in a reasonable manner, but shall not be obligated hereunder to do so, and the amount of such payment and of the reasonable expenses of the Owner Lessor or the Owner Participant incurred in connection with such payment or the performance of or compliance with such agreement, as the case may be, together with interest thereon at the Overdue Rate, to the extent permitted by Applicable Law, shall be deemed to be Supplemental Lease Rent, payable by the Facility Lessee to the Owner Lessor on demand.

SECTION 21.  SECURITY FOR OWNER LESSOR'S OBLIGATION TO THE LEASE INDENTURE TRUSTEE

In order to secure the Lessor Notes, the Owner Lessor will assign and grant a Lien to the Lease Indenture Trustee in and to all of the Owner Lessor's right, title and interest in, to and under this Facility Lease, and grant a security interest in favor of the Lease Indenture Trustee in all of the Owner Lessor's right, title and interest in and to the Facility (other than Excepted Payments and Excepted Rights). The Facility Lessee hereby consents to such assignment and to the creation of such Lien and security interest and acknowledges receipt of copies of the Lease Indenture, it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent of the Facility Lessee under any other circumstances. Unless and until the Facility Lessee shall have received written notice from the Lease Indenture Trustee that the Lien of the Lease Indenture has been fully terminated, the Lease Indenture Trustee shall have the right to exercise the rights of the Owner Lessor under this Facility Lease to the extent set forth in and subject in each case to the exceptions set forth in the Lease Indenture. TO THE EXTENT, IF ANY, THAT THIS FACILITY LEASE CONSTITUTES CHATTEL PAPER (AS SUCH TERM IS DEFINED IN THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN ANY APPLICABLE JURISDICTION), NO SECURITY INTEREST IN THIS FACILITY LEASE MAY BE CREATED THROUGH THE TRANSFER OR POSSESSION OF ANY COUNTERPART HEREOF OTHER THAN THE ORIGINAL COUNTERPART, WHICH SHALL BE IDENTIFIED AS THE COUNTERPART CONTAINING THE RECEIPT THEREFOR EXECUTED BY THE LEASE INDENTURE TRUSTEE ON THE SIGNATURE PAGE THEREOF.

SECTION 22.  MISCELLANEOUS

*Section 22.1. Amendments and Waivers.* No term, covenant, agreement or condition of this Facility Lease may be terminated, amended or compliance therewith waived (either generally or in a particular instance, retroactively or prospectively) except by an instrument or instruments in writing executed by each party hereto.

*Section 22.2. Notices.* Unless otherwise expressly specified or permitted by the terms hereof, all communications and notices provided for herein to a party hereto shall be in writing or by a telecommunications device capable of creating a written record, and any such notice shall become effective (a) upon personal delivery thereof, including by overnight mail or courier service, (b) in the case of notice by United States mail, certified or registered, postage prepaid, return receipt requested, upon receipt thereof, or (c) in the case of notice by such a telecommunications device, upon transmission thereof, *provided* such transmission is promptly confirmed by either of the methods set forth in clauses (a) and (b) above, in each case addressed to such party and copy party at its address set forth below or at such other address as such party or copy party may from time to time designate by written notice to the other party:

If to the Owner Lessor:

    Roseton OL LLC
    c/o Wilmington Trust Company
    Rodney Square North
    1100 North Market Street
    Wilmington, DE 19890-0001
    Telephone No.:   (302) 651-1000
    Facsimile No.:    (302) 651-8882
    Attention: Corporate Trust Administration

with a copy to the Owner Participant:

    Roseton OP LLC
    c/o Resources Capital Management Corporation
    1300 North Market Street, Suite 405
    Wilmington, DE 19801
    Telephone No.:   (302) 576-2895
    Facsimile No.:   (302) 576-2897
    Attention: William R. Barbour, Esq.

and to the Lease Indenture Trustee:

    The Chase Manhattan Bank
    Institutional Trust Services
    450 West 33rd Street, 15th Floor
    New York, New York  10001
    Telephone No.:   (212) 946-7557
    Facsimile No.:   (212) 946-8177/8178
    Attention:    Annette M. Marsula, Vice President
                    International/Project Finance Team

and to the Pass Through Trustees:

    The Chase Manhattan Bank
    Institutional Trust Services
    450 West 33rd Street, 15th Floor
    New York, New York  10001
    Telephone No.:   (212) 946-7557
    Facsimile No.:   (212) 946-8177/8178
    Attention:    Annette M. Marsula, Vice President
                    International/Project Finance Team

If to the Facility Lessee:

>Dynegy Roseton, L.L.C.
>c/o Dynegy Northeast Generation, Inc.
>992 River Road
>Newburgh, New York 12550
>Telephone No.: (845) 563-4961
>Facsimile No.: (845) 563-4992
>Attention: Daniel P. Thompson, Vice President, Operations

with a copy to:

>Dynegy Power Corp.
>1000 Louisiana Street, Suite 5800
>Houston, Texas 77002
>Telephone No.: (713) 507-6823
>Facsimile No.: (713) 767-8510
>Attention: Timothy A. Beverick, Esq.

*Section 22.3. Survival.* Except for the provisions of Sections 3.2(d), 3.3, 3.5, 5, 9 and 17, which shall survive, the warranties and covenants made by each party hereto shall not survive the expiration or termination of this Facility Lease in accordance with its terms.

*Section 22.4. Successors and Assigns.*

(a)  This Facility Lease shall be binding upon and shall inure to the benefit of, and shall be enforceable by, the parties hereto and their respective successors and assigns as permitted by and in accordance with the terms hereof.

(b)  Except as expressly provided herein or in the other Operative Documents, neither party hereto may assign its interests or transfer its obligations herein without the consent of the other party hereto.

*Section 22.5. "True Lease".* This Facility Lease shall constitute an agreement of lease and nothing herein shall, prior to termination of this Facility Lease with respect to any Unit, affect the Owner Lessor's status as owner of the Facility or be construed as conveying to the Facility Lessee any right, title or interest in or to the Facility except as lessee only.

*Section 22.6. Governing Law.* This Facility Lease shall be in all respects governed by and construed in accordance with the laws of the State of New York, including all matters of construction, validity and performance.

*Section 22.7. Severability.* Any provision of this Facility Lease that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

*Section 22.8. Counterparts.* This Facility Lease may be executed by the parties hereto in separate counterparts, each of which, subject to Section 21, when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

*Section 22.9. Headings and Table of Contents.* The headings of the sections of this Facility Lease and the Table of Contents are inserted for purposes of convenience only and shall not be construed to affect the meaning or construction of any of the provisions hereof.

*Section 22.10. Further Assurances.* Each party hereto will promptly and duly execute and deliver such further documents and assurances for and take such further action reasonably requested by the other party, all as may be reasonably necessary to carry out more effectively the intent and purpose of this Facility Lease.

*Section 22.11. Effectiveness.* This Facility Lease has been dated as of the date first above written for convenience only. This Facility Lease shall be effective on May 8, 2001, the date of execution and delivery by the Facility Lessee and the Owner Lessor.

*Section 22.12. Limitation of Liability.* It is expressly understood and agreed by the parties hereto that (a) this Facility Lease is executed and delivered by Wilmington Trust Company ("Wilmington"), not individually or personally but solely as manager of the Owner Lessor under the LLC Agreement, in the exercise of the powers and authority conferred and vested in it pursuant thereto, (b) each of the representations, undertakings and agreements herein made on the part of the Owner Lessor is made and intended not as personal representations, undertakings and agreements by Wilmington but is made and intended for the purpose for binding only the Owner Lessor, (c) nothing herein contained shall be construed as creating any liability on Wilmington individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto or by any Person claiming by, through or under the parties hereto and (d) under no circumstances shall Wilmington, be personally liable for the payment of any indebtedness or expenses of the Owner Lessor or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Owner Lessor under this Facility Lease.

*Section 22.13. Measuring Life.* If and to the extent that any of the rights and privileges granted under this Facility Lease, would, in the absence of the limitation imposed by this sentence, be invalid or unenforceable as being in violation of the rule against perpetuities or any other rule or law relating to the vesting of interests in property or the suspension of the power of alienation of property, then it is agreed that notwithstanding any other provision of this Facility Lease, such options, rights and privileges, subject to the respective conditions hereof governing the exercise of such options, rights and privileges, will be exercisable only during (a) the longer of (i) a period which will end twenty-one (21) years after the death of the last survivor of the descendants living on the date of the execution of this Facility Lease of the following Presidents of the United States: Franklin D. Roosevelt, Harry S. Truman, Dwight D. Eisenhower, John F. Kennedy, Lyndon B. Johnson, Richard M. Nixon, Gerald R. Ford, James E. Carter, Ronald W. Reagan, George H.W. Bush, William J. Clinton and George W. Bush or (ii) the period provided under the Uniform Statutory Rule Against Perpetuities or (b) the specific applicable period of time expressed in this Facility Lease, whichever of (a) and (b) is shorter.

**IN WITNESS WHEREOF**, the Owner Lessor and the Facility Lessee have caused this Facility Lease to be duly executed and delivered by their respective officers thereunto duly authorized.

**ROSETON OL LLC**

By: Wilmington Trust Company, not in its individual capacity but solely as Lessor Manager

By: _____
Name:  James P Lawler
Title:  Vice President

**DYNEGY ROSETON, L.L.C.**

By: _____
Name:  Gregory D. Kingsley
Title:  Assistant Treasurer

**IN WITNESS WHEREOF**, the Owner Lessor and the Facility Lessee have caused this Facility Lease to be duly executed and delivered by their respective officers thereunto duly authorized.

**ROSETON OL LLC**

By: Wilmington Trust Company, not in its individual capacity but solely as Lessor Manager

By: _____
    Name:
    Title:

**DYNEGY ROSETON, L.L.C.**

By: _____[signature]_____    TAO
    Name:  Gregory D. Kingsley
    Title:   Assistant Treasurer