(a) confirm the Purchase Price, which shall be equal to the fair market value of the Facility on the Closing Date;

(b) determine the economic useful life of the Facility, and confirm that the Facility is reasonably estimated on the Closing Date to have (i) a remaining economic useful life equal to at least 133.33% of the Basic Lease Term, and (ii) a fair market value at the end of the Basic Lease Term equal to at least 20% of its Purchase Price, without regard to inflation or deflation during the Basic Lease Term;

(c) confirm that it is reasonable to expect that upon expiration or termination of the Facility Lease, it will be commercially feasible for a party other than the Facility Lessee to operate the Facility;

(d) allocate the percentage of the Purchase Price eligible for each category of Depreciation Deduction;

(e) confirm that the Facility is an integrated facility; and

(f) address any other matters that the Owner Participant shall reasonably request.

"**Closing Date**" shall have the meaning specified in Section 2.2(a) of the Participation Agreement.

"**Code**" shall mean the Internal Revenue Code of 1986.

"**Collective Bargaining Agreement**" shall mean the Fossil Production Plant Agreement effective as of July 1, 1998 with Local Union 320 of the International Brotherhood of Electrical Workers A.F. of L.- C.I.O.

"**Company**" shall mean Dynegy Roseton, L.L.C., a Delaware limited liability company.

"**Competitor**" shall have the meaning specified in Section 7.1(b) of the Participation Agreement.

"**Component**" shall mean any appliance, part, instrument, appurtenance, accessory, furnishing, equipment or other property of whatever nature that may from time to time be incorporated in the Facility, except to the extent constituting Modifications.

"**Corporate Trust Office**" shall have the meaning specified in the relevant Pass Through Trust Agreement.

"**Cross Easement Agreement**" shall mean the Cross Easement Agreement, dated as of the Closing Date, by and between the Company and the Other Company, substantially in the form of Exhibit O to the Participation Agreement duly completed, executed and delivered on the Closing Date pursuant to which such parties have granted certain rights relating to the use, operation and maintenance of the Facility, the Facility Site, the Retained Assets, the Retained Sites, the Other Facility, the Other Facility Site, the Other Retained Assets and the Other Retained Sites, as the case may be.

"**Cross Easement Rights**" shall mean the easements and rights granted to the Company as set forth in the Cross Easement Agreement.

"**Danskammer Facility**" shall have the meaning specified in the Cross Easement Agreement.

"**Debt Portion of Periodic Lease Rent**" shall mean in respect of any Rent Payment Date, the portion of Periodic Lease Rent payable on such Rent Payment Date equal to the scheduled principal and interest due and payable on the Lessor Notes on such Rent Payment Date.

"**Debt Portion of Termination Value**" in respect of any determination of Termination Value or amount determined by reference to Termination Value payable pursuant to the Operative Documents shall mean an amount equal to the outstanding principal of, and accrued interest on, the Lessor Notes on such date of determination (other than any amounts past due and any overdue interest thereon).

"**Deduction Loss**" shall have the meaning specified in Section 5(a) of the Tax Indemnity Agreement.

"**Deed**" shall mean the Bargain and Sale Deed, dated the Closing Date, substantially in the form of Exhibit B to the Participation Agreement, by the Company in favor of the Owner Lessor duly completed, executed and delivered on the Closing Date pursuant to which, together with the Bill of Sale, the Owner Lessor will acquire the Facility from the Company.

"**Depreciation Deductions**" shall have the meaning specified in Section 1(a) of the Tax Indemnity Agreement.

"**DHI**" shall mean Dynegy Holdings Inc., a Delaware corporation.

"**Discount Rate**" shall mean 8.20%.

"**DNE**" shall mean Dynegy Northeast Generation, Inc., a Delaware corporation.

"**Dock Facilities**" shall mean a collective reference to each of the structures constituting the "dock," "catwalks" and "moorings" located on Parcel 5 of the Retained Sites and Parcels 4 and 6 of the Facility Site to be used for the loading and/or unloading by ship, barge or similar craft of coal and/or fuel oil; for the avoidance of doubt, the Dock Facilities shall not include any equipment located on or near the Dock Facilities used in connection with such loading and/or unloading, such as the coal hopper and conveyor system, any crane and/or other related equipment.

"**Dock Facility Site**" shall mean that portion of the Retained Sites designated as Parcel 5.

"**Dollars**" **or the sign** "**$**" shall mean United States dollars or other lawful currency of the United States.

"**DTC**" shall mean The Depository Trust Company, a New York corporation.

"**Dynegy**" shall mean Dynegy Inc., an Illinois corporation.

"**Effective Date**" shall mean May 1, 2001, the date the Participation Agreement shall have been executed and delivered by the parties thereto.

"**Effective Rate**" shall have the meaning specified in Section 5(a) of the Tax Indemnity Agreement.

"**Enforcement Notice**" shall have the meaning specified in Section 5.1 of the Lease Indenture.

"**Engineering Consultant**" shall mean S&W Consultants, Inc.

"**Engineering Report**" shall mean the report of the Engineering Consultant, dated as of May 8, 2001, addressed to the Owner Participant.

"**Environmental Condition**" shall mean any action, omission, event, condition or circumstance, including the presence of any Hazardous Substance, that does or reasonably could (a) require assessment, investigation, abatement, correction, removal or remediation, (b) give rise to any obligation or liability of any nature (whether civil or criminal, arising under a theory of negligence or strict liability, or otherwise) under any Environmental Law, (c) create or constitute a public or private nuisance or trespass, or (d) constitute a violation of or non-compliance with any Environmental Law.

"**Environmental Consultant**" shall mean URS Greiner Woodward Clyde.

"**Environmental Laws**" shall mean any federal, state or local laws, ordinances, rules, orders, statutes, decrees, judgments, injunctions, directives, permits, licenses, approvals, codes and regulations relating to the environment, safety or health of human beings or other living organisms, natural resources or Hazardous Substances, as each may from time to time be amended, supplemented or supplanted.

"**Environmental Report**" shall mean a report prepared by the Environmental Consultant, dated as of May 8, 2001, which report shall summarize and update certain aspects of the Phase I environmental review (the "Phase I Report") and the Environmental Risk Liabilities Evaluation Report (the "ERLE Report") (which summarizes certain aspects of the Phase II environmental review (the "Phase II Report") conducted by IT Corporation), each conducted by the Environmental Consultant as part of the sale of the APSA Assets to the Company under the applicable Asset Purchase and Sale Agreement; each of the Phase I Report, the Phase II Report and the ERLE Report shall be attached to the Environmental Report.

"**Equity Investment**" shall mean $80,600,000.

"**Equity Investor**" shall mean Resources Capital Management Corporation, a New Jersey corporation.

"**Equity Investor Parent**" shall mean PSEG Resources Inc., a New Jersey corporation.

"**Equity Portion of Periodic Lease Rent**" shall mean for any Rent Payment Date the difference between (a) Periodic Lease Rent scheduled to be paid under the Facility Lease on such Rent Payment Date and (b) the Debt Portion of Periodic Lease Rent as of such Rent Payment Date.

DOCSNY1:787972.5

"**Equity Portion of Termination Value**" in respect of any determination of Termination Value or amount determined by reference to Termination Value payable pursuant to the Operative Documents shall mean an amount equal to the excess, if any, of (a) the Termination Value on the date of determination, over (b) the Debt Portion of Termination Value on the date of termination.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974.

"**Event of Default**" shall mean an Event of Default under either Pass Through Trust Agreement.

"**Event of Loss**" shall mean, with respect to any Unit, or in the case of clause (d), the Facility, any of the following events:

(a)   loss of such Unit or use thereof due to destruction or damage to such Unit that is beyond economic repair or that renders such Unit permanently unfit for normal use;

(b)   damage to such Unit that results in an insurance settlement with respect to such Unit on the basis of a total loss, or an agreed constructive or a compromised total loss;

(c)   seizure, condemnation, confiscation or taking of, or requisition of title to or use of, such Unit or, if it prevents the Company from operating or maintaining such Unit, of the Facility Site by any Governmental Entity (a "Requisition") following exhaustion of all permitted appeals or an election by the Company not to pursue such appeals (provided that no such contest may be conducted without the consent of the Owner Participant while a Lease Event of Default shall have occurred and be continuing nor shall any such contest extend beyond the earlier of (i) the date which is one year after the loss of such title, or (ii) the date which is 36 months prior to the end of the Basic Lease Term or any Renewal Lease Term then in effect or elected by the Company), but, in any case involving Requisition of use but not of title, only if such Requisition of use continues beyond the Basic Lease Term or any Renewal Lease Term then in effect or elected by the Company; and

(d)   if elected by the Owner Participant within twelve (12) months of the date upon which the Owner Participant shall obtain Actual Knowledge of the event or circumstance which would upon election of the Owner Participant result in the right to terminate the Facility Lease under this clause (d), and only in such case as termination of the Facility Lease and transfer of the Facility to the Company shall remove the basis of the regulation described below, subjection of the Owner Participant's interest in the Facility, or any part thereof, to any rate of return regulation by any Governmental Entity, or subjection of the Owner Participant (or any Affiliate thereof) or the Owner Lessor to any other public utility regulation of any Governmental Entity or law that in the reasonable opinion of the Owner Participant is materially burdensome, in either case by reason of the participation of the Owner Lessor or the Owner Participant in the transaction contemplated by the Operative Documents, and not, in any event, as a result of (i) investments, loans or other business activities of the Owner Participant or its Affiliates in respect of equipment or facilities similar in nature to the Facility or any part thereof or in any other electrical, steam, cogeneration or other energy or utility related equipment or facilities or the general business or other activities of the Owner Participant or Affiliates or the nature of any of the properties or assets from time to time owned, leased, operated, managed or otherwise used or made available for use by the Owner Participant or its Affiliates or (ii) a failure of the Owner

Participant to perform routine, administrative or ministerial actions the performance of which would not subject the Owner Participant or any Affiliate to any material adverse consequence (in the reasonable opinion of the Owner Participant or any Affiliate acting in good faith), *provided* that the Company, the Owner Lessor and the Owner Participant agree to cooperate and to take reasonable measures to alleviate the source or consequence of any regulation constituting an Event of Loss under this clause (d) (a "Regulatory Event of Loss"), at the cost and expense of the party requesting such cooperation and so long as there shall be no adverse consequences to the Owner Lessor or Owner Participant (or any of its Affiliates) as a result of such cooperation or the taking of reasonable measures.

"**EWG**" shall mean a Person determined by an order of FERC to be an "exempt wholesale generator" as defined in Section 32(a)(1) of the Holding Company Act.

"**Excepted Payments**" shall mean and include (a)(i) any indemnity (whether or not constituting Supplemental Lease Rent and whether or not a Lease Event of Default exists) payable to either the Trust Company, the Lessor Manager, the Equity Investor, the Owner Lessor, or the Owner Participant or to their respective Indemnitees and successors and permitted assigns (other than the Lease Indenture Trustee) pursuant to Section 2.3, 9.1, 9.2, 11.1 or 11.2 of the Participation Agreement, Section 7.1 or 7.2 of the LLC Agreement, and any payments under the Tax Indemnity Agreement or (ii) any amount payable by the Company to the Owner Lessor, the Equity Investor or the Owner Participant to reimburse any such Person for its costs and expenses in exercising its rights or complying with its obligations under the Operative Documents, (b)(i) insurance proceeds, if any, payable to the Owner Lessor or the Owner Participant under insurance separately maintained by the Owner Lessor or the Owner Participant with respect to the Facility as permitted by Section 11.5 of the Facility Lease or (ii) proceeds of personal injury or property damage or other liability insurance maintained under any Operative Document for the benefit of the Trust Company, the Lessor Manager, the Owner Lessor or the Owner Participant, (c) any amount payable to the Owner Participant as the purchase price of the Owner Participant's right and interest in the Member Interest, (d) any amounts payable to the Owner Participant upon exercise by the Company of the Special Lessee Transfer pursuant to Section 13.1 of the Participation Agreement, (e) all other fees expressly payable to the Owner Participant, the Equity Investor or the Owner Lessor under the Operative Documents, (f) if the Facility Lessee exercises its right to assume the Lessor Notes, any Termination Value (or amount calculated by reference thereto) or purchase price payable by the Facility Lessee in connection therewith, (g) any payments made under the Lessee Guaranty in respect of any of the foregoing and (h) any payments in respect of interest, or any payments made on an After-Tax Basis, to the extent attributable to payments referred to in clause (a) through (g) above that constitute Excepted Payments.

"**Excepted Rights**" shall mean the rights of the Owner Lessor and Owner Participant as set forth in Section 5.6 of the Lease Indenture.

"**Excess Amount**" shall have the meaning specified in Section 15.2 of the Participation Agreement.

"**Exchange Act**" shall mean the Securities Exchange Act of 1934.

APPENDIX - 13

"**Excluded Property**" shall mean Excepted Payments and Excepted Rights, collectively.

"**Excluded Taxes**" shall have the meaning specified in Section 9.2(b) of the Participation Agreement.

"**Exempt Facilities**" shall have the meaning specified in the Exempt Facilities Agreement.

"**Exempt Facilities Agreement**" shall mean the Exempt Facilities Agreement substantially in the form of Exhibit P to the Participation Agreement, by and between the Company and the Owner Lessor duly completed, executed and delivered on the Closing Date, pursuant to which the Owner Lessor and the Company each agrees to undertake certain obligations with respect to the Exempt Facilities.

"**Expiration Date**" shall mean February 8, 2035, the last day of the Basic Lease Term.

"**Extended Marketing Period**" shall have the meaning specified in Section 10.1(c) of the Facility Lease.

"**Facility**" shall mean a collective reference to each of the Units and each of the assets being transferred by the Company to the Owner Lessor pursuant to the Bill of Sale and Deed, as more fully described on Exhibit A to the Bill of Sale and on Exhibit B to the Deed.

"**Facility Agreements**" shall mean the Interconnection Agreement.

"**Facility Lease**" shall mean the Facility Lease Agreement, dated as of the Closing Date, between the Owner Lessor and the Company, substantially in the form of Exhibit C-1 to the Participation Agreement duly completed, executed and delivered on the Closing Date pursuant to which the Owner Lessor will lease the Facility to the Company.

"**Facility Lease Term**" shall mean the term of the Facility Lease, including the Basic Lease Term and all Renewal Lease Terms.

"**Facility Lessee**" shall mean the Company as lessee under the Facility Lease. To the extent there is a transfer pursuant to Section 13.2 of the Participation Agreement in circumstances where the Facility Lessee is to remain liable under the Operative Documents, the term Facility Lessee shall continue to include the transferring entity for purposes of Section 16 of the Facility Lease.

"**Facility Lessee's Interest**" shall mean the Facility Lessee's right, title and interest in and to the Facility under the Facility Lease and the Ground Interest under the Site Sublease.

"**Facility Site**" shall mean, collectively, Parcels 1A, except the portion thereof comprising the Additional Facility Site, 4, and 6, which parcels are described in Exhibit A to the Site Lease and Exhibit A to the Site Sublease, and all rights of way, easements, permits and other appurtenances to such parcels.

"**Fair Market Rental Value**" or "**Fair Market Sales Value**" shall mean with respect to any property or service as of any date, the cash rent or cash price obtainable in an arm's length lease,

APPENDIX - 14

sale or supply, respectively, between an informed and willing lessee or purchaser under no compulsion to lease or purchase and an informed and willing lessor or seller or supplier under no compulsion to lease or sell or supply of the property or service in question, and shall, in the case of any Unit or an Owner Lessor's Interest, be determined (except pursuant to Section 17 of the Facility Lease or as otherwise provided below or in the Operative Documents) on the basis that (a) the conditions contained in Sections 7 and 8 of the Facility Lease shall have been complied with in all respects, (b) the lessee or buyer shall have rights in, or an assignment of, the Operative Documents to which the Owner Lessor is a party and the obligations relating thereto, (c) the Unit or the Owner Lessor's Interest, as the case may be, is free and clear of all Liens (other than Owner Lessor's Liens, Owner Participant's Liens and Indenture Trustee's Liens), (d) taking into account the remaining terms of the Site Lease and the Site Sublease, and (e) in the case of the Fair Market Rental Value, taking into account the terms of the Facility Lease and the other Operative Documents. If the Fair Market Sales Value or Fair Market Rental Value of the Owner Lessor's Interest is to be determined during the continuance of a Lease Event of Default or in connection with the exercise of remedies by the Owner Lessor pursuant to Section 17 of the Facility Lease, such value shall be determined by an appraiser appointed solely by the Owner Lessor on an "as-is", "where-is" and "with all faults" basis and shall take into account all Liens (other than Owner Lessor's Liens, Owner Participant's Liens and Indenture Trustee's Liens); *provided, however*, in any such case where the Owner Lessor shall be unable to obtain constructive possession sufficient to realize the economic benefit of the Owner Lessor's Interest, Fair Market Sales Value or Fair Market Retail Value of the Owner Lessor's Interest shall be deemed equal to $0. If in any case other than in the preceding sentence the parties are unable to agree upon a Fair Market Sales Value or Fair Market Rental Value of the Owner Lessor's Interest within 30 days after a request therefor has been made, the Fair Market Sales Value or Fair Market Rental Value of the Owner Lessor's Interest shall be determined by appraisal pursuant to the Appraisal Procedures. Any fair market value determination of a spare part or Severable Modification for purposes of Section 5.2(d) of the Facility Lease shall take into consideration any liens or encumbrances to which the spare part or Severable Modification being appraised is subject and which are being assumed by the transferee, and that such spare part or Severable Modification is being transferred on an "as-is", "where-is" basis.

"**Federal Power Act**" shall mean the Federal Power Act.

"**FERC**" shall mean the Federal Energy Regulatory Commission of the United States.

"**FERC EWG (Lessee) Order**" shall mean the order issued by the FERC on February 6, 2001, in Docket No. EG01-80-000 granting the Company EWG status.

"**FERC EWG (Owner Lessor) Application**" shall mean the application of Owner Lessor to FERC for Determination of EWG Status, Docket No. EG01-170-000 filed on March 30, 2001

"**FERC Orders**" shall mean, collectively, the FERC EWG (Lessee) Order, the FERC Section 203 Order, the FERC Waiver Order and the FERC Section 205 Order.

"**FERC Section 203 Order**" shall mean the FERC Order issued on March 13, 2001, under Section 203 of the FPA in Docket No. EC01-55-000 granting approval under Section 203 of the

Federal Power Act for the sale and lease of the Facilities' transmission facilities to the Owner Lessor by Facility Lessee.

"**FERC Section 205 Order**" shall mean the order issued by the FERC on December 7, 2000, in Docket No. ER01-141-000, granting approval for the issuance of securities or assumption of liabilities under Section 204 of the Federal Power Act and granting to the Company Market-Based Rate Authority.

"**FERC Waiver Order**" shall mean FERC Order issued on March 19, 2001, in Docket No. EL01-28-000 disclaiming jurisdiction under Section 201(b) of the Federal Power Act over the Owner Lessor, the Lessor Manager and the Owner Participant.

"**Final Determination**" shall have the meaning specified in Section 9 of the Tax Indemnity Agreement.

"**First Wintergreen Renewal Lease Term**" shall have the meaning specified in Section 15.1 of the Facility Lease.

"**FMV Renewal Lease Term**" shall have the meaning specified in Section 15.3 of the Facility Lease.

"**GAAP**" shall mean generally accepted accounting principles used in the United States consistently applied.

"**Governmental Entity**" shall mean and include any national government, any political subdivision of a national government or of any state, county or local jurisdiction therein or any board, commission, department, division, organ, instrumentality, court or agency of any thereof.

"**Ground Interest**" shall have the meaning set forth in Section 2.1 of the Site Lease.

"**Ground Lessee**" shall mean the Owner Lessor as lessee of the Ground Interest under the Site Lease.

"**Ground Lessor**" shall mean the Company as lessor of the Ground Interest under the Site Lease.

"**Ground Lessor's Release Rights**" shall have the meaning specified in Section 4.2 of the Site Lease.

"**Ground Rent Adjustment Date**" shall have the meaning specified in Section 3.1(b) of the Site Lease.

"**Ground Sublessee**" shall mean the Company as sublessee of the Ground Interest under the Site Sublease.

"**Ground Sublessor**" shall mean the Owner Lessor as sublessor of the Ground Interest under the Site Sublease.

DOCSNY1:787972.5

"**Guarantor Transferee**" shall have the meaning set forth in Section 13.3 of the Participation Agreement.

"**Hazardous Substance**" shall mean any pollutant, contaminant, hazardous substance, hazardous waste, toxic substance, chemical substance, extremely hazardous substance, petroleum or petroleum-derived substance, waste, or additive, asbestos, PCBs, radioactive material, corrosive, explosive, flammable or infectious material, lead, radon or other compound, element, material or substance in any form whatsoever (including products) defined, regulated, restricted or controlled by or under any Environmental Law.

"**High-Voltage Electrical Equipment**" shall mean a collective reference to (a) the disconnect switch and all the structures and equipment back to the high side of the generator step-up transformer from the disconnect switch for Unit 1 (C3081), (b) the disconnect switch and all the structures and equipment back to the high side of the generator step-up transformer from the disconnect switch for Unit 2 (C3082), and (c) all cables, conduit and duct systems that run underground from the Roseton plant relay room to the Roseton 345kV switchyard control house.

"**Holding Company Act**" shall mean the Public Utility Holding Company Act of 1935.

"**Illiquidity Event**" shall have the meaning specified in the Registration Rights Agreement.

"**Inclusion Loss**" shall have the meaning specified in Section 5(a) of the Tax Indemnity Agreement.

"**Indemnitee**" shall have the meaning specified in Section 9.1(a) of the Participation Agreement.

"**Indenture Default**" shall mean any event that with the giving of notice or the passage of time would become a Lease Indenture Event of Default.

"**Indenture Estate**" shall have the meaning specified in the Granting Clause of the Lease Indenture.

"**Indenture Trustee's Liens**" shall mean any Lien on the Lessor Estate or any part thereof arising as a result of (a) Claims against or any act or omission of the Lease Indenture Trustee, or Affiliate thereof that is not related to, or that is in violation of, any Operative Document or the transactions contemplated thereby or that is in breach of any covenant or agreement of the Lease Indenture Trustee specified therein, (b) Taxes imposed upon the Lease Indenture Trustee, or any Affiliate thereof that are not indemnified against by the Company pursuant to any Operative Document, or (c) Claims against or affecting the Lease Indenture Trustee, or any Affiliate thereof arising out of the voluntary or involuntary transfer by the Lease Indenture Trustee of any portion of the interest of the Lease Indenture Trustee in the Lessor Estate, other than pursuant to the Operative Documents.

"**Independent Appraiser**" shall mean a disinterested, licensed professional appraiser of industrial property who (a) meets the personal property qualifications criteria established by the Appraisal Foundation; (b) is a Member of the Appraisal Institute or holds the senior accreditation of the American Society of Appraisers; (c) is in the regular employ, or is a principal of, a

nationally recognized appraisal firm; and (d) has substantial experience in the business of evaluating facilities similar to the Facility.

**"Initial Purchasers"** shall mean Banc of America Securities LLC, Lehman Brothers Inc., J.P. Morgan Securities Inc., Salomon Smith Barney Inc. and TD Securities (USA) Inc.

**"Insurance Consultant"** shall mean Marsh USA, Nashville, Tennessee Office.

**"Interconnection Agreement"** shall mean the Interconnection Agreement for Roseton Generating Station, dated as of February 4, 2001, between the Company and Central Hudson pursuant to which Central Hudson will provide certain interconnection services to the Company and the parties will govern their access to each other's property, assets and facilities.

**"Interest Deductions"** shall have the meaning specified in Section 1(c) of the Tax Indemnity Agreement.

**"IRS"** shall mean the Internal Revenue Service of the United States Department of Treasury.

**"Lease Bankruptcy or Payment Default"** shall mean any event or occurrence, which, with the passage of time or the giving of notice or both, would become a Lease Event of Default under Section 16(a), (b), (i) or (j) of the Facility Lease.

**"Lease Debt"** shall mean the debt evidenced by the Certificates, and other debt issued pursuant to Section 11 of the Participation Agreement.

**"Lease Debt Rate"** shall mean a rate per annum equal to 7.64%.

**"Lease Event of Default"** shall have the meaning specified in Section 16 of the Facility Lease.

**"Lease Indenture"** shall mean the Indenture of Trust, Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of the Closing Date, between the Owner Lessor and the Lease Indenture Trustee, substantially in the form of Exhibit E to the Participation Agreement duly completed, executed and delivered on the Closing Date pursuant to which the Owner Lessor will issue the Lessor Notes.

**"Lease Indenture Bankruptcy Default"** shall mean any event or occurrence, which, with the passage of time or the giving of notice or both, would become a Lease Indenture Event of Default under Section 4.2(e) or (f) of the Lease Indenture.

**"Lease Indenture Event of Default"** shall have the meaning specified in Section 4.2 of the Lease Indenture.

**"Lease Indenture Payment Default"** shall mean any event or occurrence, which, with the passage of time or the giving of notice or both, would become a Lease Indenture Event of Default under Section 4.2(b) of the Lease Indenture.

**"Lease Indenture Trustee"** shall mean The Chase Manhattan Bank, not in its individual capacity, but solely as Lease Indenture Trustee under the Lease Indenture, and each other Person

DOCSNY1:787972.5

who may from time to time be acting as Lease Indenture Trustee in accordance with the provisions of the Lease Indenture.

**"Lease Indenture Trustee Office"** shall mean the office to be used for notices to the Lease Indenture Trustee from time to time pursuant to Section 9.8 of the Lease Indenture.

**"Lease Indenture Trustee's Account"** shall mean the account (No. 507-947533) (Corporate Trust Incoming Wire Account – Trust Account No. 160265.5) with The Chase Manhattan Bank, ABA# 021000021 for the account of the Owner Lessor, Attention: Annette M. Marsula, Institutional Trust Service, or such other account as the Lease Indenture Trustee may from time to time specify in a notice pursuant to Section 9.8 of the Lease Indenture.

**"Lessee Action"** shall have the meaning specified in Section 5(a) of the Tax Indemnity Agreement.

**"Lessee Guarantor"** shall mean DHI or any Person that shall guaranty the obligations of the Company or any Guarantor Transferee under the Operative Documents in accordance with Section 13 of the Participation Agreement or any entity issuing a guaranty pursuant to Section 13.2 of the Participation Agreement. To the extent there is a transfer pursuant to Section 13.2 or 13.4 of the Participation Agreement in circumstances where the Lessee Guarantor is to remain liable under the Operative Documents, the term Lessee Guarantor shall continue to include the transferring entity, for purposes of Section 16 of the Facility Lease.

**"Lessee Guaranty"** shall mean the Guaranty, dated as of the Effective Date, executed by DHI in favor of the Transaction Parties, or any other guaranty agreement entered into pursuant to Section 13 of the Participation Agreement.

**"Lessee Person"** shall have the meaning specified in Section 4(d) of the Tax Indemnity Agreement.

**"Lessee Section 467 Interest"** shall have the meaning set forth in Section 3.2(c) of the Facility Lease.

**"Lessee Section 467 Loan Balance"** shall have the meaning ascribed to that term in the definition of "Section 467 Loan Balance."

**"Lessee Transferee"** shall have the meaning specified in Section 13.2(a) of the Participation Agreement.

**"Lessor Estate"** shall mean all the estate, right, title and interest of the Owner Lessor in, to and under the Facility, the Ground Interest, the Operative Documents, and the Facility Agreements, including all funds advanced to the Owner Lessor by the Owner Participant, all installments and other payments of Periodic Lease Rent, Renewal Lease Rent, Supplemental Lease Rent, Termination Value under the Facility Lease, condemnation awards, purchase price, sale proceeds, insurance proceeds and all other proceeds, rights and interests of any kind for or with respect to the estate, right, title and interest of the Owner Lessor in, to and under the Facility, the Ground Interest, the Operative Documents, and the Facility Agreements, and any of the foregoing, but shall not include Excluded Property.

"**Lessor Manager**" shall mean Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity, but solely as independent manager under the LLC Agreement and each other Person that may from time to time be acting as independent manager in accordance with the provisions of the LLC Agreement.

"**Lessor Note ST**" shall mean the lessor note issued by the Owner Lessor in favor of the Pass Through Trust ST on the Closing Date, as more fully described in Section 2.2 of the Lease Indenture.

"**Lessor Note LT**" shall mean the lessor note issued by the Owner Lessor in favor of the Pass Through Trust LT on the Closing Date, as more fully described in Section 2.2 of the Lease Indenture.

"**Lessor Notes**" shall mean a collective reference to the Lessor Note ST and the Lessor Note LT, as more fully described in Section 2.2 of the Lease Indenture.

"**Lessor Possession Date**" shall mean with respect to any Unit, the earlier to occur of (a) the expiration of the Facility Lease Term and (b) the date on which the Company shall lose possession of such Unit pursuant to Sections 10, 13, 14 or 17 of the Facility Lease (unless in the case of Sections 10 or 13, the Company shall have purchased such Unit).

"**Lessor Section 467 Interest**" shall have the meaning set forth in Section 3.2(c) of the Facility Lease.

"**Lessor Section 467 Loan Balance**" shall have the meaning ascribed to that term in the definition of "Section 467 Loan Balance."

"**Lien**" shall mean any mortgage, security deed, security title, pledge, lien, charge, encumbrance, lease, security interest or title retention arrangement.

"**List of Competitors**" shall mean the initial list attached to the Participation Agreement as Schedule 4, as amended from time to time pursuant to Section 7.1(b) of the Participation Agreement.

"**LLC Agreement**" shall mean the Amended and Restated Limited Liability Company Agreement, dated as of the Effective Date, between the Trust Company and the Owner Participant pursuant to which the Owner Lessor shall be governed.

"**Loan**" shall mean a loan evidenced by any Lessor Note.

"**MACRS**" shall mean the modified accelerated cost recovery system provided under Section 168 of the Code.

"**Majority in Interest of Noteholders**" as of any date of determination, shall mean Noteholders holding in aggregate more than 50% of the total outstanding principal amount of the Notes; *provided, however*, that any Note held by the Company and/or any Affiliate of the Company shall not be considered outstanding for purposes of this definition unless the Company and/or such Affiliate shall hold title to all the Notes outstanding.

"**Make Whole Premium**" shall mean, with respect to any Notes subject to redemption pursuant to the Lease Indenture, an amount equal to the Discounted Present Value of such Notes *less* the unpaid principal amount of such Notes; *provided* that the Make Whole Premium shall not be less than zero. For purposes of this definition, the "Discounted Present Value" of any Notes subject to redemption pursuant to the Lease Indenture shall be equal to the discounted present value of all principal and interest payments scheduled to become due after the date of such redemption in respect of such Notes, calculated using a discount rate equal to the sum of (a) the yield to maturity on the U.S. Treasury security having an average life equal to the remaining average life of such Notes and trading in the secondary market at the price closest to par and (b) 50 basis points; *provided, however*, that if there is no U.S. Treasury security having an average life equal to the remaining average life of such Notes, such discount rate shall be calculated using a yield to maturity interpolated or extrapolated on a straight-line basis (rounding to the nearest calendar month, if necessary) from the yields to maturity for two U.S. Treasury securities having average lives most closely corresponding to the remaining life of such Notes and trading in the secondary market at the price closest to par.

"**Material Adverse Effect**" shall mean a materially adverse effect on (a) the business, assets, results of operations or financial condition of the Company, Lessee Guarantor and their subsidiaries, taken as a whole, (b) the ability of the Company or Lessee Guarantor to perform their respective obligations under the Operative Documents, or (c) the validity or enforceability of the Operative Documents, the Liens granted thereunder, or the material rights and remedies thereto.

"**Material Adverse Tax Law Change**" shall mean, in the written opinion of the Equity Investor's tax counsel, a proposed or actual amendment, modification, addition or change in or to the provisions of, or the interpretation of U.S. Federal income tax law as in effect on the date hereof, the effect of which would or could reasonably be expected to render inaccurate any of the Tax Assumptions or which could reasonably be expected to adversely affect the Owner Participant's Net Economic Return or which otherwise could reasonably be expected to materially adversely affect the Owner Participant, which amendment, modification, addition or change shall have been enacted, promulgated, issued or proposed prior to the Closing Date.

"**Maximum Probable Loss**" shall mean the largest loss that can occur under the worst conditions that are likely to occur.

"**Member Interest**" shall mean the membership interest of the Owner Participant in the Owner Lessor.

"**Memorandum of Lease**" shall mean the Memorandum of Lease, dated as of the Closing Date, between the Owner Lessor and the Company, substantially in the form of Exhibit C-2 to the Participation Agreement duly completed, executed and delivered on the Closing Date.

"**Minimum Credit Standard**" shall mean (i) in respect of DHI only, the then current credit rating of DHI, and (ii) in respect of any entity other than DHI, a credit rating from S&P and Moody's of at least BBB and Baa2, respectively.

DOCSNY1:787972.5

"**Modification**" shall mean an addition, betterment, improvement or enlargement of the Facility, including any Required Modifications and Optional Modifications, but not Components.

"**Moody's**" shall mean Moody's Investors Service, Inc.

"**Nonseverable Modifications**" shall mean any Modification that is not readily removable without causing material damage to the Facility.

"**Note Register**" shall have the meaning specified in Section 2.8 of the Lease Indenture.

"**Noteholder**" shall mean any holder from time to time of an outstanding Note.

"**Notes**" shall mean any Lessor Notes or Additional Lessor Notes issued pursuant to the Lease Indenture.

"**NYPSC Section 69 Order**" shall mean the order issued by the New York State Public Service Commission on April 27, 2001, in Case 01-E-0587, granting approval to consummate the Transaction under Section 69 of the New York Public Service Law.

"**Obsolescence Termination Date**" shall have the meaning specified in Section 14.1 of the Facility Lease.

"**Offering Circular**" shall mean the Offering Circular, dated as of May 1, 2001, with respect to the Certificates.

"**Officer's Certificate**" shall mean with respect to any Person, a certificate signed (a) in the case of a corporation or limited liability company, by the Chairman of the Board, the President, or a Vice President of such Person or any Person authorized by or pursuant to the organizational documents, the bylaws or any resolution of the board of directors, board of managers, or executive committee of such Person (whether general or specific) to execute, deliver and take actions on behalf of such Person in respect of any of the Operative Documents, (b) in the case of a partnership, by the Chairman of the Board of Directors, the President or any Vice President of a corporate general partner, and (c) in the case of the Lease Indenture Trustee or the Pass Through Trustees, a certificate signed by a Responsible Officer of the Lease Indenture Trustee or the Pass Through Trustees.

"**OP Guarantor**" shall mean the Equity Investor or any Person that shall guaranty the obligations of an OP Transferee under the Operative Documents in accordance with Section 7.1(a) of the Participation Agreement.

"**OP Guaranty**" shall mean the OP Guaranty, dated as of the Effective Date, executed by the Equity Investor in favor of the Transaction Parties, or any other guaranty agreement entered into pursuant to Section 7.1 of the Participation Agreement.

"**OP LLC Agreement**" shall mean the Amended and Restated Limited Liability Company Agreement, dated as of the Effective Date, by PSEGR Newburgh Holdings LLC pursuant to which the Owner Participant shall be governed.

"**OP Member**" shall mean the sole member of the Owner Participant.

"**OP Member Interest**" shall mean the membership interest of the OP Member in the Owner Participant.

"**OP Transferee**" shall have the meaning specified in Section 7.1(a) of the Participation Agreement.

"**Operative Documents**" shall mean the Participation Agreement, the Bill of Sale, the Deed, the Facility Lease, the Memorandum of Lease, the Site Lease, the Site Sublease, the Assignment and Reassignment of Facility Agreements, the Lease Indenture, the Notes, the Pass Through Trust Agreements, the Certificates, the Assignment and Reassignment of the Collective Bargaining Agreement, the LLC Agreement, the Cross Easement Agreement, the Exempt Facilities Agreement, the Shared Facilities Agreement, the Tax Indemnity Agreement, the OP Guaranty and the Lessee Guaranty.

"**Operator**" shall mean DNE.

"**Optional Modification**" shall have the meaning specified in Section 8.2 of the Facility Lease.

"**Original LLC Agreement**" shall mean the Limited Liability Company Agreement, dated as of March 28, 2001, pursuant to which the Owner Lessor was created.

"**Other Bill of Sale**" shall mean the "Bill of Sale" as defined in the Other Participation Agreement.

"**Other Company**" shall mean Dynegy Danskammer, L.L.C.

"**Other Deed**" shall mean the "Deed" as defined in the Other Participation Agreement.

"**Other Facility**" shall mean the "Facility" as defined in the Other Participation Agreement.

"**Other Facility Lease**" shall mean the "Facility Lease" as defined in the Other Participation Agreement.

"**Other Facility Lessee**" shall mean the "Facility Lessee" as defined in the Other Participation Agreement.

"**Other Facility Site**" shall mean the "Facility Site" as defined in the Other Participation Agreement.

"**Other Ground Interest**" shall mean the "Ground Interest" as defined in Other Site Lease.

"**Other Lease Indenture**" shall mean the "Lease Indenture" as defined in the Other Participation Agreement.

"**Other Lease Indenture Trustee**" shall mean the "Lease Indenture Trustee" as defined in the Other Participation Agreement.