**"Other Lessor Manager"** shall mean the "Lessor Manager" as defined in the Other Participation Agreement.

**"Other Operative Documents"** shall mean the "Operative Documents" as defined in the Other Participation Agreement.

**"Other Owner Lessor"** shall mean Danskammer OL LLC.

**"Other Owner Participant"** shall mean Danskammer OP LLC.

**"Other Participation Agreement"** shall mean the Participation Agreement entered into by, the Other Company, the Other Lessor Manager, the Other Owner Lessor, the Other Owner Participant, the Other Lease Indenture Trustee and the Pass Through Trustees, dated as of the Effective Date, pursuant to which the Other Company has agreed to (a) sell to the Other Owner Lessor and (b) lease from the Other Owner Lessor the Other Facility pursuant to the Other Facility Lease.

**"Other Project"** shall mean the "Project" as defined in the Other Participation Agreement.

**"Other Retained Assets"** shall mean the "Retained Assets" as defined in the Other Participation Agreement.

**"Other Retained Sites"** shall mean the "Retained Sites" as defined in the Other Participation Agreement.

**"Other Site Lease "** shall mean the "Site Lease" as defined in the Other Participation Agreement.

**"Other Site Sublease "** shall mean the "Site Sublease" as defined in the Other Participation Agreement.

**"Other Transaction"** shall mean the "Transaction" as defined in the Other Participation Agreement.

**"Overall Transaction"** shall mean a collective reference to the Transaction and the Other Transaction.

**"Overdue Rate"** shall mean the Lease Debt Rate plus 2%.

**"Owner Lessor"** shall mean Roseton OL LLC, a Delaware limited liability company.

**"Owner Lessor's Account"** shall mean the account No. 55068-0 maintained by the Owner Lessor with Wilmington Trust Company, ABA#031100092, Attention: Corporate Trust Administration or such other account of the Owner Lessor, as the Owner Lessor may from time to time specify in a notice to the Lease Indenture Trustee pursuant to Section 9.8 of the Lease Indenture.

**"Owner Lessor's Interest"** shall mean the Owner Lessor's right, title and interest in and to the Facility under the Bill of Sale and the Deed and the Ground Interest under the Site Lease.

**"Owner Lessor's Lien"** shall mean any Lien on the Lessor Estate or any part thereof arising as a result of (a) Claims against or any act or omission of the Owner Lessor, the Trust Company or the Lessor Manager, or Affiliate thereof that is not related to, or that is in violation of, any Operative Document or the transactions contemplated thereby or that is in breach of any covenant or agreement of the Owner Lessor, the Trust Company or the Lessor Manager specified therein, (b) Taxes imposed upon the Owner Lessor, the Trust Company or the Lessor Manager, or any Affiliate thereof that are not indemnified against by the Company or the Owner Participant pursuant to any Operative Document, or (c) Claims against or affecting the Owner Lessor, the Trust Company or the Lessor Manager, or any Affiliate thereof arising out of the voluntary or involuntary transfer by the Owner Lessor, the Trust Company or the Lessor Manager of any portion of the interest of the Owner Lessor, the Trust Company or the Lessor Manager in the Owner Lessor's Interest, other than pursuant to the Operative Documents.

**"Owner Participant"** shall mean Roseton OP LLC, a Delaware limited liability company.

**"Owner Participant's Account"** shall mean the account No. 55068-1 maintained by the Owner Participant with Wilmington Trust Company, ABA#031100092, Attention: Corporate Trust Administration or such other account of the Owner Participant, as the Owner Participant may from time to time specify in a notice to the Lease Indenture Trustee pursuant to Section 9.8 of the Lease Indenture.

**"Owner Participant's Commitment"** shall mean the Owner Participant's investment in the Owner Lessor contemplated by Section 2.1(a) of the Participation Agreement.

**"Owner Participant's Lien"** shall mean any Lien on the Lessor Estate or any part thereof arising as a result of (a) Claims against or any act or omission of the Owner Participant that is not related to, or that is in violation of, any Operative Document or the transactions contemplated thereby or that is in breach of any covenant or agreement of the Owner Participant set forth therein, (b) Taxes against the Owner Participant that are not indemnified against by the Company pursuant to the Operative Documents or (c) Claims against or affecting the Owner Participant arising out of the voluntary or involuntary transfer by the Owner Participant (except as contemplated or permitted by the Operative Documents) of any portion of the interest of the Owner Participant in the Member Interest.

**"Owner Participant's Net Economic Return"** shall mean the Owner Participant's anticipated (a) net after-tax yield, calculated according to the multiple investment sinking fund method of analysis, and (b) aggregate GAAP income and after-tax cash flow.

**"Participation Agreement"** shall mean the Participation Agreement, dated as of the Effective Date, among the Company, the Owner Lessor, Wilmington Trust Company, in its individual capacity and as Lessor Manager, the Owner Participant, and The Chase Manhattan Bank, as Lease Indenture Trustee and as Pass Through Trustees.

**"Pass Through Trust Agreements"** shall mean a collective reference to the Pass Through Trust Agreement ST and the Pass Through Trust Agreement LT.

**"Pass Through Trust Agreement LT"** shall mean the Pass Through Trust Agreement, dated as of the Effective Date, between the Company, the Other Company and the Pass Through Trustee LT.

**"Pass Through Trust Agreement ST"** shall mean the Pass Through Trust Agreement, dated as of the Effective Date, between the Company, the Other Company and the Pass Through Trustee ST.

**"Pass Through Trustee LT"** shall mean The Chase Manhattan Bank, not in its individual capacity, but solely as Pass Through Trustee LT under the Pass Through Trust Agreement LT, and each other Person that may from time to time be acting as a Pass Through Trustee in accordance with the provisions of the Pass Through Trust Agreement LT.

**"Pass Through Trustee ST"** shall mean The Chase Manhattan Bank, not in its individual capacity, but solely as Pass Through Trustee ST under the Pass Through Trust Agreement ST, and each other Person that may from time to time be acting as a Pass Through Trustee in accordance with the provisions of the Pass Through Trust Agreement ST.

**"Pass Through Trust LT"** shall mean the Roseton-Danskammer 2001-Series B Pass Through Trust created pursuant to the Pass Through Trust Agreement LT.

**"Pass Through Trust ST"** shall mean the Roseton-Danskammer 2001-Series A Pass Through Trust created pursuant to the Pass Through Trust Agreement ST.

**"Pass Through Trustees"** shall mean a collective reference to the Pass Through Trustee ST and the Pass Through Trustee LT.

**"Pass Through Trusts"** shall mean a collective reference to the Pass Through Trust ST and the Pass Through Trust LT.

**"Periodic Lease Rent"** shall have the meaning specified in Section 3.2(a) of the Facility Lease.

**"Permitted Encumbrances"** shall mean all matters shown as exceptions on Schedule B to each of the Title Policies as in effect on the Closing Date.

**"Permitted Instruments"** shall mean (a) Permitted Securities, (b) overnight loans to or other customary overnight investments in commercial banks of the type referred to in clause (d) below, (c) open market commercial paper of any corporation (other than the Company, DHI or any Affiliate) incorporated under the laws of the United States or any State thereof which is rated not less than "prime-1" or its equivalent by Moody's and "A-1" or its equivalent by S&P maturing within one year after such investment, (d) certificates of deposit and issued by commercial banks organized under the laws of the United States or any State thereof or a domestic branch of a foreign bank (i) having a combined capital and surplus in excess of $500,000,000 and (ii) which are rated "AA" or better by S&P and "Aa2" or better by Moody's; *provided* that no more than $20,000,000 may be invested in such deposits at any one such bank and (e) a money market fund registered under the Investment Company Act of 1940, the portfolio of which is limited to Permitted Securities.

**"Permitted Liens"** shall mean (a) the interests of the Company, the Owner Participant, the Owner Lessor, the Lessor Manager, the Lease Indenture Trustee, and the Pass Through Trustees under any of the Operative Documents, (b) all Owner Lessor's Liens, Owner Participant's Liens and Indenture Trustee's Liens, (c) the reversionary interests of the Company in the Facility Site, (d) Liens permitted pursuant to Section 4.2 or 4.3 of the Site Lease, (e) Liens for (i) taxes not yet due and payable or (ii) taxes being contested in good faith, if adequate reserves for such taxes have been established and are being maintained in accordance with GAAP, (f) suppliers', vendors', workmen's, repairmen's, employee's, mechanics', materialmen's or other like Liens arising in the ordinary course of business for amounts the payment of which is either not yet delinquent or is being contested in good faith and the Lessee shall maintain reserves for the discharge of such Lien in accordance with GAAP and so long as such proceedings do not involve a material risk of the sale, forfeiture or loss of the Facility or the Ground Interest (or any material part of either thereof) or are bonded for the amount required under Applicable Law to release any such Lien, (g) pre-judgment Liens for claims against the Lessee which are contested in good faith and liens arising out of judgments or awards against the Lessee with respect to which an appeal or proceeding for review is being prosecuted in good faith and to which a stay of execution has been obtained pending such appeal or review and so long as such proceedings do not involve a material risk of the sale, forfeiture or loss of the Facility or the Ground Interest (or any material part of either thereof) or are bonded for the amount required under Applicable Law to release any such Lien, and (h) Permitted Encumbrances.

**"Permitted Securities"** shall mean securities (and security entitlements with respect thereto) that are (a) direct obligations of the United States of America or obligations guaranteed as to principal and interest by the full faith and credit of the United States of America, and (b) securities issued by agencies of the U.S. Federal government whether or not backed by the full faith and credit of the United States rated "AAA" and "Aaa", or better by S&P and Moody's, respectively, which, in either case under clauses (a) or (b) are not callable or redeemable at the option of the issuer thereof, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such U.S. Government obligation or a specific payment of interest on or principal of any such U.S. Government obligation held by such custodian for the account of the holder of a depository receipt, *provided* that (except as required by law) such custodian is not authorized to make any deduction in the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the U.S. Government obligation or the specific payment of interest on or principal of the U.S. Government obligation evidenced by such depository receipt.

**"Person"** shall mean any individual, corporation, cooperative, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

**"Plan"** shall mean any "employee benefit plan" (as defined in Section 3(3) of ERISA) that is subject to ERISA, any "plan" (as defined in Section 4975(e)(1) of the Code) that is subject to Section 4975 of the Code, any trust created under any such plan or any "governmental plan" (as defined in Section 3(32) of ERISA or Section 414(d) of the Code) that is organized in a jurisdiction having prohibitions on transactions with government plans similar to those contained in Section 406 of ERISA or Section 4975 of the Code.

**"Predetermined Ground Rent Expiration Date"** shall have the meaning specified in Section 3.1(a) of the Site Lease.

**"Pricing Assumptions"** shall mean the "Pricing Assumptions" attached as Schedule 2 to the Participation Agreement.

**"Principal Property"** shall mean any natural gas, natural gas liquids or crude oil pipeline, distribution system, gathering system, storage facility or processing plant, except any such property that in the opinion of the Board of Directors of DHI is not of material importance to the business conducted by DHI and its consolidated subsidiaries taken as a whole.

**"Principal Subsidiary"** shall mean any subsidiary of DHI that owns a Principal Property.

**"Proceeds"** shall mean the proceeds from the sale of the Certificates by the Pass Through Trusts to the Certificateholders on the Closing Date.

**"Project"** shall mean the two unit, electric generating project located in Newburgh, New York, consisting of the Facility, the Retained Assets, and all other equipment or facilities required for the generation of electricity at the Facility and the Facility Site.

**"Proportional Rent"** shall have the meaning set forth in Section 3.2(c) of the Facility Lease.

**"Prudent Industry Practice"** shall mean, at a particular time, either (a) any of the practices, methods and acts engaged in or approved by a significant portion of the competitive electric generating industry operating in the eastern United States at such time, or (b) with respect to any matter to which the practices referred to in clause (a) do not apply, any of the practices, methods and acts that, in the exercise of reasonable judgment in light of the facts known at the time the decision was made, could have been expected to accomplish the desired result at a reasonable cost consistent with good competitive electric generation business practices, reliability, safety and expedition. "Prudent Industry Practice" is not intended to be limited to the optimum practice, method or act to the exclusion of all others, but rather to be a spectrum of possible practices, methods or acts having due regard for, among other things, manufacturers' warranties, the requirements of insurance policies and the requirements of governmental bodies of competent jurisdiction.

**"Purchase Price"** shall mean the purchase price of the Facility in the amount of $620,000,000.

**"Qualifying Cash Bid"** shall have the meaning specified in Section 13.2 of the Facility Lease.

**"Railroad Tracks"** shall have the meaning specified in Section 2.1 of the Site Lease.

**"Rating Agencies"** shall mean S&P and Moody's or, if at the time the rating of either such Rating Agency is required such Rating Agency no longer provides the relevant rating (other than as a result of the rated Person choosing not to have such rating), such other rating agency of national recognition selected by the Facility Lessee.

**"Reasonable Basis"** for a position shall exist if tax counsel may properly advise reporting such position on a tax return in accordance with Formal Opinion 85-352 issued by the Standing

Committee on Ethics and Professional Responsibility of the American Bar Association (or any successor to such opinion).

**"Rebuilding Closing Date"** shall have the meaning specified in Section 10.3(d) of the Facility Lease.

**"Redemption Date"** shall mean, when used with respect to any Note to be redeemed, the date fixed for such redemption by or pursuant to the Lease Indenture or the respective Note, which date shall be a Termination Date.

**"Registration Rights Agreement "** shall mean the Registration Rights Agreement, dated as of the Effective Date, among DHI, the Company, the Other Company and the Initial Purchasers.

**"Regulatory Event of Loss"** shall have the meaning specified in clause (d) of the definition of "Event of Loss."

**"Related Party"** shall mean, with respect to any Person or its successors and assigns, an Affiliate of such Person or its successors and assigns and any director, officer, servant, employee or agent of that Person or any such Affiliate or their respective successors and assigns; *provided* that the Lessor Manager and the Owner Lessor shall not be treated as Related Parties to each other and neither the Owner Lessor nor the Lessor Manager shall be treated as a Related Party to any Owner Participant except that the Owner Lessor will be treated as a Related Party to a Lessor Manager to the extent that the Lessor Manager acts at the written direction or with the written consent of such Owner Lessor and an Owner Lessor or Lessor Manager shall be treated as a Related Party to the Owner Participant to the extent that the Owner Lessor or Lessor Manager acts at the written direction or with the written consent of the Owner Participant.

**"Released Property"** shall have the meaning specified in Section 4.2 of the Site Lease.

**"Released Unit Ground Interest Portion"** shall have the meaning specified in Section 2.8(b) of the Site Lease.

**"Removable Modification"** shall have the meaning specified in Section 8.3 of the Facility Lease.

**"Renewal Lease Rent"** shall mean the lease rent payable during any Wintergreen Renewal Lease Term or FMV Renewal Lease Term, in each case as determined in accordance with Section 15.4 of the Facility Lease.

**"Renewal Lease Term"** shall mean any Wintergreen Renewal Lease Term or any FMV Renewal Lease Term.

**"Renewal Site Lease Term"** shall have the meaning specified in Section 2.3(d) of the Site Lease.

**"Renewal Site Sublease Term"** shall have the meaning specified in Section 2.3 of the Site Sublease.

**"Rent"** shall mean Periodic Lease Rent, Renewal Lease Rent and Supplemental Lease Rent.

**"Rent Payment Date"** shall mean each May 8 and November 8, commencing November 8, 2001, to and including February 8, 2035.

**"Rent Payment Period"** shall mean each period identified under the column heading "Rent Payment Period" on Schedule 2-A of the Facility Lease.

**"Replacement Component"** shall have the meaning specified in Section 7.2 of the Facility Lease.

**"Required Modification"** shall have the meaning specified in Section 8.1 of the Facility Lease.

**"Requisition"** shall have the meaning specified in clause (c) of the definition of "Event of Loss."

**"Responsible Officer"** shall mean, with respect to any Person, (a) its Chairman of the Board, its President, any Senior Vice President, the Chief Financial Officer, any Vice President, the Treasurer or any other management employee (i) that has the power to take the action in question and has been authorized, directly or indirectly, by the Board of Directors (or equivalent body) of such Person, (ii) working under the direct supervision of such Chairman of the Board, President, Senior Vice President, Chief Financial Officer, Vice President or Treasurer, and (iii) whose responsibilities include the administration of the transactions and agreements contemplated by the Operative Documents, and (b) with respect to the Lessor Manager, the Lease Indenture Trustee and the Pass Through Trustees, an officer in their respective corporate trust administration departments.

**"Retained Assets"** shall mean a collective reference to each of the assets being retained by the Company, as more fully described on Exhibit C to the Deed.

**"Retained Oil Pipeline"** shall mean the oil pipeline between the fuel oil pump house located on the Facility Site and the Dock Facilities.

**"Retained Power and Control Lines"** shall mean (i) the two overhead 345 kV power lines extending from the Facility to Central Hudson's switchyard, (ii) the four 345 kV electric transmission structures used to support such power lines, and (iii) all cables, conduit and duct systems containing control signal and power service cables from Central Hudson's switchyard to the Facility; for the avoidance of doubt, the Retained Power and Control Lines shall not include the High-Voltage Electrical Equipment.

**"Retained Power and Control Lines Site"** shall mean the parcels of real property described on Exhibit C to the Site Lease.

**"Retained Sites"** shall mean, collectively, (i) Parcel 1C, (ii) Parcel 2, (iii) Parcel 2A, (iv) Parcel 5, (v) the Additional Facility Site, which parcels are described as the Retained Sites in Exhibits B and D to the Site Lease and Exhibits B and D to the Site Sublease, and (vi) from and after the date that any parcel or parcels shall have been released from the Facility Site pursuant to

Section 4.2 of the Site Lease and Section 4.2 of the Site Sublease, such released parcels, and, in each case, all rights of way, easements, permits and other appurtenances to such land.

**"Returned Unit"** shall have the meaning specified in Section 4.3(a)(i) of the Site Lease.

**"Revenue Bonds"** shall have the meaning specified in the Exempt Facilities Agreement.

**"Revenues"** shall have the meaning specified in the Granting Clause of the Lease Indenture.

**"Roseton Facility"** shall have the meaning specified in the Cross Easement Agreement.

**"S&P"** shall mean Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.

**"Scheduled Closing Date"** shall mean May 8, 2001, or any date set for the Closing in a notice of postponement pursuant to Section 2.3(a) of the Participation Agreement.

**"Scheduled Lease Expiration Date"** shall mean February 8, 2035.

**"Scheduled Payment Date"** shall mean a Rent Payment Date.

**"SEC"** means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

**"Second Wintergreen Renewal Lease Term"** shall have the meaning specified in Section 15.2 of the Facility Lease.

**"Section 467 Interest"** shall mean and include the Lessor Section 467 Interest and the Lessee Section 467 Interest.

**"Section 467 Loan"** shall mean any loan arising under and pursuant to Section 467 of the Code in connection with the Facility Lease.

**"Section 467 Loan Balance"** shall mean an amount equal to the product of the Purchase Price multiplied by the percentage set forth under the caption "Section 467 Loan Balance Percentage" on Schedule 1-A of the Facility Lease. If the percentage set forth under such caption is positive, the Section 467 Loan Balance shall constitute a loan made by the Facility Lessee to the Owner Lessor ("Lessor Section 467 Loan Balance") and, if such percentage is in parentheses, shall constitute a loan made by the Owner Lessor to the Facility Lessee ("Lessee Section 467 Loan Balance").

**"Secured Indebtedness"** shall have the meaning specified in Section 1(b) of the Lease Indenture.

**"Securities Act"** shall mean the Securities Act of 1933.

**"Security"** shall have the same meaning as in Section 2(1) of the Securities Act.

**"Severable Modification"** shall mean any Modification that can be removed without causing material damage to the Facility that cannot be readily repaired.

**"Shared Facilities"** shall have the meaning specified in the Shared Facilities Agreement.

**"Shared Facilities Agreement"** shall mean the Shared Facilities Agreement, dated as of the Closing Date, between the Company and the Owner Lessor.

**"Significant Indenture Default"** shall mean a failure by the Owner Lessor to make any payment of principal or interest on the Lessor Notes after the same shall have become due and payable.

**"Significant Lease Default"** shall mean any of: (a) if the Company shall fail to make any payment of Periodic Lease Rent, Renewal Lease Rent, or Termination Value after the same shall have become due and payable, (b) if the Company shall fail to make any payment under the Operative Documents (other than Excepted Payments, unless the Owner Participant shall have declared a default with respect thereto) in excess of $250,000, except to the extent such amounts are in dispute in good faith and have not been established to be due and payable, and (c) any event or circumstance that is, or with the passage of time or the giving of notice would become, a "Lease Event of Default" under clauses (g), (i) or (j) of Section 16 of the Facility Lease.

**"Site Lease"** shall mean the Site Lease Agreement, dated as of the Closing Date, between the Company and the Owner Lessor, substantially in the form of Exhibit D-1 to the Participation Agreement duly completed, executed and delivered on the Closing Date pursuant to which the Company will lease the Ground Interest to the Owner Lessor.

**"Site Lease Term"** shall have the meaning specified in Section 2.3(d) of the Site Lease.

**"Site Sublease"** shall mean the Site Sublease Agreement, dated as of the Closing Date, between the Company and the Owner Lessor, substantially in the form of Exhibit D-2 to the Participation Agreement duly completed, executed and delivered on the Closing Date pursuant to which the Company will sublease the Ground Interest from the Owner Lessor.

**"Site Sublease Term"** shall have the meaning specified in Section 2.3 of the Site Sublease.

**"Special Lessee Transfer"** shall have the meaning specified in Section 13.1(a) of the Participation Agreement.

**"Special Lessee Transfer Amount"** shall mean for any date, the amount determined as follows:

(a) the Equity Portion of Termination Value under the Facility Lease on the applicable Termination Date; plus

(b) in the case of a termination pursuant to Section 13.1 of the Facility Lease, the amount, if any, by which the Qualifying Cash Bid exceeds Termination Value on the applicable Termination Date; plus

(c) any unpaid amount in respect of the Equity Portion of Periodic Lease Rent or Renewal Lease Rent due before the date of such determination.

"**Special Lessee Transfer Event**" shall have the meaning specified in Section 13.1(a) of the Participation Agreement.

"**Subdivision**" shall have the meaning specified in Section 4.6 of the Site Lease.

"**Supplemental Financing**" shall have the meaning specified in Section 11.1 of the Participation Agreement.

"**Supplemental Lease Rent**" shall mean any and all amounts, liabilities and obligations (other than Periodic Lease Rent and Renewal Lease Rent) that the Company assumes or agrees to pay under the Operative Documents (whether or not identified as "Supplemental Lease Rent") to the Owner Lessor or any other Person, including Termination Value.

"**Survey**" shall mean the survey prepared by Hayward and Pahan Associates, Job No. 11866-01, dated as of April 4, 2001, and certified as of May 4, 2001.

"**Tax**" or "**Taxes**" shall mean all fees, taxes (including income, receipts, capital, excise and sales taxes, use taxes, stamp taxes, value-added taxes, ad valorem taxes and property taxes (personal and real, tangible and intangible), levies, assessments, withholdings and other charges and impositions of any nature, plus all related interest, penalties, fines and additions to tax, now or hereafter imposed by any federal, state, local or foreign government or other taxing authority.

"**Tax Advance**" shall have the meaning specified in Section 9.2(g)(iii)(5) of the Participation Agreement.

"**Tax Assumptions**" shall mean the items described in Section 1 of the Tax Indemnity Agreement.

"**Tax Benefit**" shall have the meaning specified in Section 9.2(e) of the Participation Agreement.

"**Tax Claim**" shall have the meaning specified in Section 9.2(g)(i) of the Participation Agreement.

"**Tax Event**" shall mean any event or transaction treated, for Federal income tax purposes, as a taxable sale or exchange of the Lessor Notes.

"**Tax Indemnitee**" shall have the meaning specified in Section 9.2(a) of the Participation Agreement.

"**Tax Indemnity Agreement**" shall mean the Tax Indemnity Agreement, dated as of the Closing Date, between the Company, the Equity Investor, PSEGR Newburgh Holdings LLC, the Owner Participant and the Owner Lessor.

**"Tax Law Change"** shall have the meaning specified in Section 12.2(a)(iii) of the Participation Agreement.

**"Tax Loss"** shall have the meaning specified in Section 5(a) of the Tax Indemnity Agreement.

**"Tax Representation"** shall mean each of the items described in Section 4 of the Tax Indemnity Agreement.

**"Termination Date"** shall mean each of the monthly dates during the Facility Lease Term identified as a "Termination Date" on Schedule 3-A of the Facility Lease.

**"Termination Value"** for any Termination Date shall mean (x) with respect to the Facility, an amount equal to the product of the Purchase Price and the percentage set forth under the heading "Termination Value Percentage" on Schedule 3-A of the Facility Lease for such Termination Date and (y) with respect to any Unit, an amount equal to the product of (i) the Unit Percentage for such Unit, multiplied by (ii) the Purchase Price multiplied by (iii) and the percentage set forth under the heading "Termination Value Percentage" on Schedule 3-A of the Facility Lease for such Termination Date.

**"Title Policies"** shall mean each of the title policies issued on the Closing Date to the Owner Lessor and the Lease Indenture Trustee relating to the Transaction.

**"Tranche"** shall mean all Lessor Notes with the same maturity date.

**"Transaction"** shall mean, collectively, each of the transactions contemplated under the Participation Agreement and of the other Operative Documents.

**"Transaction Cost Deductions"** shall have the meaning set forth in Section 1(b) of the Tax Indemnity Agreement.

**"Transaction Costs"** shall mean the following costs to the extent substantiated or otherwise supported in reasonable detail:

(a) the cost of reproducing and printing the Operative Documents and the Offering Circular and all costs and fees, including filing and recording fees and recording, transfer, mortgage, intangible and similar taxes in connection with the execution, delivery, filing and recording of the Deed, the Memorandum of Lease, the Site Lease, the Site Sublease, the Lease Indenture and any other Operative Document, and any other document required to be filed or recorded pursuant to the provisions hereof or of any other Operative Document and any Uniform Commercial Code filing fees in respect of the perfection of any security interests created by any of the Operative Documents or as otherwise reasonably required by the Owner Lessor or the Lease Indenture Trustee;

(b) the reasonable fees and expenses of Dewey Ballantine LLP, counsel to the Owner Participant, for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents;

(c) the reasonable fees and expenses of Orrick, Herrington & Sutcliffe LLP, counsel to the Company and DHI, for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents;

(d) the reasonable fees and expenses of Brunenkant & Haskell, LLP special regulatory counsel to the Company, for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents;

(e) the reasonable fees and expenses of Morris, James, Hitchens & Williams LLP, counsel for the Owner Lessor, the Lessor Manager, and the Trust Company for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents;

(f) the reasonable fees and expenses of Simpson Thacher & Bartlett, counsel to the Initial Purchasers, for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents, and the Certificate Purchase Agreement;

(g) the reasonable fees and expenses of Kelley Drye & Warren LLP, counsel for the Lease Indenture Trustee, and the Pass Through Trustees, for services rendered in connection with the negotiation, execution and delivery of the Participation Agreement and the other Operative Documents;

(h) the fees and expenses of the Advisor to Lessee, for services rendered in connection with the transactions contemplated by the Participation Agreement;

(i) the underwriting discounts and commissions payable to, and reasonable out-of-pocket expenses of, the Initial Purchasers;

(j) the reasonable fees and expenses of the Accountants for services rendered in connection with the Transaction;

(k) the reasonable out-of-pocket expenses of the Owner Participant and the Owner Lessor (excluding any fees or compensation to its advisors, but including reasonable out-of-pocket expenses of Cornerstone Financial Advisors Limited Partnership not to exceed $50,000);

(l) the initial fees and expenses of the Lessor Manager, the Lease Indenture Trustee and the Pass Through Trustees in connection with the execution and delivery of the Participation Agreement and the other Operative Documents to which either one is or will be a party;

(m) the fees and expenses of the Appraiser, for services rendered in connection with delivering the Closing Appraisal required by the Participation Agreement;

(n) the fees and expenses of the Engineering Consultant, for services rendered in connection with delivering the Engineering Report required by the Participation Agreement;

(o) the fees and expenses of the Insurance Consultant;

(p) the fees and expenses of the Environmental Consultant for services rendered in connection with delivering the Environmental Report required by the Participation Agreement;

(q) the fees and expenses of the Rating Agencies in connection with the rating of DHI and the Lease Debt; and

(r) the premiums and any other fees and expenses relating to the Title Policies.

Notwithstanding the foregoing, Transaction Costs shall not include internal costs and expenses such as salaries and overhead of whatsoever kind or nature nor costs incurred by the parties to the Participation Agreement pursuant to arrangements with third parties for services (other than those expressly referred to above), such as computer time procurement (other than out-of-pocket expenses of the Owner Participant), financial analysis and consulting, advisory services, and costs of a similar nature.

**"Transaction Party(ies)"** shall mean, individually or collectively as the context may require, all or any of the parties to the Operative Documents.

**"Treasury Regulations"** shall mean regulations, including temporary regulations, promulgated or proposed under the Code.

**"Trust Company"** shall mean the Wilmington Trust Company.

**"Trust Indenture Act"** means the Trust Indenture Act of 1939 as in force at the date as of which this instrument was executed except as provided in Section 905; *provided, however*, that in the event the Trust Indenture Act of 1939 is amended after such date, "Trust Indenture Act" means, to the extent required by any such amendment, the Trust Indenture Act of 1939 as so amended.

**"Uniform Commercial Code" or "UCC"** shall mean the Uniform Commercial Code as in effect in the State of New York.

**"Unit"** shall mean, as the context may require, either Unit 1 or Unit 2, as the case may be.

**"Unit 1"** shall mean Roseton Unit No. 1, a 600 MW (net), steam electric generating unit located on the Facility Site in Newburgh, New York, and consisting, in part, of the assets described in Exhibit A to the Bill of Sale and Exhibit B to the Deed.

**"Unit 2"** shall mean Roseton Unit No. 2, a 600 MW (net), steam electric generating unit located on the Facility Site in Newburgh, New York, and consisting, in part, of the assets described in Exhibit A to the Bill of Sale and Exhibit B to the Deed.

**"Unit Percentage"** shall mean (i) with respect to Unit 1, 50%, and (ii) with respect to Unit 2, 50%, as adjusted pursuant to Section 11.1 of the Participation Agreement.

**"Unit Purchase Price"** shall mean, with respect to any Unit, the product of the Purchase Price and the Unit Percentage for such Unit.

**"Unit Principal Portion"** shall mean, in connection with the prepayment of any Lessor Note in connection with a termination of the Facility Lease with respect to a Unit, an amount equal to the product of (x) the outstanding principal of such Lessor Note and (y) the Unit Percentage for such Unit.

**"Units"** shall mean, collectively, Unit 1 and Unit 2.

**"Units 1 and 2"** shall mean, collectively, Unit 1 and Unit 2.

**"U.S. Government Obligations"** shall mean securities that are (a) direct obligations of the United States of America for the payment of which its full faith and credit is pledged or (b) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America the payment of which is unconditionally guaranteed as a full faith and credit obligation by the United States of America, which, in either case under clauses (a) or (b) are not callable or redeemable at the option of the issuer thereof, and shall also include a depository receipt issued by a bank or trust company as custodian with respect to any such U.S. Government Obligation or a specific payment of interest on or principal of any such U.S. Government Obligation held by such custodian for the account of the holder of a depository receipt, *provided* that (except as required by law) such custodian is not authorized to make any deduction in the amount payable to the holder of such depository receipt from any amount received by the custodian in respect of the U.S. Government Obligation or the specific payment of interest on or principal of the U.S. Government Obligation evidenced by such depository receipt.

**"Verifier"** shall have the meaning specified in Section 3.4(e) of the Facility Lease.

**"Wilmington"** shall have the meaning specified in Section 13.11 of the Site Lease.

**"Wintergreen Renewal Lease Terms"** shall have the meaning specified in Section 15.2 of the Facility Lease.

**INDEX**

Access .......... 4
Actual Knowledge .......... 4
Additional Certificates .......... 4
Additional Equity Investment .......... 4
Additional Facility .......... 4
Additional Facility Sites .......... 4
Additional Insured Parties .......... 4
Additional Interest .......... 4
Additional Lessor Notes .......... 4
Additional Owner .......... 4
Additional Rental Amount .......... 5
Advisor to the Facility Lessee .......... 5
Affiliate .......... 5
After-Tax Basis .......... 5
Allocated Rent .......... 5
Alternate Rent Schedule .......... 5
Alternative Rent .......... 5
Alternative Termination Value Schedule .......... 5
Applicable Law .......... 5
Applicable Rate .......... 6
Appraisal Procedure .......... 6
Appraiser .......... 6
APSA Assets .......... 6
APSA Seller .......... 7
Asset Purchase and Sale Agreements .......... 6
Assigned Documents .......... 7
Assignment and Assumption Agreement .......... 7
Assignment and Reassignment of Collective Bargaining Agreement .......... 7
Assignment and Reassignment of Facility Agreements .......... 7
Assumed Deductions .......... 7
Assumed Tax Rate .......... 7
Authorized Agent .......... 7
Bankruptcy Code .......... 7
Basic Lease Term .......... 7
Basic Site Lease Term .......... 7
Basic Site Sublease Term .......... 7
Bill(s) of Sale .......... 7
Burdensome Termination Event .......... 8
Business Day .......... 8
Central Hudson .......... 8
Certificate Purchase Agreement .......... 8
Certificateholders .......... 8
Certificates .......... 8
Certificates Register .......... 8
CH Retained Power and Control Lines Easement .......... 8
Claim .......... 8
Closing .......... 8
Closing Appraisal .......... 8
Closing Date .......... 9
Code .......... 9
Collective Bargaining Agreement .......... 9
Company .......... 9
Competitor .......... 9
Component .......... 9
Corporate Trust Office .......... 9
Cross Easement Agreement .......... 9
Cross Easement Rights .......... 10
Danskammer Facility .......... 10
Debt Portion of Rent .......... 10
Debt Portion of Termination Value .......... 10
Deduction Loss .......... 10
Deed .......... 10
Depreciation Deduction .......... 10
DHI .......... 10
Discount Rate .......... 10
DNE .......... 10
Dock Facilities .......... 10
Dock Facility Site .......... 10
Dollars\ or the sign "$" .......... 10
DTC .......... 10
Dynegy .......... 10
Effective Date .......... 11
Effective Rate .......... 11
Enforcement Notice .......... 11
Engineering Consultant .......... 11
Engineering Report .......... 11
Environmental Condition .......... 11
Environmental Consultant .......... 11
Environmental Laws .......... 11
Environmental Report .......... 11
Equity Investment .......... 11
Equity Investor .......... 11
Equity Investor Parent .......... 11
Equity Portion of Periodic Lease Rent .......... 11
Equity Portion of Termination Value .......... 12
ERISA .......... 12
Event of Default .......... 12
Event of Loss .......... 12
EWG .......... 13
Excepted Payments .......... 13

**INDEX**
**(Continued)**

Excepted Rights .......... 13
Excess Amount .......... 13
Exchange Act .......... 13
Excluded Property .......... 14
Excluded Taxes .......... 14
Exempt Facilities .......... 14
Exempt Facilities Agreement .......... 14
Expiration Date .......... 14
Extended Marketing Period .......... 14
Facility .......... 14
Facility Agreements .......... 14
Facility Lease .......... 14
Facility Lease Term .......... 14
Facility Lessee .......... 14
Facility Lessee's Interest .......... 14
Facility Site .......... 14
Fair Market Rental Value .......... 14
Fair Market Sales Value .......... 14
Federal Power Act .......... 15
FERC .......... 15
FERC EWG (Lessee) Order .......... 15
FERC EWG (Owner Lessor) Application .......... 15
FERC Orders .......... 15
FERC Section 203 Order .......... 15
FERC Section 205 Order .......... 16
FERC Waiver Order .......... 16
Final Determination .......... 16
First Wintergreen Renewal Lease Term .......... 16
FMV Renewal Lease Term .......... 16
GAAP .......... 16
Governmental Entity .......... 16
Ground Interest .......... 16
Ground Lessee .......... 16
Ground Lessor .......... 16
Ground Lessor's Release Rights .......... 16
Ground Rent Adjustment Date .......... 16
Ground Sublessee .......... 16
Ground Sublessor .......... 16
Guarantor Transferee .......... 17
Hazardous Substance .......... 17
High-Voltage Electrical Equipment .......... 17
Holding Company Act .......... 17
Illiquidity Event .......... 17
Inclusion Loss .......... 17
Indemnitee .......... 17
Indenture Default .......... 17
Indenture Estate .......... 17
Indenture Trustee's Liens .......... 17
Independent Appraiser .......... 17
Initial Purchasers .......... 18
Insurance Consultant .......... 18
Interconnection Agreement .......... 18
Interest Deductions .......... 5, 18
IRS .......... 18
Lease Bankruptcy or Payment Default .......... 18
Lease Debt .......... 18
Lease Debt Rate .......... 18
Lease Event of Default .......... 18
Lease Indenture .......... 18
Lease Indenture Bankruptcy Default .......... 18
Lease Indenture Event of Default .......... 18
Lease Indenture Payment Default .......... 18
Lease Indenture Trustee .......... 18
Lease Indenture Trustee Office .......... 19
Lease Indenture Trustee's Account .......... 19
Lessee Action .......... 19
Lessee Guarantor .......... 19
Lessee Guaranty .......... 19
Lessee Person .......... 19
Lessee Section 467 Interest .......... 19
Lessee Section 467 Loan Balance .......... 19
Lessee Transferee .......... 19
Lessor Estate .......... 19
Lessor Manager .......... 20
Lessor Note LT .......... 20
Lessor Note ST .......... 20
Lessor Notes .......... 20
Lessor Possession Date .......... 20
Lessor Section 467 Interest .......... 20
Lessor Section 467 Loan Balance .......... 20
Lien .......... 20
List of Competitors .......... 20
LLC Agreement .......... 20
Loans .......... 20
MACRS .......... 20
Majority in Interest of Noteholders .......... 20
Make Whole Premium .......... 21
Material Adverse Effect .......... 21
Material Adverse Tax Law Change .......... 21
Maximum Probable Loss .......... 21
Member Interest .......... 21
Memorandum of Lease .......... 21
Minimum Credit Standard .......... 21
Modification .......... 22
Moody's .......... 22
Nonseverable Modifications .......... 22
Note Register .......... 22
Noteholder .......... 22
Notes .......... 22
NYPSC Section 69 Order .......... 22
Obsolescence Termination Date .......... 22
Offering Circular .......... 22
Officer's Certificate .......... 22
OP Guarantor .......... 22
OP Guaranty .......... 22
OP LLC Agreement .......... 22

**INDEX**
**(Continued)**

OP Member .......... 23
OP Member Interest .......... 23
OP Transferee .......... 23
Operative Documents .......... 23
Operator .......... 23
Optional Modification .......... 23
Original LLC Agreement .......... 23
Other Bill of Sale .......... 23
Other Company .......... 23
Other Deeds .......... 23
Other Facility .......... 23
Other Facility Lease .......... 23
Other Facility Lessee .......... 23
Other Facility Site .......... 23
Other Ground Interest .......... 23
Other Lease Indenture .......... 23
Other Lease Indenture Trustee .......... 23
Other Lease Transaction .......... 24
Other Lessor Manager .......... 24
Other Operative Documents .......... 24
Other Owner Lessor .......... 24
Other Owner Participant .......... 24
Other Participation Agreement .......... 24
Other Project .......... 24
Other Retained Assets .......... 24
Other Retained Sites .......... 24
Other Site Lease .......... 24
Other Site Sublease .......... 24
Overall Transaction .......... 24
Overdue Rate .......... 24
Owner Lessor .......... 24
Owner Lessor's Account .......... 24
Owner Lessor's Interest .......... 25
Owner Lessor's Lien .......... 25
Owner Participant .......... 25
Owner Participant's Account .......... 25
Owner Participant's Commitment .......... 25
Owner Participant's Lien .......... 25
Owner Participant's Net Economic Return .......... 25
Participation Agreement .......... 25
Pass Through Trust Agreement .......... 25
Pass Through Trust Agreement LT .......... 26
Pass Through Trust Agreement ST .......... 26
Pass Through Trust LT .......... 26
Pass Through Trust ST .......... 26
Pass Through Trustee LT .......... 26
Pass Through Trustee ST .......... 26
Pass Through Trustees .......... 26
Pass Through Trusts .......... 26
Periodic Lease Rent .......... 26
Permitted Encumbrances .......... 26
Permitted Instruments .......... 26
Permitted Liens .......... 27
Permitted Securities .......... 27
Person .......... 27
Plan .......... 27
Predetermined Ground Rent Expiration Date .......... 28
Pricing Assumptions .......... 28
Principal Property .......... 28
Principal Subsidiary .......... 28
Proceeds .......... 28
Project .......... 28
Proportional Rent .......... 28
Prudent Industry Practice .......... 28
Purchase Price .......... 28
Qualifying Cash Bid .......... 28
Railroad Tracks .......... 28
Rating Agencies .......... 28
Reasonable Basis .......... 28
Rebuilding Closing Date .......... 29
Redemption Date .......... 29
Registration Rights Agreement .......... 29
Regulatory Event of Loss .......... 29
Related Party .......... 29
Released Property .......... 29
Released Unit Ground Interest Portion .......... 29
Removal Modification .......... 29
Renewal Lease Rent .......... 29
Renewal Lease Term .......... 29
Renewal Site Lease Term .......... 29
Renewal Site Sublease Term .......... 29
Rent .......... 30
Rent Payment Date .......... 30
Rent Payment Period .......... 30
Replacement Component .......... 30
Required Modification .......... 30
Requisition .......... 30
Responsible Officer .......... 30
Retained Assets .......... 30
Retained Oil Pipeline .......... 30
Retained Power and Control Lines .......... 30
Retained Power and Control Lines Site .......... 30
Retained Sites .......... 30
Returned Unit .......... 31
Revenue Bonds .......... 31
Revenues .......... 31
Roseton Facility .......... 31
S&P .......... 31
Scheduled Closing Date .......... 31
Scheduled Lease Expiration Date .......... 31
Scheduled Payment Date .......... 31
SEC .......... 31
Second Wintergreen Renewal Lease Term .......... 31
Section 467 Interest .......... 31
Section 467 Loan Balance .......... 31
Secured Indebtedness .......... 31

**INDEX**
**(Continued)**


Securities Act .... 31
Security .... 31
Severable Modification .... 32
Shared Facilities .... 32
Shared Facilities Agreement .... 32
Significant Indenture Default .... 32
Significant Lease Default .... 32
Site Lease .... 32
Site Lease Term .... 32
Site Sublease .... 32
Site Sublease Term .... 32
Special Lessee Transfer .... 32
Special Lessee Transfer Amount .... 32
Special Lessee Transfer Event .... 33
Subdivision .... 33
Supplemental Financing .... 33
Supplemental Lease Rent .... 33
Survey .... 33
Tax .... 33
Tax Advance .... 33
Tax Assumptions .... 33
Tax Benefit .... 33
Tax Claim .... 33
Tax Event .... 33
Tax Indemnitee .... 33
Tax Indemnity Agreement .... 33
Tax Law Change .... 34
Tax Loss .... 34
Tax Representation .... 34
Taxes .... 33
Termination Date .... 34
Termination Value .... 34
Title Policies .... 34
Tranche .... 34
Transaction .... 34
Transaction Cost Deductions .... 34
Transaction Costs .... 34
Transaction Party(ies) .... 36
Treasury Regulations .... 36
Trust Company .... 36
Trust Indenture Act .... 36
U.S. Government Obligations .... 37
UCC .... 36
Uniform Commercial Code .... 36
Unit .... 36
Unit 1 .... 36
Unit 2 .... 36
Unit Principal Portion .... 37
Unit Purchase Price .... 36
Units .... 37
Units 1 and 2 .... 37
Verifier .... 37
Wilmington .... 37
Wintergreen Renewal Lease Term .... 37



To be completed by the purchaser and given to the seller

New York State and Local Sales and Use Tax

# Exempt Use Certificate

ST-121 (3/01)

Read instructions on pages 3 and 4 before completing or accepting this form

| Name of seller<br>Roseton OL LLC | | | Name of purchaser<br>Dynegy Roseton, L.L.C. | | |
|---|---|---|---|---|---|
| Street address c/o Wilmington Trust Company<br>Rodney Square Norty-1100 North Market St. | | | Street address c/o Dynegy Northeast Generation, Inc.<br>992 River Road | | |
| City<br>Wilmington | State<br>Delaware | ZIP code<br>19890 | City<br>Newburgh | State<br>NY | ZIP code<br>12550 |
| Check one: ☐ Single-purchase certificate ☒ Blanket certificate | | | Purchaser's *Certificate of Authority* number<br>TF-6603049 | | |

**This form cannot be used to purchase motor fuel or diesel motor fuel exempt from sales tax.**

The purchase I am making is exempt from state and local sales and use taxes because the property or services will be used for the exempt purpose indicated below and as explained in the Instructions.

*(Please read the instructions for more information on each exemption, and check the box(es) next to the exemption(s) you are claiming.)*

**Part I — Production exemptions**

**Paragraph (A) - (F) purchases are exempt from all state and local sales and use taxes.**

☒ (A) Machinery and equipment, parts, tools, and supplies used or consumed in the production of tangible personal property for sale or in the production of gas, electricity, steam, or refrigeration services for sale.

☐ (B) Tangible personal property used or consumed in providing telecommunications or Internet access services for sale.

☐ (C) Machinery, equipment, parts, tools, and supplies (1) used or consumed to upgrade cable television systems to provide digital cable television service for sale, or (2) purchased by a cable television service company to provide Internet access services for sale. (This exemption expires September 1, 2003.)

☐ (D) Machinery, equipment, parts, tools, and supplies used by radio or tv broadcasters in the production of live or recorded programs which are used by the broadcaster for specified purposes.

☐ (E) Purchases of gas or electricity or gas or electric service used to provide gas or electric service including operating a gas pipeline, an electric transmission line, or a gas or electric distribution line.

☐ (F) Purchases of (check one or more boxes): ☐ fuel ☐ gas ☐ electricity ☐ refrigeration ☐ steam or ☐ gas, electric, refrigeration, or steam services used or consumed in the production of tangible personal property for sale.

**Paragraph (G) purchases are exempt from all state and local taxes when delivered or used outside New York City, but subject to New York City local sales and use tax when delivered or used in New York City.**

☐ (G) Purchases of (check one or more boxes): ☐ fuel ☐ gas ☐ electricity ☐ refrigeration ☐ steam or ☐ gas, electric, refrigeration, or steam services used or consumed in the production of gas, electricity, refrigeration, or steam for sale.

**Part II — Exemptions for services to exempt machinery and equipment (exempt from all state and local sales and use taxes)**

☐ (H) Installing, repairing, maintaining, or servicing of the tangible personal property, machinery, equipment, parts, tools, and supplies listed in (A) through (D) above.

**Part III - Other exemptions - exempt from all sales and use taxes**

☐ (I) Tangible personal property used in research and development.

☐ (J) Purchases of (check one or more boxes): ☐ gas ☐ electricity ☐ refrigeration ☐ steam or ☐ gas, electric, refrigeration, or steam service used in research and development.

☐ (K) Cartons, containers, and other wrapping and packaging materials and supplies which are actually transferred to the purchaser.

☐ (L) Certified enhanced emissions inspection equipment for testing and inspecting motor vehicles. Enter your inspection station license number ______

☐ (M) Alternative fuel vehicle refueling property, and the service of installing this property.

☐ (N) Commercial vessels (including certain property and services).

☐ (O) Commercial aircraft (including certain machinery and equipment) and flight simulators purchased by commercial airlines.

☐ (P) Commercial fishing vessels (including certain property).

☐ (Q) Pollution control equipment (valid for purchases on or after March 1, 2001).

☐ (R) Other (Describe exempt use and identify the section of the Tax Law covering this exemption.) ______

I certify that the above statements are true and complete; and I make these statements with the knowledge that willfully issuing a false or fraudulent certificate with the intent to evade tax is a misdemeanor, under section 1817(m) of the New York State Tax Law and section 210.45 of the Penal Law, punishable by a fine of up to $10,000 for an individual or $20,000 for a corporation. I also understand that the Tax Department is authorized to investigate the validity of exemptions claimed or the accuracy of any information entered on this form.

| Signature of purchaser or purchaser's representative *(give title and relationship)* | Date 5/5/01 |
|---|---|
| Type or print the name that appears in the signature box GREGORY D. KINGSLEY | |

ASSISTANT TREASURER