# **EXHIBIT F**

*Execution Copy*

# GUARANTY

Dated as of May 1, 2001

made by

**DYNEGY HOLDINGS INC.,**
as Guarantor

## DANSKAMMER UNITS 3 AND 4

# GUARANTY

This **GUARANTY**, dated as of May 1, 2001 (this "Guaranty"), is made by **DYNEGY HOLDINGS INC.**, a Delaware corporation, as guarantor (the "Guarantor") in favor of the Guaranteed Parties (as defined in Section 5 below).

**W I T N E S S E T H:**

**WHEREAS**, the Guarantor is the indirect parent of Dynegy Danskammer, L.L.C. (the "Facility Lessee");

**WHEREAS**, the Facility Lessee has entered into the Participation Agreement, dated as of May 1, 2001 (the "Participation Agreement"), among the Facility Lessee, Danskammer OL LLC (the "Owner Lessor"), Danskammer OP LLC (the "Owner Participant"), Wilmington Trust Company, in the capacities referred to therein (the "Lessor Manager"), and The Chase Manhattan Bank, as Lease Indenture Trustee and as Pass Through Trustees; and

**WHEREAS**, pursuant to the Operative Documents (as described in Section 1 below), this Guaranty is required to be provided by the Guarantor in favor of the Guaranteed Parties.

**NOW, THEREFORE**, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor agrees, for the benefit of each Guaranteed Party, as follows:

SECTION 1.  DEFINITIONS

Unless the context hereof shall otherwise require, capitalized terms used in this Guaranty, including those in the recitals, and not otherwise defined herein shall have the respective meanings specified in Appendix A to the Participation Agreement. The general provisions of Appendix A to the Participation Agreement shall apply to terms used in this Guaranty. For the avoidance of doubt, the term "Operative Documents" as used herein shall mean all Operative Documents whether in effect on the date of this Guaranty or entered into after the date of this Guaranty and, in each case, as in effect from time to time.

SECTION 2.  GUARANTY PROVISIONS

*Section 2.1.*   *Guaranty*. The Guarantor hereby fully, unconditionally and irrevocably guarantees, as primary obligor and not merely as a surety, on a senior unsecured basis (*pari passu* with all other senior unsecured indebtedness of the Guarantor), (a) the due and punctual performance and observance by the Facility Lessee of each term, provision and condition binding upon or applicable to the Facility Lessee under or pursuant to any of the Operative Documents (including, without limitation, interest at the then applicable rate provided in the applicable Lease Indenture after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to the Facility Lessee, whether or

not a claim for post-filing or post-petition interest is allowed in such proceeding) (the "Performance Obligations"), and (b) the due, punctual and full payment (when and as the same may become due and payable) of each amount that the Facility Lessee is or may become obligated to pay under or pursuant to any of the Operative Documents, in accordance with the terms thereof (the "Payment Obligations"), by acceleration or otherwise without offset or deduction.   In the case of any failure by the Facility Lessee to perform or observe the Performance Obligations after notice thereof by any Guaranteed Party, the Guarantor agrees to cause such performance or observance to be done, and in the case of any failure by the Facility Lessee to make Payment Obligations as and when the same shall become due and payable (by acceleration or otherwise), the Guarantor hereby agrees to make such payment (and, in addition, such further amounts, if any, as shall be sufficient to cover any and all costs and expenses, including reasonable legal fees, of collection and enforcement hereunder); *provided*, that nothing herein shall expand the aforesaid obligations of the Guarantor beyond those of the Facility Lessee under the Operative Documents.

All Performance Obligations and the Payment Obligations are collectively referred to in this Guaranty as the "Obligations."

The Guarantor hereby acknowledges and agrees that this Guaranty constitutes a continuing guaranty and shall remain in full force and effect until such time as all of the Obligations are finally paid, performed and observed in full.  The Guarantor hereby further acknowledges and agrees that this Guaranty constitutes a guaranty of payment and performance when due and not of collection and waives any right to require that any resort be had by any Guaranteed Party against any other obligor, to any of the security held for payment of the Obligations or to any balance of any deposit account or credit on the books of any Guaranteed Party in favor of the Facility Lessee or any other person or against any guarantor under any other guarantee covering the Obligations.

Section 2.2.   *Guaranty Absolute, etc*. The obligations of the Guarantor contained herein are direct, independent and primary obligations of the Guarantor and are absolute, present, full, unconditional and continuing obligations and are not conditioned in any way upon the institution of suit or the taking of any other action or any attempt to enforce performance of or compliance with the Obligations of the Facility Lessee other than providing notice to the Facility Lessee to the extent provided in Section 2.1 with respect to Performance Obligations and shall constitute a guaranty of payment and performance and not only of collection, binding upon the Guarantor and its successors and assigns and shall remain in full force and effect and irrevocable without regard to the genuineness, validity, legality or enforceability of any of the Operative Documents to which the Facility Lessee is a party or any lack of power or authority of the Facility Lessee to enter into any of the Operative Documents to which the Facility Lessee is a party or, except as expressly provided in Sections 13.2, 13.3 and 13.4 of the Participation Agreement, any substitution, release or exchange of any other guaranty or any other security for any of the Obligations or any other circumstance whatsoever (other than full payment or performance) that might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor and shall not be subject to any right of set-off, recoupment or counterclaim and are in no way conditioned or contingent upon any attempt to collect from the Facility Lessee or any other entity or to perfect or enforce any security or upon any other condition or contingency or upon any other action, occurrence or circumstance whatsoever.  Without limiting the generality of the

foregoing, and subject to Sections 13.2, 13.3 and 13.4 of the Participation Agreement, the Guarantor shall have no right to terminate this Guaranty, or to be released, relieved or discharged from its obligations hereunder, and such obligations shall be neither affected nor diminished for any reason whatsoever (other than full payment or performance of the Obligations), including (i) any amendment or supplement to or modification of any of the Operative Documents, any extension or renewal of the Facility Lessee's obligations under any Operative Document, or subject to Sections 13.2, 13.3 and 13.4 of the Participation Agreement, any subletting, assignment or transfer of the Facility Lessee's or any Guaranteed Party's interest in the Operative Documents, (ii) any bankruptcy, insolvency, readjustment, composition, liquidation or similar proceeding with respect to the Facility Lessee or any other Person, (iii) any furnishing or acceptance of additional security or any exchange, substitution, surrender or release of any security, (iv) any waiver, consent or other action or inaction or any exercise or nonexercise of any right, remedy or power with respect to the Obligations or any of the Operative Documents, (v) any merger or consolidation of the Facility Lessee or the Guarantor into or with any other Person, or any change in the structure of the Facility Lessee or in the ownership of the Facility Lessee by the Guarantor, or any sale, lease or transfer of any or all of the assets of the Facility Lessee or the Guarantor to any other Person, or (vi) any default, misrepresentation, negligence, misconduct or other action or inaction of any kind by any Guaranteed Party under or in connection with any Operative Document or any other agreement relating to this Guaranty, except to the extent that any such default, misrepresentation, negligence, misconduct or other action or inaction would limit the Obligations. The Guarantor hereby unconditionally waives to the extent permitted by law promptness, diligence and notice as to the Obligations guaranteed hereby and acceptance of this Guaranty, and agrees that, except as otherwise provided herein, it shall not be required to consent to or receive any notice of any amendment or modification of, or waiver, consent or extension with respect to, the Operative Documents. The rights, powers and remedies herein provided are cumulative. No failure or delay on the part of any Guaranteed Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise of any other right, power or privilege. The Guarantor agrees to pay any costs and expenses reasonably incurred by the other parties to the Participation Agreement or any Guaranteed Party in connection with the enforcement of this Guaranty.

Section 2.3. *Operative Documents*. The Guarantor does hereby acknowledge that it is aware of the terms and conditions of the Operative Documents and the transactions and the other documents contemplated thereby.

Section 2.4. *Payment*. All payments to be made by the Guarantor hereunder shall be made in immediately available funds and in dollars to the Guaranteed Parties to which such payment is to be made and shall, as to any Guaranteed Party that is a United States person (within the meaning of Section 7701(a)(30) of the Code) at the time of payment, be free and clear of any deduction or withholding. All such payments shall be paid to such Guaranteed Party in the manner and at the place required by the Operative Documents or, if no such address is provided, at the address and to the accounts specified in the notice demanding payment be made by Guarantor.

SECTION 3.   REPRESENTATIONS AND WARRANTIES

The Guarantor represents and warrants that, as of the Effective Date:

Section 3.1.   *Due Organization, Etc.*  The Guarantor is a corporation duly organized, validly existing, and in good standing under the laws of the State of Delaware, is duly qualified to transact business and in good standing in each jurisdiction in which the failure so to qualify would have a Material Adverse Effect, and has the corporate power and authority to enter into and perform its obligations under this Guaranty.

Section 3.2.   *Due Authorization, Enforceability, Etc.*  This Guaranty has been duly authorized, executed and delivered by all necessary corporate action by the Guarantor and constitutes the legal, valid and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with the terms hereof, except as the same may be limited by bankruptcy, insolvency, fraudulent conveyance, reorganization, arrangement, moratorium or other laws relating to or affecting the rights of creditors generally and by general principles of equity.

Section 3.3.   *Non-Contravention.*  The execution and delivery by the Guarantor of this Guaranty, and the consummation by the Guarantor of the transactions contemplated hereby, and the compliance by the Guarantor with its terms and provisions hereof, do not and will not (i) contravene (A) any Applicable Law binding on the Guarantor or its property, or (B) its organizational documents, or (ii) constitute a default by the Guarantor under, or result in the creation of any Lien upon the property of the Guarantor (other than as permitted pursuant to any Operative Document) under, any indenture, mortgage or other material contract, agreement or instrument to which the Guarantor is a party or by which the Guarantor or any of its property is bound, which in the case of clause (i)(A) or (ii) of this Section 3.3, individually or in the aggregate, is reasonably likely to result in a Material Adverse Effect.

Section 3.4.   *Government Actions.*  No authorization, determination or approval or other action by, and no notice to or filing or registration with, any Governmental Entity or under any Applicable Law is required for the due execution or delivery by the Guarantor of this Guaranty, the consummation of the transactions contemplated hereby or the compliance by the Guarantor with the terms and provisions hereof other than as may be required in connection with the registration of the Certificates under the Securities Act or state securities laws or as may be required under any Applicable Law enacted or adopted after the date hereof.

Section 3.5.   *Litigation.*  There is no pending or, to the Actual Knowledge of the Guarantor, threatened, action, suit, investigation or proceeding against the Guarantor before any Governmental Entity which questions the validity of this Guaranty or the ability of the Guarantor to perform its obligations hereunder.

Section 3.6.   *Financial Statements.*  The consolidated financial statements of the Guarantor and its subsidiaries as of December 31, 2000, together with the footnotes thereto, were prepared in accordance with GAAP in effect on the date such statements were prepared, and fairly present the consolidated financial condition and operations of the Guarantor and its

subsidiaries as of such date and the consolidated results of their operations for the period then ended.

Section 3.7. *Disclosure; No Material Omission*. The Offering Memorandum does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein, in light of the circumstances under which they were made, not misleading; *provided, however*, that no representation is given or made with regard to (i) any forecasts or projections included therein or omitted therefrom, (ii) the sections entitled "Offering Circular Summary – The Leveraged Lease Transactions," "Offering Circular Summary – Leveraged Lease Transactions Cash Flow Structure," "Offering Circular Summary – Offering," "Risk Factors," "Use of Proceeds," "Capitalization," "Business – Regulation – Lease Transactions Filings and Approvals," "Description of the Certificates," "Description of the Operative Documents," "Material U.S. Federal Income Tax Consequences," "Transfer Restrictions," "ERISA Considerations," "Plan of Distribution" and "Legal Matters," or (iii) the descriptions of the Operative Documents or the tax consequences to beneficial owners of the Certificates.

SECTION 4. COVENANTS

Section 4.1. *Legal Existence*. Except as permitted by Section 4.2, the Guarantor covenants and agrees that it will at all times do or cause to be done all things necessary to preserve and keep in full force and effect its legal existence.

Section 4.2. *Consolidation, Merger, Conveyance, Transfer or Lease*. The Guarantor shall not consolidate with or merge into any other Person, or convey, transfer or lease its properties and assets substantially as an entirety to any Person in one or a series of transactions unless each of the following conditions are satisfied:

(a) immediately after giving effect to such transaction, the Person formed by such consolidation or into which the Guarantor is merged or the Person which acquires by conveyance or transfer, or which leases, the properties and assets of the Guarantor substantially as an entirety shall be a corporation, partnership, limited liability company or trust, and shall be organized and validly existing under the laws of the United States, any state thereof or the District of Columbia;

(b) such resulting, surviving or succeeding Person, if other than the Guarantor, shall execute and deliver to the Owner Participant and, so long as the Lien of the Lease Indenture has not been terminated or discharged, the Lease Indenture Trustee an assignment and assumption agreement in form and substance satisfactory to the Owner Participant and, so long as the Lien of the Lease Indenture has not been terminated or discharged, the Lease Indenture Trustee, by which such resulting, surviving or succeeding Person shall expressly assume all of the Guarantor's obligations under this Guaranty;

(c) the Guarantor has delivered to the Owner Participant and so long as the Lien of the Lease Indenture has not been terminated or discharged, the Lease Indenture Trustee, an opinion of counsel reasonably satisfactory to the recipient with respect to such assignment and assumption agreement in form and substance reasonably satisfactory to the recipient;