(d) immediately after giving effect to such transaction, no Significant Lease Default, or Lease Event of Default, shall have occurred and be continuing;

(e) the Guarantor has delivered to the Lease Indenture Trustee an officer's certificate and an opinion of counsel, each stating that such consolidation, merger, conveyance, transfer or lease will comply with this Section 4.2. and that all conditions precedent herein provided for relating to such transaction have been satisfied; and

(f) the Pass Through Trustees shall have received a copy of, and been permitted to rely on, the opinions and the officer's certificate delivered pursuant to clauses (c) and (e) above.

Section 4.3.    *Limitation on Liens*.

(a) The Guarantor will not, nor will it permit any Principal Subsidiary to, issue, assume or guarantee any indebtedness for money borrowed (hereinafter in this Section 4.3 referred to as "Debt"), if such Debt is secured by a mortgage, pledge, security interest or lien (any mortgage, pledge, security interest or lien being hereinafter in this Section 4.3 referred to as a "mortgage" or "mortgages") upon any Principal Property of the Guarantor or any Principal Subsidiary or upon any shares of stock or other equity interest or indebtedness of any Principal Subsidiary (whether such Principal Property, shares of stock or other equity interest or indebtedness is now owned or hereafter acquired), without in any such case effectively providing, concurrently with the issuance, assumption or guarantee of such Debt, that the Obligations (together with, if the Guarantor shall so determine, any indebtedness of or guaranteed by the Guarantor or such Principal Subsidiary ranking equally with the Obligations) shall be secured equally and ratably with (or prior to) such Debt; *provided, however,* that the foregoing restriction shall not apply to:

(i) mortgages on any property acquired, constructed or improved by the Guarantor or any Principal Subsidiary after September 26, 1996, which are created or assumed contemporaneously with, or within 180 days after, such acquisition (or in the case of property constructed or improved, after the completion and commencement of commercial operation of such property, whichever is later) to secure or provide for the payment of any part of the purchase price of such property or the cost of such construction or improvement, it being understood that if a commitment for such financing is obtained prior to or within such 180-day period, the applicable mortgage shall be deemed to include in this clause (i) whether or not such mortgage is created within such 180-day period; *provided* that in the case of any such construction or improvement the mortgages shall not apply to any property theretofore owned by the Guarantor or any Principal Subsidiary, other than any theretofore unimproved real property on which the property so constructed, or the improvement, is located;

(ii) mortgages on any property existing at the time of acquisition thereof (including mortgages on any property acquired from a Person which is consolidated with or merged with or into the Guarantor or a Subsidiary (as defined below) of the Guarantor) and mortgages outstanding at the time any

Person becomes a Subsidiary of the Guarantor that are not incurred in connection with such entity becoming a Subsidiary of the Guarantor;

(iii)    mortgages in favor of the Guarantor or any Principal Subsidiary;

(iv)    mortgages in favor of the United States, any State, any foreign country or any department, agency or instrumentality or political subdivision of any such jurisdiction, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of constructing or improving the property subject to such mortgages, including, without limitation, mortgages to secure Debt of the pollution control or industrial revenue bond type;

(v)    mortgages on any Principal Property held, leased or used by the Guarantor or any Principal Subsidiary in connection with the exploration for, development of, or production of (but not the gathering, processing, transportation or marketing of) natural gas, oil or other minerals; and

(vi)    any extension, renewal or replacement (or successive extensions, renewals or replacements), in whole or in part, of any mortgage referred to in any of the foregoing clauses (i), (ii), (iii), (iv) and (v); *provided, however*, that the principal amount of Debt secured thereby shall not exceed the principal amount of Debt so secured at the time of such extension, renewal or replacement, and that such extension, renewal or replacement shall be limited to all or a part of the property which secured the mortgage so extended, renewed or replaced (plus improvements on such property).

(b)    Notwithstanding the provisions of subsection (a) of this Section 4.3, the Guarantor and any Principal Subsidiary may issue, assume or guarantee secured Debt, which would otherwise be subject to the foregoing restrictions, in an aggregate amount which, together with all other such Debt does not exceed 15% of the Net Tangible Assets (as defined below), as shown on a consolidated balance sheet, as of a date not more than 90 days prior to the proposed transaction. "Net Tangible Assets" means, as of any such date of determination, the total amount of all of the Guarantor's assets, determined on a consolidated basis in accordance with generally accepted accounting principles as of such date, less the sum of (i) the Guarantor's consolidated current liabilities, determined in accordance with generally accepted accounting principles and (ii) the Guarantor's assets that are properly classified as intangible assets in accordance with generally accepted accounting principles, except for any intangible assets which are distribution or related contracts with an assignable value. "Subsidiary" of a Person means (i) any corporation more than 50% of the outstanding securities having ordinary voting power of which is owned, directly or indirectly, by such Person or by one or more of its Subsidiaries, or by such Person and one or more of its Subsidiaries, or (ii) any partnership or similar business organization more than 50% of the ownership interests having ordinary voting power of which shall at the time be so owned. For the purposes of this definition, "securities having ordinary voting power" means securities or other equity interests which ordinarily have voting power for the election of directors, or persons having management power with respect to the Person, whether at all times

or only so long as no senior class of securities has such voting power by reasons of any contingency.

*Section 4.4.    Assignments.*    The Guarantor agrees to comply with all provisions of Sections 13.3 and 13.4 of the Participation Agreement.

*Section 4.5.    Nondiscrimination Among Leases.*    The Guarantor shall, to the extent Periodic Lease Rent or Termination Value is due under the Facility Lease and the Other Facility Lease and the Other Lessee is an Affiliate of the Guarantor, make, or cause to be made, payments pro rata to such amounts then due under both of the Facility Lease and the Other Facility Lease without preference to any particular lease.

SECTION 5.    GUARANTEED PARTIES

Each of the Owner Lessor, the Lessor Manager, the Owner Participant, the Equity Investor, the Trust Company and, so long as the Lien of the Lease Indenture has not been terminated or discharged, the Lease Indenture Trustee, in each case, together with any Indemnitee related thereto and their respective successors and permitted assigns, are each Guaranteed Parties of this Guaranty (each, a "Guaranteed Party" or, together, the "Guaranteed Parties").

SECTION 6.    SURVIVAL OF GUARANTY

Notwithstanding anything to the contrary herein, this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any of the amounts paid to any of the Guaranteed Parties, in whole or in part, is required to be repaid upon the insolvency, bankruptcy, dissolution, liquidation, or reorganization of the Guarantor or the Facility Lessee or any other Person, or as a result of the appointment of a custodian, interviewer, receiver, trustee, or other officer with similar powers with respect to the Guarantor or the Facility Lessee or any other Person or any substantial part of the property of the Guarantor or the Facility Lessee or such other Person, all as if such payments had not been made.

SECTION 7.    REMEDIES; SUBROGATION

*Section 7.1.    Remedies.*    In the event the Guarantor shall fail to pay immediately any amounts due under this Guaranty, or to comply with any other term of this Guaranty, each Guaranteed Party shall be entitled to all rights and remedies to which it may be entitled hereunder or at law, in equity or by statute.

*Section 7.2.    Subrogation.*    The Guarantor will not exercise any rights that it may acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, until all of the Obligations shall have been indefeasibly paid in full.  If any amount shall be paid to the Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been indefeasibly paid in full, such amount shall be held in trust for the benefit of the Guaranteed Party to whom such Obligation is payable and shall forthwith be paid to such Guaranteed Party to be credited and applied to such Obligation, in accordance with the terms of the Operative Document under which such Obligation arose, when such Obligation is due and payable.  If (i) the Guarantor shall make payment to any Guaranteed Party of all or

any part of the Obligations and (ii) all the Obligations shall be paid in full, such Guaranteed Party will, at the Guarantor's request and expense, execute and deliver to the Guarantor appropriate documents, without recourse and without representation or warranty, necessary to evidence the transfer by subrogation to the Guarantor of an interest in the Obligations resulting from such payment by the Guarantor.

Section 7.3.    *Survival of Remedies and Subrogation Rights.*    The provisions of this Section 7 shall survive the termination of this Guaranty and the payment in full of the Obligations and the termination of the Operative Documents.

SECTION 8.   MISCELLANEOUS

Section 8.1.    *Amendments and Waivers*.    No term, covenant, agreement or condition of this Guaranty may be terminated, amended or compliance therewith waived (either generally or in a particular instance, retroactively or prospectively) except by an instrument or instruments in writing executed by the Guarantor and consented to by the Owner Lessor, the Lessor Manager, the Owner Participant, the Trust Company and, so long as the Lien of the Lease Indenture has not been terminated or discharged, the Lease Indenture Trustee.

Section 8.2.    *Notices*.    Unless otherwise expressly specified or permitted by the terms hereof, all communications and notices provided for herein shall be in writing or by a telecommunications device capable of creating a written record, and any such notice shall become effective (a) upon personal delivery thereof, including by overnight mail or courier service, (b) in the case of notice by United States mail, certified or registered, postage prepaid, return receipt requested, upon receipt thereof, or (c) in the case of notice by such a telecommunications device, upon transmission thereof, provided such transmission is promptly confirmed by either of the methods set forth in clauses (a) or (b) above, in each case addressed to the Guarantor hereto at its address set forth below or at such other address as such party may from time to time designate by written notice.

    If to the Guarantor:

        Dynegy Holdings Inc.
        1000 Louisiana Street, Suite 5800
        Houston, TX  77002
        Telephone No.:  (713) 507-6400
        Facsimile No.:  (713) 507-6821
        Attention:  Chief Financial Officer

    with a copy to:

        Dynegy Power Corp
        1000 Louisiana Street, Suite 5800
        Houston, TX  77002
        Telephone No.:  (713) 507-6400
        Facsimile No.:  (713) 767-8508
        Attention:  Senior Vice President and General Counsel

If to the Guaranteed Parties:

> To the address provided for such party from time to time in or pursuant to the Participation Agreement.

Section 8.3.   *Survival*.   Except as expressly set forth herein, the warranties and covenants made by the Guarantor shall not survive the termination of this Guaranty.

Section 8.4.   *Assignment and Assumption*.   This Guaranty may not be assigned by the Guarantor to, or assumed by, any successor to or assign of the Guarantor without the prior written consent of the Guaranteed Parties except (i) in connection with a consolidation merger or sale of the properties and assets of the Guarantor as an entirety in accordance with Section 4.2, or (ii) as expressly permitted by Sections 13.2, 13.3 and 13.4 of the Participation Agreement and, in each case, pursuant to an assignment and assumption agreement, in form and substance reasonably satisfactory to the Guaranteed Parties, of the Guarantor's obligations hereunder (or a new guaranty substantially in the form of this Guaranty), together with an opinion of counsel reasonably satisfactory to the Guaranteed Parties with respect to such assignment and assumption agreement in form and substance reasonably satisfactory to such Guaranteed Parties.

Section 8.5.   *Governing Law*.   This Guaranty shall be in all respects governed by and construed in accordance with the laws of the State of New York, including all matters of construction, validity and performance (without giving effect to the conflicts of laws provisions, other than New York General Obligations Law Section 5-1401)

Section 8.6.   *Consent to Jurisdiction; Waiver of Trial by Jury*.   (a) The Guarantor (i) hereby irrevocably submits to the nonexclusive jurisdiction of the Supreme Court of the State of New York, New York County (without prejudice to the right of any party to remove to the United States District Court for the Southern District of New York) and to the nonexclusive jurisdiction of the United States District Court for the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this Guaranty, or the subject matter hereof or any of the transactions contemplated hereby brought by any of the Guaranteed Parties or their successors or assigns; (ii) hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such New York State court, or in such federal court; and (iii) to the extent permitted by Applicable Law, hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding any claim that it is not personally subject to the jurisdiction of the above-named courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Guaranty, or the subject matter hereof may not be enforced in or by such court.

(b)   TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE GUARANTOR HEREBY IRREVOCABLY WAIVES THE RIGHT TO DEMAND A TRIAL BY JURY, IN ANY SUCH SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF THIS GUARANTY, OR THE SUBJECT MATTER HEREOF OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY BROUGHT BY ANY OF THE GUARANTEED PARTIES OR THEIR SUCCESSORS OR ASSIGNS.

*Section 8.7.* <u>Severability</u>. Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

*Section 8.8.* <u>Headings</u>. The headings of the sections of this Guaranty are inserted for purposes of convenience only and shall not be construed to affect the meaning or construction of any of the provisions hereof.

*Section 8.9.* <u>Further Assurances</u>. The Guarantor will promptly and duly execute and deliver such further documents to make such further assurances for and take such further action reasonably requested by any of the Guaranteed Parties referred to in Section 5 to whom the Guarantor is obligated, all as may be reasonably necessary to carry out more effectively the intent and purpose of this Guaranty.

*Section 8.10.* <u>Effectiveness of Guaranty</u>. This Guaranty has been dated as of the date first above written for convenience only. This Guaranty shall be effective on May 1, 2001, the date of execution and delivery by the Guarantor.

*Section 8.11.* <u>Successors and Assigns.</u> This Guaranty shall be binding upon the Guarantor and its successors and permitted assigns and shall inure to the benefit of, and shall be enforceable by, each of the Guaranteed Parties and their respective successors and permitted assigns.

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty to be duly executed and delivered by its officer thereunto duly authorized.

DYNEGY HOLDINGS INC.,
as Guarantor

By: _____
Name: Gregory D. Kingsley
Title:   Assistant Treasurer

Guaranty (Danskammer)