# EXHIBIT 7

# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 8-K

### CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported)
July 10, 2011

# DYNEGY INC.
# DYNEGY HOLDINGS INC.

**(Exact name of registrant as specified in its charter)**

| | | |
|---|---|---|
| **Delaware** | **001-33443** | **20-5653152** |
| **Delaware** | **000-29311** | **94-3248415** |
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| | |
|---|---|
| **1000 Louisiana, Suite 5800, Houston, Texas** | **77002** |
| (Address of principal executive offices) | (Zip Code) |

**(713) 507-6400**
(Registrant's telephone number, including area code)

**N.A.**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

---

**Item 7.01    Regulation FD Disclosure**

On July 10, 2011, Dynegy Inc. ("Dynegy" or the "Company") issued a press release providing an update on its debt restructuring activities, including its initiation of discussions with potential lenders regarding new senior secured credit facilities to replace its existing credit facilities. A copy of the press release is being furnished pursuant to Regulation FD as Exhibit 99.1 to this Current Report on Form 8-K.

As noted in the press release, the Company today launched the process of seeking lenders for the new senior secured credit facilities, which it anticipates completing at the end of July 2011. In conjunction with entering into the new credit facilities, the Company would reorganize its operations (the "Reorganization") to facilitate the new credit facilities, align the Company's asset base and maximize its flexibility to address additional potential debt restructuring activities. As a result of the anticipated Reorganization, one subsidiary ("GasCo") would own a portfolio of eight[1] primarily natural gas-fired intermediate (combined cycle) and peaking (combustion and steam turbines) power generation facilities diversified across the West, Midwest and Northeast regions of the United States, totaling 6,771 MW of generating capacity. Another subsidiary

("CoalCo") would own a portfolio of six primarily coal-fired baseload power generation facilities located in the Midwest, totaling 3,132 MW of generating capacity. GasCo and CoalCo will be made bankruptcy remote. Dynegy's remaining assets (including its leasehold interests in the Danskammer and Roseton facilities) would not be a part of either GasCo or CoalCo.

The new credit facilities would consist of a $1,300 million, 6 year senior secured term loan facility available to GasCo (the "GasCo Term Loan Facility") and a $400 million, 6 year senior secured term loan facility available to CoalCo (the "CoalCo Term Loan Facility" and, together with the GasCo Term Loan Facility, the "New Credit Facilities"). Proceeds from the GasCo Term Loan Facility are expected to be used to (i) repay the outstanding indebtedness under the existing senior secured credit facility at Dynegy Holdings Inc., (ii) at the option of GasCo, repay up to approximately $192 million of existing debt relating to Sithe Energies, Inc. (the intermediate project holding company that indirectly holds the Independence facility in New York), (iii) make a $400 million restricted payment to a parent holding company of GasCo, (iv) fund cash collateralized letters of credit and cash collateral for existing collateral requirements, (v) pay related transaction fees and expenses and (vi) fund additional cash to the balance sheet for general working capital and liquidity purposes.

Proceeds from the CoalCo Term Loan Facility are expected to be used to (i) fund cash collateralized letters of credit and cash collateral for existing collateral requirements, (ii) pay related transaction fees and expenses and (iii) fund additional cash to the balance sheet to provide the CoalCo portfolio with liquidity for general working capital and general corporate purposes.

The Company has engaged Credit Suisse Securities (USA) LLC and Goldman Sachs Lending Partners LLC as Joint Bookrunners and Joint Lead Arrangers and Barclays Capital, the investment

---

[1]  An additional GasCo facility, South Bay, is currently being decommissioned.
[2]  An additional CoalCo facility, Vermilion, is currently in mothball status.

2

---

banking division of Barclays Bank PLC, as co-manager for the New Credit Facilities, but the financing is not committed and there can be no assurance that the Company will consummate any or all of the Reorganization and financing plans.

The consummation of the Reorganization and the New Credit Facilities is subject to various conditions, including the negotiation of final transaction documents satisfactory to the Company and the lenders. As such, the exact terms and conditions of the New Credit Facilities are uncertain. The Reorganization is anticipated to be completed substantially simultaneously with the consummation of the New Credit Facilities, subject to customary conditions. The New Credit Facilities are conditioned upon the completion of the Reorganization.

The Company is disclosing under Item 7.01 of this Current Report on Form 8-K the information attached to this report as Exhibit 99.2, which information is incorporated by reference herein. This information, which has not been previously reported, is being disseminated to potential lenders in connection with the financings described above.

The Company is providing the information in this Current Report on Form 8-K to comply with Regulation FD. The information contained herein shall not constitute an offer to sell or the solicitation of an offer to buy any securities.

Pursuant to General Instruction B.2 of Form 8-K and Securities and Exchange Commission Release No. 33-8176, the information contained herein and in the documents furnished as Exhibits 99.1 and 99.2 hereto shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, are not subject to the liabilities of that section and are not deemed incorporated by reference in any filing under the Securities Act of 1933, as amended, except as shall be expressly set forth by specific reference in such a filing. In addition, the exhibits contain statements intended as "forward-looking statements" which are subject to the cautionary statements about forward-looking statements set forth in the press release or in this Current Report on Form 8-K, as applicable.

**Cautionary Statement Regarding Forward-Looking Statements**

This Current Report on Form 8-K contains statements reflecting assumptions, expectations, projections, intentions or beliefs about future events that are intended as "forward-looking statements," including statements as to Dynegy's reorganization and financing plans. You can identify these statements by the fact that they do not relate strictly to historical or current facts. Management cautions that any or all of Dynegy's forward-looking statements may turn out to be wrong. Please read Dynegy's annual, quarterly and current reports filed under the Securities Exchange Act of 1934, as amended, including its Annual Report on Form 10-K for the year ended December 31, 2010 and its Quarterly Report on Form 10-Q for the quarter ended March 31, 2011, for additional information about the risks, uncertainties and other factors affecting these forward-looking statements and Dynegy generally. Dynegy's actual future results may vary materially from those expressed or implied in any forward-looking statements. All of Dynegy's forward-looking statements, whether written or oral, are expressly qualified by these

3

---

cautionary statements and any other cautionary statements that may accompany such forward-looking statements. In addition, Dynegy disclaims any obligation to update any forward-looking statements to reflect events or circumstances after the date hereof.

**Non-GAAP Financial Information**

In the information attached as Exhibit 99.2 to this Current Report on Form 8-K, the Company discusses certain non-GAAP financial measures, including definitions of such non-GAAP financial measures, identification of the most directly comparable GAAP financial measures and the reasons why the Company believes these measures provide useful information regarding the pro forma financial condition and results of operations, as applicable, and, to the extent material, the additional purposes, if any, for which these measures are used. Reconciliations of non-GAAP financial measures to the most directly comparable GAAP financial measures, to the extent available without unreasonable effort, are contained in Exhibit 99.2.

**EBITDA and Adjusted EBITDA Measures.** The Company believes that EBITDA and Adjusted EBITDA provide a meaningful representation of its operating performance. The Company considers EBITDA as a way to measure financial performance on an ongoing basis. Adjusted EBITDA is meant to reflect the true operating performance of the Company's power generation fleet; consequently, it excludes the impact of mark-to-market accounting and other items that could be considered "non-operating" or "non-core" in nature, and includes the contributions of those plants classified as discontinued operations. Because EBITDA and Adjusted EBITDA are two of the financial measures that management uses to allocate resources, determine Dynegy's ability to fund capital expenditures, assess performance against its peers and evaluate overall financial performance, the Company believes they provide useful information for its investors. In addition, many analysts, fund managers and other stakeholders that communicate with the Company typically request its financial results in an EBITDA and Adjusted EBITDA format.

"EBITDA" – The Company defines "EBITDA" as earnings (loss) before interest, taxes, depreciation and amortization.

"Adjusted EBITDA" – The Company defines "Adjusted EBITDA" as EBITDA adjusted to exclude (1) gains or losses on the sale of assets, (2) the impacts of mark-to-market changes and (3) impairment charges.

Because management does not allocate interest expense and income taxes on a GasCo or CoalCo level, the most directly comparable GAAP financial measure to EBITDA when performance is discussed on a segment level or plant level is operating income (loss).

**Gross Margin Measure.** "Gross Margin" – The Company defines "Gross Margin" as revenues less cost of sales. Gross Margin is meant to reflect the true commercial performance of our power generation fleet. Because Gross Margin is another one of the financial measures that management uses to allocate resources, determine Dynegy's ability to fund capital expenditures, assess performance against its peers and evaluate overall financial performance, the Company believes it provides useful information for its investors. The most directly comparable GAAP financial measure to Gross Margin is operating income (loss).

4

The Company believes that the non-GAAP measures disclosed in its filings are only useful as an additional tool to help management and investors make informed decisions about Dynegy's financial and operating performance. By definition, non-GAAP measures do not give a full understanding of Dynegy; therefore, to be truly valuable, they must be used in conjunction with the GAAP measures. Non-GAAP financial measures are not standardized; therefore, it may not be possible to compare these financial measures with other companies' non-GAAP financial measures having the same or similar names. The Company strongly encourages investors to review its consolidated financial statements and publicly filed reports in their entirety and not rely on any single financial measure.

The Company uses these non-GAAP financial measures in addition to, and in conjunction with, results presented in accordance with GAAP. These non-GAAP financial measures reflect an additional way of viewing aspects of the Company's business that, when viewed with its GAAP results and the accompanying reconciliations to corresponding GAAP financial measures included in Exhibit 99.2 attached hereto, may provide a more complete understanding of factors and trends affecting its business. These non-GAAP financial measures should not be relied upon to the exclusion of GAAP financial measures and are by definition an incomplete understanding of Dynegy, and must be considered in conjunction with GAAP measures.

**Item 9.01    Financial Statements and Exhibits.**

(d)    Exhibits:

| Exhibit No. | Document |
|---|---|
| 99.1 | Press release dated July 10, 2011, providing an update on debt restructuring activities. |
| 99.2 | Regulation FD disclosure disseminated to potential lenders. |

5

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its

behalf by the undersigned hereunto duly authorized.

**DYNEGY INC.**
(Registrant)

Dated: July 11, 2011    By:    /S/  KENT R. STEPHENSON
Name:  **Kent R. Stephenson**
Title:  **Executive Vice President & General Counsel**

**DYNEGY HOLDINGS INC.**
(Registrant)

Dated: July 11, 2011    By:    /S/  KENT R. STEPHENSON
Name:  **Kent R. Stephenson**
Title:  **Executive Vice President & General Counsel**

6

---

## EXHIBIT INDEX

| Exhibit No. | Document |
|---|---|
| 99.1 | Press release dated July 10, 2011, providing an update on debt restructuring activities. |
| 99.2 | Regulation FD disclosure disseminated to potential lenders. |

7



**NR11-22**

## DYNEGY PROVIDES UPDATE ON RESTRUCTURING ACTIVITIES

**HOUSTON, July 10, 2011** – Dynegy Inc. (the "Company") (NYSE: DYN) today announced the initiation of discussions with potential lenders for new senior secured credit facilities supporting a new organizational structure aligned with its gas and coal generation assets. The new credit facilities will replace the existing credit agreement, marking the initial step in the Company's operating and financial restructuring.

"These restructuring actions will provide a solid foundation for Dynegy to begin addressing the financial challenges that have been magnified by an environment of low commodity prices," said Robert C. Flexon, President and Chief Executive Officer. "The new financings, accompanied by the modification of the Company's asset ownership structure, will create an on-going platform intended to improve Dynegy's financial condition and more efficiently align the operation and management of the Company's assets, which will serve as a step to reestablish Dynegy as an energy industry leader."

Tomorrow the Company is launching the process of seeking lenders for the new senior secured credit facilities, which it anticipates completing at the end of July 2011. In conjunction with entering into the new credit facilities, the Company would reorganize its operations to facilitate the new credit facilities, align the Company's asset base and maximize its flexibility to address additional potential debt restructuring activities. As a result of the anticipated reorganization, one subsidiary ("GasCo") would own a portfolio of eight[1] primarily natural gas-fired intermediate (combined cycle) and peaking (combustion and steam turbines) power generation facilities diversified across the West, Midwest and Northeast regions of the United States, totaling 6,771 MW of generating capacity. Another subsidiary ("CoalCo") would own a portfolio of six[2] primarily coal-fired baseload power generation facilities located in the Midwest, totaling 3,132 MW of generating capacity. Dynegy's remaining assets (including its leasehold interests in the Danskammer and Roseton facilities) would not be a part of either GasCo or CoalCo.

[1]    An additional GasCo facility, South Bay, is currently being decommissioned.
[2]    An additional CoalCo facility, Vermilion, is currently in mothball status.

1

The new credit facilities would consist of a $1,300 million, 6 year senior secured term loan facility available to GasCo (the "GasCo Facility") and a $400 million, 6 year senior secured term loan facility available to CoalCo (the "CoalCo Facility"). The Company has engaged Credit Suisse and Goldman Sachs as joint lead arrangers and Barclays Capital as a co-manager for the new credit facilities, but the financing is not committed and there can be no assurance that the Company will consummate any or all of its reorganization and financing plans.

Proceeds from the GasCo Facility are expected to be used (i) to repay the outstanding indebtedness under the existing senior secured credit facility at Dynegy Holdings Inc., (ii) at the option of GasCo, to repay existing debt relating to Sithe Energies Inc., (iii) to make a $400 million restricted payment to a parent holding company of GasCo, (iv) to fund cash collateralized letters of credit and cash collateral for existing collateral requirements, (v) to pay related transaction fees and expenses and (vi) for GasCo's general working capital and liquidity purposes. Proceeds from the CoalCo Facility are expected to be used (i) to fund cash collateralized letters of credit and cash collateral for existing collateral requirements, (ii) to pay related transaction fees and expenses and (iii) for CoalCo's general working capital and general corporate purposes.

**About Dynegy Inc.**

Through its subsidiaries, Dynegy Inc. produces and sells electric energy, capacity and ancillary services in key U.S. markets. The power generation portfolio consists of approximately 11,600 megawatts of baseload, intermediate and peaking power plants fueled by a mix of natural gas, coal and fuel oil.

**Forward Looking Statements**

This press release contains statements reflecting assumptions, expectations, projections, intentions or beliefs about future events that are intended as "forward-looking statements," particularly those statements concerning Dynegy's reorganization and financing plans. Discussion of risks and uncertainties that could cause actual results to differ materially from current projections, forecasts, estimates and expectations of Dynegy is contained in Dynegy's filings with the Securities and Exchange Commission (the "SEC"). Specifically, Dynegy makes reference to, and

incorporates herein by reference, the section entitled "Risk Factors" in its most recent Form 10-K and subsequent reports on Form 10-Q. In addition to the risks and uncertainties set forth in Dynegy's SEC filings, the forward-looking statements described in this press release could be affected by, among other things, (i) Dynegy's ability to address its substantial leverage on favorable terms and its ability to access the capital markets when needed; (ii) the ability of management to execute any new or revised business plan approved by Dynegy's Board of Directors;

2

---

(iii) the timing and anticipated benefits to be achieved through Dynegy's restructuring activities and cost savings program; (iv) beliefs and assumptions relating to liquidity, available borrowing capacity and capital resources generally; (v) expectations regarding environmental matters, including costs of compliance, availability and adequacy of emission credits, and the impact of ongoing proceedings and potential regulations or changes to current regulations, including those relating to climate change, air emissions, cooling water intake structures, coal combustion byproducts, and other laws and regulations to which Dynegy is, or could become, subject; (vi) beliefs about commodity pricing and generation volumes; (vii) anticipated liquidity in the regional power and fuel markets in which Dynegy transacts, including the extent to which such liquidity could be affected by poor economic and financial market conditions or new regulations and any resulting impacts on financial institutions and other current and potential counterparties; (viii) sufficiency of, access to and costs associated with coal, fuel oil and natural gas inventories and transportation thereof; (ix) beliefs and assumptions about market competition, generation capacity and regional supply and demand characteristics of the wholesale power generation market, including the potential for a market recovery over the longer term; (x) the effectiveness of Dynegy's strategies to capture opportunities presented by changes in commodity prices and to manage its exposure to energy price volatility; (xi) beliefs and assumptions about weather and general economic conditions; (xii) beliefs regarding the U.S. economy, its trajectory and its impacts, as well as Dynegy's stock price; (xiii) expectations regarding Dynegy's revolver capacity, credit facility compliance, collateral demands, capital expenditures, interest expense and other payments; (xiv) Dynegy's focus on safety and its ability to efficiently operate its assets so as to maximize its revenue generating opportunities and operating margins; (xv) beliefs about the outcome of legal, regulatory, administrative and legislative matters; and (xvi) expectations and estimates regarding capital and maintenance expenditures, including the Midwest Consent Decree and its associated costs. Any or all of Dynegy's forward-looking statements may turn out to be wrong. They can be affected by inaccurate assumptions or by known or unknown risks, uncertainties and other factors, many of which are beyond Dynegy's control.

SOURCE: Dynegy Inc.

Dynegy Inc.
Media: 713-767-5800
or
Analysts: 713-507-6466

3

Regulation FD disclosure disseminated to potential lenders
11-38111-cgm    Doc 92-7    Filed 11/18/11    Entered 11/18/11 21:38:59    Exhibit 7
Pg 8 of 20
EX-99.2 3 dex992.htm REGULATION FD DISCLOSURE DISSEMINATED TO POTENTIAL LENDERS
Exhibit 99.2

# Executive Summary

## Reorganization overview

### Summary of the reorganization process

Pursuant to a series of transactions, the Company intends to, in conjunction with the closing of the proposed financings (together, the "Financing"), directly or indirectly, pursue a Reorganization of Dynegy Holdings Inc. ("DHI") and its subsidiaries whereby, inter alia, (x) substantially all of the Company's coal-fired power generation facilities would continue to be held by Dynegy Midwest Generation, Inc. ("DMG" or CoalCo), (y) substantially all of the Company's gas-fired power generation facilities would be held by Dynegy Power Corp. ("DPC" or GasCo) and (z) 100% of the ownership interests of Dynegy Northeast Generation ("DNE"), the entity that indirectly holds the equity interest in the subsidiaries that operate the Roseton and Danskammer power generation facilities, would be held by DHI. The Reorganization will be undertaken via a series of inter-related transactions as outlined below and collectively referred to herein as the "Transactions":

**Step 1: Creation of GasCo, CoalCo and HoldCos**

- Transfer to DPC of 100% of (i) DHI's ownership interests in Sithe Energies, Inc. ("Sithe"), the legal entity that indirectly owns the Independence gas-fired power generation facility, (ii) DMG's ownership interests in Dynegy Kendall Energy, LLC, the legal entity that owns the Kendall gas-fired power generation facility, and (iii) Dynegy Power Marketing, Inc.'s ("DPM") ownership interests in Ontelaunee Power Operating Company, LLC, the legal entity that owns the Ontelaunee gas-fired power generation facility, thereby creating the GasCo portfolio

- Transfer to DHI of 100% of DPC's ownership in DNE

- Create (i) two new indirect subsidiaries of DHI (Dynegy Gas Holdco, LLC ("Gas Holdco") and Dynegy Coal Holdco, LLC ("Coal Holdco")) to act as holding companies, and (ii) two additional new entities (Dynegy Gas Investments Holdings, LLC ("DGI Holdings") and Dynegy Coal Investments Holdings, LLC ("DCI Holdings")) that will be 100% owned by Gas Holdco and Coal Holdco, respectively, and will act as holding companies for the GasCo and CoalCo portfolios. In creating each of the foregoing, the Company will implement the customary "bankruptcy remote" criteria and provisions required by the rating agencies

- Transfer 100% of the ownership interest in DPC/GasCo to DGI Holdings and 100% of the ownership interest in DMG/CoalCo to DCI Holdings

**Step 2: Conversion of GasCo and CoalCo into bankruptcy remote entities**

- Prior to completing the Financing, the Company intends that GasCo and CoalCo will also be converted into bankruptcy remote limited liability companies through (i) the modification of their constituent documents to, among other things, provide for an independent director or manager at each of GasCo and CoalCo (collectively, the "Borrowers"), (ii) the implementation of customary "bankruptcy remote" criteria and provisions required by the ratings agencies and (iii) in the case of GasCo only, undertaking to sell a 20% ownership interest in GasCo

**Step 3: Potential Tender for Sithe notes**

- The Company and its subsidiaries may consummate, prior to, concurrently with or following the closing of the proposed Financing, a cash tender offer ("Sithe Tender") for all outstanding Sithe securities (the "Sithe Debt"); provided that the Company is not required to consummate the Sithe Tender or repay the Sithe Debt prior to its maturity date; provided, further, that to the extent the Sithe Debt is not repaid within six months of the closing date of the GasCo Term Loan Facility, GasCo will be required to repay the GasCo Term Loans in a percentage to be agreed of the principal amount of the outstanding Sithe Debt

1

**Step 4: Enter into GasCo Term Loan Facility and CoalCo Term Loan Facility**

- Following the closing of the New Credit Facilities, the Finance and Restructuring Committee of the Company's Board of Directors will continue to work with its advisors in connection with additional potential debt restructuring activities, which may include direct or indirect transfers of equity interests of DCI Holdings and/or DGI Holdings, and/or further reorganizations of the Company and/or various of its subsidiaries



Note: Abbreviated Chart

**Overview of ring-fencing measures**

*Bankruptcy Remote Entities:*

As described in the Summary of the Reorganization process, the Company will create, directly or indirectly, DCI Holdings and DGI Holdings, two newly formed special-purpose bankruptcy remote intermediate holding companies. Each of DGI Holdings and DCI Holdings will be newly formed Delaware entities. Each of DGI Holdings, DCI Holdings, and each Borrower will have at least one independent director or manager. Each of DGI Holdings, DCI Holdings, and each Borrower shall have customary rating agency "separateness" provisions, including without limitation, separately appointed board of directors or managers (as applicable), separate books and records, separately appointed officers or separate members (as applicable), separate bank accounts, holds itself out as separate legal entity and not a division of the Company, pays liabilities from its own funds, conducts business in its own name (other than any business relating to the trading activities of the Company and its subsidiaries), observes entity level formalities, not pledge its assets for the benefit of other persons and any other provisions reasonably required to effect the bankruptcy remoteness of such entities.

*Independent Approval Matters:*

Unanimous consent of the board of managers, including the independent manager, will be required for filing any bankruptcy proceeding, seeking or consenting to the appointment of any receiver, making or consenting to any assignment for the benefit of creditors, admitting in writing the inability to pay the applicable bankruptcy remote entity's debts, consenting to substantive consolidation, dissolving or liquidating, engaging in any business

2

beyond those set forth in applicable bankruptcy remote entity's organizational documents, amending the bankruptcy remoteness provisions in such entity's organizational documents and, at any time following execution of the applicable credit agreement, amending, terminating or entering material intercompany relationships with Dynegy entities outside the ring fenced group.

**Overview of Dynegy**

**Changes to operational model**

Dynegy is implementing a modification of its asset ownership structure, which will:

- Eliminate regional organizational structure and replace with the structure depicted below
- Reduce / consolidate non-plant support activities primarily to O'Fallon, IL and Houston, TX (CA / NY regional offices closed)

- Focus on cost efficiencies at both operating facilities and support functions
- Operating fleet supported by Dynegy service contracts
- Adjust corporate functions to support new operational model
- Focus on corporate cost efficiencies

| GasCo (6,771 MW) | CoalCo (3,132 MW) | DHI (1,693 MW) |
|---|---|---|
| Casco Bay (540 MW) | Baldwin (1,800 MW) | Danskammer (493 MW) |
| Independence (1,064 MW) | Havana (441 MW) | Roseton (1,200 MW) |
| Kendall (1,200 MW) | Hennepin (293 MW) | |
| Ontelaunee (580 MW) | Wood River (446 MW) | |
| Moss Landing (2,529 MW) | Oglesby (63 MW) | |
| Morro Bay (650 MW) | Stallings (89 MW) | |
| Oakland (165 MW) | | |
| Black Mountain (43 MW) | | |

**Support Activities & Services**

| | | |
|---|---|---|
| South Bay Demo | Accounting | Commercial Hedging, Fuel and Asset Management |
| Vermilion Mothball Project | Finance | Legal Support |
| Capital and Budgeting | Treasury | HR |
| Business Services | Tax | IT |
| Environmental Health & Safety | Internal Audit | |
| NERC Compliance | Investor/Public Relations | |
| Engineering & Programs | Strategic Planning/Business Development | |

**Unaudited selected financial information and operating metrics**

The unaudited selected financial information and operating metrics contained herein gives effect to the Reorganization and includes adjustments directly attributable to the Reorganization. The unaudited selected financial information and operating metrics were prepared solely for purposes of the financing described herein and was not prepared with a view toward public disclosure or with a view toward complying with the published guidelines of the US Securities and Exchange Commission, the guidelines established by the American Institute of Certified Public Accountants with respect to such pro forma financial information or generally accepted accounting principles. In order to reflect the Restructuring in the selected financial data, Dynegy has made a number of assumptions, which are described below. Use of different assumptions and judgments could yield different results, and actual adjustments will likely differ from the financial information and operating metrics presented herein. The

3

unaudited selected financial information and operating metrics are for illustrative and informational purposes only and is not intended to reflect GasCo's and CoalCo's results of operations that would have actually resulted had the Reorganization been in effect for the periods presented. Further, the unaudited selected financial information and operating metrics are not necessarily indicative of the results of operations that may be obtained in the future, which may differ materially from the unaudited selected financial information and operating metrics presented herein due to various factors.

In preparing the selected financial information and operating metrics presented herein, Dynegy made the following assumptions:

- CoalCo includes the historical results of the Baldwin, Stallings, Wood River, Havana, Oglesby and Hennepin generation facilities, which have historically been included in the GEN-MW segment. It also includes the marketing and trading activities related to those generation facilities.
- GasCo includes the historical results of the Moss Landing, Morro Bay, and Oakland generation facilities, which have historically been included in the GEN-WE segment; the historical results of the Kendall and Ontelaunee generation facilities, which have historically been included in the GEN-MW segment; and the historical results of the Casco Bay and Independence generation facilities, which have historically been included in the GEN-NE segment. GasCo also includes the marketing and trading activities related to those generation

facilities and the regional administrative and other costs historically associated with the GEN-WE segment.

- Other includes the historical results of the Roseton and Danskammer generation facilities, which have historically been included in the GEN-NE segment and the marketing and trading activities historically associated with these facilities. It also includes the historical results for plants that have been sold or are no longer in service. It includes regional overhead costs and certain trading results historically associated with the GEN-MW and GEN-NE segments which include both natural gas and coal-fired generation facilities. These costs may ultimately be allocated between CoalCo and GasCo. Similar costs historically associated with the GEN-WE segment have been allocated to GasCo as the GEN-WE segment only contains natural gas-fired generation facilities. Other also includes general and administrative and other costs that have not been allocated at the plant level. A portion of any or all of these items may ultimately be allocated to or included in CoalCo and GasCo; however, no allocation has been performed for purposes of the unaudited selected financial information included herein.

The unaudited selected financial information was prepared using Dynegy's historical consolidated financial statements and should be read in conjunction with, and is qualified in its entirety by such historical consolidated financial statements and notes thereto, which are publicly available.

**Sources & uses of funds – GasCo**

($ in millions)

| Sources | | Uses | |
|---|---:|---|---:|
| New 1st Lien Senior Secured Term Loan | $1,300 | L/C's and Cash Collateral [1] | $ 574 |
| Cash Transferred from DHI with Assets [1] | 203 | Term Loan Repayment | 68 |
| | | Sithe Repayment [2] | 192 |
| | | Transaction Fees, Expenses & OID | 69 |
| | | Cash to Balance Sheet | 200 |
| **Total Cash Sources** | **$1,503** | Distribution to Dynegy Gas HoldCo LLC | 400 |
| | | **Total Cash Uses** | **$1,503** |

(1) Management estimate.
(2) The Company may repay the Sithe Debt at its option.

Note: Excludes credit facility repayments which have no net cash impact.

4

**Pro forma capitalization – GasCo**

($ in millions)

| | PF 5/2/2011 | Debt / LTM Adj. EBITDA | kW | Maturity |
|---|---:|---:|---:|---|
| Unrestricted Cash and Equivalents | $ 200 | | | |
| Restricted Cash (Collateral) | 574 | | | |
| Unrestricted Cash at Dynegy Gas HoldCo LLC | 400 | | | |
| New 1st Lien Senior Secured Term Loan | 1,300 | | | Jul-2017 |
| **Total Debt** | **$ 1,300** | **4.4x** | **$ 192** | |
| *Net Debt (Total Debt less Unrestricted Cash)* | *$ 1,100* | *3.7x* | *$ 163* | |
| 03/31/2011 LTM Adjusted EBITDA [1] | | $ 297 | | |
| Capacity (MW) | | | 6,771 | |

(1) Includes $38 million related to non-cash Independence amortization.

Adjusted EBITDA is a non-GAAP financial measure. A reconciliation of this measure to the most directly comparable GAAP measure, to the extent available without unreasonable effort, is contained herein.

**Sources & uses of funds – CoalCo**

($ in millions)

| Sources | | Uses | |
|---|---:|---|---:|
| New 1st Lien Senior Secured Term Loan | $400 | Letters of Credit / Cash Collateral [1] | $118 |

| | |
|---|---:|
| Transaction Fees, Expenses and OID | 19 |
| Cash to Balance Sheet | 263 |
| **Total Cash Sources** | **$400** |
| Total Cash Uses | **$400** |

(1) Management estimate.

**Pro forma capitalization – CoalCo**

($ in millions)

| | PF 5/2/2011 | Debt / LTM Adj. EBITDA | kW | Maturity |
|---|---:|---:|---:|---|
| Unrestricted Cash and Equivalents | $ 263 | | | |
| Restricted Cash (Collateral) | 118 | | | |
| New 1st Lien Senior Secured Term Loan | 400 | | | Jul-2017 |
| **Total Debt** | **$ 400** | **1.3x** | **$ 128** | |
| *Net Debt (Total Debt less Unrestricted Cash)* | *$ 137* | *0.5x* | *$ 44* | |
| 03/31/2011 LTM Adjusted EBITDA | | $ 303 | | |
| Capacity (MW) | | | 3,132 | |

Adjusted EBITDA is a non-GAAP financial measure. A reconciliation of this measure to the most directly comparable GAAP measure, to the extent available without unreasonable effort, is contained herein.

5

**Certain Investment Considerations**

**1.    Substantive Consolidation Considerations**

*In the event of a bankruptcy of DHI or any of its subsidiaries, DHI or its debtor subsidiaries (or their creditors) may seek to substantively consolidate DPC (GasCo), DGI Holdings, DMG (CoalCo) and/or DCI Holdings with the debtors' estates.*

DHI will remain highly leveraged following the closing of the GasCo Term Loan and CoalCo Term Loan (together, the "Loans") as the issuer of $3.5 billion of senior unsecured notes and as a guarantor of the lease obligations associated with the Roseton and Danskammer facilities. In the absence of successful debt restructuring and/or refinancing, there can be no assurance that DHI or any of its subsidiaries will have sufficient resources to pay existing indebtedness. The Loans will restrict the ability of GasCo and CoalCo to pay dividends or make other restricted payments. If, as a result of such leverage or otherwise, DHI or any of its subsidiaries becomes the subject of a voluntary or involuntary bankruptcy case, DHI or any debtor subsidiary (or any trustee of the bankruptcy estate of DHI or any debtor subsidiary or any creditor thereof or other party in interest thereof) could ask the bankruptcy court with jurisdiction over any bankruptcy case to substantively consolidate one or more of DHI's non-debtor subsidiaries (i.e., those that are not the subject of such cases) with the estate(s) of DHI and/or its debtor subsidiaries.

Among the conditions precedent to the closing of the GasCo Term Loan, outside counsel to GasCo has agreed to deliver a customary bankruptcy non-consolidation opinion reasonably satisfactory to Credit Suisse Securities (USA) LLC and Goldman Sachs Lending Partners LLC (together, the "Arrangers") which will, among other things, point to facts that would suggest consolidation would not likely be applied by a court. Among the factors as to which such a non-consolidation opinion will focus is the fact that each of GasCo and DGI Holdings (its direct newly-formed holding company) will have customary rating agency "separateness" provisions, including, without limitation, a separately appointed board of managers, separate books and records, separately appointed officers, hold itself out as a separate legal entity and not as a division of Dynegy, DHI or any of its subsidiaries, pay its liabilities from its own funds, conduct business in its own name (other than using certain Dynegy entities to conduct trading actions on its behalf), observe entity level formalities, not pledge its assets for the benefit of other persons and any other provisions reasonably required to effect the bankruptcy remoteness of such entity. The same provisions will apply in the case of CoalCo and DCI Holdings.

The facts supporting the non-consolidation opinion (and the fact that each of GasCo, DGI Holdings, CoalCo and DCI Holdings are structured as bankruptcy-remote entities, as discussed in Section 3 of Certain Investment Considerations below) would be utilized in defending against a request for substantive consolidation. Nevertheless, a court could order substantive consolidation of the estates of DHI and/or any debtor subsidiaries, on the one hand, and GasCo, DGI Holdings, CoalCo and/or DCI Holdings on the other hand.

**2.    Investment Considerations Associated With Characterization of Certain Restructurings Following Closing of Loans**

*Following the closing of the Loans, Dynegy may engage in transactions that increase the likelihood of its estate or creditors challenging the pre-Loan transactions.*

Following the closing of the Loans, the Finance and Restructuring Committee of Dynegy's Board of Directors will continue to work with its advisors in connection with additional potential debt restructuring activities, which may include direct or indirect transfers of equity interests of

DCI Holdings and/or DGI Holdings on terms which would be duly authorized by Dynegy's Board of Directors as lawful, and/or further reorganizations of Dynegy and/or various of its subsidiaries (collectively, "Post-Closing Restructuring Transactions"). See Step 4 in Summary of the reorganization process. The terms of the Loans will not prevent Dynegy from doing so. To the extent that (a) one or more of such Post-Closing Restructuring Transactions is determined to be an actual or constructive fraudulent transfer because, among other things, a court determines that such Post-Closing Restructuring Transaction(s) is not supported by reasonably equivalent value, and (b) the components and structure of the entire transaction (i.e., the furnishing of the Loans and the effectuation of the applicable Post-Closing Restructuring Transactions) are determined to be part of a single integrated scheme, a court could "collapse" the transaction and, could impose one

6

of the Fraudulent Conveyance Remedies (defined in Section 4 of Certain Investment Considerations below) upon the lenders in respect of the applicable Loans (the "Lenders"). The consequences of such a collapse could include (x) the "unwinding" of all of the steps in the entire transaction including the portion of the transaction related to the furnishing of the Loans in an effort to return the various transferred property to its original estate, and (y) the imposition of a remedy requiring the Lenders (as alleged beneficiaries of the overall transaction) to pay an amount equal to the value of the challenged transfers (plus potentially any post-transfer depreciation in the value of the transferred property, which may include the litigation expense incurred or reimbursed by the transferor).

3.  **Investment Considerations Associated With Bankruptcy Remote Structures**

*Each of DPC (GasCo)'s and DMG (CoalCo)'s bankruptcy-remote structure may be subject to challenge*

Each of DPC (GasCo)'s and DMG (CoalCo)'s formation documents will be amended to include provisions that establish it as a bankruptcy-remote entity which will, among other things, have at least one independent director or manager and various other indicia of separateness that, in the case of DPC (GasCo), are necessary for it to obtain the desired rating from the applicable ratings agencies. While structuring each of DPC (GasCo) and DMG (CoalCo) as a bankruptcy remote vehicle is intended to make it less likely that either DPC (GasCo) or DMG (CoalCo) will file for bankruptcy (or be subject to the filing of an involuntary bankruptcy case), there can be no certainty that, under specific facts, such entity will not ultimately be the subject of a bankruptcy case.

4.  **Investment Considerations Related to GasCo's Formation and its Upstream Distribution of Loan Proceeds**

*While we have no reason to believe that DPC (GasCo) or any of the entities involved in the pre-Loan transfers that embody the formation of DPC (GasCo) are, or upon closing of the applicable transfers or the Loans, will be, rendered insolvent, if that is not the case, DPC (GasCo), as a debtor in possession, or its creditors (on behalf of DPC (GasCo)'s bankruptcy estate or individually if DPC (GasCo) is not in bankruptcy) may claim that (A) the transfers of assets in the creation of DPC (GasCo) constituted fraudulent transfers and seek remedies (either within or outside of a bankruptcy filing), which could include the unwinding of those transfers, and/ or (B) DPC (GasCo)'s distribution of a portion of the proceeds from the GasCo Term Loan to DHI constituted a fraudulent transfer and seek remedies (either within or outside of a bankruptcy filing), which could include the unwinding of those distributions.*

As set forth under "Reorganization overview" above, prior to the closing of the Loans, certain preliminary steps will be taken (at entities below the corporate level of DHI) to facilitate the ultimate creation of GasCo (and CoalCo), including, among others, the following: (a) DHI will transfer to DPC (GasCo) its 100% ownership interest in Sithe Energies, Inc.; (b) DMG (CoalCo) will transfer to DPC (GasCo) its 100% ownership interest in Dynegy Kendall Energy, LLC; (c) DPC (GasCo) will transfer to DHI (i) its 100% ownership interest in Dynegy Operating Company and (ii) its 100% ownership interest in DNE; (d) a new subsidiary of DHI will be created ("DHIS"); (e) two new direct subsidiaries of DHIS will be created (Gas Holdco and Coal Holdco); (f) a new direct subsidiary of Gas Holdco(DGI Holdings) and a new direct subsidiary of Coal Holdco (DCI Holdings) will be created; (g) DPM will transfer its 100% ownership interest in DPC (GasCo) to DGI Holdings; and (h) DPC (GasCo) will transfer its 100% ownership interest in DMG (CoalCo) to DCI Holdings.

Thus, upon the completion of the foregoing steps, substantially all of Dynegy's "coal assets" will continue to reside within DMG (CoalCo) and substantially all of Dynegy's "gas assets" will reside in direct subsidiaries of DPC (GasCo). An abbreviated organizational chart depicting, in general terms, Dynegy's corporate structure following the effectuation of the foregoing transactional steps appears in Summary of the reorganization process above.

We have no reason to believe that DPC (GasCo) or any of the entities involved in the pre-Loan transfers that embody the formation of DPC (GasCo) are, or, upon the closing of the applicable transfers or the Loans, will be, rendered insolvent. In addition, we will at closing be receiving (a) a certificate from the chief financial officer of each of DPC (GasCo) and DMG (CoalCo) (i.e., the borrowers under the Loans), in form and substance reasonably satisfactory to the Arrangers, certifying that each of the Borrowers and their respective subsidiaries, on a

7

consolidated basis after giving effect to the Transactions, the Reorganization and the other transactions contemplated thereby (including the Loans), are solvent and (b) a solvency opinion for each of DPC (GasCo) and DMG (CoalCo) from a nationally recognized valuation company, in form and substance reasonably satisfactory to the Arrangers. However, we have not sought and do not currently expect to be provided with an independent

opinion or certificate regarding the solvency of the other entities which are the subject of the transfers. Additionally, certain of the transfers described above could be found to have been made without any consideration.

If any of these transferor entities (a) was insolvent on the date that such transfer was made or such obligation was incurred, became insolvent as a result of such transfer or obligation, or otherwise was deemed insolvent, and (b) failed to obtain reasonably equivalent value in exchange for the applicable transfer, a bankruptcy trustee for any such transferor entity or such transferor entity, as a debtor in possession (or, possibly, any creditor of the transferor entity either (x) on behalf of the transferor's bankruptcy estate with bankruptcy court approval or (y) in its individual capacity in federal or state court if the transferor is not in bankruptcy) (an "Affected Party") could assert and, if the facts supported such assertion, prevail upon a claim that such transfer should be avoided as a constructive fraudulent conveyance. In addition, to the extent any of these transferor entities made such transfer with the actual intent to hinder, delay or defraud any entity to which such transferor entity was or became indebted, on or after the date that such transfer was made, then such transferor entity or any other Affected Party could assert and, if the facts supported such assertion, prevail upon a claim that such transfer should be avoided as an actual fraudulent conveyance. If any such transfer is avoided as an actual or constructive fraudulent conveyance, pursuant to Section 550 of the Bankruptcy Code (or the corresponding provision of the applicable state fraudulent conveyance statute), a court may require that the transfer be unwound or that the value of the transferred property be repaid to the transferor.

In addition, it is possible that a court could determine to "collapse" the pre-Loan transfers and the financing on the basis that they constituted one integrated scheme. In that event, the court would apply the fraudulent conveyance standards to the entire integrated scheme (and not separately to each component), and, for example, would apply the solvency and reasonably equivalent prongs of the constructive fraudulent conveyance test by taking into account the value received by the transferor entity from being relieved of its guaranty exposure on the $1.8 billion senior secured Fifth Amended and Restated Credit Agreement dated as of April 2, 2007 (the "Existing Secured Credit Facility"). If a court nevertheless concluded that the integrated scheme was an avoidable fraudulent conveyance, and if it further concluded that the Lenders were direct or indirect transferees of the transferred property and/or were the entities for whose benefit such transfer was made, then the court could hold the Lenders liable for the fraudulently conveyed property and require either that (i) the Lenders' liens on the transferred property be set aside or (ii) the Lenders be required to repay the value of the fraudulently conveyed property to the transferor entity, including potentially the amount of any post-transfer depreciation in the value of such property (which may include the litigation expense incurred or reimbursed by the transferor). If the Lenders are found to have acted in good faith and without knowledge of the voidability of the transfer in question, they should be entitled to retain their liens and claims to the extent of the value they provided to the transferor entity (the fraudulent conveyance remedies against the Lenders described in the last two sentences of this paragraph, collectively referred to herein as the "Fraudulent Conveyance Remedies").

Notably, to our knowledge, DPM is the only entity that is transferring equity interests in a subsidiary that will be a credit party with respect to the Loans and, assuming that does not change, the foregoing analysis would apply solely to DPM. We have no reason to believe that DPM lacks sufficient assets and credit support to pay its liabilities as they come due.

Additionally, a portion of the proceeds of the GasCo Term Loan will be distributed to DHI at closing to satisfy the obligations outstanding under the Existing Secured Credit Facility, under which DHI is the primary obligor. Up to $400 million of the GasCo Term Loan will also be distributed at closing as a dividend.

In the event of a DPC bankruptcy (or even in the absence of a bankruptcy filing, and a creditor pursues a fraudulent transfer claim in state or federal court), an Affected Party could assert that (i) such transfers were constructively fraudulent, alleging, among other things, that DPC did not receive reasonably equivalent value in exchange for such transfers and/or (ii) such transfers constituted an actual fraudulent conveyance, alleging that such transfers were

8

made with the actual intent to hinder, delay or defraud any entity to which such transferor entity was or became indebted on or after the date that such transfers were made.

Several factors weigh against a finding that such transfers are fraudulent. DPC (GasCo) is already a guarantor under the Existing Secured Credit Facility and the equity interests in DPC (GasCo) and its assets are subject to security interests securing the Existing Secured Credit Facility. For purposes of any constructive fraudulent conveyance analysis, the use of the proceeds of the GasCo Term Loan to fully extinguish DPC (GasCo)'s guaranty liability for the entire amount of such New Credit Facility (via the repayment of the Existing Secured Credit Facility) should be included as part of the value which DPC (GasCo) is receiving on account of such GasCo Term Loan. Furthermore, in order to satisfy Dynegy, the Arrangers and the Lenders as to the solvency of DPC (GasCo) at the time of the upstream distribution (which is a requirement for a constructive fraudulent conveyance claim), as conditions to the making of the Loans, the Arrangers shall have received (a) a certificate from the chief financial officer of DPC (GasCo), in form and substance reasonably satisfactory to the Arrangers, certifying that DPC (GasCo) and its subsidiaries, on a consolidated basis after giving effect to the Transactions, the Reorganization and the other transactions contemplated thereby, are solvent and (b) a solvency opinion for DPC (GasCo) from a nationally recognized valuation company, in form and substance reasonably satisfactory to the Arrangers.

However, a determination of this issue is highly fact sensitive and no assurances with respect to the expected outcome of any such potential future litigation can be provided (except to note that, (i) if the entity is in chapter 11, the economic exposure to such fraudulent conveyance remedy is limited to the aggregate amount of unpaid allowed unsecured claims against such entity, which remedy could be fashioned as (x) a complete

unwinding of the fraudulent transfer or a requirement of full repayment by the Lenders of the value of the fraudulent conveyance, in either case, with the Lenders retaining liens and claims sufficient to receive any residual value remaining after payment of all other unpaid allowed unsecured claims, or (y) a partial unwinding of the fraudulent conveyance or a requirement of partial repayment by the Lenders of the value of the fraudulent conveyance, in either case, sufficient to ensure full repayment of the other unpaid allowed unsecured claims against such entity, and (ii) if a fraudulent conveyance claim is asserted by a creditor of such entity outside of bankruptcy, the fraudulent conveyance remedy could be limited to the repayment of such creditor's claim, or alternatively, to a full or partial unwinding of the fraudulent transfer). In the event an Affected Party were able to demonstrate that DPC (GasCo) was (a) insolvent at the time of the transfer of the Loan proceeds or otherwise failed any of the various aforementioned solvency tests, **and** (b) that the transfer of the Loan proceeds was for less than reasonably equivalent value, such plaintiff would be entitled to the imposition of one of the Fraudulent Conveyance Remedies, subject to the limitations noted at the end of the immediately preceding sentence.

9

## Historical financing and operating metrics

### GasCo historical financial and operating metrics



Source: Company data.

(1) GasCo's gross margin and Adjusted EBITDA results include the historical results of the Oakland, Moss Landing, Morro Bay, Kendall, Ontelaunee, Independence and Casco Bay generation facilities. They also include the marketing and trading activities related to those generation facilities and a portion of Dynegy's regional administrative and other costs historically associated with Dynegy's GEN-WE segment. They do not include (i) an allocation of regional administrative and other costs historically associated with the GEN-NE segment or GEN-MW segment; or (ii) an allocation of Dynegy's corporate overhead costs. Gross margin and Adjusted EBITDA are non-GAAP financial measures. Reconciliations of these measures to the most directly comparable GAAP measures, to the extent available without unreasonable effort, are contained herein. Gross margin and Adjusted EBITDA exclude South Bay, exclude a complete allocation of corporate or regional overhead costs, and include an annual non-cash amortization adjustment for Independence of ~$38 million.
(2) GasCo's capex includes the historical capital expenditures associated with the Oakland, Moss Landing, Morro Bay, Kendall, Ontelaunee, Independence and Casco Bay generation facilities. Capex does not include an allocation of corporate capital expenditures whose facilities and

systems are used to support the plant operations.
(3) Reflects weighted average by capacity for individual plants. Excludes Oakland and Black Mountain.

10

**CoalCo historical financial and operating metrics**



Source: Company data.

(1) CoalCo's gross margin and Adjusted EBITDA results include the historical results of the Baldwin, Stallings, Wood River, Havana, Oglesby and Hennepin generation facilities. Gross margin and Adjusted EBITDA do not include (i) an allocation of regional administrative and other costs historically associated with the GEN-MW segment; or (ii) an allocation of Dynegy's corporate overhead costs. Gross margin and Adjusted EBITDA are non-GAAP financial measures. Reconciliations of these measures to the most directly comparable GAAP measures, to the extent available without unreasonable effort, are contained herein.
(2) CoalCo's capex includes the historical capital expenditures associated with the Baldwin, Stallings, Wood River, Havana, Oglesby and Hennepin generation facilities. Capex does not include an allocation of corporate capital expenditures whose facilities and systems are used to support the plant operations.
(3) Reflects weighted average by capacity for individual plants. Includes coal plants only.

11

**Reconciliation of GasCo and CoalCo financial information to Dynegy Inc.'s historical results**

**Twelve Months Ended December 31, 2008**
**(Unaudited) (In Millions)**

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Net income attributable to Dynegy Inc.** |  |  |  | $ 174 |
| Plus / (Less): |  |  |  |  |

|  |  |  |  |  |
|---|---:|---:|---:|---:|
| Income tax expense |  |  |  | 90 |
| Interest expense |  |  |  | 427 |
| Depreciation and amortization expense |  |  |  | 346 |
| Loss from discontinued operations, net of taxes |  |  |  | 17 |
| **EBITDA from continuing operations (1)** | $ 367 | $ 702 | $ (15) | 1,054 |
| EBITDA from discontinued operations (1) | — | — | (6) | (6) |
| **EBITDA** | 367 | 702 | (21) | 1,048 |
| Plus / (Less): |  |  |  |  |
| Gain on sales of assets and investments | — | — | (95) | (95) |
| Impairments and other charges | — | — | 71 | 71 |
| Loss on dissolution of equity investment | — | — | 47 | 47 |
| Gain on liquidation of foreign entity | — | — | (24) | (24) |
| Release of state franchise tax and sales tax liabilities | — | — | (16) | (16) |
| Mark-to-market (gains) losses, net | (69) | (189) | 45 | (213) |
| **Adjusted EBITDA (1)** | $ 298 | $ 513 | $ 7 | $ 818 |
| **Gross margin (1)** | $ 489 | $ 837 | $ 305 | $1,631 |
| **Capital Expenditures** | $ 39 | $ 307 | $ 265 | $ 611 |

(1) EBITDA, Adjusted EBITDA and Gross Margin are non-GAAP financial measures. Please refer to Item 7.01 of the Current Report on Form 8-K furnished on July 11, 2011, for definitions, utility and uses of such non-GAAP financial measures. Reconciliations of EBITDA and Gross Margin to operating income (loss) are presented below. Management does not allocate interest expense and income taxes on a segment level and therefore uses operating income (loss) as the most directly comparable GAAP measure.

|  | GasCo | CoalCo | Other (2) | Total |
|---|---:|---:|---:|---:|
| **Gross margin** | $ 489 | $ 837 | $ 305 | $1,631 |
| Plus/(Less): |  |  |  |  |
| Operating and maintenance expense | (122) | (135) | (209) | (466) |
| Gain on sale of assets | — | — | 82 | 82 |
| Depreciation and amortization expense | (115) | (138) | (93) | (346) |
| General and administrative expenses | — | — | (157) | (157) |
| **Operating income (loss)** | $ 252 | $ 564 | $ (72) | $ 744 |
| Losses from unconsolidated investments | — | — | (123) | (123) |
| Depreciation and amortization expense | 115 | 138 | 93 | 346 |
| Other items, net | — | — | 84 | 84 |
| Net loss attributable to noncontrolling interests | — | — | 3 | 3 |
| **EBITDA from continuing operations** | 367 | 702 | (15) | 1,054 |
| EBITDA from discontinued operations | — | — | (6) | (6) |
| **EBITDA** | $ 367 | $ 702 | $ (21) | $1,048 |

(2) Other includes the results of the Roseton generating facility, the Danskammer generating facility, generating facilities that have been sold or are no longer in service, and unallocated corporate and regional overhead amounts. For additional discussion, please see "Unaudited selected financial information and operating metrics."

12

---

**Twelve Months Ended December 31, 2009**
**(Unaudited) (In Millions)**

|  | GasCo | CoalCo | Other (2) | Total |
|---|---:|---:|---:|---:|
| **Net loss attributable to Dynegy Inc.** |  |  |  | $(1,247) |
| Plus / (Less): |  |  |  |  |
| Income tax benefit |  |  |  | (315) |
| Interest expense |  |  |  | 461 |
| Depreciation and amortization expense |  |  |  | 335 |
| Loss from discontinued operations, net of taxes |  |  |  | 222 |
| **EBITDA from continuing operations (1)** | $ 263 | $ 418 | $(1,225) | (544) |
| EBITDA from discontinued operations (1) | — | — | (328) | (328) |
| **EBITDA** | 263 | 418 | (1,553) | (872) |
| Plus / (Less): |  |  |  |  |
| Goodwill impairments | — | — | 433 | 433 |

|  |  |  |  |  |
|---|---|---|---|---|
| Impairments and other charges | — | — | 796 | 796 |
| Loss on sales of assets and investments | — | — | 302 | 302 |
| Mark-to-market (gains) losses, net | 136 | 108 | (85) | 159 |
| Net loss attributable to noncontrolling interests | — | — | (15) | (15) |
| **Adjusted EBITDA (1)** | $ 399 | $ 526 | $ (122) | $ 803 |
| **Gross margin (1)** | $ 412 | $ 573 | $ 289 | $ 1,274 |
| **Capital Expenditures** | $ 70 | $ 390 | $ 152 | $ 612 |

(1) EBITDA, Adjusted EBITDA and Gross Margin are non-GAAP financial measures. Please refer to Item 7.01 of the Current Report on Form 8-K furnished on July 11, 2011, for definitions, utility and uses of such non-GAAP financial measures. Reconciliations of EBITDA and Gross Margin to operating income (loss) are presented below. Management does not allocate interest expense and income taxes on a segment level and therefore uses operating income (loss) as the most directly comparable GAAP measure.

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Gross margin** | $ 412 | $ 573 | 289 | $1,274 |
| Plus/(Less): |  |  |  |  |
| Operating and maintenance expense | (151) | (157) | (211) | (519) |
| Impairment and other charges | — | — | (538) | (538) |
| Loss on sale of assets | — | — | (124) | (124) |
| Goodwill impairments | — | — | (433) | (433) |
| Depreciation and amortization expense | (124) | (154) | (57) | (335) |
| General and administrative expenses | — | — | (159) | (159) |
| **Operating income (loss)** | $ 137 | $ 262 | $(1,233) | $ (834) |
| Losses from unconsolidated investments | — | — | (71) | (71) |
| Depreciation and amortization expense | 124 | 154 | 57 | 335 |
| Other items, net | 2 | 2 | 7 | 11 |
| Net loss attributable to noncontrolling interests | — | — | 15 | 15 |
| **EBITDA from continuing operations** | 263 | 418 | (1,225) | (544) |
| EBITDA from discontinued operations | — | — | (328) | (328) |
| **EBITDA** | $ 263 | $ 418 | $(1,553) | $ (872) |

(2) Other includes the results of the Roseton generating facility, the Danskammer generating facility, generating facilities that have been sold or are no longer in service, and unallocated corporate and regional overhead amounts. For additional discussion, please see "Unaudited selected financial information and operating metrics."

13

---

**Twelve Months Ended December 31, 2010**  
**(Unaudited) (In Millions)**

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Net loss** |  |  |  | $ (234) |
| Plus / (Less): |  |  |  |  |
| Income tax benefit |  |  |  | (197) |
| Interest expense |  |  |  | 363 |
| Depreciation and amortization expense |  |  |  | 392 |
| **EBITDA (1)** | $ 214 | $ 317 | $ (207) | 324 |
| Plus / (Less): |  |  |  |  |
| Impairments and other charges | 134 | — | 39 | 173 |
| Loss on sale of PPEA Holding | — | — | 28 | 28 |
| Merger Agreement transaction costs | — | — | 26 | 26 |
| Restructuring charges | 1 | 1 | 10 | 12 |
| Plum Point mark-to-market gains | — | — | (6) | (6) |
| Mark-to-market (gains) losses, net | 11 | (21) | (8) | (18) |
| **Adjusted EBITDA (1)** | $ 360 | $ 297 | $ (118) | $ 539 |
| **Gross margin (1)** | $ 478 | $ 471 | $ 193 | $1,142 |
| **Capital Expenditures** | $ 50 | $ 274 | $ 9 | $ 333 |

(1) EBITDA, Adjusted EBITDA and Gross Margin are non-GAAP financial measures. Please refer to Item 7.01 of the Current Report on Form 8-K furnished on July 11, 2011, for definitions, utility and uses of such non-GAAP financial measures. Reconciliations of EBITDA and Gross Margin to operating income (loss) are presented below. Management does not allocate interest expense and income taxes on a segment level and therefore uses operating income (loss) as the most directly comparable GAAP measure.

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Gross margin** | $ 478 | $ 471 | $ 193 | $1,142 |
| Plus/(Less): | | | | |
| Operating and maintenance expense | (132) | (154) | (164) | (450) |
| Impairment and other charges | (134) | — | (14) | (148) |
| Depreciation and amortization expense | (135) | (190) | (67) | (392) |
| General and administrative expenses | — | — | (163) | (163) |
| **Operating income (loss)** | $ 77 | $ 127 | $ (215) | $ (11) |
| Losses from unconsolidated investments | — | — | (62) | (62) |
| Depreciation and amortization expense | 135 | 190 | 67 | 392 |
| Other items, net | 2 | — | 2 | 4 |
| **EBITDA from continuing operations** | 214 | 317 | (208) | 323 |
| EBITDA from discontinued operations | — | — | 1 | 1 |
| **EBITDA** | $ 214 | $ 317 | $ (207) | $ 324 |

(2) Other includes the results of the Roseton generating facility, the Danskammer generating facility, generating facilities that have been sold or are no longer in service, and unallocated corporate and regional overhead amounts. For additional discussion, please see "Unaudited selected financial information and operating metrics."

14

**Three Months Ended March 31, 2010**
**(Unaudited) (In Millions)**

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Net loss** | | | | $ 145 |
| Plus / (Less): | | | | |
| Income tax expense | | | | 65 |
| Interest expense | | | | 89 |
| Depreciation and amortization expense | | | | 75 |
| Income from discontinued operations, net of taxes | | | | (1) |
| **EBITDA from continuing operations (1)** | $ 132 | $ 263 | $ (22) | 373 |
| EBITDA from discontinued operations (1) | — | — | 1 | 1 |
| **EBITDA** | 132 | 263 | (21) | 374 |
| Plus / (Less): | | | | |
| Impairments and other charges | — | — | 37 | 37 |
| Mark-to-market gains, net | (27) | (191) | (41) | (259) |
| **Adjusted EBITDA (1)** | $ 105 | $ 72 | $ (25) | $ 152 |
| **Gross margin (1)** | $ 163 | $ 302 | $ 85 | $ 550 |
| **Capital Expenditures** | $ 14 | $ 85 | $ 2 | $ 101 |

(1) EBITDA, Adjusted EBITDA and Gross Margin are non-GAAP financial measures. Please refer to Item 7.01 of the Current Report on Form 8-K furnished on July 11, 2011 for definitions, utility and uses of such non-GAAP financial measures. Reconciliations of EBITDA and Gross Margin to operating income (loss) are presented below. Management does not allocate interest expense and income taxes on a segment level and therefore uses operating income (loss) as the most directly comparable GAAP measure.

|  | GasCo | CoalCo | Other (2) | Total |
|---|---|---|---|---|
| **Gross margin** | $ 163 | $ 302 | $ 85 | $ 550 |
| Plus/(Less): | | | | |
| Operating and maintenance expense | (32) | (39) | (42) | (113) |
| Depreciation and amortization expense | (33) | (39) | (3) | (75) |
| General and administrative expenses | — | — | (31) | (31) |
| **Operating income** | $ 98 | $ 224 | $ 9 | $ 331 |
| Losses from unconsolidated investments | — | — | (34) | (34) |

|  | | | | |
|---|---:|---:|---:|---:|
| Depreciation and amortization expense | 33 | 39 | 3 | 75 |
| Other items, net | 1 | — | — | 1 |
| **EBITDA from continuing operations** | 132 | 263 | (22) | 373 |
| EBITDA from discontinued operations | — | — | 1 | 1 |
| **EBITDA** | $ 132 | $ 263 | $ (21) | $ 374 |

(2) Other includes the results of the Roseton generating facility, the Danskammer generating facility, generating facilities that have been sold or are no longer in service, and unallocated corporate and regional overhead amounts. For additional discussion, please see "Unaudited selected financial information and operating metrics."

---

**Three Months Ended March 31, 2011**
**(Unaudited) (In Millions)**

|  | GasCo | CoalCo | Other (2) | Total |
|---|---:|---:|---:|---:|
| **Net loss** |  |  |  | $ (77) |
| Plus / (Less): |  |  |  |  |
|     Income tax expense |  |  |  | (60) |
|     Interest expense |  |  |  | 89 |
|     Depreciation and amortization expense |  |  |  | 126 |
| **EBITDA (1)** | $ 62 | $ 71 | $ (55) | $ 78 |
| Plus / (Less): |  |  |  |  |
|     Merger agreement termination fee and other legal expenses | — | — | 9 | 9 |
|     Executive separation agreement expenses | — | — | 3 | 3 |
|     Mark-to-market (gains) losses, net | (20) | 7 | 10 | (3) |
| **Adjusted EBITDA (1)** | $ 42 | $ 78 | $ (33) | $ 87 |
| **Gross margin (1)** | $ 102 | $ 106 | $ 19 | $ 227 |
| **Capital Expenditures** | $ 24 | $ 42 | $ — | $ 66 |

(1) EBITDA, Adjusted EBITDA and Gross Margin are non-GAAP financial measures. Please refer to Item 7.01 of the Current Report on Form 8-K furnished on July 11, 2011 for definitions, utility and uses of such non-GAAP financial measures. Reconciliations of EBITDA and Gross Margin to operating income (loss) are presented below. Management does not allocate interest expense and income taxes on a segment level and therefore uses operating income (loss) as the most directly comparable GAAP measure.

|  | GasCo | CoalCo | Other (2) | Total |
|---|---:|---:|---:|---:|
| **Gross margin** | $ 102 | $ 106 | $ 19 | $ 227 |
| Plus/(Less): |  |  |  |  |
|     Operating and maintenance expense | (40) | (35) | (35) | (110) |
|     Depreciation and amortization expense | (34) | (40) | (52) | (126) |
|     General and administrative expenses | — | — | (40) | (40) |
| **Operating income (loss)** | $ 28 | $ 31 | $ (108) | $ (49) |
| Depreciation and amortization expense | 34 | 40 | 52 | 126 |
| Other items, net | — | — | 1 | 1 |
| **EBITDA** | $ 62 | $ 71 | $ (55) | $ 78 |

(2) Other includes the results of the Roseton generating facility, the Danskammer generating facility, generating facilities that have been sold or are no longer in service, and unallocated corporate and regional overhead amounts. For additional discussion, please see "Unaudited selected financial information and operating metrics."