# EXHIBIT 11

FILED: NEW YORK COUNTY CLERK 08/02/2011

INDEX NO. 651998/2011

NYSCEF DOC. NO. 8

11-38111-cgm   Doc 92-11   Filed 11/18/11   Entered 11/18/11 21:38:59   Exhibit 11

Pg 2 of 24

RECEIVED NYSCEF: 08/02/2011

158

2

Terry-Ann Volberg, CSR, CRR
Official Court Reporter

3

New York State Supreme Court
60 Centre Street - Room 420

4

New York, New York 10007
(646) 386-3111

5

July 22, 2011

6

To:

7

8

LOWENSTEIN SANDLER, PC
Attorneys at Law
1251 Avenue of the Americas, 18th Floor

9

New York, New York 10022

10

Attention:  Amiad M. Kushner

11

TITLE OF ACTION:   Libertyview
INDEX CASE NO:  651998/11

12

DATE OF PROCEEDING:  July 21, 2011

13

PAGES:   22

14

15

For daily copy transcript in the above-entitled case.

16

The amount below represents your cost of the transcript.

17

18

Total Due and owing: $170.50

19

***Please Remit***

20

21

22

23

24

25

26

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 1

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK:  TRIAL TERM PART 49

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LIBERTYVIEW CREDIT OPPORTUNITIES FUND., L.P.,
LIBERTYVIEW CREDIT SELECT FUND, L.P.,
LIBERTYVIEW SPECIAL OPPORTUNITIES FUND, L.P.,
LIBERTYVIEW FUNDS, L.P.  LIBERTYVIEW SPECIAL
OPPORTUNITIES FUND II, L/P.,

                      Plaintiffs,

         - against -

DYNEGY HOLDINGS, INC.,,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
Index No. 651998/11

                    July 21, 2011
                    60 Centre Street
                    New York, New York 10007

B E F O R E:   THE HONORABLE O. PETER SHERWOOD, Justice.


A P P E A R A N C E S:

LOWENSTEIN SANDLER, PC
Attorneys at Law
1251 Avenue of the Americas, 18th Floor
New York, New York 10022
BY:  SHEILA A. SADIGHI, ESQ.
     AMIAD M. KUSHNER, ESQ.

WHITE & CASE LLP
Attorneys at Law
1155 Avenue of the Americas
New York, New York 10036
BY:  GLENN M. KURTZ, ESQ.



                    Terry-Ann Volberg, CSR, CRR
                    Official Court Reporter.

Page 2

1                        Proceedings

2              THE CLERK:  Libertyview Credit Opportunities v.

3      Dynegy Holdings, Index Number 651998/2011.

4              THE COURT:  Counsel, your appearances, please.

5              MS. SADIGHI:  Good afternoon, your Honor.

6              Sheila Sadighi of Lowenstein Sandler for

7      plaintiffs Libertyview Funds here together with my

8      colleague, Amiad Kushner.

9              So your Honor knows, I will be filing a pro hac

10     motion on -- Amiad will be filing the motion to which

11     Mr. Kurtz' firm consented.

12             THE COURT:  Preliminarily, welcome.  I am happy

13     to have you participate even though the motion has not

14     reached my desk yet, it has not been signed.

15             MS. SADIGHI:  I appreciate that, your Honor.

16     Thank you.

17             MR. KURTZ:  Good afternoon, your Honor.  Glenn

18     Kurtz of White & Case.  I am here today on behalf of the

19     defendant Dynegy Holdings Inc.

20             THE COURT:  This was just handed to me.  I must

21     tell you I have not read it.  You will have to educate me.

22             MS. SADIGHI:  That's fine, your Honor.

23             First and foremost, I would like to clarify the

24     relief we are seeking today.  It's very limited.  All the

25     plaintiffs are asking for today is that your Honor please

26     enter a hearing date and an expedited briefing schedule

Page 3

1                          Proceedings

2          for our application for a temporary restraining order

3          pending a preliminary injunction motion.  So that's all we

4          are seeking today, but we will be back if your Honor so

5          enters the order to seek next week a temporary restraining

6          order pending our motion for a preliminary injunction of

7          the defendant Dynegy Holdings Inc. or DHI's proposed

8          findings and transaction.

9                  In a nutshell, your Honor, our clients are funds

10         that own debt that is guaranteed by DHI.  The plaintiffs

11         are third-party beneficiaries under a guaranty given by

12         DHI to ensure that their debt liens are paid.  As part of

13         the guaranty that DHI has given it affirmatively

14         covenanted that it would not transfer or divest itself of

15         the assets that support the guaranty unless the guaranty

16         follows the assets to the new transferee.

17                 DHI is a holding company.  As such it conducts

18         its primary business and all of its assets are the

19         operations, the cash flows of its operating power plant

20         facilities which are owned through a structure of direct

21         and indirect subsidiaries.  And as a result DHI, when it

22         was agreeing to provide credit support to this debt, be

23         the guarantor of this debt, held itself out on the basis

24         of its consolidated operations, its consolidated

25         financials, otherwise as a guarantor its value is

26         effectively nothing because it's a shell company.

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 4

1                          Proceedings

2              So our clients, as purchasers of the debt

3        guaranteed by DHI, bought into this debt based in large

4        part upon the credit support provided through this

5        guaranty under which DHI said it would basically stay the

6        same guarantor it was to the extent that it's able to

7        control that.

8              So we are here asking to enjoin a transaction

9        that in our view violates that affirmative covenant under

10       the guaranty because what DHI has said it's going to do in

11       a proposed restructuring that will close next week

12       according to its current schedule, is that it is taking

13       the real assets of the company, the only ones that

14       generate any revenues that contribute all the upstream

15       cash flows to DHI, our guarantor, it's taking them through

16       a serious of very unbelievably complex restructuring

17       transactions.  It's going to move them into these

18       bankruptcy remote ringfenced entities where they won't be

19       able to be touched by DHI's creditors.

20             So that's what it's proposing.

21             In connection with that transaction it's not

22       only going to isolate the only real assets that support

23       our guaranty, but it is also causing the subsidiaries to

24       restrict their own ability to send those cash flows back

25       upstream to DHI.

26             So DHI is saying two things.  It's saying,

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 5

| 1 | Proceedings |

2      number one, yes, we have told you every year that all of

3      our operating revenues are contributed by the

4      subsidiaries.  You know, last year they contributed

5      $923 million.  We rely on that money.  That's how we pay

6      our debts and obligations.  We are going to limit them so

7      they can't possibly upstream more than $225 million if

8      they even produce that much.

9           And based on the public filings that DHI put out

10     there it seems pretty clear to us that even if those

11     subsidiaries produce that amount of money it's not going

12     to be sufficient to cover DHI's debt.

13          THE COURT:  Who is the borrower of the debt that

14     Libertyview Credit Opportunities holds?  One of DHI's

15     subsidiaries?

16          MS. SADIGHI:  The certificate -- the plaintiffs

17     own what are referred to as pass-through trust

18     certificates.  So they own certificates in a trust that

19     holds notes given by owner-lessors related to this 2001

20     leverage lease transaction.

21          Essentially DHI bought six power plant

22     facilities in New York, and in order to get long-term

23     financing for the asset acquisition it structured this

24     giant asset backed sale lease backed transaction.  So the

25     way that that is structured is the DHI subsidiaries bought

26     the power plants, they then sold them to the

1                        Proceedings

2      owner-lessors.

3                  THE COURT:  To the trust, essentially?

4                  MS. SADIGHI:  Right.  So the money --

5                  THE COURT:  And they leased back the power

6      plants from the trusts?

7                  MS. SADIGHI:  That's exactly right, your Honor.

8      They pay their lease payments.  It's the lease payments

9      made by --

10                 THE COURT:  What is it that is being transferred

11     here?

12                 MS. SADIGHI:  So what's being -- DHI's assets as

13     a holding company, it's assets are, as it said, all of its

14     operating revenues, all of the money, all of the real

15     assets that are at the operating level.  So what it's

16     doing is it's transferring outside of its reach.

17                 This is the argument that we say we need the

18     court to weigh in on because we say DHI is slicing the

19     baloney too thin.  On the one hand it holds itself out and

20     says when you look at DHI as a guarantor and you are

21     trying to assess whether or not it is creditworthy, and

22     DHI was trying to induce certificate holders to rely on

23     its creditworthiness because it knew this --

24                 THE COURT:  Here's what I am struggling to

25     understand:  There are hard assets owned by the trust that

26     is indebted to your clients.

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 7

```
 1                         Proceedings
 2              MS. SADIGHI:  There are lease --
 3              THE COURT:  DHI is merely a guarantor of that
 4    debt.  Do I have that right?
 5              MS. SADIGHI:  DHI is a guarantor of that debt,
 6    and DHI, the DHI entity that supports that debt sits at
 7    the top of this consolidated family of subsidiaries.  And
 8    so the assets -- what DHI said is we will guaranty your
 9    debt, but, you know, putting that debt aside when you just
10    try to decide whether it is a good credit risk, whether we
11    will be able to make good on the guaranty if the lessees
12    default on the leases, look at what we do.  Here is what
13    we do.  Here are our assets.  Our assets are cash.
14              THE COURT:  I think I understand that.
15              What I am still not clear on is whether the
16    borrower sits there with real assets -- it sounds like
17    they do -- whether the borrower has any real assets, not
18    the guarantor.  I am not at the guarantor level yet.
19    That's DHI.
20              And so my understanding from you, I have not
21    read any of the papers, is that the borrower owns these
22    power plants that are leased by, that are leased by the
23    operating companies that are controlled by DHI; is that
24    right?
25              MS. SADIGHI:  That's right, but they have been
26    devalued.
```

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 8

1                         Proceedings

2               THE COURT:  So that's what I am trying to

3      understand, how this restructuring that DHI is planning to

4      proceed with devalues the loan as opposed to the guaranty

5      of the loan.

6               MS. SADIGHI:  It is devaluing the guaranty of

7      the loan.

8               THE COURT:  I get that.

9               MS. SADIGHI:  But that's all we are trying to

10     avoid, sir.

11              THE COURT:  I get that too.

12              I am trying to understand whether the loan

13     itself is being impaired in anyway.

14              MS. SADIGHI:  The loan itself is being impaired

15     to the extent that right now DHI has all of these assets

16     directly underneath it.  It has basically 14, I think 17

17     main power generator plants.  One of them is being

18     shuttered, two of them are the subject of our eleven lease

19     transactions.

20              THE COURT:  That will continue in operation?

21              MS. SADIGHI:  Well, who knows, because --

22              THE COURT:  As of right now you have not given

23     any notice that they will be shuttered.

24              MS. SADIGHI:  We haven't although the clear

25     understanding on the street and that is reflected in the

26     effectiveness of this proposed transaction on the trading

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 9

1                              Proceedings

2          price of our debt is clearly an understanding that the

3          transaction will effect it because the facilities that are

4          the subject of the lease transaction, the funds are

5          certificates, they are being left out of this

6          restructuring deliberately.  DHI's counsel, restructuring

7          counsel said on a lenders call next week, those facilities

8          that are out there, we are leaving them outside of the

9          ringfence because they provide no collateral, they provide

10         no value to the collateral package.  They have listed them

11         as substantially impaired.  They took a writeoff on them

12         years ago.  They are not doing anything.

13                 So it is already a credit risk and already

14         likely that we need to have this credit support by DHI

15         under the guaranty and it will be even more so because

16         it's basically being strangled.  It's like, you know, a

17         little bit -- they are taking all of the healthy, good

18         assets, and they are saying we have 14 great power plants.

19         We can get value off of those so we will move those away

20         from you, certificate holders, my clients, so that they

21         don't have to support the guaranty because it's a burden

22         to support these two nonperforming assets.  We are leaving

23         those out in the cold.  They are useless.

24                 THE COURT:  Counsel, I really think I understand

25         that part of it, all that you have been waxing eloquently

26         on.  I got that early on, but I am still struggling for an

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

1                     Proceedings

2       answer to my question.  Somehow, for some reason or other,

3       either I am not following you or you are evading my

4       question.  It's one of the two.

5               MS. SADIGHI:  I am not trying to evade the

6       questions.  So let me make sure I understand -- you are

7       asking the question:  What assets is DHI as guarantor

8       transferring?

9               THE COURT:  No, I am not getting to the

10      guarantor level.  I keep telling you that.  I understand

11      why you are here.  I get it.

12              What I am trying to understand is, tell me

13      something about, a level above that, the direct level

14      where you are, the relationship between -- what stands

15      under this particular loan, not what stands under the

16      guaranty, I get it, but what stands under the loan.

17              Do you understand me?

18              MS. SADIGHI:  I believe so.

19              The loans that are evidenced by our clients debt

20      were used to purchase the two power plants that are the

21      nonperforming assets that DHI is leaving out of the

22      restructure.

23              THE COURT:  Who is paying back the loan now?

24              MS. SADIGHI:  Currently the lessees of the

25      facilities are still paying the lease obligations.

26              THE COURT:  So they are performing?

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 11

1                          Proceedings

2                    MS. SADIGHIY:  They are performing, yes, but

3        they don't have to be in default for us to have a right to

4        enforce the guaranty.

5                    THE COURT:  I get that.

6                    MS. SADIGHI:  All right.

7                    THE COURT:  I really understand that you are

8        going after the guarantor.

9                    MS. SADIGHI:  Yes.

10                   THE COURT:  I said that to you how many times?

11       How many times have I told that you?

12                   MR. KUSHNER:  Several times.

13                   THE COURT:  You don't have to answer.

14                   Oh gosh.  All right.

15                   So you want to, you want to come back in a short

16       time to get a TRO.  I get it.

17                   MS. SADIGHI:  Yes, your Honor.  We would like to

18       come back next week, give DHI an opportunity to put in

19       opposition papers for us to reply and then have your Honor

20       hear the TRO.

21                   THE COURT:  Let me hear from DHI.

22                   MR. KURTZ:  Thank you, your Honor.

23                   Glenn Kurtz.

24                   I would like to cover three points, I think, and

25       I would like to start just with some underlying facts

26       which I don't think were accurately presented to your

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

1                          Proceedings

2        Honor.  And I think you asked some questions that go to

3        the heart of this.

4                But let me focus for a minute on the

5        reorganization itself, the restructuring, where it's been

6        mischaracterized that DHI is a guarantor, has some hard

7        assets and generating assets like plants and intends to

8        get rid of them in ringfencing.  That's simply not the

9        case.  DHI has nothing more than equity in a series of

10       other companies.  And there is going to be some movement

11       of companies to separate out coal assets from gas assets,

12       coal generated energy from gas generated energy in order

13       to make two financeable entities and some other

14       complicated and important matters.

15               At the end of today, before any restructuring is

16       happening, DHI has under it a series of companies and

17       under those series of companies are other companies and

18       ultimately revenue generating assets.  When the

19       restructuring closes DHI will have a series of companies

20       under it, and they will have a series of companies under

21       them that will hold the very same assets.  So there is no

22       change in the credit risk whatsoever.

23               THE COURT:  Who is the guarantor?

24               MR. KURTZ:  The guarantor is DHI.

25               THE COURT:  DHI.

26               You are saying that none of these assets are

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

1                          Proceedings

2      going anywhere?

3                   MR. KURTZ:   No.

4                   THE COURT:   But what I understood counsel to say

5      is that the restructuring would make it more difficult for

6      them to reach the hard assets that are now controlled,

7      owned, are now assets, to use your words, DHI has an

8      equity interest in, and so they are concerned that they

9      are, your phrase was, bankruptcy remote?

10                  MS. SADIGHI:   Bankruptcy remote ringfenced

11     assets.

12                  THE COURT:   That's what I heard her say.   I am

13     not so sure you responded to that.

14                  MR. KURTZ:   Let me respond to that.

15                  We know, what I did say, was that all of the

16     assets are still there.

17                  In terms of ringfencing, making an entity

18     bankruptcy remote, that does not do anything negative to

19     its value.   As it stands today DHI merely owns equity in

20     companies that own or have equity in other companies that

21     own the plants themselves.   The only way you could

22     monetize -- those are not responsible, those separate

23     companies are not responsible for repaying the debt here

24     in issue.   The only way you could get to those companies

25     would be to get a judgment in event of default, and there

26     is no default, there is no contemplated default.   You

Terry-Ann Volberg, Official Court Reporter,   CSR, CRR

Page 14

1                              Proceedings

2          would get a default, go to the guarantor.  There is no

3          default, no contemplated default or inability to pay the

4          debts as they come due.  Then you go to the guarantor, get

5          a judgment and then you have to execute.

6                  Now what you have to execute against is their

7          assets which would include equity in entities.  The value

8          of that equity would be no different.  It may be increased

9          to the extent that it was bankruptcy remote and ringfenced

10         because that would ensure that there was unnecessary cash

11         infusions made.

12                 By the way, bankruptcy remote and ringfencing,

13         that means there is an independent director that makes

14         determinations as to equity dividends outside of a

15         225 million-dollar dividend that's going to be paid.

16         Capital contributions will be made each and every year.

17         The way it will work, technically $400 million will be put

18         into DHI.  DHI will obtain another $225 million a year

19         from the subsidiaries.  And DHI will have a 20 percent

20         interest that's saleable in an entity that's worth, we are

21         talking about $3 billion.  It will have more than

22         sufficient assets to pay these debts when they become due.

23                 More significantly, it will have the same assets

24         as today, and, more significantly, there is nothing about

25         the value of the assets at DHI today that will change its

26         only equity.  If you want to foreclose on equity, you come

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

1                          Proceedings

2       to court to do so and that equity has a value.  You don't

3       get to just take money out of -- say we all had equity in

4       some corporation.  We don't get to go to the corporation

5       and go into the bank accounts.  All you can do is trade on

6       your equity.

7                     That's the background.

8                     The reason primarily that we have a concern, why

9       we oppose simply even a briefing schedule is a threshold

10      issue here which is that there is absolutely no standing.

11      Now I know you have not read the papers yet.  When you do

12      read the papers I think what you are going to be surprised

13      by is there is an entire omission about the very section

14      here at issue.

15                    Let me go through some basic facts.

16                    The plaintiffs are suing on a guaranty.  They

17      are not a party to the guaranty.

18                    They say they are a third-party beneficiary.

19                    THE COURT:  Hold on.

20                    MR. KURTZ:  The guaranty, your Honor, is at

21      Exhibit A of the papers that have being submitted by the

22      plaintiffs.

23                    THE COURT:  Exhibit A, you say?

24                    MR. KURTZ:  It may be worthwhile for me to pause

25      for a moment to note that these are very customary and

26      complicated indenture documents.  The way these work is

Page 16

| | |
|---|---|
| 1 | Proceedings |
| 2 | that you have a trustee who is able to bring a lawsuit, |
| 3 | seek remedies with respect to breaches.  Individual |
| 4 | holders of the debt have no such right and that is so an |
| 5 | individual holder who simply wants to receive a tip is |
| 6 | unable to highjack the facility and cause litigation at |
| 7 | everyone's expense and also with a fee shift. |
| 8 | That's how it starts. |
| 9 | Of course they are not suing under the actual |
| 10 | pass-through indenture which has the prohibition on |
| 11 | bringing the lawsuit.  What they are suing on is a |
| 12 | guaranty that's related to that document. |
| 13 | Now, we go to the guaranty and we see that it is |
| 14 | not in favor -- |
| 15 | THE COURT:  Wait a minute. |
| 16 | Is there a provision -- you have Exhibit A which |
| 17 | says guaranty.  Is that where I am supposed to be? |
| 18 | MR. KURTZ: I am in A. |
| 19 | THE COURT:  I wanted to look at the indenture |
| 20 | first. |
| 21 | MR. KURTZ:  I am not sure -- |
| 22 | MS. SADIGHI:  That's not an exhibit. |
| 23 | MR. KURTZ:  I am not sure that was presented to |
| 24 | your Honor although we will certainly be submitting it in |
| 25 | opposition. |
| 26 | THE COURT:  Is there a provision of the guaranty |

Page 17

1                            Proceedings

2    I need to look at?

3                MR. KURTZ:  Start with the first page.

4                The guaranty is not signed, it's not.  There is

5    no party here for the plaintiff or any of the certificate

6    holders.  As we see from the opening sentence it's a

7    guarantor "in favor of the guaranteed parties as defined

8    in Section 5 below."

9                And that actually works you through a series of

10   other documents.  But I will represent to the court, I am

11   sure that counsel will not dispute me on this, none of the

12   guaranteed parties includes certificate holders like

13   plaintiff or anyone else although is certainly includes

14   the trustee of the document that we will be submitting

15   along.

16               So this is not a guaranty in favor of the

17   plaintiffs.  This is a guaranty in favor of the trustee,

18   the party that's permitted to bring a lawsuit subject to

19   getting a majority of people to -- this is not where

20   thousands of individual certificate holders get to take

21   action under the document.  That's why you pay a trustee

22   to act.  It's the trustee that takes the actions that the

23   trustee deems appropriate with some exceptions if the

24   trustee declines to take action.

25               You then go, your Honor, to Section 7.1 which

26   tells you who it is that can sue for any breach of the

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 18

1                           Proceedings

2         guaranty.  That, of course, as one would expect includes

3         the guaranty party and only the guaranty party.

4               Now these are the provisions, your Honor, that

5         tell you who has the right to bring a claim for a

6         purported violation of the guaranty, and that wasn't

7         brought to your attention, but the only people who have

8         the right are the guaranty people which includes the

9         trustee under the pass-through trust we have been talking

10        about.  Certificate holders with very small holdings

11        cannot come in here and sue under these instruments.

12              There is an argument that's being made, you will

13        see it in the papers, that there are third-party

14        beneficiaries, but the law, and it's from the New York

15        Court of Appeals, in fact, plaintiffs rely on the very

16        same case we would rely on, tells you, it is under Fourth

17        Ocean Putnam Corp., 66 N.Y.2d 38, and that tells you, at

18        jump cite 45, that you're a third-party beneficiary with a

19        right to enforce a contract where no other party can

20        recover or the language of the contract otherwise and

21        clearly evidences an intent to permit enforcement.

22              Our contract has others that can enforce, the

23        right parties, and you don't become -- by being somebody

24        who gets a benefit from a document you have to take it as

25        it comes which has enforcement rights and limitations.  If

26        you became a third-party beneficiary of a nonrecourse note

Terry-Ann Volberg, Official Court Reporter,   CSR, CRR

Page 19

1                            Proceedings

2      you couldn't say I also want recourse.  You take them as

3      it comes.  This is how it comes, your Honor.  So there is

4      absolutely no standing to pursue a case here.

5              The third point I wanted to raise briefly is the

6      other provision of the guaranty that is at issue is

7      Section 4.2 --

8              THE COURT:  Unfortunately you only have about

9      another 60 seconds because at that point I will turn into

10     a pumpkin.

11             MR. KURTZ:  Before that happens, it prevents --

12             THE COURT:  4.2?

13             MR. KURTZ:  Yes.  You can look at it at your

14     leisure, but that's the provision and that's not changing.

15     As I have already mentioned, all the same assets.

16             Those plants that counsel referred to, those

17     plants don't -- are owned by DHI.  It's not a DHI transfer

18     at all.  I don't think we should be --

19             THE COURT:  Let me ask you this question.

20             We really are out of time.  I can't keep the

21     staff beyond 5:00 o'clock.  You have been reading the

22     papers.  You understand that.

23             So why is it that the court should not allow

24     them the opportunity, this expedited hearing, where I can

25     hear your arguments in greater detail?

26             We are here at the end of the day and they are

Terry-Ann Volberg, Official Court Reporter,   CSR, CRR

Page 20

```
1                      Proceedings

2       only here asking for a briefing schedule.  What is the

3       consequence of the court granting that relief?

4                  MR. KURTZ:  Your Honor, only the time that it

5       takes to go through an expedited briefing and argument

6       when there is absolutely no standing or threshold issue.

7                  I am not sure in my whole career I have objected

8       to timing, although, on a side note, I rather the timing

9       be pushed 24 hours in each case.

10                 THE COURT:  If you are so sure of this, why

11      don't you then agree to a briefing schedule focused on a

12      very limited issue which is standing?

13                 You don't have to spend -- I hear you when you

14      say, Judge, we don't have to get past -- I don't know

15      enough of the law, about the law because it requires me to

16      know not only the law, but, more importantly, your

17      documents.  I have got to go through them.  I have not had

18      a chance to go through them.  By setting up a briefing

19      schedule limited to the question of standing I can come up

20      to speed and have a reasonable conversation with both

21      sides.

22                 So why don't we limit the motion to that unless

23      you have some big reason why you can't do it.

24                 MS. SADIGHI:  It would depend on the timing,

25      your Honor, because if they want to oppose and brief the

26      issue on standing they are going to put in their
```

Terry-Ann Volberg, Official Court Reporter,   CSR, CRR

Page 21

1                          Proceedings

2       opposition tomorrow and we put our reply in Monday

3       morning, and that's decided Monday, because the problem

4       is --

5                 THE COURT:  I understand that.

6                 MS. SADIGHI:  Your Honor, I am sensitive to the

7       time so I won't go through the issues that I believe are

8       incorrect.

9                 THE COURT:  Do you have any problem doing that

10      quick turnaround given what we are talking about?

11                MR. KURTZ:  I am happy to proceed in that

12      fashion.

13                THE COURT:  Fine.  Let's do that.

14                What time tomorrow do you want?

15                MR. KURTZ:  6:00 o'clock.

16                (Continued on next page for certification.)

17

18

19

20

21

22

23

24

25

26

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR

Page 22

```
1                       Proceedings

2              THE COURT:  6:00 o'clock.

3              And then Monday morning first thing?

4              MS. SADIGHI:  Nine a.m. Monday morning.  If we

5         are heard --

6              THE COURT:  Contact my office tomorrow.  I can

7         give you a time Monday afternoon, probably.

8              MS. SADIGHI:  Thank you, your Honor.

9              MR. KURTZ:  Thank you, your Honor.

10             *              *              *

11                C E R T I F I C A T E

12   I, Terry-Ann Volberg, C.S.R., an official court reporter of the

13   State of New York, do hereby certify that the foregoing is a

14   true and accurate transcript of my stenographic notes.

15

16                     Terry-Ann Volberg, CSR, CRR
17                     Official Court Reporter.

18

19

20

21

22

23

24

25

26
```

Terry-Ann Volberg, Official Court Reporter,  CSR, CRR