**Hearing Date & Time: December 28, 2011 at 10:00 a.m. (ET)**
**Objection Deadline: December 20, 2011 at 12:00 p.m. (ET)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael S. Stamer
Arik Preis

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                        :

In re                              :    Chapter 11 Case

                                        :

DYNEGY HOLDINGS, LLC, *et al.*[1]    :    Case No. 11-38111 (CGM)

                                        :

        Debtors.               :    (Jointly Administered)

                                        :

------------------------------------------------------------- x

### NOTICE OF APPLICATION FOR EMPLOYMENT OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO NOVEMBER 18, 2011

**PLEASE TAKE NOTICE** that on December 10, 2011, the Official Committee of Unsecured Creditors of Dynegy Holdings, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed the Application for Employment of Blackstone Advisory Partners L.P. as Financial Advisor to the Official Committee of Unsecured Creditors, *Nunc Pro Tunc* to November 18, 2011 (the "Application").

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

**Hearing Date & Time: December 28, 2011 at 10:00 a.m. (ET)**
**Objection Deadline: December 20, 2011 at 12:00 p.m. (ET)**

**PLEASE TAKE FURTHER NOTICE that a hearing (the "Hearing") to consider the Application shall be held before the Honorable Cecelia G. Morris, United States Bankruptcy Judge, 355 Main Street, Poughkeepsie, New York 12601, on December 28, 2011 at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel may be heard.**

**PLEASE TAKE FURTHER NOTICE** that any responses to the Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (a) Sidley Austin LLP, counsel for the Debtors, 787 Seventh Avenue, New York, New York, 10019, Attn: Sophia Mullen, Esq.; (b) the Office of the United States Trustee for the Southern District of New York, 74 Chapel Street, Albany, New York, 12207, Attn: Eric Small, Trial Attorney and 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Susan Golden; (c) the Debtors, 1000 Louisiana Street, Suite 5800, Houston, Texas, 77002, Attn: Catherine B. Callaway; (d) proposed special counsel to the Debtors, White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, 49th Floor, Miami, Florida, 33131, Attn: Thomas E. Lauria; (e) Akin Gump Strauss Hauer & Feld LLP, proposed counsel for the Official Committee of Unsecured Creditors, One Bryant Park, New York, New York 10036, Attn: Ira S. Dizengoff, Esq.; (f) all those parties included on the Special Service List as defined in those certain Case Management

**Hearing Date & Time: December 28, 2011 at 10:00 a.m. (ET)**
**Objection Deadline: December 20, 2011 at 12:00 p.m. (ET)**

Procedures, approved by an order of this Court dated November 9, 2011; and (g) those parties that have requested notice pursuant to Bankruptcy Rule 2002 in each cases as to be received no later than **December 20, 2011 by 12:00 p.m. (prevailing Eastern Time)** (the "**Response Deadline**").

  **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Application, the Committee may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:  New York, New York
     December 10, 2011

           AKIN GUMP STRAUSS HAUER & FELD LLP

        By: */s/ Ira S. Dizengoff*
          Ira S. Dizengoff
          Michael S. Stamer
          Arik Preis
          Akin Gump Strauss Hauer & Feld LLP
          One Bryant Park
          New York, New York 10036
          (212) 872-1000 (Telephone)
          (212) 872-1002 (Facsimile)
          idizengoff@akingump.com
          mstamer@akingump.com
          apreis@akingump.com

          *Proposed Counsel for the Official Committee*
          *of Unsecured Creditors*

Hearing Date & Time: December 28, 2011 at 10:00 a.m. (ET)
Objection Deadline: December 20, 2011 at 12:00 p.m. (ET)

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Michael S. Stamer
Arik Preis

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re                                                         :   Chapter 11 Case
                                                              :
DYNEGY HOLDINGS, LLC, *et al.*[1]                             :   Case No. 11-38111 (CGM)
                                                              :
          Debtors.                                            :   (Jointly Administered)
                                                              :
------------------------------------------------------------- x

**APPLICATION FOR EMPLOYMENT OF BLACKSTONE ADVISORY PARTNERS
L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS NUNC PRO TUNC TO NOVEMBER 18, 2011**

The Official Committee of Unsecured Creditors (the "Committee") of Dynegy Holdings,

LLC, et al. (collectively, the "Debtors"), hereby files this Application for Authority to Employ

Blackstone Advisory Partners L.P. (the "Advisor") as Financial Advisor to the Committee (the

"Application") Nunc Pro Tunc to November 18, 2011.  This Application is supported by the

Affidavit of Michael Genereux in Support of the Application for Authority to Employ

Blackstone Advisory Partners L.P. as Financial Advisor to the Committee (the "Genereux

Affidavit"), attached hereto as **Exhibit A**, and the Affidavit of Robert J. Gentile in Support of the

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy
      Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy
      Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate
      headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson
      Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002.  The location of the service address
      for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550.  The location of the service
      address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

Application for Authority to Employ Blackstone Advisory Partners L.P. as Financial Advisor to the Committee (the "Gentile Affidavit"), attached hereto as **Exhibit B** (the Genereux Affidavit, together with the Gentile Affidavit, the "Affidavits"). In support thereof, the Committee respectfully states as follows:

## BACKGROUND

### A.   Chapter 11 Cases

1.     On November 7, 2011 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.     Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On November 9, 2011, the Court entered an order jointly administering these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for procedural purposes only.

3.     On November 16, 2011 (the "Committee Formation Date"), pursuant to Bankruptcy Code section 1102, the United States Trustee for the Southern District of New York (the "Trustee") appointed the Committee.[2] On the Committee Formation Date, pursuant to section 1103(a) of the Bankruptcy Code, the Committee selected Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") to serve as counsel to the Committee.

### B.   The Advisor's Background

4.     On November 18, 2011, the Committee formally interviewed and reviewed qualification materials and fee proposals submitted by a number of candidates, and at the

---

[2]   The Committee is currently comprised of the following entities: U.S. Bank National Association, Roseton OL, LLC, Wilmington Trust, National Association, Wells Fargo Bank, N.A. and Central Hudson Gas & Electric Corporation.

2

conclusion of this process the Committee selected the Advisor as its financial advisor.[3]  Such

selection was based on the Committee's determination that, in light of, among other things, the

Advisor's familiarity with the Debtors' businesses, the Advisor is the best candidate to provide

financial advisory services to the Committee.  The Committee also believes that the Advisor's

proposed compensation structure is competitive and appropriate given the Committee's

understanding of the facts and circumstances of these chapter 11 cases and the proposals

received from competing firms.

5.       The Advisor's affiliate, The Blackstone Group L.P. ("Blackstone"), is a leading

global alternative asset manager and provider of financial advisory services listed on the New

York Stock Exchange (ticker symbol BX).  The Advisor's restructuring and reorganization

advisory operation is one of the leading advisors to companies and creditors in restructurings and

bankruptcies.  The Advisor's professionals have extensive experience working with financially

troubled companies in complex financial restructurings.  Since 1991, the Advisor has advised on

more than 300 distressed situations, both in and out of court, involving more than $1 trillion of

total liabilities.  The Advisor has approximately 43 professionals in its restructuring and

reorganization practice possessing experience in a wide range of industries.  The members and

senior executives of the Advisor's restructuring and reorganization practice have assisted and

advised numerous chapter 11 debtors and creditors committees.  In particular, the members and

senior executives of the Advisor's restructuring and reorganization practice have provided

services to debtors and other constituencies in numerous chapter 11 cases, including, among

others, *AbitibiBowater, Aeromexico/Mexicana Airlines, Aquila, Inc., Big V Supermarkets (Shop

Rite), Centaur Gaming, Delphi Corporation, Delta Airlines, Enron Corporation, Entergy New*

---

3    Since its appointment, the Advisor has been actively representing the Committee as its proposed financial
     advisor.

3

*Orleans, Jefferson County (Alabama), Hawkeye Renewables, LLC, General Motors, Globalstar*

*L.P., The Goodyear Tire & Rubber Company, Integrated Resources, Inc., Kindred Healthcare*

*(formerly Vencor), Marvel Entertainment Group, Merisant Worldwide, Mirant Corp. ,Mrs.*

*Fields Cookies, Inc., Motorola Inc. (in the restructuring of Iridium), Natural Products Group*

*LLC, Nortek Inc., Pacific Lumber/Scotia Pacific Corp., SemGroup L.P., RCN Corporation, R.H.*

*Donnelley Corp., R. H. Macy & Co., State of Rhode Island (in the restructuring of Twin River*

*Casino), Smurfit-Stone Container Corp., Spansion Inc., Station Casinos Inc., Sumitomo Corp (in*

*the restructuring of Apex Silver Mines), Teligent, Inc., Terrestar Networks, Inc., Vitro Asset*

*Corp., Williams Communications Group, Winn-Dixie Stores, and Xerox Corporation.*

6.      The Committee believes that, because of the Advisor's experience and expertise,
its employment and retention is in the best interests of the Committee and all of the Debtors'
unsecured creditors.

7.      Accordingly, the Committee and Akin Gump have executed an engagement letter
with the Advisor (the "Engagement Letter"), along with the attached indemnification agreement
(the "Indemnification Agreement"), setting forth the terms and conditions pursuant to which the
Advisor agreed to provide financial advisory services to the Committee.  A copy of the
Engagement Letter is attached hereto as **Exhibit C**.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and
1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Application is a core
proceeding pursuant to 28 U.S.C. § 157(b).

4

9.	The statutory predicates for the relief sought herein are sections 328(a) and 1103 of title 11 of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York.

## RELIEF REQUESTED

10.	Pursuant to Bankruptcy Code sections 328(a) and 1103(a) and Bankruptcy Rules 2014 and 2016, the Committee requests authority to employ and retain the Advisor as its financial advisor, effective nunc pro tunc to November 18, 2011, in connection with the Debtors' chapter 11 cases.

## RETENTION OF THE ADVISOR

### A. Services to be Provided

11.	In furtherance of the Committee's statutory mandates to, *inter alia*, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business . . . and any other matter relevant to the case or to the formulation of a plan," 11 U.S.C. § 1103(c), and subject to further order of the Court and consistent with the Engagement Letter, it is expected that the Advisor will provide such advisory and investment banking services to the Committee and its legal advisors as they deem appropriate and feasible to advise the Committee in the course of these chapter 11 cases, including, but not limited to, the following services:

a)	assist in the evaluation of Dynegy's[4] businesses and prospects;

b)	analyze Dynegy's long-term business plan and related financial projections;

c)	evaluate Dynegy's financial liquidity, debt capacity and capital structure and evaluate alternatives to improve such liquidity;

d)	assist in the development of financial data and presentations to the Committee;

---

[4] "Dynegy" refers to the Debtors, along with, importantly, any non-debtor affiliates and subsidiaries, including Dynegy, Inc.

5

e)   value any consideration offered by either the Debtors or Dynegy to unsecured creditors (the "Unsecured Creditors") of the Debtors in connection with a Restructuring;

f)   analyze various restructuring scenarios and the potential impact of these scenarios on recoveries for Unsecured Creditors;

g)   participate in negotiations among the Committee, the Debtors, Dynegy and its other creditors, suppliers, lessors and other interested parties;

h)   assist in evaluating the treatment of leases by the Debtors;

i)   provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services, if requested by the Committee; and

j)   provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring,[5] as requested and mutually agreed.

12.   As noted above, and importantly, although the Advisor has been retained to provide services for the unsecured creditors of the Debtor entities, in light of the facts of these chapter 11 cases, the Advisor will be doing a significant amount of work understanding the value of, consideration provided by, and pre-petition transactions entered into by, the Debtors' non-debtor affiliates.

**B.   Compensation**

13.   Subject to the Court's approval, and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court and guidelines established by the United States Trustee, pursuant to the Engagement Letter, the Committee contemplates that the Advisor will be compensated as follows:

a)   a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of the Engagement Letter by both parties and additional installments of such Monthly Fee payable in

---

[5]   "Restructuring" is defined as, collectively, (i) any restructuring, reorganization, recapitalization and/or sale or other disposition of substantially all of the assets of the Debtors (whether or not pursuant to chapter 11 of the Bankruptcy Code) affecting existing or potential debt obligations or other claims and interests, including, without limitation, senior debt, junior debt, trade claims and general unsecured claims (collectively, the "Obligations") and/or (ii) any complete or partial repurchase, refinancing, extension of repayment by the Debtors or any of its affiliates of any of the Obligations

6

advance on each monthly anniversary of the Effective Date (as that term is defined in the Engagement Letter). Fifty percent of all Monthly Fees beginning with the seventh Monthly Fee payment shall be credited against the Restructuring Fee described below;

b)      an additional fee (the "Restructuring Fee") equal to $3,750,000. Except as otherwise provided in the Engagement Letter, a Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of the Debtors, upon an order of the Bankruptcy Court approving such sale or other disposition. The Restructuring Fee will be earned on completion of a Restructuring and will be payable, in cash, on the consummation of a Restructuring; and

c)      reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, and the reasonable fees and expenses of the Advisor's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

14.      The Committee understands that financial advisors such as the Advisor – as opposed to consultants or limited mandate financial advisors – do not charge for their services on an hourly basis. Instead, their fees consist of monthly "flat" fees and deferred compensation contingent upon the occurrence of specified events such as the confirmation of a chapter 11 plan. The deferred portion of the fee does not function as a bonus that is additional to the Advisor's monthly compensation. Rather, it represents a significant deferral of a very substantial portion of the Advisor's total compensation, to provide a large incentive that aligns the Advisor's interest with the Committee's and its constituencies' interest in achieving a resolution of the bankruptcy cases.

15.      As is the case with other investment bankers, the Advisor does not customarily maintain time records like those maintained by attorneys and other professionals compensated on an hourly basis. Moreover, the Committee has also been advised that requiring the Advisor to submit time entries for its restructuring personnel might result in inadvertent disclosure of

7

litigation strategy and would impose additional professional fees and expenses to scrub those entries to protect the Committee's work product and privileges and prevent collateral litigation over such issues in the event of any objections to, and discovery regarding, the completeness of such entries.  Accordingly, the Committee requests that the Advisor be excused from the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a) and/or Local Bankruptcy Rule 2016-1 or otherwise conform to a schedule of hourly rates for its professionals.

16.     Notwithstanding the foregoing, the Advisor will nonetheless maintain daily records, in summary format, which shall indicate the total hours incurred by each professional for each day, in half hour (.5) increments, and a brief description of the nature of the work performed, and present such records together with its fee applications.  The Advisor has requested that to the extent the Trustee has any objection to the scope, completeness or adequacy of the Advisor's time records or summaries thereof, the Trustee notify the Advisor of such objection within 30 days of receipt thereof or be deemed to have waived any such objection.

**C.      Indemnification**

17.     The Indemnification Agreement provides, and the Committee agrees, that the Debtors will indemnify and hold harmless the Advisor and its affiliates and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling the Advisor or any of the Advisor's affiliates (collectively, the "Indemnified Parties") for and against any losses, claims, damages, expenses and liabilities whatsoever, joint or several, related to, arising out of or in connection with the Advisor's engagement under the Engagement Letter, as more fully described in the Indemnification Agreement; provided, however, that the Debtors shall have no liability under the Indemnification

8

Agreement for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of the Advisor.

**BASIS FOR RELIEF**

18.     By this Application, the Committee requests that the Court approve the compensation arrangements set forth in the Engagement Letter pursuant to Bankruptcy Code section 328(a).  The compensation arrangements contained in the Engagement Letter are highly beneficial to the unsecured creditors as they provide the proper inducement for the Advisor to act expeditiously and prudently with respect to the matters for which it will be employed.  The compensation of the Advisor shall be subject to the standard of review set forth in Bankruptcy Code section 328 and not subject to any other standard of review, provided however that Advisor's retention may be subject to review by the Trustee under Bankruptcy Code section 330.

19.     The Committee has specifically selected the Advisor to serve as their financial advisor because of its extensive experience in advising Debtors, creditors and other constituents in similar large chapter 11 reorganizations such as those of Enron and Mirant.

20.     Pursuant to Bankruptcy Code section 328(a), the Committee may retain the Advisor on reasonable terms and conditions.  The Committee submits that the Advisor's terms of reimbursement and compensation as set out in the Engagement Letter are reasonable.  Courts in this district have, consistent with a practice that emerged after negotiations with several of the most frequently retained financial advisors held with the U.S. Trustee's office approximately ten years ago, consistently approved the retention of the Advisor and its affiliates under section 328(a).  *See, e.g., In re Terrestar Networks Inc.*, Case No. 10-15446 (Dec. 22, 2010); *In re Ambac Fin. Grp., Inc.*, Case No. 10-15973 (Dec. 21, 2010); *In re Delta Air Lines, Inc.*, Case No.

9

05-17923 (Dec. 15, 2006); *In re Horsehead Industries, Inc.*, Case No. 02-14024 (Apr. 15, 2003); *In re Flag Telecom Holdings Ltd.*, Case No. 02-11732 (July 9, 2002); *In re Audio Visual Services Corp.*, Case No. 01-16272 (Feb. 1, 2002).

21.     As part of the overall compensation to the Advisor, the Committee has also agreed to certain indemnification obligations set out under the terms of the Engagement Letter and the Indemnification Agreement.  The Committee believes that such provisions are customary and reasonable for financial advisors in chapter 11 bankruptcy cases.

22.     The Committee is cognizant of the fact that the Debtors' financial advisor, FTI Consulting, Inc. ("FTI"), has not asked this Court to authorize a success fee similar to the proposed Restructuring Fee.  Obviously, however, the Advisor is performing a much broader array of services than, and its engagement is much different than that of FTI.  As such, the Restructuring Fee for the Advisor is reasonable and appropriate.

23.     Specifically, the proposed scope of FTI's services in the Debtors' chapter 11 cases is narrow.  As reflected in the Debtors' Application for an Order Authorizing the Employment and Retention of FTI Consulting, Inc. as Financial Advisor and Consultant for the Debtors and Debtors In Possession *Nunc Pro Tunc* to the Petition Date [Docket No. 64] and the engagement letter attached thereto, the Debtors seek to retain FTI only to: (i) provide restructuring and bankruptcy advisory services as directed by counsel; and (ii) provide other services as mutually agreed.  This narrow scope differs significantly from the scope of services set forth in the Advisor's Engagement Letter to be provided by the Advisor, and as set forth above.  Moreover, it is telling of the very limited role that FTI has taken in these cases that FTI was only engaged on November 4, 2011, a mere three days before the filing of the pre-arranged bankruptcy.  Thus, it appears obvious that FTI played a minimal, if any, role in the negotiation of

10

the Restructuring Support Agreement and the Plan, and it is likely that FTI will continue to play a similarly insignificant role in connection with many of the most significant financial issues in the Debtors' chapter 11 cases, including plan structure (the design and negotiation of which was complete, or substantially complete, prior to FTI's involvement) and valuation.

24.     Indeed, valuation may be a central part of these chapter 11 cases – though not just valuation of the five Debtor entities for whom FTI will be retained.  Rather, the plan securities proposed to be issued under the proposed plan are all being donated to the Debtors from Dynegy, Inc. ("DI"), and the valuation supporting the issuance of these securities is therefore based solely upon knowledge of the assets of DI and the assets of the non-debtor affiliates securing the issuance of the plan securities. As such, this valuation likely has not, and will not, be performed by FTI, but rather by the financial adviser to DI.  The Advisor, however, will need to perform this valuation in order to advise the Committee on, among other things, the feasibility of the proposed plan and the value of the consideration being offered unsecured creditors under the proposed plan.

25.     In addition, and perhaps obviously, another valuation-related issue that likely falls outside of FTI's mandate relates to the review of the pre-petition transactions that were analyzed and ultimately approved by DI (and presumably DI's financial advisors).  Given the prior analysis by the Debtors' parent entity and its financial advisor, and given FTI's mandate, it is unlikely that FTI will perform the necessarily intensive review (or re-review, as from the perspective of DI and its financial advisors) of these transactions.  The Advisor, however, in the course of advising the Committee, will necessarily have to perform this review.

26.     The Committee submits that, regardless of the differences in services to be provided by the Debtors' financial advisor and the Advisor, the proposed retention on the terms

set forth in the Engagement Letter is reasonable and should be approved by the Court.

Nevertheless, it is important to understand the differences when considering this Application.

## DISINTERESTEDNESS; LACK OF ADVERSE INTEREST

27.     To the best of the Committee's knowledge and based on the Affidavits, the Committee submits that the Advisor is a "disinterested person" as that term is defined in section 101(14).  The Committee further submits that the Advisor neither represents nor holds any interest adverse to the Debtors' estates or the Committee in the matters upon which the Advisor is to be engaged, except as set forth in the Affidavits.  Further, except as set forth in the Affidavits and described below, the Advisor has no connection with any Debtor, creditor, other party in interest, their respective attorneys and accountants, the Trustee, or any person employed in the office of the Trustee.

28.     On August 13, 2010, certain investment funds that are managed by affiliates ("Affiliates") of the Advisor entered into a merger agreement (the "2010 Agreement") with DI, the ultimate parent company of the Debtors but not a debtor in these chapter 11 cases. Consummation of the 2010 Agreement was subject to various conditions, including shareholder approval, which was not obtained, and, as a result of such failure of conditions, the 2010 Agreement was terminated by DI in November 2010.   In the course of negotiating the 2010 Agreement, the Affiliates entered into a non-disclosure agreement with DI, which expires as of the date this Application is currently scheduled for hearing.  After the 2010 Agreement was signed, and before it was terminated, the Advisor provided services to the Affiliates concerning the proposed transaction.  Two persons who participated in giving such advice will be part of the Advisor's team in this engagement.  However, importantly, neither the Advisor nor its Affiliates provided any services to the Debtors or any of the Debtors' stakeholders regarding that failed

12

transaction. Additionally, no employee of the Advisor is currently working for, or will work for, DI during the pendency of these chapter 11 cases. Moreover, the advice which was given regarding the contemplated 2010 transaction is irrelevant – and indeed no longer applicable to – DI or the Debtors. As such, the Advisor does not believe the foregoing, which is wholly unrelated to these bankruptcy cases, will adversely affect its services as an advisor to the Committee during these cases or otherwise present a conflict.

29. The Committee has been informed that the Advisor is conducting an ongoing review of its files to ensure that no disqualifying circumstances arise, and if new relevant facts or relationships are discovered, the Advisor will supplement its disclosure to the Court.

30. The Committee submits that the appointment of the Advisor on the terms and conditions set forth in the Engagement Letter and herein is in the best interest of the Debtors, their creditors, and all parties in interest.

## **NOTICE**

31. No trustee or examiner has been appointed in these Chapter 11 Cases. Notice of this Motion has been given to: (i) the Office of the United States Trustee for the Southern District of New York; (ii) the Debtors, (iii) counsel to the Debtors, Sidley Austin LLP; (iv) proposed special counsel to the Debtors, White & Case LLP; (v) all those parties included on the Special Service List as defined in the Case Management Procedures approved by this Court; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002. Based on the foregoing, the Committee respectfully submits that no further notice is needed.

## **NO PRIOR REQUEST**

32. No previous application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Committee requests that the Court enter an order substantially in the form attached hereto as **Exhibit D**, authorizing the Committee to employ the Advisor as its financial advisor in these cases nunc pro tunc to November 18, 2011 and granting such other and further relief as the Court may deem just, proper and equitable.

DATED: December **8**, 2011

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DYNEGY HOLDINGS, LLC, ET AL.

By: Central Hudson Gas & Electric Corporation, solely in its capacity as Chair of the Committee and not in its individual capacity,

By: _P.A. Colbert_      12-8-2011
Name:  Paul A. Colbert
Title:  Associate General Counsel – Regulatory
        Affairs

# EXHIBIT A

**Affidavit of Michael Genereux**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11 Case
                                                              :
                                                              :
DYNEGY HOLDINGS, LLC, *et al.*[1]                             :    Case No. 11-38111 (CGM)
                                                              :
          Debtors.                                            :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

### AFFIDAVIT OF MICHAEL GENEREUX IN SUPPORT OF APPLICATION FOR EMPLOYMENT OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO NOVEMBER 18, 2011

STATE OF NEW YORK         )
                          ) ss.:
COUNTY OF NEW YORK        )

Michael Genereux, being duly sworn, deposes and says:

1.      I am a senior managing director of Blackstone Advisory Partners L.P. (the "Advisor").  The Advisor's affiliate, The Blackstone Group L.P. ("Blackstone"), is a global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange that maintains an office at 345 Park Avenue, New York, New York 10154.  I am authorized to execute this affidavit on behalf of the Advisor.

2.      I am familiar with the matters set forth herein and make this Affidavit pursuant to Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

and section 328 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in support of the Application for Employment of Blackstone Advisory Partners L.P. as Financial Advisor to the Official Committee of Unsecured Creditors <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to November 18, 2011 (the "<u>Application</u>").[2] Unless otherwise stated in the Affidavits, I have personal knowledge of the facts set forth herein.  To the extent any information disclosed herein requires amendment or modification upon the Advisor's completion of further review or as additional party-in-interest information becomes available to it, a supplemental affidavit will be submitted to the Court reflecting such amended or modified information.

### A.    The Advisor's Qualifications

3.    Blackstone is a leading global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange (ticker symbol BX).  The Advisor's restructuring and reorganization advisory operation is one of the leading advisory services providers to companies and creditors in restructurings and bankruptcies.   The Advisor provides a range of financial advisory services to clients involved in mergers and acquisitions, restructurings, securities offerings, debt and equity transactions and other complex situations requiring sophisticated financial expertise.

4.    The Advisor's professionals have extensive experience working with financially troubled companies in complex financial restructurings.  Since 1991, the Advisor has advised on more than 300 distressed situations, both in and out of bankruptcy proceedings, involving nearly $1 trillion of total liabilities.

### B.    Disinterestedness of Professionals

5.    The Advisor has performed a conflict search and based on the results, to the best of my knowledge, neither I, the Advisor, nor any member or employee thereof, insofar as I have

---

[2]    Capitalized terms used by not defined herein shall have the meaning ascribed to them in the Application.

been able to ascertain, is an insider of the Debtors, nor has any connection with the Debtors, their creditors, or other parties-in-interest as reasonably known to us prior to completion of our more detailed conflict search, except as described further in the Gentile Affidavit.

6.    To the best of my knowledge, the Advisor is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) and referenced by section 328(c) in that its members and employees:

a)    are not creditors, equity security holders or insiders of the Debtors;

b)    are not and were not, within two (2) years before the date of the filing of the Debtors' chapter 11 petitions, directors, officers, or employees of the Debtors; and

c)    do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

7.    As part of its diverse practice, the Advisor appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  Further, the Advisor or companies in which it has investments have in the past been, and may in the future be, represented by several attorneys and law firms in the legal community, some of whom may be involved in these proceedings.  In addition, the Advisor has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors' estates herein, and none are in connection with these cases.

8.    Affiliates of Blackstone serve as general partners for and manage a number of investment vehicles (collectively, the "Blackstone Funds").  The investors in the Blackstone

3

Funds include many large financial institutions, some of which may be parties in interest in the these chapter 11 cases, but also include affiliates of Blackstone and various of its officers and employees (collectively, the "Employees"), including Employees working on these chapter 11 cases. In their capacity as limited partners, these Employees have personal investments in the Blackstone Funds, but have no control over investment decisions or over business decisions made at the Blackstone Funds.

a)      Among other things, some of the Blackstone Funds are (a) passive investors in other funds (the "Investment Funds") managed by a number of nontraditional money managers, (b) active direct investors in a number of portfolio companies (the "Equity Funds"), (c) active direct investors in real estate including leases, mortgages, fee interests, real estate investment trusts, real estate securities and businesses which are substantially related to real estate development, construction, and operation ("BREP"), and (d) investors in a variety of debt instruments and mezzanine loans or similar securities, including close-end publicly listed vehicles ("Income Funds"). In addition, an affiliate of Blackstone serves as manager of two publicly traded closed-end mutual funds (the "Mutual Funds").

b)      As would be the case with respect to a mutual fund investment, neither the Advisor, Blackstone, its affiliates, the Blackstone Funds nor the Employees have any control over the investments made by the Investment Funds in which the Blackstone Funds are invested, including investment purchases, investment divestitures, and the timing of such activities.

c)      Some of the Investment Funds may invest in distressed debt and may hold or acquire debt of the Debtors or their affiliates. To avoid any appearance of impropriety, where the Blackstone Funds may receive information that the Investment Funds are investing in companies in which Blackstone is acting as an advisor, Blackstone maintains internal procedures designed to preclude the dissemination of such information to the Employees who are providing such advisory services. No Employee working on these chapter 11 cases receives information concerning the individual investments of the Investment Funds in which the Blackstone Funds are invested.

d)      Blackstone maintains investment control over the Equity Funds, BREP, and the Income Funds (the "Managed Funds").

e)      It is possible that companies owned, in whole or in part, by some of the Blackstone Funds may have a relationship with the Debtors or otherwise appear on the list of Parties-In-Interest (as defined below). The Debtors may purchase or supply goods and services to, and may be an obligor to, or a creditor of, one or

4

more companies that Blackstone is advising or in which some of the Blackstone Funds have an investment.  These relationships are unrelated to the services Blackstone intends to provide to the Committee.  Blackstone maintains that these relationships are subject to the internal confidentiality procedures and thus have no meaningful bearing on the Advisor's ability to advise the Committee.  The Advisor does not possess enough information concerning the dealings of the numerous companies in which some of the Blackstone Funds have an investment to detect connections between such companies and the Debtors or parties in interest.

9.      Robert J. Gentile, Vice President in the Compliance Group (the "Compliance Manager") of the Advisor is responsible for, among other things, the day-to-day-operation of the compliance function at Blackstone.  As part of that job, he maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "Restricted List") of companies with which the Advisor or one of its investment vehicles is doing business, either as an advisor, an investor, or with respect to which the Advisor is in possession of material nonpublic information or has entered into a confidentiality agreement.  The Compliance Manager of Blackstone and his staff have received a list of parties-in-interest provided by the Debtors, as supplemented by Akin Gump, (the "Parties-In-Interest") attached as **Schedule 1** to the Gentile Affidavit, which is attached as **Exhibit C** to the Application, and have compared this to the Advisor's Restricted List to determine the existence of any possible conflicts (the "Conflict Check").  The results of this Conflict Check are disclosed in the Gentile Affidavit.

10.     The Advisor does not believe that any of its involvement with any of the parties included in the Parties-In-Interest List will adversely affect the Debtors in any way.  The Advisor does not believe that any potential relationship it may have with any of the Parties-In-Interest would interfere with or impair the Advisor's representation of the Committee.

11.     The Advisor will periodically review its files during the pendency of its engagement by the Committee to ensure that no conflicts or other disqualifying circumstances

5

exist or arise.  If any new relevant facts or relationships are discovered or arise, the Advisor will use reasonable efforts to identify such further developments and will promptly supplement its disclosure.

**C.     Professional Services to Be Rendered and the Advisor's Compensation**

12.     The Committee and Akin Gump have executed the Engagement Letter with the Advisor, setting forth the terms and conditions pursuant to which the Advisor agreed to provide financial advisory services to the Committee.

13.     Based on its experience and independent analysis, the Advisor believes that its fee and expense structure described in the Engagement Letter and summarized in the Application is fair and reasonable.  The Advisor believes that the fee and expense structure appropriately reflects the nature and scope of the services to be provided by the Advisor, the Advisor's substantial experience with respect to financial advisory services, and the fee structures typically utilized by the Advisor and other leading financial advisors which do not bill their clients on an hourly basis.

14.     The financial advisory services the Advisor has been engaged to provide to the Committee are as follows:

a)     assist in the evaluation of Dynegy's[3] businesses and prospects;

b)     analyze Dynegy's long-term business plan and related financial projections;

c)     evaluate Dynegy's financial liquidity, debt capacity and capital structure and evaluate alternatives to improve such liquidity;

d)     assist in the development of financial data and presentations to the Committee;

e)     value any consideration offered by either the Debtors or Dynegy to unsecured creditors (the "Unsecured Creditors") of the Debtors in connection with a Restructuring;

---

[3]   "Dynegy" refers to the Debtors, along with, importantly, any non-debtor affiliates and subsidiaries, including Dynegy, Inc.

6

f)    analyze various restructuring scenarios and the potential impact of these scenarios on recoveries for Unsecured Creditors;

g)    participate in negotiations among the Committee, the Debtors, Dynegy and its other creditors, suppliers, lessors and other interested parties;

h)    assist in evaluating the treatment of leases by the Debtors;

i)    provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services, if requested by the Committee; and

j)    provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring,[4] as requested and mutually agreed.

15.    The Advisor has performed a conflicts check, which included a search with respect to a list of creditors and equity holders and other interested parties which collectively included: (i) the Debtors and affiliates; (ii) 5% shareholders of the common stock of Dynegy, Inc. ("DI"); (iii) current and former directors, officers and managers of the Debtors and DI; (iv) the thirty (30) largest unsecured creditors of the Debtors (on a consolidated basis); (v) the Debtors' major trade partners; (vi) the indenture trustee (and its predecessor in interest) for each series of the prepetition unsecured notes and debentures issued by Debtor Dynegy Holdings, LLC (collectively, the "Notes"); (vii) members of an ad hoc committee comprised of certain holders of the Notes (the "Ad Hoc Committee"); (viii) professionals retained by the Ad Hoc Committee; (ix) U.S. Bank, N.A., as indenture trustee (and its predecessor in interest) in respect of the prepetition pass-through certificates; (x) known holders of the prepetition pass-through certificates; (xi) other parties in connection with the sale/leaseback agreements; (xii) professionals retained by the parties in connection with the sale/leaseback agreements; (xiii) other prepetition lenders of the Debtors and their agents; (xiv) the Debtors' major insurance

---

[4] "Restructuring" is defined as, collectively, (i) any restructuring, reorganization, recapitalization and/or sale or other disposition of substantially all of the assets of the Debtors (whether or not pursuant to chapter 11 of the Bankruptcy Code) affecting existing or potential debt obligations or other claims and interests, including, without limitation, senior debt, junior debt, trade claims and general unsecured claims (collectively, the "Obligations") and/or (ii) any complete or partial repurchase, refinancing, extension of repayment by the Debtors or any of its affiliates of any of the Obligations

carriers, reinsurance carriers, agents and brokers; (xv) the Debtors' major employee benefit providers; (xvi) other relevant professionals; (xvii) parties to material litigation with the Debtors; (xviii) unions representing employees of the Debtors; (xix) regulator and other governmental authorities governing the Debtors' businesses; (xx) judges on the United States Bankruptcy Court for the Southern District of New York; (xxi) attorneys employed by the Office of the United States Trustee for Region 2, Southern District of New York; (xxii) certain landlords of the Debtors; (xxiii) major customers of the Debtors; (xxiv) shippers used by the Debtors; (xxv) parties who have filed a notice of appearance in these cases as of November 21, 2011; (xxvi) members of the Committee; and (xxvii) other parties.  A copy of the list of the parties searched by the Advisor is attached as Schedule 1 to the Gentile Affidavit (collectively, the "Searched Parties").

**D.    The Advisor's Compensation**

16.    The Committee and the Advisor have agreed that the Advisor will receive the following as remuneration for its services, as more fully described in the Engagement Letter:

a)    a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of the Engagement Letter by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date (as that term is defined in the Engagement Letter).  Fifty percent of all Monthly Fees beginning with the seventh Monthly Fee payment shall be credited against the Restructuring Fee described below;

b)    an additional fee (the "Restructuring Fee") equal to $3,750,000.  Except as otherwise provided in the Engagement Letter, a Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of the Debtors, upon an order of the Bankruptcy Court approving such sale or other disposition.  The Restructuring Fee will be earned on completion of a Restructuring and will be payable, in cash, on the consummation of a Restructuring; and

8

c)   reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, and the reasonable fees and expenses of the Advisor's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

**E.   General Disclosures**

17.   Certain employees of the Advisor may have in the past represented, may presently, and likely in the future will represent, creditors or equity security holders of the Debtors in matters unrelated to these cases.  The Advisor believes that its representation of such creditors or equity security holders in such unrelated matters will not affect its representation of the Committee in these proceedings.  The Advisor has determined that it has not represented any creditors or equity security holders in matters related to this bankruptcy case, except as set forth herein.  Except for the continuing representation of the Committee and the parties identified in the Gentile Affidavit, neither I nor the Advisor has represented or will represent any entity in connection with these cases, and neither I nor the Advisor will accept any fee from any other party or parties in these cases, except as stated herein.

18.   I represent that the foregoing constitutes a complete and full disclosure of all prior and current representation of clients which have any connection to this case.

19.   The retention of the Advisor to perform the services described in the Application is in the best interests of the Committee.

20.   I further state that, to the best or my knowledge, information and belief, the proposed engagement of the Advisor is not prohibited by Bankruptcy Rule 5002.

21.   I further state that this affidavit is submitted in accordance with Bankruptcy Rule 2014.

State of _New York_

County of _New York_

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: December _9_ , 2011

_____
Michael Genereux

Sworn to and subscribed before
me this _9rth_ day of December, 2011

_____
Notary Public

MICHELE J. MEADE
Notary Public, State of New York
No. 01ME6060702
Qualified in New York County
Commission Expires July 2, 2015

# EXHIBIT B

## Affidavit of Robert J. Gentile

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11 Case
                                                              :
                                                              :
DYNEGY HOLDINGS, LLC, *et al.*[1]                             :    Case No. 11-38111 (CGM)
                                                              :
          Debtors.                                            :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

**AFFIDAVIT OF ROBERT J. GENTILE IN SUPPORT OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS' APPLICATION FOR
AUTHORITY TO RETAIN AND EMPLOY BLACKSTONE ADVISORY
PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, *NUNC PRO TUNC* TO NOVEMBER 16, 2011**

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

Robert J. Gentile, being duly sworn, deposes and says:

1.      I am a Vice President in the Legal and Compliance Department of Blackstone

Advisory Partners L.P. (the "Advisor") and I am one of the professionals responsible for, among

other things, the day-to-day operation of the compliance function at the Advisor and its affiliate,

The Blackstone Group L.P. ("Blackstone").  As part of my job, I am one of the professionals

involved in maintaining, for purposes of monitoring and avoiding conflicts of interest, a list of

companies with which the Advisor, Blackstone or one of its affiliates is doing business, either as

an advisor or an investor or with respect to which the Advisor, Blackstone or one of its affiliates

---

[1]  The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy
    Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy
    Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate
    headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson
    Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address
    for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service
    address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

is in possession of material, nonpublic information or has entered into a confidentiality agreement.

2.      On November 22, 2011, my colleagues and I received a list of Parties-In-Interest ("Parties-In-Interest") from the Debtors, which is attached hereto as Schedule 1.

3.      Blackstone is a multi-faceted, international financial advisory and asset management firm with numerous legally distinct and separate affiliates. (Blackstone and its affiliates other than the Advisor are referred to herein as the "Advisor Affiliates"). In that regard, the Advisor is operated as a distinct entity, separated from Blackstone and the Advisor Affiliates.

4.      Because the Advisor is the only Blackstone entity being retained by the Debtors, and because the Advisor is not involved with the businesses of the Advisor Affiliates, we have researched only our records relating to the Advisor to determine connections with the Parties-In-Interest.

5.      The Blackstone Legal and Compliance Department has undertaken a review of the Parties-In-Interest to determine possible conflicts relating to the Debtors and, subject to the foregoing limitations and the following disclosures, no material conflicts have been found.

   a)      Advisor Affiliates serve as general partners for and manage a number of private investment funds (the "Blackstone Funds"), of which the investors are primarily hundreds of unrelated third parties. From time to time, there may be Parties-In-Interest that are investors in the Blackstone Funds. Furthermore, from time to time, a Blackstone Fund may hold, directly or through a pooled investment vehicle, an interest in a security or other instrument issued by or related to Parties-In-Interest.

   b)      Some of the financial institutions that are Parties-In-Interest and certain other Parties-In-Interest may have co-invested with Blackstone Funds or may have extended credit or provided investment banking services to Blackstone, the Advisor Affiliates, the Blackstone Funds or companies owned by the Blackstone Funds. Such Parties-In-Interest may engage in one or more of the foregoing activities in the future. The Advisor and its personnel have no control of, or involvement with, any of these activities.

2

c)   From time to time, Advisor Affiliates may enter into confidentiality agreements with Parties-In-Interest. The Advisor and its personnel have no control of, involvement with or knowledge of these agreements.

d)   The Advisor is currently engaged by counsel to provide financial advisory services to Deutsche Bank Trust Company Americas as Administrative Agent for the Lenders to Station Casinos, Inc. Three of the lenders are JPMorgan Chase Bank N.A., Pension Benefit Guaranty Corporation and Wells Fargo Bank, N.A. each of whom are Parties-In-Interest. The engagement is wholly unrelated to the Debtors and these chapter 11 cases and the Advisor does not believe the interests of the Debtors or their estates are adversely affected by the engagement.

e)   The Advisor has been engaged to provide advisory services by counsel to an ad hoc committee of creditors in the Lehman Brothers Special Financing, Inc. bankruptcy proceeding. Two of the members of such committee are Credit Suisse AG., Cayman Islands Branch and Oaktree Capital Management, L.P., each of which are Parties-In-Interest. The engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by the engagement.

f)   The Advisor has been engaged to provide financial advisory services by Davis Polk & Wardwell LLP, as counsel to JPMorgan Chase Bank, N.A. as administrative agent for the lenders in the bankruptcy proceedings of the Tribune Company. The engagement is wholly unrelated to the Debtors and these chapter 11 cases and the Advisor does not believe the interests of the Debtors or their estates are adversely affected by the engagement.

g)   The Advisor has been engaged to provide advisory services by counsel to the Official Committee of Unsecured Creditors of Vitro Asset Corp, et al bankruptcy proceeding. One of the members of such committee is the U.S. Bank National Association, a Trustee and Party-In-Interest. Wilmington Trust FSB and Pension Benefit Guaranty Corporation are two other Parties-In-Interest. The engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by the engagement.

h)   The Advisor has been engaged to provide financial advisory services to Wilkie Farr & Gallagher LLP, as counsel to JPMorgan Investment Management Inc. ("JPM"), one of the Parties-In-Interest, in JPM's capacity as an investment advisor to holders of select notes of NBC Acquisition Corporation and the Nebraska Book Corporation. The engagement is wholly unrelated to the Debtors and these chapter 11 cases, and the Advisor does not believe that the interests of the Debtors or their estates are adversely affected by the engagement.

i)   On August 13, 2010, certain investment funds that are managed by affiliates ("Affiliates") of the Advisor entered into a merger agreement (the "2010 Agreement") with Dynegy, Inc. ("DI"), the ultimate parent company of the Debtors but not a debtor in these chapter 11 cases. Consummation of the 2010 Agreement was subject to various conditions, including shareholder approval, which was not obtained, and, as a result of such failure of conditions, the 2010

3

Agreement was terminated by DI in November 2010. In the course of negotiating the 2010 Agreement, the Affiliates entered into a non-disclosure agreement with DI, which expires as of the date this Application is currently scheduled for hearing. After the 2010 Agreement was signed, and before it was terminated, the Advisor provided services to the Affiliates concerning the proposed transaction; two persons who participated in giving such advice will be part of the Advisor's team in this engagement – however, importantly, neither the Advisor nor its Affiliates provided any services to the Debtors or any of the Debtors' stakeholders regarding that failed transaction. Additionally, no employee of the Advisor is currently working for, or will work for, DI during the pendency of these chapter 11 cases. Moreover, the advice which was given regarding the contemplated 2010 transaction is irrelevant – and indeed no longer applicable to – DI or the Debtors. As such, the Advisor does not believe the foregoing, which is wholly unrelated to these bankruptcy cases, will adversely affect its services as an advisor to the Committee during these cases or otherwise present a conflict.

j) Advisor Affiliates presently invest in debt and equity instruments of the Debtors and their affiliates through a variety of privately managed investment funds, of which the investors are primarily numerous unrelated third parties. The Advisor and its personnel are not involved with the business of the Advisor Affiliates and have no control of or involvement with any of their activities. The Advisor does not believe that the interests of the Debtors or their estates are adversely affected by the investment activities of the Advisor Affiliates.

6. The Advisor currently holds no direct or indirect interest in any debt or equity securities of the Debtors.

7. The Advisor has performed reasonable due diligence for possible conflicts with Parties-In-Interest in the Debtors' chapter 11 cases. The following is a list of the categories that the Advisor has searched with respect to the Parties-In-Interest:

(a) Debtors;
(b) Direct and Indirect Non-Debtor Subsidiaries of the Debtors;
(c) Other Non-Debtor Affiliates of the Debtors;
(d) Holders of 5% or Greater of the Common Stock of Dynegy Inc.;
(e) Current and Former Directors, Managers and Officers of the Debtors and Dynegy Inc.;
(f) Thirty Largest Consolidated Unsecured Creditors;
(g) Debtors' Major Trade Partners;
(h) Indenture Trustee for the Debtors' Prepetition Notes and Debentures;
(i) Known Holders of the Prepetition Notes and Debentures;
(j) Professionals Retained by the Ad Hoc Committee of Noteholders;

4

(k)     Indenture Trustee in Respect of the Prepetition Pass-Through
        Certificates;
(l)     Known Pass-Through Certificate Holders;
(m)     Parties in Connection with the Sale/Leaseback Agreements;
(n)     Professionals Retained by Parties in Connection With the
        Sale/Leaseback Agreements;
(o)     Other Prepetition Lenders and Their Agents;
(p)     Major Insurance Carriers, Reinsurance Carriers, Agents and Brokers;
(q)     Major Employee Benefit Providers;
(r)     Other Professionals;
(s)     Litigation Parties;
(t)     Unions Representing Employees of the Debtors;
(u)     Regulatory and Other Governmental Authorities;
(v)     Judges On The United States Bankruptcy Court for the Southern
        District of New York;
(w)     Office of the United States Trustee for Region 2;
(x)     Certain Landlords of the Debtors;
(y)     Debtors' Major Customers;
(z)     Debtors' Major Shippers;
(aa)    Other Parties;
(bb)    Parties Filing a Notice Of Appearance (As Of 11/21/11);
(cc)    Members of the Committee.

8.     The list of Parties-In-Interest was provided by the Debtors and may have changed without our knowledge and may change during the term of the Debtors' chapter 11 cases. The Advisor will update this Affidavit should it be learned that a relationship should be disclosed and a supplemental Affidavit with such disclosure shall be filed.

*[Remainder of page intentionally left blank]*

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December _9_, 2011

Robert Gentile

Sworn to and subscribed before me this _9th_ day of December, 2011

Notary Public

Dian F. Mills
Notary Public - State of New York
No. 01M16231303
Qualified in Nassau County
My Commission Expires November 22, 2014

## Schedule I

## CONFLICTS LIST- DYNEGY HOLDINGS, LLC, et al.

### DEBTORS
(including former names)

Dynegy Danskammer, L.L.C.
Dynegy Holdings, LLC (f/k/a Dynegy Holdings Inc., f/k/a NGC Corporation, f/k/a Natural Gas Clearinghouse)
Dynegy Northeast Generation, Inc.
Dynegy Roseton, L.L.C.
Hudson Power, L.L.C.

### DIRECT AND INDIRECT NON-DEBTOR SUBSIDIARIES OF THE DEBTORS
(including former names and affiliates)

Allegheny Hydro No. 1
Allegheny Hydro No. 2
Allegheny Hydro No. 8, Inc.
Allegheny Hydro No. 8, L.P.
Allegheny Hydro No. 9, Inc.
Allegheny Hydro No. 9, L.P.
Allegheny Hydro Partners, LTD
Allegheny Number 6 Hydro Partners
Baldwin Expansion Generating Corp.
Baldwin Expansion LLC
Black Mountain CoGen, Inc.
Black Thunder Member, Inc.
Blue Ridge Generation LLC
Blue Ridge Generation, Inc.
Bluegrass Generation Company, L.L.C.
Bridgeport Energy LLC
Cal Hydro Electric Power Company
Calcasieu Power, Inc.
Calcasieu Power, LLC
Casco Bay Energy Company, LLC
Casco Bay Energy II, Inc.
Chesapeake Power, Inc.
Chickahominy Generating Company
Chickahominy Power, LLC
Cogen Lyondell, Inc.

Cogen Power, Inc.
Cogen Power, L.P.
DGPI, Inc.
DMG Enterprises, Inc.
DMT G.P., LLC
DMT Holdings, Inc.
DMT L.P., L.L.C.
DMT Supply Holdings, LLC
DMT Supply LLC
DMT Supply LP
DPC Colombia-Opon Power Resources Company
DPC II Inc.
DPC Power Resources Holding Company
Dynegy Administrative Services Company
Dynegy Arlington Valley Real Estate, LLC
Dynegy Arlington Valley, LLC (f/k/a LSP Arlington Valley, LLC, f/k/a Duke Energy Arlington Valley. LLC)
Dynegy Bridgeport, LLC (f/k/a LSP Bridgeport, LLC, f/k/a Duke Bridgeport, LLC)
Dynegy Broadband Marketing and Trade
Dynegy Cabrillo II LLC
Dynegy Canada Core LTD
Dynegy Canada Gas Marketing Ltd.
Dynegy Canada Inc.
Dynegy Catlin Member, Inc.
Dynegy Cayman Columbia I, LTD
Dynegy Cayman Columbia II, LTD
Dynegy Cayman Columbia III, LTD
Dynegy Cayman Columbia IV, LTD
Dynegy Cayman Columbia V, LTD
Dynegy Cayman Holdings, LTD
Dynegy Coal Trading & Transportation, L.L.C.
Dynegy Customer Care, L.L.C.
Dynegy Energy Marketing , LP
Dynegy Energy Services, Inc.
Dynegy Engineering, Inc.
Dynegy Equipment, LLC (f/k/a LSP Equipment, LLC)

11-38111-cgm    Doc 177    Filed 12/10/11    Entered 12/10/11 17:19:05    Main Document
Pg 37 of 61

Dynegy Europe Limited

Dynegy Falcon Holdings Inc.

Dynegy Finance Limited

Dynegy Gas Holdco, LLC

Dynegy Gas Imports, LLC

Dynegy Gas Investments Holdings, LLC

Dynegy Gas Investments, LLC

Dynegy GasCo Holdings, LLC

Dynegy Gen Finance Co, LLC (f/k/a LSP Gen Finance Co, LLC)

Dynegy Generation Holdings, LLC

Dynegy Global Energy, Inc.

Dynegy Global Liquids (Cayman), LTD

Dynegy Global Liquids, Inc.

Dynegy GP Inc.

Dynegy Holding Company, L.L.C.

Dynegy I.T., Inc.

Dynegy Kendall Energy, LLC (f/k/a LSP Kendall Energy, LLC)

Dynegy Kendall Holding, LLC (f/k/a LSP Kendall Holding, LLC)

Dynegy Latin America, Inc.

Dynegy Liquids (Canada) Ltd.

Dynegy Marketing and Trade, LLC (f/k/a Dynegy Marketing and Trade)

Dynegy Mexico, Inc.

Dynegy Mexico, S.A. de C.V.

Dynegy Midstream G.P., Inc.

Dynegy Midstream Holdings, Inc.

Dynegy Mohave, LLC (f/k/a LSP Mohave, LLC)

Dynegy Morro Bay Holdings, LLC (f/k/a LSP Morro Bay Holdings, LLC)

Dynegy Morro Bay, LLC (f/k/a LSP Morro Bay, LLC, f/k/a Duke Energy Morro Bay, LLC)

Dynegy Moss Landing, LLC (f/k/a LSP Moss Landing, LLC, f/k/a Duke Energy Moss Landing, LLC)

Dynegy Mulberry, LLC (f/k/a LSP Mulberry, LLC)

Dynegy New York Holdings Inc.

Dynegy Oakland Holdings, LLC (f/k/a LSP Oakland Holdings, LLC)

Dynegy Oakland, LLC (f/k/a LSP Oakland, LLC, f/k/a Duke Energy Oakland, LLC)

Dynegy Oasis Energy, Inc.

Dynegy Ontelaunee Holding, LLC (f/k/a LSP Ontelaunee Holdings, LLC)

Dynegy Operating Company

Dynegy Parts and Technical Services, Inc.

Dynegy Plum Point Holdings, LLC (f/ka LSP Plum Point Holdings, LLC)

Dynegy Plum Point, LLC (f/k/a LSP Plum, LLC)

Dynegy Power Generation Inc. (f/k/a Dynegy Power Generation, LLC, f/k/a LSP Power Generation , LLC))

Dynegy Power Holdings, Inc.

Dynegy Power Investments, Inc.

Dynegy Power Management Services, Inc.

Dynegy Power Management Services, L.P.

Dynegy Power Marketing, LLC (f/k/a Dynegy Power Marketing, Inc.)

Dynegy Power Project I, L.L.C.

Dynegy Power Project II, L.L.C.

Dynegy Power Services, Inc.

Dynegy Power, LLC (f/k/a Dynegy Power Corp.)

Dynegy Renaissance Power, Inc.

Dynegy Sandy Creek Holdings, LLC

Dynegy Services Kendall LLC (f/k/a LSP Services Kendall, LLC)

Dynegy Services Plum Point, LLC (f/k/a LSP Services Plum Point, LLC)

Dynegy Services, Inc.

Dynegy South Bay Holdings, LLC (f/k/a LSP South Bay Holdings, LLC)

Dynegy South Bay, LLC (f/k/a LSP South Bay, LLC, f/k/a Duke Energy South Bay, LLC)

Dynegy South Bridge, LLC (f/k/a LSP South Bridge, LLC, f/k/a DEGM Holdings, LLC)

Dynegy Storage Technology and Services GP, LLC

Dynegy Storage Technology and Services, Inc.

Dynegy Storage Technology and Services, LP

Dynegy Strategic Investments GP, L.L.C.

Dynegy Strategic Investments LP, Inc.

Dynegy Strategic Investments, L.P.

2

Dynegy Technology Capital Corp.

Dynegy UK Limited

Dynegy Upper Holdings, L.L.C.

Dynegy Utility Services LLC

Dynegy Voice Communications Inc.

ED Services, LLC

EXRES Power Holdings, Inc.

EXRES SCH, Inc.

Florida Mercantile Power, Inc.

Foothills Generating, L.L.C.

Foothills Generation, Inc.

Gallia Hydro Partners Limited Partnership

Georgia Mercantile Power, Inc.

Griffith Energy LLC

Griffith Holdings LLC

Heard County Power, L.L.C.

HEP Cogen, Inc.

IGC (Gencoe) Corp.

IGC (UK) Corp.

IGC Global, Inc.

IGC Grimes County, Inc.

IGC Grimes Frontier, Inc.

IGC International II, Inc.

IGC International, Inc.

IGC Maranon, LLC

IGC UCH, LLC

K Road Ventures, L.P.

Kendall Energy II, LLC

Kendall Power Holdings Inc.

Kendall Power LLC

Mitex, Inc.

Montrose Partners, Ltd.

Morro Bay Mutual Water Company

Moss Landing Mutual Water Company

NC Development & Design Company, LLC

Nevada Cogeneration Associates No. 2

NGC Colombia, S.A.

NGC Columbia, Inc.

NGC Corporation Capital Trust I

NRG Rocky Road LLC

Oak Glen Power LLC

Oak Glen Power, Inc.

Oakland Energy II, LLC

Ontelaunee Energy II, LLC

Ontelaunee Power Operating Company, LLC

P.T. Dynegy Indonesia

Palmetto Power, L.L.C. (f/k/a Dynegy Cabrillo I LLC)

Pecan Grove Generating Inc.

Pecan Grove Generating LLC

Penn Hydroelectric, Inc.

Plum Point Energy Associates, LLC

PPEA Holding Company, LLC

Renaissance Pipeline Company, LLC

Renaissance Power, LLC

Riverside Generating Company, L.L.C.

Riverside Generation, Inc.

Rockingham Power, L.L.C.

Rocky Road Power, LLC

Rolling Hills Generating, L.L.C.

Rolling Hills Generation, Inc.

RRP Company (f/k/a Dynegy RRP Company, Inc.)

Sandy Creek Energy Associates, L.P.

Sandy Creek GP, LLC

Sandy Creek Holdings, LLC

Sandy Creek Services, LLC

Sithe Energies Marketing, Inc.

Sithe Energies Power Services, Inc.

Sithe Energies U.S.A., Inc.

Sithe Energies, Inc.

Sithe Energy Marketing, L.P.

Sithe Northeast Generating Company, Inc.

Sithe Power Holdings, Inc.

Sithe Power Marketing, Inc.

Sithe Ventures LLC

Sithe/Independence Equity LLC

Sithe/Independence Funding Corp.

Sithe/Independence Industrial Energy Park, Inc.

Sithe/Independence Industrial Energy Park, L.P.

Sithe/Independence LLC

Sithe/Independence Operations LLC

Sithe/Independence Power Partners, L.P.

South Bay Replacement Project, LLC

Southwest Power Partners, LLC

Termo Santander Holding (ALPHA), L.L.C.

3

Termo Santander Holding, L.L.C.

Tilton Energy LLC

**OTHER NON-DEBTOR AFFILIATES
OF THE DEBTORS**
(including former names and affiliates)

Abernathy Energy II, LLC

BG Holdings, Inc.

Bridgeport Energy II, LLC

Destec Labuan Holdings, Ltd.

DLS Power Development Company, LLC

DLS Power Holdings, LLC

Dynegy Coal Holdco, LLC

Dynegy Coal Investments Holdings, LLC

Dynegy Communications Clearinghouse, Inc.

Dynegy Gen Finance Co, LLC

Dynegy Illinois Inc.

Dynegy Inc. (f/k/a Dynegy Acquisition, Inc.)

Dynegy Midwest Generation, LLC (f/k/a Dynegy Midwest Generation, Inc.)

Dynegy Power Generation Inc. (f/k/a Dynegy Power Generation, LLC)

ECI Energy, Ltd.

Egan Wind 1

Egan Wind 2

Egan Wind 3

Egan Wind 4

Elk Run Energy Associates, LLC

Five Forks Energy Associates, LLC

Great Basin Transmission, LLC

Havana Dock Enterprises, LLC

High Plains Energy Associates, LLC

IGC-STI Guna Company

Illinova Business Enterprises, Inc.

Illinova Corporation

Illinova Electric Partners, Inc.

Illinova Energy Partners, Inc.

Illinova Generating Company

Illinova Insurance Company

Illinova Resource Recovery, Inc.

Keeney Creek Energy Associates, LLC

Longleaf Energy Associates, LLC

Plum Point Energy Associates II, LLC

Topaz Energy Associates, LLC

West Deptford Associates GP, Inc.

West Deptford Energy Associates, L.P

West Deptford Energy, LLC

White Pine Energy Associates, LLC

**HOLDERS OF 5% OR
GREATER OF THE COMMON STOCK
OF DYNEGY INC.**

Franklin Resources, Inc.

Habrok Capital Management LLP

Icahn Capital L.P.

Seneca Capital Investments, L.P.

**CURRENT AND FORMER
DIRECTORS, MANAGERS AND
OFFICERS OF THE DEBTORS
AND DYNEGY INC.**

Layne J. Albert

Mario Alonso

James T. Bartlett

Charles E. Bayless

Timothy A. Beverick

David W. Biegler

J. Kevin Blodgett

Jason A. Buchman

Carolyn J. Burke

Linda W. Bynoe

Catherine B. Callaway

Carolyn M. Campbell

Thomas D. Clark

Charles C. Cook

Julius Cox

Richard W. Eimer

Thomas W. Elward

Michael J. Embler

Richard J. Evans

Robert C. Flexon

Melessa T. Fox

Clint C. Freeland

Stephen A. Furbacher

Garry J. Galt

Michael Gray

Victor E. Grijalva

Patricia A. Hammick

Frank E. Hardenbergh

4

E. Hunter Harrison
Jason Hochberg
Kevin Hole
James Horsch
Kevin T. Howell
James W. Ingram
Vincent J. Intrieri
Rocco Ivanovich
Alisa B. Johnson
Amy E. Jolley
Gregory D. Kingsley
Biren Kumar
Lynn A. Lednicky
Heidi D. Lewis
Norelle Lundy
George Mazanec
Keith McFarland
Tracy A. McLauchlin
Samuel Merksamer
James E. Miller
Holli C. Nichols
Kimberly M. O'Brien
Robert C. Oelkers
Felix Pardo
Kenneth Pollmann
Anne D. Psencik
Rebecca B. Roberts
Michael Sanders
Claudia G. Santos
Mikhail Segal
Howard B. Sheppard
John B. Sousa
Kent R. Stephenson
Carolyn J. Stone
Brian K. Tamplen
James Tharp
Daniel P. Thompson
William L. Trubeck
Eric P. Watts
Raymond I. Wilcox
Bruce A. Williamson
Peter J. Wilt
Rudi Zipter

## THIRTY LARGEST CONSOLIDATED
## UNSECURED CREDITORS

All Mechanical Services Inc.
Allstate Security Inc.
Alstom Power Inc.

Ashley Mechanical Inc.
Benshaw Inc.
Buck Consultants LLC
Central Hudson Gas and Electric Corp.
Dutchess Tekcon Industries Inc.
Facilities Maintenance Corp. of Florida
Mid Island Electrical Supply
Newburgh Windustrial
Otis Elevator Co.
Perreca Electric Co. Inc.
Phase II Diesel Inc.
Pozament Corporation
PSC Industrial Outsourcing LP
Synapse Risk Management LLC
Tara Plant Construction Inc.
Verizon
Warex Terminals Corporation
Water Quality Management Inc.
Welch Industrial Supply Co. Inc.
Wilmington Trust Co
Zinter Handling Inc.

## DEBTORS' MAJOR
## TRADE PARTNERS

BG Energy Merchants, LLC
Inter-American Coal S.A.

## INDENTURE TRUSTEE FOR
## THE DEBTORS' PREPETITION
## NOTES AND DEBENTURES
(including predecessor in interest)

Wilmington Trust Company (successor to
JPMorgan Chase Bank, N.A.)

## KNOWN HOLDERS
## OF THE PREPETITION
## NOTES AND DEBENTURES

AEGON USA Investment Management, LLC
Avenue Capital Group
Avenue CDP-Global Opportunities Fund, L.P.
Avenue International Master, L.P.
Avenue Investments, L.P.
Avenue Special Situations Fund VI (Master),
L.P.
Caspian Alpha Long Credit Fund, L.P.
Caspian Capital L.P.

5

Caspian Capital Partners, L.P.
Caspian Select Credit Master Fund Ltd.
Caspian Solitude Master Fund, L.P.
Franklin Advisers, Inc.
Mariner LDC
Oaktree Capital Management, L.P.
Oaktree Capital Management Fund II
Oaktree High Yield Fund, L.P.
Oaktree High Yield Fund II, L.P.
Oaktree Huntington Investment Fund, L.P.
Oaktree Opportunities Fund VII Delaware, L.P.
Oaktree Opportunities Fund VIII Delaware, L.P.
Oaktree Opportunities Fund VIII (Parallel 2),
L.P.
Oaktree Value Opportunities Fund Holdings,
L.P.
OCM High Yield Trust
Venor Capital Management LP
Western Reserve Life Assurance Co. of Ohio

### PROFESSIONALS RETAINED BY THE AD HOC COMMITTEE OF NOTEHOLDERS

Paul, Weiss, Rifkind, Wharton & Garrison, LLC
Houlihan Lokey Capital, Inc.

### INDENTURE TRUSTEE IN RESPECT OF THE PREPETITION PASS-THROUGH CERTIFICATES
(including predecessor in interest)

U.S. Bank, N.A. (successor trustee to The Chase
Manhattan Bank)

### KNOWN PASS-THROUGH CERTIFICATE HOLDERS

Arrowgrass Capital Partners
LibertyView Capital Management, LLC
LibertyView Credit Opportunities Fund, L.P.
LibertyView Credit Select Fund, L.P.
LibertyView Funds, L.P.
LibertyView Special Opportunities Fund II, L.P.
LibertyView Special Opportunities Fund, L.P.

### PARTIES IN CONNECTION WITH THE SALE/LEASEBACK AGREEMENTS

Danskammer OL LLC
Danskammer OP LLC
PSEG Resources Inc.
PSEGR Newburgh Holdings LLC
Public Service Enterprise Group Inc. (PSEG)
Resources Capital Management Corporation
Roseton OL LLC
Roseton OP LLC
Wilmington Trust Company

### PROFESSIONALS RETAINED BY PARTIES IN CONNECTION WITH THE SALE/LEASEBACK AGREEMENTS

Cadwalader, Wickersham & Taft LLP
Connolly Bove Lodge & Hutz LLP
Jenner & Block LLP
Lowenstein Sandler PC
Moelis & Company
Steptoe & Johnson LLP

### OTHER PREPETITION LENDERS AND THEIR AGENTS

Bank of New York Mellon
Credit Suisse AG, Cayman Islands Branch
JPMorgan Chase Bank

### MAJOR INSURANCE CARRIERS, REINSURANCE CARRIERS, AGENTS AND BROKERS

ACE American Insurance Company
ACE Bermuda Insurance Ltd.
ACE Global Markets Syndicate
AEGIS
AEGIS Power and Utility Consortium
Syndicate
Allianz Global Risks U.S. Insurance Company
Allied World Assurance Company (U.S.) Inc.
Allied World National Assurance Co.
Arch Insurance Company
Arch Insurance Company (Europe) Ltd.
Arch Reinsurance Ltd.

6

Argenta Syndicate Management Limited
Argo International Syndicate
Argo Re Ltd.
Ark Syndicate
Ascot Syndicate
Associated Electric & Gas Insurance Services Ltd
Atrium Underwriters Limited
AXIS Insurance Company
Beazley Insurance Company, Inc.
Berkley Insurance Company
Brit Syndicate Limited
Broadgate Syndicate Limited
Catlin Underwriters Agencies Limited
Chartis Excess Limited
Chartis Property & Casualty Company
Continental Casualty Company
Energy Insurance Mutual
Faraday Syndicate
Federal Insurance Company
General Security Indemnity Company of Arizona
Great American Insurance Company
Great Lakes Reinsurance
Hardy Syndicate
HCC Specialty Insurance Company
Hiscox Syndicate Limited
Houston Casualty Company
Houston Specialty Insurance Company
Illinois National Insurance Company
Infrassure Ltd.
Liberty Mutual Insurance Company
Managing Agent Partners Limited
Millennium Consortium
Monitor Liability Managers, LLC
Munich Reinsurance America
National Specialty Insurance Company
National Union Fire Insurance
Navigators Insurance Company
RJ Kiln & Co Limited
RSUI Indemnity Company
Skuld P & I Club
Starr Surplus Lines Insurance Company
Swiss Re International SE
The Travelers Indemnity Company
Torus Insurance (UK) Ltd
Travelers Casualty & Surety Company
Travelers Special Services, LTD
tsm Power Consortium
US Specialty Insurance Company
Westchester Fire Insurance Company

XL Specialty Insurance Company

## MAJOR EMPLOYEE BENEFIT PROVIDERS

Benefit Concepts, Inc.
Blue Cross Blue Shield of Illinois (a division of Health Care Service Corporation)
Buck Consultants, LLC
Delta Dental Insurance Company
E*TRADE Financial Corporate Services, Inc.
Employee Network, Inc.
Medco Health Solutions, Inc.
Prime Therapeutics LLC
The Prudential Insurance Company of America
The Vanguard Group, Inc.
Vision Service Plan
Zurich American Insurance Company

## OTHER PROFESSIONALS

Sidley Austin LLP
Baker Botts LLP
Dewey & Leboeuf LLP
Epiq Bankruptcy Solutions, Inc.
Epiq Systems, Inc.
FTI Consulting, Inc.
Haynes & Boone, LLP
Kehr and Harrison LLP
King & Spalding
Lazard Frères & Co.
Locke Lord Bissell & Lidell LLP
White & Case LLP

## LITIGATION PARTIES

Avenue CDP-Global Opportunities Fund, L.P.
Avenue International Master, L.P.
Avenue Investments, L.P.
Avenue Special Situations Fund VI (Master), L.P.
Caspian Alpha Long Credit Fund, L.P.
Caspian Capital Partners, L.P.
Caspian Select Credit Master Fund Ltd.
Caspian Solitude Master Fund, L.P.
Danskammer OL LLC
Mariner LDC
Oaktree Capital Management Fund II
Oaktree High Yield Fund, L.P.
Oaktree High Yield Fund II, L.P.

Oaktree Huntington Investment Fund, L.P.
Oaktree Opportunities Fund VIII Delaware, L.P.
Oaktree Opportunities Fund VIII (Parallel 2),
L.P.
Oaktree Value Opportunities Fund Holdings,
L.P.
OCM High Yield Trust
Resources Capital Management Corporation
Roseton OL LLC
U.S. Bank National Association
Western Reserve Life Assurance Co. of Ohio

**UNIONS REPRESENTING
EMPLOYEES OF THE DEBTORS**

International Brotherhood of Electrical Workers
Local 320-AFL-CIO

**REGULATORY AND OTHER
GOVERNMENTAL AUTHORITIES**

California Franchise Tax Board
Environmental Protection Agency (EPA)
Federal Energy Regulatory Commission (FERC)
Maine Revenue Board
National Marine Fisheries Services
New York Independent System Operator
(NYISO)
New York State Department of Environmental
Conservation
New York State Department of Taxation and
Finance
New York State Public Service Commission
(NYPSC)
Pennsylvania Bureau of Corporation Taxes
Pennsylvania Insurance Department, Office of
Corporate and Financial Regulation
Pension Benefit Guaranty Corporation
State of Nevada Department of Taxation
Texas Comptroller of Public Accounts

**JUDGES ON THE UNITED
STATES BANKRUPTCY
COURT FOR THE SOUTHERN
DISTRICT OF NEW YORK**

Stuart M. Bernstein
Shelley C. Chapman
Robert D. Drain

Robert E. Gerber
Martin Glenn
Arthur J. Gonzalez
Allan L. Gropper
Sean H. Lane
Burton R. Lifland
Cecelia G. Morris
James M. Peck

**OFFICE OF THE UNITED STATES
TRUSTEE FOR REGION 2**

Victor Abriano
Janine L. Aschauer
Catletha Brooks
Maria Catapano
Danny A. Choy
Stephanie B. Crowder
Tracy Hope Davis
Karen DiPofi
Elizabeth C. Dub
Marilyn Felton
Myrna R. Fields
Jill M. Flinton
Elisabetta Gasparini
Susan Golden
Amy E. Hutzel
Nadkarni Joseph
Andrea Kazyaka-Rowe
Nazar Khodorovsky
Anna M. Martinez
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Serene Nakano
Savitri Nguyen
Diana M. Nuss
Lisa Penpraze
Carol A. Porter
Kevin Purcell
Linda A. Riffkin
Andrea B. Schwartz
Paul K. Schwartzberg
John Segreto
Sylvester Sharp
Eric J. Small
Andy Velez-Rivera
Jennifer L. Weston
Rhonda J. Zdanowicz

8

Greg M. Zipes

### CERTAIN LANDLORDS OF THE DEBTORS

1000 Louisiana, LP
First Columbia – 4LA, LLC
Metropolitan Life Insurance Company
Metropolitan Tower Realty Company, Inc.

### DEBTORS' MAJOR CUSTOMERS

New York Independent System Operator
(NYISO)

### DEBTORS' MAJOR SHIPPERS

A. Dewey Pile
ABF Trucking
CSL International Inc.
CSX Transportation, Inc.

Dagen Trucking
Estes Express
Federal Express
Freight Value
New Penn (YRC Worldwide)
Pangaea Logistics Inc.
UPS
Ward Trucking
Yellow Freight (YRC Worldwide)

### OTHER PARTIES

Chevron USA Inc.
Entergy Nuclear Operations Inc.
Glencore Ltd.
IESO (Independent Electricity System
Operator)
Iroquois Gas Transmission System, LP
ISO-NE (ISO New England)
LS Power Associates, L.P.
Northeast Power Coordinating Council
Northern Trust
North American Electric Reliability Council
Peabody COALSALES, LLC
Peabody COALTRADE International Limited
Pennsylvania/New Jersey/Maryland Power
Pool
PJM Interconnection

Time Warner Cable
Town of Newburgh Water & Sewer
Trinity Services Inc.
WPPI Energy

### PARTIES FILING A NOTICE OF APPEARANCE (AS OF 11/21/11)

New York Independent System Operator,
Inc.
Fiduciary Counselors Inc.
BP Corporation North America Inc.
Danskammer OL, LLC
Roseton OL, LLC
Resources Capital Asset Recovery, L.L.C.
Series DR and Series DD
The Resource Capital Management
Corporation
Wells Fargo Bank, N.A.

### MEMBERS OF THE COMMITTEE

Central Hudson Gas and Electric Corp.
Roseton OL, LLC
U.S. Bank, National Association
Wilmington Trust, National Association
Wells Fargo Bank, N.A.

**Exhibit C**

**Engagement Letter**



November 18, 2011

Members of the Official Committee of
Unsecured Creditors of Dynegy Holdings, LLC
as listed in Exhibit A

Dear Members:

This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Partners L.P. ("Blackstone") and the Official Committee of Unsecured Creditors (the "Committee") of Dynegy Holdings, LLC (together with any co-debtor affiliates and subsidiaries, the "Company", and together with any non-debtor affiliates and subsidiaries, "Dynegy"), in cooperation with Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee, regarding the retention of Blackstone on an exclusive basis by the Committee effective as of November 18, 2011 (the "Effective Date") as its financial advisor for the purposes set forth herein.

Under this Agreement, Blackstone will provide financial advisory services to the Committee in connection with a possible restructuring of certain liabilities of the Company and will assist the Committee in analyzing, structuring, negotiating and effecting a Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "Restructuring" shall mean, collectively, (i) any restructuring, reorganization, recapitalization and/or sale or other disposition of substantially all of the assets of the Company (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) affecting existing or potential debt obligations or other claims and interests, including, without limitation, senior debt, junior debt, trade claims and general unsecured claims (collectively, the "Obligations") and/or (ii) any complete or partial repurchase, refinancing, extension of repayment by the Company or any of its affiliates of any of the Obligations.

The financial advisory services to be rendered by Blackstone will include the following:

(a)     Assist in the evaluation of Dynegy's businesses and prospects;

(b)     Analyze Dynegy's long-term business plan and related financial projections;

(c)     Evaluate Dynegy's financial liquidity, debt capacity and capital structure and evaluate alternatives to improve such liquidity;

(d)     Assist in the development of financial data and presentations to the Committee;

(e)     Value any consideration offered by either the Company or Dynegy to unsecured creditors (the "Unsecured Creditors") of the Company in connection with a Restructuring;

The Blackstone Group LP
345 Park Avenue  New York NY  10154
T 212 583 5000  F 212 583 5749
www.blackstone.com

(f)     Analyze various restructuring scenarios and the potential impact of these scenarios on recoveries for Unsecured Creditors;

(g)     Participate in negotiations among the Committee, the Company, Dynegy and its other creditors, suppliers, lessors and other interested parties;

(h)     Assist in evaluating the treatment of leases by the Company;

(i)     Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services, if requested by the Committee; and

(j)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management."

It is agreed, subject to Bankruptcy Court approval, that the Company will pay the following fees to Blackstone for its financial advisory services under this Agreement (all fees and expenses payable to Blackstone pursuant to this Agreement shall be payable solely by the Company).

(i)     a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date.  Fifty percent of all Monthly Fees beginning with the seventh Monthly Fee payment shall be credited against the Restructuring Fee described below;

(ii)    an additional fee (the "Restructuring Fee") equal to $3,750,000.  Except as otherwise provided herein, a Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of Dynegy, upon an order of the Bankruptcy Court approving such sale or other disposition.   The Restructuring Fee will be earned on completion of a Restructuring and will be payable, in cash, on the consummation of a Restructuring, and

(iii)    reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The Committee shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Company's Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 328 and 1103 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Committee under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code, provided that Blackstone's retention may be subject to review by the U.S. Trustee under section 330. The Committee shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Blackstone shall only be required to maintain daily records which shall indicate total hours incurred by each professional for each day and a brief description of the nature of the work performed each day and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75.

The Committee acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Committee during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Committee of Blackstone's services hereunder will not be able to be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services.    The Committee also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak

load" issues for the firm.  In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Committee acknowledges and agrees that the fee arrangements hereunder (including the Monthly Fee and the Restructuring Fee) are reasonable.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process and except as might be specifically and separately agreed to, for a period of one year from the date hereof, Blackstone shall keep confidential all material non-public information provided to it by or at the request of the Company or the Committee, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Committee will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information").  The Committee recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company or the Committee is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's, or the Committee's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Committee's other professional advisors or, if appropriate in the Committee's judgment, in any

filings in a Chapter 11 proceeding) without the prior written consent of Blackstone.  All services, advice and information and reports provided by Blackstone to the Committee in connection with this assignment shall be for the sole benefit of the Committee and shall not be relied upon by any other person.

The Company will indemnify Blackstone and its agents, representatives, members and employees.  A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

We also agree that neither Blackstone nor any of its agents, representatives, members, or employees shall have any liability (whether direct or indirect, in contract or tort or otherwise), to the Committee for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.

In the event that, as a result of or in connection with Blackstone's engagement for the Committee, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company (and not any members of the Committee) will reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request.  Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Committee or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that at any time prior to the expiration of 12 months following the termination of this Agreement a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated.

Neither the Company nor any of the members of the Committee appears on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor are they prohibited parties according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this letter shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Confidential Information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P.  Should the Confidential Information be made available to a Representative of The Blackstone Group L.P. and its affiliates who is not involved in restructuring advisory business of The Blackstone Group L.P., such Representative shall be bound by this letter in accordance with its terms.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Committee hereby agrees that any action or proceeding brought against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought in the Bankruptcy Court handling such case.  The Committee irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings.  The Committee hereby irrevocably waives, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____

Name:    Michael J. Genereux
Title:    Senior Managing Director

Accepted and Agreed to as
of the date first written above:

By: AKIN GUMP STRAUSS HAUER
& FELD LLP, solely in its capacity as legal
counsel to the Committee

By: _____

Name:    Ira S. Dizengoff
Title:    Partner

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DYNEGY
HOLDINGS, LLC, ET AL.

By: CENTRAL HUDSON GAS & ELECTRIC
CORPORATION, solely in its capacity as Chair
of the Committee and not in its individual capacity

By: _____ 12-8-2011

Name:    Paul A. Colbert
Title:    Associate General Counsel –
Regulatory Affairs

ATTACHMENT A

November 18, 2011

Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY  10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that the Official Committee of Unsecured Creditors (the "Committee") (as defined in the Engagement Letter) has engaged Blackstone Advisory Partners L.P. ("Blackstone") to advise and assist in connection with the matters referred to in the letter of agreement dated as of November 18, 2011 (the "Engagement Letter").  In consideration of Blackstone's agreement to act at the Committee's request in connection with such matters, the Committee agrees that the Company (as defined in the Engagement Letter) shall indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by the Company or the Committee.  The Company will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto), in such proportion as is

appropriate to reflect the relative fault of each of you and the Company, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter.

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not the Company or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding. In the event that the Company seeks to settle or compromise or consent to the entry of any Judgment, the Company agrees that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify the Company will not relieve the Company from any liability which the Company may have hereunder or otherwise, except to the extent that such failure materially prejudices the Company's rights.  If the Company so elects or is requested by such Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the Company fails to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to the Company to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of the Company (as defined in the Engagement Letter) under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and

inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and such Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This Agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

EXHIBIT A


*WELLS FARGO BANK, N.A.*

**James R. Lewis**
Vice President, Corporate Trust Services
45 Broadway
12th Floor
New York, NY 10006


*WILMINGTON TRUST, N.A.*

**Steven Cimalore**
Vice President, Corporate Capital Markets
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615


*U.S. BANK NATIONAL ASSOCIATION*

**James J. McGinley**
Managing Director
461 Fifth Avenue
25th Floor
New York, NY 10017


*PUBLIC SERVICE ENTERPRISE GROUP (ROSETON OL, LLC)*

**Scott S. Jennings**
President of PSEG Global L.L.C., Vice President of M&A and Development of PSEG Services
80 Park Plaza, T20
Newark, NJ 07102


*CENTRAL HUDSON GAS & ELECTRIC CORPORATION*

**Paul A. Colbert**
284 South Avenue
Poughkeepsie, NY 12601
Associate General Counsel – Regulatory Affairs

# Exhibit D

## Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                                              :
In re                                                         :    Chapter 11 Case
                                                              :
DYNEGY HOLDINGS, LLC, *et al.*[1]                             :    Case No. 11-38111 (CGM)
                                                              :
                Debtors.                                      :    (Jointly Administered)
                                                              :
------------------------------------------------------------- x

### ORDER GRANTING APPLICATION FOR EMPLOYMENT OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS NUNC PRO TUNC TO NOVEMBER 18, 2011

Upon the Application for Employment of Blackstone Advisory Partners L.P. as Financial Advisor to the Official Committee of Unsecured Creditors Nunc Pro Tunc to November 18, 2011 (the "Application"),[2] filed on December 10, 2011; and upon consideration of the affidavits of Michael Genereux and Robert J. Gentile filed in support thereof (the "Affidavits"), and the Court being satisfied with the representations made in the Application and the Affidavit that the Advisor is a disinterested person to the extent required by section 101(14), that the Advisor represents no interest adverse to any of the Debtors' estates and that the Advisor's employment is necessary and in the best interests of the Committee; and it appearing that proper and adequate notice has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing, therefore, it is ORDERED, ADJUDGED, AND DECREED, that:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

[2] Capitalized terms used by not defined herein shall have the meaning ascribed to them in the Application.

1. The Application is granted to the extent provided herein.

2. Pursuant to Bankruptcy Code sections 328(a) and 1103, the Committee is authorized to employ and retain the Advisor nunc pro tunc to November 18, 2011 as its financial advisor in the above-captioned bankruptcy cases on the terms set forth in the Application, the Engagement Letter and the Affidavits.

3. All terms and conditions of the Engagement Letter attached to the Application as **Exhibit C** are reasonable terms and conditions of employment and are approved.  To the extent there is a conflict between the terms of the Engagement Letter and this Order, this Order shall prevail.

4. The Monthly Fees and Restructuring Fee, each as defined in the Engagement Letter, shall be subject to the standard of review set forth in Bankruptcy Code section 328(a) shall not be subject to the standard of review set forth in Bankruptcy Code section 330; provided, however, that the Trustee shall be entitled to review and object to applications by the Advisor for payment of the Monthly Fee and Restructuring Fee as set forth in the Engagement Letter under the standards set forth in Bankruptcy Code section 330, provided that such review shall not be based upon the number of hours worked by the Advisor in connection with this engagement.

5. Except to the extent otherwise provided herein, the Advisor shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to Bankruptcy Code sections 330 and 331, the Bankruptcy Rules, Local Bankruptcy Rules, orders of this Court, and the U.S. Trustee's guidelines for compensation and reimbursement of expenses.

6. The Advisor and its professionals shall be excused from any requirement to maintain detailed time records in connection with the services rendered pursuant to the

2

Engagement Letter; provided, however, that the Advisor will nonetheless maintain daily records, in summary format, which shall indicate the total hours incurred by each professional for each day, in one half hour (.5) increments, and a brief description of the nature of the work performed, and present such records together with its fee applications.

7.    To the extent the U.S. Trustee has any objection to the scope, completeness or adequacy of the Advisor's time records or summaries thereof, the Trustee shall notify the Advisor of such objection within 30 days of receipt thereof or be deemed to have waived any such objection.

8.    The Advisor shall not be entitled to the reimbursement of attorneys fees and expenses other than in connection with indemnification, as set forth in paragraph 11 below.

9.    All requests by the Advisor for the payment of indemnification as set forth in the Engagement Letter shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall the Advisor be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

10.    In no event shall the Advisor be indemnified if the Debtors or a representative of the estates assert a claim for, and a court determines by final order that such claim arose out of, the Advisor's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

11.    In the event that the Advisor seeks reimbursement from the Debtors for attorneys' fees from the Debtors pursuant to the Letter Agreement, the invoices and supporting time records

3

from such attorneys shall be included in the Advisor's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's Guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

12.     The Committee is authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

13.     This Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this Order.

Dated: _____, 2011

_____
THE HONORABLE CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE

4