UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DYNEGY HOLDINGS, LLC, et al., | Case No. 11- 38111 (CGM) |
| | Jointly Administered |
| Debtors. | |

**SUPPLEMENTAL DECLARATION OF KENT R. STEPHENSON IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT THE LEASE DOCUMENTS**

I, Kent R. Stephenson, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the Executive Vice President of each of the debtors in the above-captioned chapter 11 cases (the "Debtors"). I have served in this role since August 2011.

2. I submit this supplemental declaration ("Declaration") in support of the Motion of the Debtors Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 for Entry of an Order Authorizing the Debtors to Reject the Lease Documents (the "Motion"),[1] filed on November 7, 2011.

3. I am generally familiar with the Debtors' operations, business affairs, books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs.

---

[1] Capitalized terms used herein but not defined in this Declaration shall have the meanings ascribed to them in the Motion.

I am over the age of 18 and authorized to submit this Declaration on behalf of each of the Debtors. If called upon to testify, I would testify to the facts set forth herein.

*The Board's Decision To Seek Rejection*

4.  I am a member of the Executive Management Team ("EMT"), which provides management oversight for each of the Debtors. I am familiar with the other members of the EMT and the individuals who serve as the Board of Managers of Dynegy Holdings (the "Board Members"). I understand that certain of the Board Members are also directors of Dynegy Inc. In the past twelve months I have participated in at least six meetings with Board Members and/or EMT members at which negative cash flows and the poor economic outlook for the Leased Facilities were discussed.

5.  By at least early 2010, I and other senior Dynegy employees began considering the fact that, from 2011 to 2014 the cash lease payments for the Leased Facilities would be two to three times the GAAP lease expense of $50 million per year. Realizing the impact such large lease payments could have on the Debtors' financial condition—particularly in light of worsening market conditions—I, and others on the EMT approved the retention of the law firm of Toy & Brown to conduct an analysis of the Leased Facilities and ways the obligations thereunder could be refinanced, conveyed or terminated.

6.  In addition, I, and other senior Dynegy employees and Board Members were aware of summary financial forecasts prepared in connection with (i) the proxy statement (dated October 4, 2010) for the special meeting of stockholders of Dynegy Inc. called to consider approval of the Blackstone merger agreement and (ii) the solicitation statement (dated December 30, 2010) for the Icahn tender offer, reflecting projections of over $1 billion in negative cash flow for Dynegy Inc. and its subsidiaries, including the Debtors, for the period ending on

December 31, 2015.  I, and other senior Dynegy employees and Board Members understood that the Roseton and Danskammer lease payments represented a substantial proportion of that total.

7. From around April 2011 to November 7, 2011, there were various meetings of the EMT and/or Board Members at which the difficulties presented by the Leases, and the means by which those difficulties might be addressed, were discussed, and the conclusions reached by senior management as to the onerous nature of the leases were shared with PSEG and the Lease Indenture Trustee during this time frame as well.  In particular, I understand that there was a conference call between proposed special counsel for the Debtors (White & Case LLP) and counsel for the Lease Indenture Trustee (Cadwalader, Wickersham & Taft LLP) on September 14, 2011, and a lengthy meeting with representatives from the Debtors, PSEG, the Lease Indenture Trustee and the parties' counsel on October 11, 2011.

8. At my deposition on December 7, 2011, I testified about meetings of the Board Members held on June 15, 2011, October 14, 2011, and November 7, 2011.  Subsequent to my deposition, I was reminded of a special joint meeting of the Board of Managers of Dynegy Holdings, the Board of Directors of Dynegy Northeast Generation, Inc., and the Sole Members of Hudson Power, L.L.C., Dynegy Danskammer, L.L.C. and Dynegy Roseton, L.L.C., which occurred on October 17, 2011 and which meeting I attended.  At that meeting, Debtors' counsel, Sidley Austin LLP provided information and legal advice to the Board Members about restructuring alternatives.  Attached hereto as Exhibit A are true and correct copies of the minutes of that meeting.

9. Between April 2011 and August 2011, I, as well as other EMT members and Board Members, came to the conclusion that anticipated defaults on financial covenants in

other Debtor credit facilities would result in the inability of certain of the Debtors to sustain the Lease Payments.

10. Between April 2011 and November 7, 2011, I, as well as other EMT members and Board Members, came to the conclusion that there were no viable opportunities to renegotiate the terms of the Lease Payments.

11. Between August 2011 and November 7, 2011, I, as well as other EMT members and Board Members, came to the conclusion that it would be in the best interests of the Debtors to seek rejection of the Lease Documents.

12. Although I was not present on November 7, 2011, I was aware that the Board Members were meeting on that date to vote to file voluntary petitions for bankruptcy in order to seek rejection of the Lease Documents.

*Dynegy Inc's Relationship To The Debtors*

13. Prior to September 1, 2011, Dynegy Inc.'s sole asset was 100 percent of the stock of Dynegy Holdings Inc. While Dynegy Inc. has different tax attributes from those of DHI (as a result of various historical transactions), on the whole the value of the two entities on a consolidated basis were essentially the same. Thus what was good (or bad) for DHI was almost equally good (or bad) for Dynegy Inc.

14. Since September 1, 2011, Dynegy Inc's ownership interest in Dynegy Holdings, which remains a wholly-owned subsidiary of Dynegy Inc., still represents approximately 63 percent of Dynegy Inc.'s total assets.

*Dynegy's Efforts To Avoid A Bankruptcy Filing*

15. In or around January 2010, Dynegy Inc. retained Bank of America Merrill Lynch ("BAML") to market the interests of certain of the Debtors in the Leased Facilities. It is

my understanding that, of the six possible buyers identified by BAML, only Constellation Energy expressed an interest in purchasing the interests in the Leased Facilities. I understand that members of a Dynegy strategic planning team negotiated with Constellation but were unable to reach an agreement as to price and other terms. I understand that, in addition to paying $200-$300 million to Constellation, such a deal would have required a payment to the Owner Lessors of $50-100 million. Attached hereto as <u>Exhibit B</u> is a true and correct copy of a May 2010 Dynegy board presentation discussing Constellation's expression of interest in the Leased Facilities. I believe that by June 2010, Constellation had indicated that it was no longer interested in a possible transaction. Since June 2010, I am aware that there has been further deterioration in power prices in the New York region.

       16.    I am not aware of any other expressions of interest in a transaction involving the transfer of the interests in the Leased Facilities in the past three years.

***Signature Page Follows***

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of December, 2011 at Houston, Texas.

Name: Kent R. Stephenson
Title: Executive Vice President of Each of the Debtors

*SIGNATURE PAGE TO SUPPLEMENTAL DECLARATION OF KENT R. STEPHENSON IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT THE LEASE DOCUMENTS*