UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DYNEGY HOLDINGS, LLC, et al.,[1] | ) | Case No. 11- 38111 (CGM) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**SUPPLEMENTAL DECLARATION OF MARTIN W. DALEY IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO REJECT THE LEASE DOCUMENTS**

I, Martin W. Daley, declare, pursuant to section 1746 of title 28 of the United States Code, as follows:

1. I am the Vice President and General Manager of Dynegy Power LLC, a non-debtor affiliate of the debtors in the above-captioned chapter 11 cases (the "Debtors"). I have served in this capacity since July 2011. I have also held numerous other positions for the Debtors and Dynegy Inc., the Debtors' ultimate corporate parent since 2001. In February 2001, I commenced work for Debtor Dynegy Northeast Generation, Inc. ("DNE") in the position of Director, Regulatory & Administrative Services. In March 2005, I was promoted to Senior Director, Regulatory & Administrative Services for DNE. From April 2007 to July 2011, I served as Managing Director, Asset Management - Northeast for Dynegy Inc.

2. I submit this supplemental declaration ("Declaration") in support of the Motion of the Debtors Pursuant to Section 365 of the Bankruptcy Code and Bankruptcy Rule

---

[1] The Debtors in these chapter 11 cases are Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc., Hudson Power LLC, Dynegy Danskammer, L.L.C. and Dynegy Roseton, L.L.C.

6006 for Entry of an Order Authorizing the Debtors to Reject the Lease Documents (the "Motion"),[2] filed on November 7, 2011.

3.  I am generally familiar with the matters that are the subject of the Motion. Except as otherwise indicated, all facts set forth in this Declaration are based upon: my personal knowledge; my discussions with members of the Debtors' senior management and the Debtors' financial advisors; my review of relevant documents; or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. I am over the age of 18 and authorized to submit this Declaration on behalf of each of the Debtors. If called upon to testify, I would testify to the facts set forth herein.

*The Economic Performance of the Leased Facilities*

4.  As described in my initial declaration, dated November 7, 2011, [Docket No. 5-1], the economic performance of the Leased Facilities does not support continued operation by the Debtors. Even excluding rent payments due under the Lease Documents, total gross margin at the plant level between August and December 2011 is projected to fall short of total operating expenses at the plant level by approximately $3 million, and as of November 2011, the Leased Facilities were not projected to show positive cash flow until 2014 at the earliest (again, excluding lease payments).

5.  Although earlier projections, which were discussed at my deposition on December 7, 2011, showed (in part due to a robust outlook on capacity pricing) a return to positive EBITDA in 2014 (absent lease payments), the most recent forecast model runs of the same projections (as of December 5, 2011) indicate that Gross Margin has further deteriorated for the forecast period (2012 and beyond):

---

[2] Capitalized terms used herein but not defined in this Declaration shall have the meanings ascribed to them in the Motion.

| EBITDA (in millions) | Aug 2011-Dec 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|
| Projections as of Summer 2011 | ($3.1) | ($17.7) | ($12.9) | $32.9 | $33.5 | $32.8 |
| Projections as of December 2011 | N/A | ($31.1) | ($24.3) | ($25.2) | ($17.9) | ($20.1) |

6. The projections for gross margin reductions in future years reflect a more conservative outlook on capacity pricing due to the sharp decline in capacity pricing since mid-2011 and lower gas price forecasts. Absent any further and significant reductions in operating expenditures, the Facilities will not realize a positive EBITDA in the forecast period (2012-2016).

*Alternative Uses for the Leased Facilities*

7. In analyzing the economic viability of the Roseton and Danskammer Facilities, I considered the following alternative uses for the Leased Facilities. In each instance I believe that the Debtors do not have the capital to retrofit the Facilities and/or survive the intervening years before any of these alternatives come to fruition, if ever. Accordingly, the possibility that one or more of these events may occur in the future does not alter my opinion that the Lease Documents are burdensome.

<u>Indian Point</u>

8. Entergy owns and operates the Indian Point Units 2 and 3 Nuclear Generating station located in Buchanan, New York. Each unit is rated for 1000 MW. There has been considerable opposition to relicensing the units (current operating licenses expire in 2013 and 2015) from environmental groups, the Governor and others citing concerns ranging from safety to harm to Hudson River fisheries from the facilities' once through cooling system. In the

absence of any other generating resources to offset the loss of 2000 MW from Indian Point should the units not be relicensed in 2013 and 2015, there could be some beneficial uplift in merchant energy production and revenue from Roseton and/or Danskammer.

9. However, three energy projects currently in the queue for review by the NYISO and PSC, once permitted and installed, could be expected to offset the loss of energy from Indian Point. Two of these projects are located within the same NYISO Zonal Region (Zone G) as Indian Point. They are Competitive Energy Ventures (CPV) 630 MW Valley Energy Center, a Combined Cycle Gas Turbine ("CCGT") which would be constructed in Middletown NY (NY PSC Case # 10-E-0501) and Advanced Power Services 1,000 MW Cricket Valley Energy Center, a CCGT which would be constructed in Dover NY ( NY PSC Case # 11-E-0593). Each of these CCGT's are highly efficient and would be expected to displace Roseton and/or Danskammer in the dispatch queue for day ahead or real time energy supplies by the NYISO.

10. In addition, a third project—a 330 mile transmission line extending from Quebec to the NYC-metro area referred to as the Champlain-Hudson Express would provide for 1000 MW's of low cost energy to flow from upstate New York/Canada to NYC. This project is being developed by TDI (NY PSC Case # 10-T-0139) and is currently in the licensing stage.

11. Moreover, the loss of Indian Point would still require Danskammer (and Roseton) to be retrofitted with costly pollution control technologies should either facility seek to continue to utilize coal and/or #6 oil as the fuel source. I estimate that it would cost approximately $375 million to retrofit Danskammer for coal operations and at least $600 million to retrofit Roseton to permit continued use of 1.3% S oil (the current fuel specification).

Alternatively, Roseton could burn a lower sulfur fuel oil that would reduce the capital cost of pollution control technologies, but would substantially increase the cost of the fuel oil.

12. Finally, should Roseton and Danskammer seek to utilize only natural gas for energy production, the high heat rate units of these Facilities would negatively impact their ability to compete with other nearby gas fired units which have much lower (more efficient) heat rates including PSEG's Bethlehem Energy Center, Athens Generating Station and Empire Gen Station.

## Converting Danskammer to Natural Gas

13. While Danskammer Units 3 and 4 are permitted to, and capable of, burning natural gas, additional engineering analyses are required to determine physical improvements that would be necessary to facilitate full output capability and sustained operation on natural gas.

14. More importantly, the configuration and design of Central Hudson's existing gas transmission and distribution system that services the Roseton and Danskammer Facilities is currently not capable of delivering sufficient volume or pressure to simultaneously dispatch Danskammer Units 3 and 4 and Roseton Units 1 and 2 at full load on natural gas.

## Brownfield Development On The Roseton And/Or Danskammer Site

15. In 2008, Dynegy's Construction Development and Repowering Division developed a comprehensive plan and cost profile for situating a 600 MW 2X1 CCGT at Roseton. The study determined there was available space to construct the facility on property immediately south and adjacent to the existing Roseton plant. Project costs to license and construct the 600 MW CCGT were estimated at $720 million (in 2008 dollars). This cost estimate assumed available infrastructure would be accommodated through retirement of one of the Roseton units.

16. The project was not advanced beyond the discussion stage due to a variety of reasons, including the large capital expenditure, indications of deteriorating market conditions and the dim prospect of securing a long term PPA to support any financing. Other factors included potential concerns with language in the Lease Documents regarding use of the property for matters that could negatively influence the performance of the existing facilities covered under the site lease.

*The Board's Consideration Of Operating Projections*

17. In the past twelve months, I, or members of my team, have created or provided input on numerous historical performance and future projection spreadsheets concerning the Roseton and Danskammer Facilities and/or Dynegy Northeast Generation, Inc. I believe that the Officers and Managers of Dynegy Holdings—either in their individual capacity or as a group—have reviewed many of these spreadsheets. In or around March 2010, my team helped to prepare EBITDA projections for a presentation to the Executive Management Team. Again in May 2010, my team helped to prepare similar projections for another presentation to the Executive Management Team. In addition, throughout August and September, I have had several meetings with Robert Flexon, the President and Chief Executive Officer of Dynegy Inc. and each of the Debtors to discuss a number of issues including the near and long-term economic performance of the Leased Facilities. Accordingly, the Officers and Managers of Dynegy Holdings were aware of my team's analysis and conclusions regarding the burdensomeness of the Roseton and Danskammer lease obligations on November 7, 2011.

*Signature Page Follows*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of December, 2011 at O'Fallon, Illinois.

_____
Name: Martin W. Daley
Title: Vice President & General Manager
Dynegy Power Inc

*SIGNATURE PAGE TO SUPPLEMENTAL DECLARATION OF MARTIN W. DALEY
IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO SECTION 365
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006 FOR ENTRY OF
AN ORDER AUTHORIZING THE DEBTORS TO REJECT THE LEASE DOCUMENTS*