**Hearing: March 12, 2012 at 8:30 a.m.**

**SIDLEY AUSTIN LLP**
James F. Conlan
Jeffrey E. Bjork
Paul S. Caruso
Matthew A. Clemente
Andrew F. O'Neill
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

COUNSEL FOR THE DEBTORS AND
DEBTORS IN POSSESSION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X
                                          :

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DYNEGY HOLDINGS, LLC, et al.,**[1] | : | **Case No. 11-38111 (CGM)** |
| | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

-------------------------------------------------------- X

**DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS TO APPROVAL**
**OF THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED**
**JOINT PLAN OF REORGANIZATION PROPOSED BY**
**DYNEGY HOLDINGS, LLC AND DYNEGY INC.**

The debtors and debtors in possession in the above-captioned cases (the

"Debtors") respectfully submit this omnibus response (the "Response") in support of the

Disclosure Statement Related to the Second Amended Chapter 11 Plan of Reorganization for

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299). The location of the Debtors' corporate headquarters and the service address for Dynegy Holdings, LLC, Dynegy Northeast Generation, Inc. and Hudson Power, L.L.C. is 1000 Louisiana Street, Suite 5800, Houston, Texas 77002. The location of the service address for Dynegy Roseton, L.L.C. is 992 River Road, Newburgh, New York 12550. The location of the service address for Dynegy Danskammer, L.L.C. is 994 River Road, Newburgh, New York 12550.

Dynegy Holdings, LLC Proposed by Dynegy Holdings, LLC and Dynegy Inc. [Docket No. 472]

(the "Disclosure Statement") and the Motion of Dynegy Holdings, LLC for an Order (I)

Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III)

Scheduling the Plan Confirmation Process; and (IV) Granting Related Relief [Docket No. 124]

(the "Solicitation Motion").[2]

      As set forth in further detail below or as stated in the Summary Chart attached

hereto as Exhibit A (the "Summary Chart"), the Debtors respectfully submit that each of the

objections (each, including informal comments discussed below, an "Objection" and

collectively, the "Objections") to the Disclosure Statement has been addressed at the Court's

scheduling conference held on February 24, 2012 (the "Scheduling Hearing"), has been

addressed by additional disclosure (reflected in the proposed revised Disclosure Statement), or

presents issues more properly addressed in connection with confirmation of the Plan.

Accordingly, the Debtors respectfully request that the Bankruptcy Court overrule the Objections

(to the extent not otherwise withdrawn or continued) and approve the Disclosure Statement as

fully complying with section 1125 of the Bankruptcy Code.

## INTRODUCTION[3]

      1.    The Disclosure Statement contains adequate information as required under

section 1125 of the Bankruptcy Code and therefore should be approved.  Whether such

disclosure is adequate is the only issue to determined by this Court at the hearing on the

Disclosure Statement (the "Disclosure Statement Hearing").  Parties in interest will have an

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Second
Amended Chapter 11 Plan of Reorganization for Dynegy Holdings, LLC Proposed by Dynegy Holdings, LLC And
Dynegy Inc. [Docket No. 473] (the "Plan") and the related Disclosure Statement, as applicable.
[3] The Debtors recently provided the relevant factual background of their Chapter 11 Cases in their Motion Pursuant
to 1121(d) of the Bankruptcy Code to Extend the Exclusive Periods for the Filing of a Chapter 11 Plan and
Solicitation of Acceptance Thereof [Docket No. 435] and incorporate by reference such section herein.

opportunity to raise confirmability issues under section 1129 of the Bankruptcy Code with

respect to the Plan, which resolves DH's capital structure issues and contains a fair and equitable

settlement of certain pre-petition litigation, at the Confirmation Hearing.  Because the Disclosure

Statement contains adequate information, creditors have the information necessary to determine

for themselves whether the proposed Plan settlement and other terms in the Plan are

appropriate—and they should be given that opportunity.  The Debtors believe, and two of the

three groups of pre-petition litigation parties – approximately $1.8 billion dollars of pre-petition

notes and the PSEG Entities – agree, that the significant recoveries afforded to unsecured

creditors under the Plan constitute ample consideration for the settlement of the claims and

causes of action related to their prepetition restructuring transaction.  The Debtors further believe

that if the creditors are given the opportunity to vote on the Plan, they will show sufficient

support for the Plan and the Plan Proponents will be able to satisfy the applicable Bankruptcy

Code requirements at the Confirmation Hearing.

        2.      With respect to the true issue to be considered at the Disclosure Statement

Hearing – the adequacy of disclosure – the Debtors, working closely with counsel for Dynegy,

have endeavored to address all reasonable disclosure objections, and believe they have addressed

all credible information requests (whether raised in the Objections or informally) by adding

significant disclosure and explanatory language to the Disclosure Statement and Plan.  As set

forth in the attached Summary Chart, the Debtors believe that they have addressed and resolved

the majority of the disclosure objections raised, and any remaining objections are either untimely

confirmation objections, or overreaching disclosure objections which for the reasons stated

herein should be overruled.  Thus, the section 1125 requirements have been met, and the

Disclosure Statement should be approved as containing adequate information.

3.       Many of the objections to the Disclosure Statement related to the timing of

its approval in light of the timing of delivery of the Examiner's Report, which was originally

scheduled to be produced on March 12, 2012.  On February 24, 2012, the Court held the

Scheduling Hearing, and determined that the Disclosure Statement Hearing should occur on

March 12, 2012.[4]  In connection with this scheduling determination, the Examiner has agreed to

file his Examiner's Report on March 9, 2012, so that the Court and parties in interest will have

time to consider his findings in conjunction with the Disclosure Statement Hearing and

solicitation of the Plan.  The Plan Proponents will include an executive summary of the

Examiner's Report (prepared by the Examiner) as Exhibit G to the Disclosure Statement, and

will make the public version of the report available to all parties in interest upon request.  Thus,

the various timing-related objections to the approval of the Disclosure Statement have been

addressed.

4.       The remaining objections are thus mostly confirmation objections to the

Plan by, primarily, (a) U.S. Bank National Association ("U.S. Bank"), the Lease Indenture

Trustee for the Pass Through Certificate Holders, and (b) two holders of Subordinated Notes,

Claren Road Asset Management, LLC ("Claren Road") and CQS DO S1 Limited ("CQS" and

together with Claren Road, the "Sub Note Objectors"), each of whom has incentive to hold up

the plan process.[5]  Although couched as "patent unconfirmability" objections, these confirmation

---

[4] The Disclosure Statement Hearing was previously noticed for February 24, 2012, and was subsequently adjourned by the Debtors to March 9, 2012.  [Docket No. 424.]

[5] U.S. Bank has initiated an adversary proceeding (the "Adversary Proceeding") regarding the characterization of its claims and whether or not the Leased Facilities are personal or real property, which proceeding is progressing on a parallel path to the Plan confirmation process.  The Sub Note Objectors have each moved for reclassification of their Claims pursuant to Bankruptcy Rule 3013 (the "3013 Motions").  The Debtors responded to the 3013 Motions on February 17, 2012 [Docket No. 423] and have modified the Plan to separately classify the Holders of Subordinated Notes Claims and extensively described such classification, their related treatment, and the "Subordination Alternative Election" in the Disclosure Statement.  In addition, the Committee and the U.S. Trustee have expressed concerns about the Plan Proponents' ability to satisfy certain confirmation requirements, including the best interests

objections will only be appropriate, if ever, at the Confirmation Hearing – and should not impact the Court's approval of the Disclosure Statement.  They have nothing to do with disclosure, or the "adequate information" standard under section 1125, and should accordingly be summarily overruled.

5.    For the reasons discussed herein, and the reasons set forth on the record at the Disclosure Statement Hearing, any remaining "adequate information" objections should be overruled or, in the case of those requests that are really veiled confirmation objections, deferred until the appropriate time for adjudication – the Confirmation Hearing.

## DESCRIPTION OF THE OBJECTIONS

6.    Six parties or groups have filed written Objections in response to the Disclosure Statement and the Solicitation Motion, including:  Claren Road [Docket No. 392], Wells Fargo Bank, N.A. ("Wells Fargo") [Docket No. 395],[6] CQS [Docket No. 396], U.S. Bank [Docket No. 397], the United States Trustee for the Southern District of New York (the "U.S. Trustee") [Docket No. 412], and the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 421].  In addition, the Plan Proponents have received informal comments on the Plan and Disclosure Statement from ACE American Insurance Company and its affiliates ("ACE") and Gerald N. Rogan [Docket No. 403].[7]

7.    To assist the Court and all parties in interest with understanding the full scope of the Objections and informal comments, the Debtors have attached, as Exhibit A hereto,

---

of creditors and feasibility tests, and to demonstrate that the releases and injunctive relief in the Plan are permitted under Second Circuit law.

[6] Wells Fargo filed a vague "protective objection" asserting that the Disclosure Statement fails to, among other things, "provide critical information and is misleading and confusing . . . ."  Because it is non-specific, the Debtors only respond to Wells Fargo's Objection generally herein.

[7] ACE requested, among other things, that insurance neutrality language and a clarification to the creditor release section be added to the Plan.  Each of these informal objections has been described in the Summary Chart (as defined below) attached as Exhibit A to this Response.

the Summary Chart which sets forth the identity of each objecting party (each an "Objector"), the substance of each of the Objections, and the Debtors' response thereto, including references, where applicable, to any supplemental disclosures that have been incorporated into the Disclosure Statement or other definitive documents which address such Objections.  As demonstrated in the Summary Chart, the Plan Proponents have worked extensively with certain of the Objectors and other parties in preparation for the Disclosure Statement Hearing to satisfy concerns regarding the adequacy of information in the Disclosure Statement, and believe that they have completely addressed any legitimate requests for additional information.  The Plan Proponents are continuing to work with claimants to resolve any remaining Objections and will update the Court at or prior to the Disclosure Statement Hearing as to the status of each Objection, including the extent to which such Objections have been completely or partially resolved, or remain for determination by the Court.

8.    The remaining arguments in the Objections can generally be classified into two categories: (a) arguments that the Disclosure Statement lacks adequate information, within the meaning of section 1125 of the Bankruptcy Code, with respect to certain aspects of the Plan; and (b) substantive objections to confirmation of the Plan which, as a general matter, are not appropriate for consideration in connection with approval of the Disclosure Statement and should instead be addressed at confirmation.[8]

---

[8] All of the Objectors objected in some manner to the timing of the Disclosure Statement Hearing.  The Court addressed these concerns at the Scheduling Hearing, and the Debtors believe that all such objections have been addressed by the continuance of the Disclosure Statement Hearing until March 12, and the impending filing of the Examiner's Report on March 9.  Accordingly, the Debtors do not address such timing-related Objections further in this Response.

## **ARGUMENT**

I.    **The Disclosure Statement Contains "Adequate Information" Within the Meaning of Section 1125 of the Bankruptcy Code, and Therefore Should Be Approved**

9.    Pursuant to section 1125(b) of the Bankruptcy Code, a debtor in possession may not solicit votes to accept or reject a plan of reorganization without first receiving court approval of a written disclosure statement that contains "adequate information." Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> ". . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan."

11 U.S.C. § 1125(a)(1).  In general, courts have defined "adequate information" as information known to the plan proponent at the time of filing of the plan which would provide a hypothetical reasonable investor the opportunity to make an informed judgment on whether to accept or reject the plan.  See In re Stanley Hotel, Inc., 13 B.R. 926, 929-30 (Bankr. D. Colo. 1981) ("since no plan proponent is expected to be able to predict the future with unerring accuracy, the information to be provided should comprise all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan").

10.    Stated differently, the Bankruptcy Code requires that a disclosure statement as a whole give information "reasonably practicable" to permit an "informed judgment" by those entitled to vote on a plan of reorganization.  See, e.g., In re Copy Crafters Quickprint, Inc., 92 B.R. 973,  979 (Bankr. N.D.N.Y. 1988); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 321 (3d Cir. 2003) ("under 11 U.S.C.

§ 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing 'adequate information' sufficient to 'enable a creditor to make an informed judgment' about the Plan").  Courts have broad discretion in determining whether a disclosure statement contains "adequate information," employing a flexible approach based on the unique facts and circumstances of each case.  See Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 29 (S.D.N.Y. 1995) ("The determination of what is adequate information is subjective and made on a case by case basis.  This determination is largely within the discretion of the bankruptcy court . . . .") (quoting Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988)); Copy Crafters, 92 B.R. at 979 ("What constitutes adequate information is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties"); see, e.g., Oneida Motor Freight, 848 F.2d at 417 ("from the legislative history of section 1125, we discern that adequate information will be determined by the facts and circumstances of each case"); In re Lisanti Foods, Inc., 329 B.R. 491, 507 (D.N.J. 2005) ("section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement"); In re River Village Assocs., 181 B.R. 795, 804 (E.D. Pa. 1995) ("under section 1125(a), the Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement").

11.    Employing a flexible approach to the approval of disclosure statements, courts have identified several categories of information which, based on the facts of a particular case, should typically be included in a disclosure statement.  See, e.g., In re Scioto Valley Mtg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing 19 categories of information that should typically be included in a disclosure statement).  Here, the Disclosure Statement includes

over 250 pages of information regarding the Plan and the Debtors' finances and operations for

parties in interest to consider when voting on the Plan, including the following:

(i)     a general overview of the processes and rehabilitative purposes of chapter 11 of the Bankruptcy Code (Article IV);

(ii)    an overview of the Plan, including a general overview of the more salient treatment provisions, and a chart providing a summary of the classification and treatment of allowed claims against and interests in DH under the Plan (Article V);

(iii)   general information and background regarding the Plan Proponents and Debtors, including a description of their financial results and business operations and an overview of their existing (and certain previous) directors and executive officers; a description of the Plan Proponents' and Debtors' prepetition debt and capital structure; and a discussion of the events leading to commencement of these chapter 11 cases (Article VI);

(iv)    a summary of the Plan Proponents' and Debtors' selected historical financial information (Article VII); and financial projections and assumptions of the Plan Proponents and Debtors (Article VIII);

(v)     a summary of significant developments during these Chapter 11 Cases, first-day and other relief granted by the Court, approval of the Intercompany Credit Facility, certain operational developments during the Chapter 11 Cases, and a detailed discussion of the Adversary Proceeding and the respective positions of the parties as asserted therein (Article X);

(vi)    a detailed description of each substantive provision of the Plan, including the Plan provisions dealing with the classification and treatment of claims and interests, as well as a description of the securities to be issued pursuant to the Plan and additional means for implementation of the Plan, the provisions dealing with the treatment of executory contracts, the provisions governing distributions to creditors under the Plan and the confirmation and consummation of the Plan, the effect of confirmation of the Plan, and the retention and scope of jurisdiction of the Bankruptcy Court (Article XI);

(vii)   a description of certain risk factors to be considered by creditors entitled to vote on the Plan, including general bankruptcy law considerations, risks related to the business strategy and operations, and general risks related to the securities to be issued under the Plan (Article XII);

(viii)  a summary of the confirmation and consummation procedures, including a detailed discussion of the statutory requirements for confirmation of the Plan and why they are satisfied in this case, as well as a discussion of the Liquidation

Analysis (attached as Exhibit E to the Disclosure Statement) for purposes of the best interests test (Article XIII);

(ix)    a description of certain federal and state securities law considerations, including the exemption from registration requirements under section 1145 of the Bankruptcy Code and its application to subsequent transfers of securities issued under the Plan (Article XIV);

(x)    a description of certain federal income tax consequences of the Plan, including the federal income tax consequences of the Plan to Dynegy, DH, and DNE, the federal income tax consequences of the Plan to holders of claims and interests, and the importance of obtaining professional tax assistance (Article XV); and

(xi)    a summary of possible alternatives to confirmation and consummation of the Plan (Article XVI).

12.    The Debtors submit that the Disclosure Statement as filed is a full and fair disclosure document which should be approved under section 1125 of the Bankruptcy Code as containing "adequate information," and that the Objections should therefore be overruled.  In responding to the U.S. Trustee's and the Committee's Objections to the approval of the Disclosure Statement, although the Plan Proponents did not believe that all of the Objections addressed valid disclosure issues, however, in the interest of resolving such Objections, the Debtors determined in most cases to simply add additional disclosure with respect to the issues raised rather than spend any significant amount of time arguing over whether additional disclosure is in fact required.  With that in mind, the Plan and Disclosure Statement contain various modifications that the Debtors believe, as a general matter, are responsive to and more than satisfy all legitimate requests for additional disclosure set forth in the Objections.  The numerous changes to the Disclosure Statement and Plan highlighted in the Summary Chart include the following:

• In response to all Objectors, in addition to providing an expanded explanation in the Disclosure Statement of the role of the Examiner in these Chapter 11 cases, the Plan Proponents have agreed to attach, as an Exhibit to the Disclosure Statement, an executive summary of the report prepared by the Examiner, and have agreed to provide a hard copy

of the public version of the report to any creditor or equity interest holder that so requests.  See Disclosure Statement at pp. 2, 67 and Exhibit G thereto.

- In response to the Committee, U.S. Bank, CQS, and the U.S. Trustee, inserted sections highlighting the applicable standards for Rule 9019 settlements and third-party releases. See Disclosure Statement at pp. 144-45, 145-46.

- In response to the Committee, the Sub Note Objectors, and U.S. Bank, inserted additional explanatory language describing the Prepetition Restructurings and the surrounding litigation and clarifying information regarding White & Case's involvement therewith. See Disclosure Statement at  pp. 25-28, 61-62.

- In response to the Committee and U.S. Bank, provided additional information with respect to U.S. Bank's potential claim amount and the risk factors associated therewith. See Disclosure Statement at pp. 17, 63-66, 121-22.

- In response to the Sub Note Objectors, the Committee and U.S. Bank, classified the Subordinated Notes Claims separately and unimpaired them under the Plan and provided additional disclosure on such separate classification and treatment of the Subordinated Notes Claims.  See Plan §§ 2.2, 3.1, 4.1(d), 6.2, 8.5(a), 8.11, 10.8, 10.10, 11.5, 16.5; Disclosure Statement at pp. 10, 12, 13-14, 17-19, 35, 69-70, 72-73, 75, 80, 82, 84, 99-100, 101-02, 103, 112, 119-20, 142-43.

- In response to the Sub Note Objectors and the Committee, inserted additional information regarding the Subordination Alternative Election.  See Disclosure Statement at pp. 8, 14, 17, 18-19, 72-73, 75, 80, 82. 84, 100, 101, 112, 142-43.

- In response to the Committee, U.S. Bank and CQS, included a Dynegy enterprise valuation and recovery analysis as Exhibit F to the Disclosure Statement which, among other things, provides additional description of the assumed value of the Plan preferred securities and equity being retained by Dynegy under the Plan as well as a valuation of the reorganized enterprise and estimated recovery percentages for claimants under the Plan.  See Disclosure Statement at pp. 16, 49-50 and Exhibit F thereto.

- In response to the Committee and U.S. Bank, supplemented the description of the directors and officers section to include information on former officers of Dynegy and DH and former members of the Dynegy Board of Directors, as well as the current Board Members of DH and Dynegy Gas Investments.  See Disclosure Statement at pp. 39-45.

- In response to the Committee and U.S. Bank, provided additional description describing the Plan Trust.  See Disclosure Statement at pp. 96-97.

- In response to the Committee and U.S. Bank, provided additional information with respect to U.S. Bank's potential claim amount and the risk factors associated therewith. See Disclosure Statement at pp. 17, 63-66, 122-22.

- In response to U.S. Bank, the Committee, and the U.S. Trustee, provided additional description regarding the Adversary Proceeding initiated by U.S. Bank with respect to its asserted claims arising out of the rejection of the Facility Leases, including with respect to the Answer and Counterclaims filed on January 25, 2012 by Dynegy Danskammer, Dynegy Roseton, and DH, as well as the cross-motions for judgments on the pleadings recently filed by U.S. Bank and by Dynegy Danskammer, Dynegy Roseton and DH.  See Disclosure Statement at pp. 63-66.

- In response to the Committee, added a section describing the Company's recent deconsolidation and the resulting treatment of certain intercompany obligations as a result thereof.  See Disclosure Statement at pp. 37-38.

- In response to the Committee, including in various places throughout the Disclosure Statement, the Committee's particular position regarding various issues.  See Disclosure Statement at pp. 17, 19, 38, 40, 62, 69, 143, 146-48, 169.

13.     The Debtors believe that the level of disclosure (both as initially filed and as supplemented) in the Disclosure Statement is more than sufficient to meet the "adequate information" standard under section 1125 in this district and circuit, and that the Disclosure Statement should be approved.

## II.     Any Remaining Objections Regarding "Adequate Information" Should Be Overruled

14.     Although certain other "disclosure" objections have been made, the Debtors have not responded with additive revisions to the Disclosure Statement in each instance, as such objections seek disclosure that would be well beyond the level of information necessary to satisfy section 1125, and/or are clearly inflammatory and have been lodged with ulterior motives.  The Debtors have addressed these instances in the Summary Chart and below in detail. For the reasons provided, to the extent such remaining "disclosure" objections are not resolved prior to the Disclosure Statement Hearing through the inclusion of additional information and/or agreement of the parties, they should be overruled.

A.    The Disclosure Statement Contains Adequate Information on U.S. Bank's Claim
Allowance Issue.

15.    U.S. Bank, the Committee and the U.S. Trustee argue that because the

Plan is contingent on the claim of U.S. Bank (as Lease Indenture Trustee) being allowed in an

amount that does not exceed $190 million (or up to $290 million if the Plan Proponents waive

the condition precedent to Plan effectiveness pursuant to Section 12.3 of the Plan), the

Disclosure Statement must contemplate what happens if U.S. Bank is ultimately determined to

have an allowed claim in excess of $190-290 million.  See U.S. Bank Objection at ¶ 25; U.S.

Trustee Objection at ¶ 33.  The Debtors have provided a risk factor in the Disclosure Statement –

and supplemented such risk factor based on comments from the Committee – spelling out the

risks associated with the potential allowance of U.S. Bank's Lease Guarantee Claims in an

amount greater than $190-290 million.  See Disclosure Statement at pp. 121-22.  In addition, the

Plan Proponents have also included a supplemental, extremely detailed description of the claims

asserted by U.S. Bank in the Adversary Proceeding, the positions and claims asserted by Dynegy

Danskammer, Dynegy Roseton and DH in their Answer and Counterclaims filed in response to

the Amended Complaint in that Adversary Proceeding, and the cross-motions for judgment on

the pleadings recently filed by U.S. Bank and by Dynegy Danskammer, Dynegy Roseton and

DH.  See Disclosure Statement at pp. 63-66.  The Plan Proponents should not be required to

predict in the Disclosure Statement whether or not the waiver would be utilized or the Plan

would not go effective; rather, all that is required is that the issues be listed as a risk factor.  See

Scioto Valley, 88 B.R. at 170-71.  Further, a disclosure statement is not required to "speculate as

to future uncertainties, such as the consequences of possible outcomes of pending litigation."

Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.), 383 B.R. 856, 865 (E.D.N.Y.

2008) (citing Stanley Hotel, 13 B.R. at 935).

16.    It is unclear what further "information" the Debtors can provide related to the Adversary Proceeding, the claims and counterclaims asserted therein, and the risk factors related to the ultimate outcome of the Adversary Proceeding.[9] For these reasons, the Debtors submit that the current explanation of the underlying controversy, the risk factors related to the Adversary Proceeding, the positions of the parties with respect to the ultimate allowable amount of any claims in favor of U.S. Bank, and the detailed explanation of the relevant condition precedent and related waiver language in the Plan and Disclosure Statement, considered in the aggregate, is more than sufficient disclosure to constitute "adequate information" with respect to the Adversary Proceeding.[10]

B.    The Disclosure Statement and Election Form Contain Adequate Information with Respect to the Subordination Alternative Election[11]

17.    Claren Road objects to the disclosure in the Disclosure Statement and related solicitation materials regarding the "mechanism for implementation of the Subordination Alternative Election and the effect on voting rights." Claren Road Objection, ¶¶ 21-22. The Sub Note Objectors also make several arguments that are derivative of their arguments in the 3013 Motions. Subsequent to the filing of the Sub Note Holders' Objections and the 3013 Motions, the Plan Proponents modified the Plan. Under the Plan, the Subordinated Notes Claims are separately classified and their treatment is that they will be unimpaired and will receive payment

---

[9] The Committee has supplied additional language that, on its face, is subjective, inflammatory and would not provide helpful perspective to the voting creditors in these cases. See, generally, the Summary Chart for the Committee's language suggestions for this, and other areas of disclosure discussed in this section of the Response.

[10] In addition to adding disclosure to address this objection, it should be noted that this issue is contemplated by and dealt with in the Plan and Disclosure Statement by the Plan Proponents' ability to waive the condition precedent to the Effective Date of the Plan related to the quantum of the Lease Guarantee Claims, if necessary, with the prior written consent of the Requisite Consenting Noteholders.

[11] The Sub Note Objectors also make several arguments that are derivative of their arguments in the 3013 Motions. In light of the modifications to the Plan reclassifying the Subordinate Notes Claims, and extensive additional disclosure in the Disclosure Statement regarding such classification, related treatment, and the Subordination Alternative Election, the Debtors do not believe that any additional disclosure regarding the Sub Note Objectors' classification-related information objections is warranted.

in full on their Subordinated Notes Claims, subject to the subordination rights of the holders of

the Senior Note Claims, so they are at risk of having their distributions subsumed in full by the

holders of the Senior Notes Claims, who are not being paid in full.  However, the proposed

settlement under the Plan also gives the holders of the Subordinated Notes Claims the option to

reduce their claims to 35% of the principal amount of their allowed claim and receive

distributions, without the effect of subordination, together with holders of Class 3 General

Unsecured Claims.   In light of these modifications to the Plan, not to mention the extensive

additional disclosure in the Disclosure Statement regarding the separate classification and

treatment of Subordinated Notes Claims, the Objections of the Sub Note Objectors should be

overruled.  Simply put, not only are such Objectors unimpaired, but their Objections have been

resolved by the modifications made to the Plan.

> 18.      Furthermore, the revised election forms, which will be filed with the Court

in advance of the Disclosure Statement Hearing, and the Disclosure Statement are perfectly clear

in explaining the Subordination Alternative Election.  In short, if a holder makes the election, it

will mean that such holder is voting to accept the Plan, and if the election is not made, then such

holder will be able to provisionally vote to accept or reject the Plan in Class 4.  Class 4 is

unimpaired under the Plan, and thus all holders of claims in Class 4 will be conclusively deemed

to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.  If there is an impairment

controversy with respect to Class 4 and it is determined that such class is impaired under the

Plan, then all of the provisional votes by holders in Class 4 will be counted to determine if Class

4 has accepted or rejected the Plan.   The documents are clear on this issue, and the Claren Road

Objection should be overruled on this "disclosure" point, which is really just an adjunct argument to its classification arguments in its 3013 Motion.[12]

C.    The Revised Disclosure Statement Contains Adequate Information with Respect to the Settlement Embedded in the Plan, and the Prepetition Restructurings and Prepetition State Court Litigation.

19.    Certain Objectors object to the amount of information presented with respect to the settlement embodied in the Plan. See U.S. Bank Objection at ¶ 19, CQS Objection at ¶ 2. In order to address these concerns, the Debtors have added significant information to the Disclosure Statement describing the Rule 9019 settlement standards, clearly state which pre-petition litigation will be settled, and set forth the bases upon which the causes of action brought by U.S. Bank and other plaintiffs in the various prepetition lawsuits will be settled. See Disclosure Statement at pp. 144-45. This added disclosure was directly responsive to requests made by the Committee, and the Debtors believe that this added disclosure is appropriate and should satisfy the requirements of section 1125 of the Bankruptcy Code. With such additional disclosure, creditors voting on the Plan will be able to understand the legal standards for approval of the settlement, will have the benefit of the extensive descriptions of the Prepetition Restructurings and the proposed settlement incorporated into the Plan, and will thus be able to determine whether the Plan and settlement contained therein are favorable and likely to pass muster under the applicable legal standards.

---

[12] CQS and Claren Road have also argued in their Objections that the Debtors have "mischaracterized" their intent in the Disclosure Statement and that the disclosure set forth in the Disclosure Statement is "biased." Such arguments are meritless and, in any event, are plainly confirmation objections – not adequate information arguments – and should be addressed as such in connection with the Confirmation Hearing. The Plan Proponents have clearly stated in the Disclosure Statement that their primary purpose is to provide adequate information regarding the Plan. See Disclosure Statement at pp. 1-3. In addition, the Plan Proponents have been very clear that the Plan, and the settlement embodied therein, is necessary for DH to restructure its balance sheet, which is over-leveraged. See, e.g., Declaration of Kent R. Stephenson Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions [Docket No. 18], at ¶¶ 46, 53. Further, allegations of "bias" are tenuous at best. Thus, these objections by the Sub Note Objectors are merely advocacy for their theory of the cases – not actual disclosure issues – and should be overruled in their entirety.

20.    Further, arguments that the Disclosure Statement needs a more detailed recitation of the Prepetition Restructurings are also unavailing, as the Plan Proponents have clearly and concisely explained the Prepetition Restructurings.  See Disclosure Statement at pp. 25-28.  The Disclosure Statement also fully describes the state court actions in which the allegations against DH and certain of its affiliates and directors and officers are described.  Id. at pp. 30-31.  Courts have approved disclosure statements without an endless recitation of facts which may or may not implicate fraudulent transfers.  See In re Lyondell Chemical Company, et al., Case No. 09-10023 (REG) (Bankr. S.D.N.Y., Mar. 11, 2010) (approving disclosure statement where five pages out of 421 pages referenced fraudulent transfer litigation); In re Extended Stay Inc. et al., Case No. 09-13764 (JMP) (Bankr. S.D.N.Y., June 22, 2010) (order approving disclosure statement with no separate section listing potential fraudulent transfer actions); In re Tribune Company, et al., Case No. (08-13141) (KJC) (Bankr. D. Del. June 6, 2010) (approving a disclosure statement for a plan embodying a Rule 9019 settlement of fraudulent conveyance litigation with only five pages devoted to explanation of fraudulent transfers, the probability of success on the merits of the actions, releases and settlement efforts).

21.    As discussed, the underlying transactions and the standards that the Plan Proponents will have to satisfy in order for the Plan settlement to be approved in connection with confirmation of the Plan are described in great detail.  In addition, each creditor will have an opportunity to read the executive summary of the Examiner's Report (and the full public version of the Examiner's Report if requested) before voting.  For these reasons, the Debtors believe that the Disclosure Statement contains adequate information with respect to the Rule 9019 settlement, the Prepetition Restructurings, and the prepetition litigation that it seeks to settle.

22.    U.S. Bank Bank's specific additional objections regarding the Plan

settlement should also be overruled.  In Section II.A. of its Objection, U.S. Bank lists a number

of issues that it asserts should be more fully described in the Disclosure Statement.  Among other

things, U.S. Bank requests additional description of the analysis DH conducted with respect to

claims that will be released under the Plan, the "manner" in which such will be "compromised

and settled", why DH believes such settlement is in the best interests of its estate, an estimate of

the cost to litigate (rather than settle) such claims and causes of action, and the "total value" of

the claims and causes of action "compromised" pursuant to the Plan.  As described above, the

Plan Proponents have added sections to the Disclosure Statement describing the requirements of

Rule 9019 and non-consensual third-party releases, but do not believe that the Disclosure

Statement should be turned into a legal brief arguing the issues raised by U.S. Bank.  U.S. Bank

has provided no justification or support for these requests, and even admits that the release of the

Examiner's Report will likely address its "disclosure" concerns on these topics.  Accordingly,

they should be overruled.

23.    Given, (i) the Plan Proponents' ample additions to the Disclosure

Statement described above, (ii) the detail set forth in the Summary Chart, (iii) the fact that most

of the above-described objections are actually confirmation objections in "adequate information"

clothing, and (iv) the fact that every creditor will have access to the Examiner's Report before

voting, the Debtors submit that the Disclosure Statement contains adequate information as

required by section 1125 of the Bankruptcy Code and should be approved.

D.    The Disclosure Statement Provides Adequate Information Regarding the "Best
       Interests" Test.

24.    U.S. Bank, the Sub Note Objectors and the Committee object to the

Disclosure Statement on the further ground that the Liquidation Analysis allegedly does not

18

contain adequate information for creditors to determine whether or not the Plan will satisfy the

"best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code.  The Plan

Proponents have provided additional disclosure to the Liquidation Analysis attached as Exhibit E

to the Disclosure Statement that addresses certain of these objections.  More fundamentally,

these are all issues to be determined at the Confirmation Hearing, when the Plan Proponents will

have the opportunity to present evidence to support their affirmative section 1129 arguments.  As

such, these are not appropriate "disclosure" objections, and should accordingly be overruled.

        25.     U.S. Bank cites In re Quigley, 437 B.R. 102, 145 (Bankr. S.D.N.Y. 2010),

for the proposition that more disclosure should be included about potential third-party claims that

it allegedly possesses.  Quigley, however, is a confirmation decision that does not implicate the

amount of disclosure that should be provided in a liquidation analysis.  In addition, in Quigley,

the court noted that the specific asbestos claims "retained" in Quigley's hypothetical chapter 7

were "neither speculative nor incapable of estimation." [13]  Quigley, 437 B.R. at 145.  The

Debtors were unable to find any liquidation analyses (post-Quigley) ascribing value to claims

that would be released under the Plan.  See e.g., In re Am. Media, Inc., 2010 Bankr. LEXIS

4942, at *26-28 (Bankr. S.D.N.Y. Dec. 20, 2010); In re MGM Studios, Inc., 2010 Bankr. LEXIS

4550, at *18-19 (Bankr. S.D.N.Y. Dec. 6, 2010); In re Neff Corp., 2010 Bankr. LEXIS 6159, at

*57-61 (Bankr. S.D.N.Y. Sept. 21, 2010); In re Almatis B.V., 2010 Bankr. LEXIS 5875, at *11-

12 (Bankr. S.D.N.Y. Sept. 20, 2010).  For these reasons, the Debtors believe that U.S. Bank's

entire "best interests" objection is actually a confirmation objection which should be dealt with at

the Confirmation Hearing, if ever.

---

[13] To aid the court in Quigley, multiple experts testifying at the confirmation hearing presented 19 years of
settlement and litigation outcomes from asbestos claims against Quigley and its parent, claims nearly identical to
those held by the class opposing confirmation. Id. at 134.  This data allowed the court in Quigley to ascribe a near-
certain value to the claims for liquidation analysis purposes. Id.

26.    In addition, the Sub Note Objectors and the Committee have raised

questions regarding the methodology in the Liquidation Analysis, which are clearly

confirmation-related issues to be sorted out in connection with the Plan Proponents' satisfaction

of section 1129(a)(7) at the Confirmation Hearing.  The Committee, in particular, challenges the

level of disclosure in the Liquidation Analysis with respect to the description of the sale of the

Undertaking Agreement and (lack of) valuation of potential litigation claims held by DH.  The

Debtors disagree that such language is appropriate, but the Plan Proponents have provided

additional language to the Liquidation Analysis (new note C.4 and additional description in note

C.1) to apprise all creditors of the Plan Proponents' rationale in not valuing litigation claims of

DH.  See Disclosure Statement Ex. E, notes C.4 and C.1.  The Debtors believe that this

additional disclosure is sufficient to address the concerns raised, and that the disclosure in the

Liquidation  Analysis in their Disclosure Statement is adequate.

## III.    Substantive Objections to Confirmation of the Plan Should Not Be Considered at the Disclosure Statement Hearing

27.    In addition to the "information" objections addressed above, which

purportedly seek additional disclosure, certain Objectors have made substantive Plan objections,

alleging that the Plan is "patently unconfirmable" (hereafter the "Confirmation Objections").

For good reason, the threshold to show that a plan of reorganization is patently unconfirmable is

appropriately very high.  It is well settled that disclosure statement hearings should not be

converted into "mini" confirmation hearings, but should instead be limited to issues relating to

the adequacy of disclosure.  See, e.g., Copy Crafters, 92 B.R. at 980 ("[C]are must be taken to

ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due

process considerations are protected and objections are restricted to those defects that could not

be cured by voting"); In re Clift Holdings LLC, No. 03-41984 (BRL), Tr. at 24 (Bankr. S.D.N.Y.

Aug. 18, 2004) ("[A]ll of the objections that I have heard today are not truly objections to

disclosure but may be, may be, and only may be, strategic objections that go to the level of

confirmation issues, which I don't have before me. What I do have before me is disclosure under

Section 1125 . . . ."); In re Cardinal-Congregate I, 121 B.R. 760, 763-64 (Bankr. S.D. Ohio 1990)

(objections to, inter alia, classification, treatment of claims, and protection of creditor interests

are more properly addressed at the confirmation hearing).

        28.      Despite the reticence of courts in this district and circuit to address what

amount to plan confirmation objections at the disclosure statement hearing stage, the Objectors

make the following arguments that the Plan is "patently unconfirmable". Each is either factually

or legally unsupported, premature, or both. Accordingly, such Confirmation Objections should

be disregarded by the Court in connection with the Disclosure Statement Hearing, and should be

considered (if re-raised) only in connection with the Confirmation Hearing.

> (i)     Proposed Releases and Similar Provisions. Certain Objectors, including CQS, U.S. Bank, the U.S. Trustee and the Committee, have argued that the third-party releases and exculpation provisions in the Plan will not satisfy the legal standard for approval of such plan provisions in the Second Circuit.

> (ii)    Classification. The Sub Note Objectors make several Confirmation Objections related to their belief that the Subordinated Notes are currently improperly classified in Class 3.[14]

> iii)    Good Faith. CQS and U.S. Bank argue that the Plan has not been proposed in good faith in violation of section 1129(a)(3) of the Bankruptcy Code.

> iv)    Cramdown. CQS asserts that the Plan discriminates unfairly and that the Plan is not fair and equitable to holders of Subordinated Notes because interests in DH are being retained while general unsecured creditors will not be paid in full.[15]

---

[14] The Plan Proponents have addressed the classifications issues raised in the 3013 Motions through modifications to the Plan, and accordingly the Debtors believe that such "patently unconfirmable" objections are moot.

[15] Because the Plan Proponents' need to satisfy section 1129(b) is contingent upon the results of the voting on the Plan, and is thus wholly speculative, the Debtors have not addressed such arguments herein.

v)      Feasibility.  U.S. Bank argues that the Plan will not satisfy the feasibility standard under section 1129(a)(11) of the Bankruptcy Code because its claims have not yet been fixed in the Adversary Proceeding.

vi)      Equal Treatment.  U.S. Bank asserts that it is not receiving equal value as other members of Class 3 because it is being forced to give up more than other creditors in Class 3 because of the third-party releases in the Plan.

vii)      Reorganized Board of Directors and Officers.  U.S. Bank objects that the Plan cannot satisfy section 1129(a)(5) of the Bankruptcy Code because the same directors and officers of Dynegy are slated to be the directors and officers of the reorganized company.

viii)      Plan Preferred Stock Voting and other Rights.  The Committee objects to certain terms of the preferred stock that result in the Plan allegedly disenfranchising creditors from post-emergence governance under section 1123(a)(6) of the Bankruptcy Code.

Despite their attempts to characterize their Confirmation Objections as rising to the "patent unconfirmability" level, as discussed below, none of the Confirmation Objections comes close to satisfying this very high standard, and accordingly such Confirmation Objections should not even be considered at the Disclosure Statement Hearing nor impact this Court's approval of the Disclosure Statement.

29.      The Debtors therefore submit that the provisions of the Plan are appropriate, permissible and supported by applicable case law and relevant provisions of the Bankruptcy Code.  Indeed, none of the Confirmation Objections identifies any issues that render the Plan unconfirmable on its face, and the Debtors reserve the right to further respond to such arguments at the appropriate time, if necessary.  The Disclosure Statement Hearing, however, should be focused exclusively on the adequacy of disclosure, and it should not be transformed into a "mini" confirmation hearing.  Accordingly, such Confirmation Objections should not be addressed at, and are not ripe for determination in connection with, the Disclosure Statement Hearing.  As set forth above, the Disclosure Statement contains "adequate information" as required by section 1125 of the Bankruptcy Code and should be approved.

## IV.    The Confirmation Objections Fail to Show that the Plan Is "Patently Unconfirmable"

30.    It is only on rare occasions that a bankruptcy court may withhold approval of a disclosure statement when the disclosure statement describes a plan of reorganization which on its face is "patently unconfirmable."  See, e.g., Cardinal-Congregate I, 121 B.R. at 764 (holding that approval of a disclosure statement should sometimes be withheld where confirmation of the plan would be "impossible").[16]  None of the Confirmation Objections asserts defects that would render the Plan "patently unconfirmable" at this time, and therefore none requires consideration at the Disclosure Statement Hearing.  The Debtors have, however,

---

[16] Courts in the Second Circuit have been loath to deny approval of a disclosure statement because of objections arguing that the underlying plan is "patently unconfirmable."  In fact, a survey of Second Circuit case law yields only four cases where this result has occurred.

(1):  In In re Filex, Inc., 116 B.R. 37, 40 (Bankr. S.D.N.Y. 1990), the court determined the plan to be patently unconfirmable because it required that all objections or disputes as to claims would be resolved by an arbitrator rather than by the court in accordance with the procedures contained in 11 U.S.C. § 502.  Such a provision would bar a plan's confirmation under 11 U.S.C. § 1129(a)(1).  Coloring this decision, the court appropriately determined that the parties in interest, including the debtor, had no intention of confirming a reorganization plan but were using the chapter 11 process as merely a mechanism to maintain the status quo prior to a negotiated liquidation and consensual dismissal.  Id.  The court denied approval of the disclosure statement and dismissed the case, stating that "[a] court approval of a disclosure statement for a plan which will not, nor can not, be confirmed by the Bankruptcy Court is a misleading and artificial charade which should not bear the imprimatur of the court."  Id. at 41.

(2) and (3):  In re 266 Washington Assoc., 141 B.R. 275 (Bankr. E.D.N.Y.), and In re R & G Properties, Inc., No. 08-10876, 2009 WL 2004211 (Bankr. D. Vt. 2009), were both single-asset chapter 11 cases where the creditor pool was comprised of a single undersecured creditor whose deficiency claim dominated the unsecured creditor class (95% and 97% in amount, respectively).  Both debtors attempted to engineer plans that would allow for cramdown under 11 U.S.C. §§ 1129(a)(10) & (b); however, attempts to separately classify the dominant creditors' claims were determined to be impermissible gerrymandering.  See 266 Washington Assoc., 141 B.R. at 286 ("There is no valid reason or justification for separately classifying [the unsecured claims].  The only difference . . . is the size of the claims which, standing alone, does not amount to a dissimilarity warranting separate classification under 11 U.S.C. § 1122").  Both the 266 Washington and R & G Properties courts determined that since "no other plan of reorganization which might be proposed by the Debtor is capable of confirmation," 266 Washington Assoc., 141 B.R. at 287, the only appropriate action was to dismiss the debtors' chapter 11 cases.  See R & G Properties, Inc., 2009 WL 2004211 at *2 ("If Capmark, in its capacity as the holder of the only secured claim and of 97% of unsecured claims, opposes the Debtor's reorganization, it can prevent the Debtor from reorganizing under Chapter 11 by voting against the Plan").

(4):  Finally, in In re Hirsch, 360 B.R. 43 (Bankr. E.D.N.Y. 2007), an individual chapter 11 case, the bankruptcy court ultimately converted the case to chapter 7 after finding the debtor's plan to be unconfirmable.  Though noting that the debtor might have been able to produce a confirmable plan, the court felt conversion was the best course of action because of the debtor's failure to produce an acceptable plan over a four-year period, including four failed attempts, while repeatedly providing inadequate disclosure.  Id. at 50.

provided further discussion of why the other Confirmation Objections – which as described above are, as a preliminary matter, premature at this time – do not render the Plan patently unconfirmable.

A.    <u>The Plan Will Satisfy Section 1129(a)(5) of the Bankruptcy Code at the Confirmation Hearing and Is Not Patently Unconfirmable.</u>

31.    U.S. Bank asserts that the Plan violates section 1129(a)(5) of the Bankruptcy Code on the basis that "any plan that purports to maintain the current makeup of Dynegy Holdings' board simply is not consistent with current or future creditors' interests." U.S. Bank Objection at ¶ 40.  This is a meritless confirmation objection and, as the Plan Proponents will demonstrate at the Confirmation Hearing, the Plan satisfies the requirements of section 1129(a)(5).

32.    Section 1129(a)(5) of the Bankruptcy Code provides that:

> The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

11 U.S.C. § 1129(a)(5).[17]

33.    In order to successfully challenge a debtor's compliance with section 1129(a)(5), an objecting party must affirmatively prove that such debtor's management has committed wrongdoing.  <u>In re Leslie Fay Cos.</u>, 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997); <u>see also</u> <u>In re Toy & Sports Warehouse, Inc.</u>, 37 B.R. 141, 149-150 (Bankr. S.D.N.Y. 1984) (absent

---

[17] The Disclosure Statement provides adequate information regarding the identities and affiliations of all individuals that have served as directors, officers, or voting trustees of DH and Dynegy ove approximately the last year, during the period when the Prepetition Restructurings occurred.  Disclosure Statement at pp. 39-45.

evidence that the continued service is inconsistent with the interests of creditors, equity security

holders, or public policy, continued service is proper).  Absent a showing of sufficient evidence

to demonstrate that appointment of a debtor's proposed directors and officers would be

inconsistent with the interest of creditors or public policy, the continued service of a debtor's

management is proper.[18]  Id.  Here, U.S. Bank has provided no such demonstration, and the

Court has not been provided with a full record, which it will have only at the Confirmation

Hearing when this objection should properly be addressed.  In short, U.S. Bank's section

1129(a)(5) objection is meritless, unsupported (as evidenced by the facts and U.S. Bank's

inability to cite any cases in which a Court did not a approve a disclosure statement because of

an alleged prospective failure to satisfy section 1129(a)(5)), and does not demonstrate that the

Plan is patently unconfirmable on this basis.  The Plan Proponents can and will demonstrate that

the Plan satisfies section 1129(a)(5) in connection with confirmation.  Accordingly, U.S. Bank's

objection to the Disclosure Statement on this basis should be overruled.

    B.    <u>U.S. Bank Has Not Shown That the Plan Is Not Feasible.</u>

      34.    U.S. Bank asserts that the Plan cannot satisfy the feasibility requirement of

section 1129(a)(11) of the Bankruptcy Code.[19]  Section 1129(a)(11) provides that, for the court

to confirm a plan, it must find that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the
> need for further financial reorganization, of the debtor or any successor to the

---

[18] As noted above in footnote 15, a search of case law in the Southern District of New York generated no cases in
which a disclosure statement was not approved due to a plan being "patently unconfirmable" based upon a §
1129(a)(5) deficiency.  The cases cited in this paragraph, as well as the one case cited by U.S. Bank, addressed §
1129(a)(5) in the setting of a plan confirmation hearing.

[19] In addition, the Committee argues that the Plan cannot be confirmed because of the contingent nature of U.S.
Bank's claims.  See Committee Objection, ¶¶ 28-31.  The Debtors are not sure what portion of the section 1129(a)
confirmation standard the Committee is alleging the Plan violates in respect of this argument, and deny that such
contingency has any impact on the Plan Proponents' ability to confirm the Plan.  Moreover, as described above and
in the Summary Chart, the  Disclosure Statement contains significant disclosure about this contingency and its
potential effect on the Plan.

debtor under the plan, unless such liquidation or reorganization is proposed by the plan.

11 U.S.C. § 1129(a)(11).  "A Bankruptcy Court, in determining the feasibility of a proposed plan of reorganization should 'scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'"  In re Monnier Brothers, 755 F.2d 1336, 1341 (8th Cir. 1985).  The plan proponent is not required to guarantee the ultimate success of the reorganized company.  Id.; see also In re Wolf, 61 Bankr. 1010, 1011 (Bankr. N.D.Iowa 1986).  Rather, the plan proponent is only required to provide a "'reasonable assurance of success.'" In re Johns-Manville Corp., 68 B.R. 618, 635 (Bankr. S.D.N.Y. 1986) (quoting In re Trail's End Lodge, Inc., 54 Bankr. 898, 904 (Bankr. D. Vt. 1985)).

35.    U.S. Bank's argument regarding feasibility boils down to a concern that if its claims are allowed in an amount above $190-290 million, then the Plan would not be "feasible."  U.S. Bank Objection at ¶ 31.[20]  This argument is meritless and does not address any issue of feasibility.   As an initial matter, in the event the Indenture Trustee's claims are allowed in amount above $190-$290 million, the issue of feasibility does not arise as either the relevant condition precedent to the consummation of the Plan will be waived by the necessary parties or it will not, in which case the Plan will not become effective.

36.    Furthermore, U.S. Bank offers no support for its objection, nor does it provide its view of the appropriate debt threshold that could be supported by the reorganized company (and, even if it did, that would simply raise a confirmation objection to be adjudicated by the Court based upon the full record of the Confirmation Hearing).[21]  By contrast, the Plan

---

[20] Notably, U.S. Bank states in its Objection that the amount of these claims "has not been determined," yet U.S. Bank feels this objection is appropriate because it "believes" the allowed amount will exceed $190 million. Id. at 31.

[21] Although the allowance of the Indenture Trustee's claims in an amount no greater than $190 million (which, in addition to the Allowed $110 million TIA Claim, equals the actual $300 million cap on the Lease Guarantee Claims

Proponents have provided projections that demonstrate their ability to support the distributions

made under the Plan, and can and will demonstrate, at confirmation, that the Plan meets the

standard required for "feasibility" under section 1129(a)(11).  <u>See</u> Disclosure Statement, Ex. D.

The Plan provides for avenues to effectiveness regardless of the allowed amount of the Indenture

Trustee's claims, and the projections appended to the Disclosure Statement show that the

reorganized company can support the securities issued under the Plan, and as such the Plan

demonstrates the necessary "reasonable assurance of success."  <u>Johns-Manville Corp.</u>, 68 B.R. at

635.  Accordingly, this "patent unconfirmability" objection to the Disclosure Statement based

upon alleged lack of feasibility of the Plan should be overruled in its entirety.

  C. <u>The Plan's Inclusion of Proposed Third-Party Releases and Exculpation Does Not
Render the Plan Unconfirmable on its Face.</u>

   37. Certain Objectors have asserted that the third-party releases and certain

injunctive provisions in the Plan (which they will apparently contest in connection with

confirmation) make approval of the Disclosure Statement inappropriate at this time.  <u>See</u> U.S.

Bank Objection at ¶ 41.  <u>No Second Circuit or Southern District case has ever rejected a

disclosure statement on the ground that the plan it describes is "patently unconfirmable" because

of the existence of contested – even hotly contested – third-party release provisions.</u>  Indeed,

U.S. Bank admits that third-party releases can be approved, and indeed have been approved, in

the Second Circuit and the Southern District in the plan confirmation context, even if the

standard for obtaining such approval may be difficult to satisfy.  <u>See Deutsche Bank AG,

London Branch v. Metromedia Fiber Network, Inc.</u> (<u>In re Metromedia Fiber Network, Inc.</u>), 416

---

as set forth in the Plan) has been set as a "condition precedent" to Plan effectiveness, <u>see</u> Plan § 12.3, failure of this
condition will not <i>per se</i> bar the effectiveness of the Plan.  Section 12.3 of the Plan provides for the potential waiver
of this condition, subject to certain conditions, and such waiver may be made by the Plan Proponents alone to the
extent that the aggregate claim amount for the Lease Guarantee Claims, including the TIA Claim, does not exceed
$400 million. <u>Id.</u>

F.3d 136, 141 (2d. Cir. 2005) (citing cases in this circuit and district where similar provisions

have been approved).

38.    The Debtors have provided additional disclosure in the revised Disclosure

Statement (See Disclosure Statement at pp. 145-46) regarding the legal requirements for

obtaining approval of third-party releases in the Plan, and have cited the leading case in the

Second Circuit where the court granted third-party releases.  Id.  Needless to say, given the fact

that these courts confirmed plans including third-party releases, it is obvious that the courts in

Charter and Ion Media approved disclosure statements that described the third-party releases that

were ultimately approved.  Thus, although the standard at confirmation for approval of these

Plan provisions may be high, there is no precedent regarding a debtor's ability to satisfy the

"patent unconfirmability" threshold at its disclosure statement hearing.

39.    The Debtors will demonstrate at the Confirmation Hearing that the

releases and exculpation provisions contained in the Plan are appropriate under applicable case

law at the Confirmation Hearing.  Among other things, the exculpation provisions included in the

Plan are a part of the Plan settlement contained therein, and will be approved under the Rule

9019 standards.  The injunctions provided under the Plan are thus a critical component of the

restructuring transactions contemplated in the Plan, which enjoys substantial creditor support

(and the Debtors believe is likely to be accepted by holders of General Unsecured Claims in

Class 3, the sole impaired Class under the Plan).  It would be nonsensical to deny the Plan

Proponents' ability to solicit votes on a Plan containing this settlement and incorporating release

and injunctive provisions to implement that settlement.  If Class 3 votes to accept the Plan, it

would show significant support for the releases and injunctive provisions included as part of the

settlement contained in the Plan.  Creditors deserve this right -- to  determine whether the Plan

economics and overall deal make sense in light of the releases (including of certain non-Debtors) that they will provide.  These Plan provisions have been heavily negotiated with major economic stakeholders in these cases, and are essential to the heavily-supported settlements embodied in the Plan that the Debtors believe will help DH and multiple other parties avoid costly, lengthy, and inherently uncertain litigation.

> D.    The Plan Has Been Proposed in Good Faith and the Legal Standard Set Forth in Section 1129(a)(3) of the Bankruptcy Code Will Be Satisfied at Confirmation.

40.    U.S. Bank and CQS argue that the Plan is patently unconfirmable because it allegedly has not been proposed in good faith, and therefore the Disclosure Statement should not be approved.  See, e.g., U.S. Bank Objection at ¶ 36.  While the Plan must, and most certainly does, comply with section 1129(a)(3), the appropriate time to measure compliance is at confirmation.  Section 1129(a)(3) provides that a "plan has been proposed in good faith and not by any means forbidden by law."  The Second Circuit has held that this means a plan was proposed "with honesty and good intentions and with a basis for expecting that a reorganization can be effected."  Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 649 (2d Cir. 1998).

41.    The Disclosure Statement Hearing is not the appropriate time for this Court to make findings on the record to support the argument that the Plan has not been proposed in good faith.  There is a reason that no court in the Second Circuit has ever ruled that a disclosure statement must be rejected due to the plan it describes being "patently unconfirmable" based on the unverified, untested, and blatantly self-interested arguments of a creditor at the disclosure statement stage.  See supra fn. 15 (describing the four New York cases refusing to approve a disclosure statement because the plans were patently unconfirmable – none of which was based upon lack of plan good faith).  Despite these spurious allegations regarding alleged

lack of plan good faith under section 1129(a)(3), the Plan is not "patently unconfirmable" on any

basis, and thus the Disclosure Statement objections raising this issue should be overruled in their

entirety.

       E.      <u>U.S. Bank Has Not Shown Unequal Treatment in Class 3.</u>

       42.     U.S. Bank further asserts that the Plan is "patently unconfirmable"

because its claims are allegedly not receiving "equal treatment" under the Plan.  U.S. Bank

Objection at ¶¶ 32-35.  No issue raised by U.S. Bank may be less appropriate for preliminary

determination in connection with consideration of approval of the Disclosure Statement than its

"equal treatment" objection.  Notably, the only case that U.S. Bank cites in its Disclosure

Statement objection on this issue is a plan confirmation case.  <u>See</u> <u>id.</u> (citing <u>In re Quigley</u>, 437

B.R. at 146), and U.S. Bank completely fails to provide sufficient evidence to support its

assertions.

       43.     U.S. Bank argues in the first instance that it should share in any

subordination of the Subordinated Notes, but provides only a cursory sampling of language from

the Subordinated Notes Indenture to support its position.  U.S. Bank does not, in fact, have the

same rights as the holders of Senior Notes under the subordination provisions in question, and

the issue – to the extent that U.S. Bank presses its objection – will be fully briefed and

considered in connection with the Confirmation Hearing.  In addition, the Debtors disagree with

U.S. Bank's second equal treatment argument that the Plan's release of its alleged third party

claims against, among others, the PSEG Entities, can lead to unequal treatment by depriving it of

distributions on account of such alleged claims.  Even assuming *arguendo* that U.S. Bank's

possession of these allegedly unique claims did raise concerns of "unequal treatment," U.S. Bank

has still failed to demonstrate, as a threshold issue, that such "unique claims" even exist and,

perhaps more importantly, have any value.  Its self-serving allegation that it "believes that it may

have" claims against "certain creditors" (id. at 34) is not sufficient to demonstrate that the Plan

fails the "equal treatment" requirement at this stage of the case, and thus fails to show "patent

unconfirmability" of the Plan on this basis as a ground for denying approval of the Disclosure

Statement.  In addition, the Plan Proponents should be provided the opportunity – at the

Confirmation Hearing – to provide the Court with a full record and brief these issues.  These

arguments are not properly before the Court, and must fail at this stage of the proceedings.

      F.    <u>The Plan Does Not Violate Section 1123(a)(6) of the Bankruptcy Code.</u>

      44.    The Committee contends that the Plan "disenfranchises" General

Unsecured Creditors in Class 3 by allegedly denying them "any participation in the governance

of DI following the conclusion of these bankruptcy cases."  Committee Objection at ¶¶ 36-37.

Like many of the others Confirmation Objections described in this section of the Response, there

is a good reason that section 1123(a)(6) of the Bankruptcy Code has not been successfully

litigated at the disclosure statement stage of a bankruptcy proceeding:

> If creditors and equity security holders have adequate information, creditors
> should be in a position to negotiate and accept or reject a plan pursuant to which
> securities are issued with characteristics that meet the needs of the debtor and the
> affected creditors and equity security holders.

7 <u>Collier on Bankruptcy</u> ¶ 1123.01[6] (2011).[22]  Nothing in these cases should dictate a different

result, and any objection to the Plan under section 1123(a)(6) should be heard and dismissed only

in connection with the Confirmation Hearing.

---

[22] In addition, as a preliminary matter, it bears emphasis that section 1123(a)(6) has been the subject of criticism among bankruptcy commentators and practitioners.  <u>See</u>, <u>e.g.</u>, <u>id.</u> ("It is suggested that the inclusion of section 1123(a)(6) was not well considered and represents an intrusion of the paternalistic hand of chapter X into practice under chapter 11 of the Bankruptcy Code."); <u>Ginsberg & Martin on Bankruptcy</u>, §13.09[H] (Supp. 1997) ("These provisions, which are a carryover from old chapter X and represent the thinking of the Securities and Exchange Commission in the 1930s about how large publicly held corporate debtors are reorganized, are archaic."); Kenneth N. Klee, <u>Adjusting Chapter 11: Fine Tuning the Plan Process</u>, 69 Am Bankr. L. J. 551, 555 (1995) (noting confusion over whether securities providing only limited voting rights satisfy section 1123(a)(6)). It is against that historical

45.     Contrary to the allegations made in the Committee Objection, the Plan does not contemplate the issuance of "nonvoting" securities.  In fact, the Certificate of Designation of Dynegy Inc. (the "Stock Designation"),[23] attached as Exhibit D to the Plan, provides extensive detail with respect to the voting rights of holders of shares of Plan Preferred Stock.  More fundamentally, the Committee appears to ignore the basic facts of these cases:  the Plan securities were heavily negotiated with holders of a significant amount of the Senior Notes and Subordinated Notes, and has subsequently been supported by additional holders of such notes as well as by the PSEG Entities, all of whom have agreed to the terms in the Stock Designation.  These are the parties that will largely hold the securities contemplated in the Plan – not the Committee.  The creditors in Class 3 that will receive the Plan Preferred Stock should be able to determine what rights and obligations they will have under such securities, and in this case they have chosen to give up certain voting and governance rights in exchange for more economics.  As the Plan Proponents will demonstrate at the Confirmation Hearing, with the voting record as evidence, this negotiation and  the resulting terms of the Stock Designation should not be upset by the Committee, or any other party.

46.     For the foregoing reasons, this "patent unconfirmability" objection to the Disclosure Statement based upon the alleged violation of sections 1123(a)(6) and 1123(a)(7) of the Bankruptcy Code is not ripe for adjudication at this time, is not supported by the facts in these Chapter 11 Cases, and should be overruled in its entirety.

---

backdrop that modern-day corporate reorganizations have evolved.  Today, the "issuance of preferred stock is a very common occurrence in a reorganization plan, and Congress, in section 1123(a)(6), did not expressly prohibit its use."  Richard L. Epling, Fun with Nonvoting Stock, 10 Bankr. Dev. J. 17, 23 (1993/1994) (noting that the "language of section 1123(a)(6) does not prohibit preferred stocks which vote under limited circumstances"); see also In re Mesa Air Group, Inc., 2011 Bankr. LEXIS 3855 *25-26 (Bankr. S.D.N.Y. Jan. 20, 2011) (unpublished opinion) (noting that the issuance of blank check preferred stock does not violate the "spirit" of 1123(a)(6)).
[23] Capitalized terms used but not defined in this subsection of the Response shall have the meanings ascribed to such terms in the Stock Designation, the Plan or the Disclosure Statement, as applicable.

## CONCLUSION

47.    For all of the foregoing reasons, the Debtors respectfully submit that the

Disclosure Statement should be approved as containing "adequate information," within the

meaning of section 1125 of the Bankruptcy Code, and that all of the Objections – to the extent

they have not been resolved through the additional disclosures discussed herein – should be

overruled in their entirety.

Dated:  March 7, 2012
Poughkeepsie, New York

Respectfully submitted,

SIDLEY AUSTIN LLP

/s/ Paul S. Caruso
James F. Conlan (admitted *pro hac vice*)
Jeffrey E. Bjork (admitted *pro hac vice*)
Paul S. Caruso
Matthew A. Clemente (admitted *pro hac vice*)
Andrew F. O'Neill
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile:  (212) 839-5599

Counsel for Debtors and Debtors in Possession