**Hearing Date & Time: August 9, 2012 at 10:00 a.m. (ET)**
**Objection Deadline: July 27, 2012 at 12:00 p.m. (ET)**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Brad M. Kahn

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                               :
In re                              :   Chapter 11 Case
                               :
DYNEGY HOLDINGS, LLC, *et al.*[1]  :   Case No. 11-38111 (CGM)
                               :
        Debtors.           :   (Jointly Administered)
                               :
---------------------------------------------------------------- x

**NOTICE OF HEARING ON THE APPLICATION
FOR AN ORDER APPROVING AN AMENDMENT TO TERMS OF
RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL
ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**PLEASE TAKE NOTICE** that on July 17, 2012, the Official Committee of Unsecured

Creditors (the "Committee") of Dynegy Holdings, LLC ("DH"), Dynegy Danskammer, L.L.C.

("Dynegy Danskammer"), Dynegy Roseton, L.L.C. ("Dynegy Roseton") and their affiliated

debtors and debtors-in-possession (collectively, the "Debtors") filed the *Application for an*

*Order Approving an Amendment to Terms of Retention of Blackstone Advisory Partners L.P. as*

*Financial Advisor to the Official Committee Of Unsecured Creditors* (the "Application").

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299).

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Application shall be held before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 355 Main Street, Poughkeepsie, New York 12601, on <u>August 9, 2012 at 10:00 a.m. (Eastern Time).</u>

**PLEASE TAKE FURTHER NOTICE** that any objections or other responses to the Application must: (a) be made in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Rules and the Administrative Order Establishing Case Management Procedures [Docket No. 35] (the "Case Management Procedures"); (c) state with particularity the legal and factual basis for the objection or other response; and (d) be filed with the Court (with a copy to Chambers) in accordance with General Order M-399, and served upon (i) counsel to the Debtors, Sidley Austin LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Brian J. Lohan; (ii) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Arik Preis; (iii) the Office of the United States Trustee, 74 Chapel Street, Suite 200, Albany, New York 12207, Attn: Lisa Penpraze; and (iv) all parties identified on the Special Service List and the General Service/2002 List maintained in these cases pursuant to the Case Management Procedures, in each case so as to be received no later than <u>July 27, 2012 at 12:00 p.m. (Eastern Time)</u> (the "<u>Objection Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that if no responses with respect to the Application are timely filed and served in accordance with the Case Management Order, the Committee may, on or after the Objection Deadline, submit to the Court an order substantially in the form annexed to the Application, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:      New York, New York
            July 17, 2012

                                    AKIN GUMP STRAUSS HAUER & FELD LLP


                                    By:    */s/ Ira S. Dizengoff*
                                           Ira S. Dizengoff
                                           Arik Preis
                                           Brad M. Kahn
                                           Akin Gump Strauss Hauer & Feld LLP
                                           One Bryant Park
                                           New York, New York 10036
                                           (212) 872-1000 (Telephone)
                                           (212) 872-1002 (Facsimile)
                                           idizengoff@akingump.com
                                           apreis@akingump.com
                                           bkahn@akingump.com

                                           *Counsel for the Official Committee of
                                           Unsecured Creditors*

**Hearing Date & Time: August 9, 2012 at 10:00 a.m. ET**
**Objection Deadline: July 27, 2012 at 12:00 p.m. ET**

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis
Brad M. Kahn

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re                                                            :   Chapter 11 Case
                                                                 :
DYNEGY HOLDINGS, LLC, *et al.*[1]                                :   Case No. 11-38111 (CGM)
                                                                 :
          Debtors.                                               :   (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

## APPLICATION FOR AN ORDER APPROVING AN AMENDMENT TO TERMS OF RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Official Committee of Unsecured Creditors (the "Committee") of Dynegy Holdings,

LLC ("DH"), Dynegy Danskammer, L.L.C. ("Dynegy Danskammer"), Dynegy Roseton, L.L.C.

("Dynegy Roseton") and their affiliated debtors and debtors-in-possession (collectively, the

"Debtors") and the Debtors hereby file this application (the "Application") for an order, pursuant

to sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and

Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

authorizing an amendment to the terms of retention of Blackstone Advisory Partners L.P.

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299).

(collectively with its affiliates, "Blackstone") as financial advisor to the Committee. In support of its Application, the Committee states as follows: [2]

## I.  PRELIMINARY STATEMENT

1.     The Committee, with the support of the Debtors and the Lease Trustee (in its capacity as the largest prepetition and administrative expense creditor of the Dynegy Roseton and Dynegy Danskammer estates), seeks authority to amend Blackstone's retention to provide that Blackstone will lead the efforts to market and sell the Facilities as contemplated by the Settlement Agreement approved by this Court on June 1, 2012.  Since the execution of the Settlement Agreement on May 1, 2012, the Debtors, the Committee, and various other interested parties have begun discussions regarding the sale of the Facilities operated by Debtors Dynegy Danskammer and Dynegy Roseton.  The Debtors (with the support of the Committee and Lease Trustee) have concluded that Blackstone is uniquely qualified to manage the Facilities Sale Process and assist the parties in maximizing value for the Debtors' estates.

2.     Blackstone has experience and expertise in marketing and selling assets in the energy industry, as well as in the context of large, complex restructuring cases.  Further, Blackstone, by virtue of its retention as financial advisor to the Committee, has familiarity with the Facilities, the Debtors' businesses and these chapter 11 cases, which will allow Blackstone to provide these services in an efficient manner.  Finally, the Committee believes and the Debtors agree that, as an advisor to the Committee, Blackstone is an independent party that can focus on maximizing value for the benefit of all creditors, which properly aligns its incentives with those of the Debtors and all stakeholders.  Accordingly, the Committee respectfully requests that the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Agreement (as defined below).

Court approve this Application to amend Blackstone's retention to manage the Facilities Sale Process.[3]

3.      To be clear, although Blackstone is retained as the Committee's financial advisor in these cases, solely for purposes of the Facilities Sale Process and all matters related thereto, Blackstone will serve as advisor to the Debtors.[4]  The Debtors and the Committee believe that amending Blackstone's retention to provide for this mandate would be the most cost-effective and best option for the estates.

## II.      JURISDICTION AND VENUE

4.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      BACKGROUND

### A.    Chapter 11 Cases

5.      On November 7, 2011 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.      Since the Petition Date, the Debtors have continued in possession of their properties and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On November 9, 2011, the Court entered an order jointly administering these chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for procedural purposes only.

---

[3]   The Committee has provided a copy of this Application to the Office of the United States Trustee for Region 2 (the "U.S. Trustee") and has been advised that the U.S. Trustee has no objection to the relief requested herein.

[4]   To be clear, although Blackstone will be advising the Debtors in connection with the Facilities Sale Process, Blackstone will continue to advise the Committee as well in the exercise of the Committee's fiduciary duties. The parties believe that, in light of the fact that the interests of the Debtors and unsecured creditors are aligned with respect to maximizing value in the Facilities Sale Process, this does not present any issue or concern.

3

7.    On November 16, 2011 (the "Committee Formation Date"), pursuant to Bankruptcy Code section 1102, the Trustee appointed the Committee.[5]   On the Committee Formation Date, pursuant to section 1103(a) of the Bankruptcy Code, the Committee selected Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") to serve as counsel to the Committee.

**B.    Retention of Blackstone**

8.    On November 18, 2011, the Committee formally interviewed and reviewed qualification materials and fee proposals submitted by a number of candidates, and at the conclusion of this process the Committee selected Blackstone as its financial advisor.  Such selection was based on the Committee's determination that, in light of, among other things, Blackstone's familiarity with the Debtors' businesses, Blackstone was the best candidate to provide financial advisory services to the Committee.  Accordingly, the Committee and Akin Gump executed an engagement letter with Blackstone (the "Engagement Letter"), along with an attached indemnification agreement (the "Indemnification Agreement"), setting forth the terms and conditions pursuant to which Blackstone agreed to provide financial advisory services to the Committee.  A copy of the Engagement Letter is attached hereto as **Exhibit A** and incorporated by reference herein.

9.    On December 10, 2011, the Committee filed an application for an order authorizing it to retain Blackstone as its financial advisor in connection with these chapter 11 cases, effective as of November 18, 2011 [Docket No. 177] (the "Original Application").

10.    On January 19, 2012, the Court entered that certain Order Granting Application for Employment of Blackstone Advisory Partners L.P. as Financial Advisor to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to November 18, 2011 [Docket No. 338] (the

---

[5]    The Committee is currently comprised of the following entities: U.S. Bank National Association ("U.S. Bank" or "Lease Trustee"), Roseton OL, LLC, Wilmington Trust, National Association, Wells Fargo Bank, N.A. and Central Hudson Gas & Electric Corporation.

4

"Original Retention Order"), which approved the retention of Blackstone as financial advisor to the Committee pursuant to Bankruptcy Code sections 328(a) and 1103.

**C.     The Settlement Agreement and Facilities Sale Process**

11.     On May 1, 2012, the Debtors filed the Motion to Approve Settlement Agreement Between the Debtors and the Settlement Parties Pursuant to Rule 9019 of the Settlement Agreement [Docket No. 640] (the "Settlement Motion"), by which the Debtors sought this Court's approval of that certain Settlement Agreement (as amended and restated on May 30, 2012, the "Settlement Agreement") between and among: (i) DH and each of the Debtors; (ii) Dynegy Inc.; (iii) Dynegy Coal Holdco, LLC; (iv) Dynegy Gas Investments, LLC; (v) the Lease Trustee; (vi) the PSEG Entities;[6] (vii) the Consenting Senior Noteholders; (viii) the Consenting Sub Debt Holders; and (ix) solely with respect to those sections enumerated in the Settlement Agreement's preamble, the Subordinated Notes Indenture Trustee (each a "Settlement Party" and, together, the "Settlement Parties"). Although not a party to the Settlement Agreement, the Committee supported the relief requested by the Settlement Motion and the Settlement Parties' entry into the Settlement Agreement. On June 1, 2012, this Court entered an order approving the Settlement Agreement and granting the relief requested in the Settlement Motion [Docket No. 758] (the "Settlement Approval Order").

12.     Pursuant to the Settlement Agreement, the Debtors, with the cooperation of the PSEG Entities, shall use their commercially reasonable best efforts to sell (the "Facilities Sale Process") the Roseton and Danskammer power generation facilities (including all of the power generation units and other structures and equipment, the related land and all other assets related to the operation thereof) (all such assets together, the "Facilities"), including all of the Debtors'

---

[6]     The PSEG Entities are comprised of Resources Capital Management Corporation, Resources Capital Asset Recovery, L.L.C., Series DD and Series DR, Danskammer OL LLC, Roseton OL LLC, Danskammer OP LLC, and Roseton OP LLC.

and the PSEG Entities' interest in the Facilities, as soon as reasonably practicable. *See* Settlement Agreement, § II.d(iii). The Settlement Agreement also provides that the Debtors and the PSEG Entities cannot execute a binding sale agreement or ancillary agreement without the prior written consent of the Lease Trustee and the Committee, and without prior consultation with the Consenting Senior Noteholders. *See id.*

13. The Settlement Agreement further provides a mechanism for the distribution of the proceeds from the sale of the Facilities (or any portion thereof), which includes reimbursement of the Debtors for the reasonable fees and expenses incurred in connection with the Facilities Sale Process, including payment of Blackstone's fees in connection with the Facilities Sales Process.[7] *See id.* at § II.(d)(iv).

14. Following the execution of the original Settlement Agreement on May 1, 2012, the parties, including the Debtors, the Lease Trustee, the PSEG Entities and the Committee, began discussions regarding the Facilities Sale Process. Following these discussions, the Debtors concluded that Blackstone was uniquely situated to lead the efforts to market and sell the Facilities given their knowledge of the Facilities and the facts and circumstances of these chapter 11 cases.

**D. Blackstone's Qualifications**

15. As discussed in the Original Application, Blackstone is one of the leading advisors to companies and creditors in restructurings and bankruptcies with professionals that have extensive experience working with financially troubled companies in complex financial restructurings. Specifically, Blackstone has significant experience in the energy and power/utility sector. Blackstone served as restructuring advisor to the company in the chapter 11

---

[7] For the avoidance of doubt, no entity other than Dynegy Roseton, Dynegy Danskammer, Hudson Power, L.L.C., or Dynegy Northeast Generation, Inc. shall be responsible for payment of the Facilities Sale Fee (as defined below).

cases of, among others, *Enron Corp.*, *Flying J Inc.*, *Hawkeye Renewables, LLC*, *SemGroup, L.P.*, and *Mirant Corporation*. Notably, in the *Enron* bankruptcy, Blackstone advised the debtor on its sale of Portland General Electric to Oregon Electric Utility for a substantial purchase price consisting of cash and other consideration.

16. Additionally, Blackstone and its professionals have served as advisor to companies in numerous other asset sales in the power sector, including serving as advisor to (i) GDF Suez in connection with the combination of GDF Suez Energy's international assets with International Power to create an independent power producer with over 66,000 megawatts ("MW") of gross capacity in operation, (ii) E.ON A.G. in connection with the sale of its Kentucky utilities including approximately 7,500 MW of generation capacity, (iii) Hastings Infrastructure Fund and JP Morgan Infrastructure Fund in connection with the purchase a 974 MW gas-fired power plant portfolio, and (iv) a creditor group in connection with the sale of La Paloma Generating Company, LLC a 1,022 MW gas-fired generating facility.

17. The Committee, as well as the Debtors, the Lease Trustee, and the PSEG Entities believe that, in light of Blackstone's experience and expertise in the energy sector (particularly in the sale of power generating assets), its familiarity with these assets and these chapter 11 cases, and its overall expertise in complex restructurings, the amendment of Blackstone's retention to allow it to manage the Facilities Sale Process is in the best interests of the estates and their creditors.

## IV. RELIEF REQUESTED

18. By this Application, the Committee and the Debtors request that the Court enter an order pursuant to Bankruptcy Code sections 328(a) and 1103 approving certain modifications to the terms of Blackstone's retention, including expanding the scope of Blackstone's services to

include the marketing and sale of the Facilities and the modification of Blackstone's fee structure with respect to the Facilities Sale Process.

## V.   APPLICATION

19.   The Settlement Agreement contemplates, among other things, the commencement of a sale process for the Facilities operated by Dynegy Danskammer and Dynegy Roseton for the benefit of their creditors.  Given Blackstone's familiarity with the Facilities since its retention by the Committee at the outset of these cases, and its role as advisor to the Committee – the independent fiduciary acting to maximize value for all unsecured creditors – the Committee and the Debtors believe that it is in the best interests of the Debtors' estates for Blackstone to manage the Facilities Sale Process.  Blackstone has expertise in advising parties in connections with the sale of power and energy-related assets (both within and outside of the context of restructurings and distressed situations), and has accumulated extensive institutional knowledge regarding the Debtors, the Facilities and these chapter 11 cases.  The Debtors and the Committee believe that Blackstone will be integral to the efforts to maximize value in connection with the Facilities Sale Process.

20.   Accordingly, the Committee, the Debtors and Blackstone have agreed (with the consent of the Lease Trustee and the PSEG Entities), subject to this Court's approval, to expand the scope of Blackstone's retention to include, without limitation, the provision of the following services related to the Facilities Sale Process to the Debtors:

    (a)   leading the process of identifying and evaluating candidates for a potential Facilities Sale Transaction;[8]

    (b)   advising the Debtors in connection with negotiations regarding a Facilities Sale Transaction; and

---

[8]   A "Facilities Sale Transaction" means any transaction or series of transaction involving any transfer to, or any purchase or acquisition, directly or indirectly, by, a buyer or buyers of the Facilities (as that term is defined in the Settlement Agreement) or any portion thereof.

(c) assisting in all aspects of the Facilities Sale Process, including the consummation of a Facilities Sale Transaction.

21. In recognition of the expansion of the scope of Blackstone's services in connection with the Facilities Sale Process, the Committee, Blackstone and the Debtors have agreed (with the consent of the Lease Trustee and the PSEG Entities), subject to Court approval, to modify the terms of Blackstone's compensation structure (the "Facilities Sale Fee Structure"). The proposed Facilities Sale Fee Structure is as follows:

(a) Monthly Fee Amount:  No additional Monthly Fee (as defined in the Original Retention Order) above that already approved in the Original Retention Order. For the avoidance of doubt, the Monthly Fee shall (1) be earned and payable only pursuant to the Original Retention Order, and (2) not be credited against any Facilities Sale Fee (as defined below).

(b) Facilities Sale Fee: Blackstone will receive a fee (a "Facilities Sale Fee") payable upon the consummation of a Facilities Sale Transaction, which fee will be calculated as follows:

(i) $1,000,000 for any Facilities Sale Transaction in which the Consideration[9] exceeds the liquidation value of the Facilities (which liquidation value, for the purposes of calculating the Facilities Sale Fee shall be deemed to be $0); *plus*

(ii) 1.5% of the amount by which the Consideration exceeds $20,000,000 (up to Consideration of $50,000,000); *plus*

(iii) 2.5% of the amount by which the Consideration exceeds $50,000,000 (up to Consideration of $100,000,000); *plus*

(iv) 3.5% of the amount by which the Consideration exceeds $100,000,000.[10]

---

[9]  "Consideration" shall mean the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with a Facilities Sale Transaction.  Consideration shall also include the value of any long term liabilities consistent with generally accepted accounting principles (including the principal amount of any indebtedness for borrowed money, preferred stock obligations, any net pension liabilities and guarantees) directly or indirectly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Facilities Sale Transaction. Consideration shall include all amounts paid into escrow and all contingent payments payable in connection with the Facilities Sale Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such contingent payments are made.

[10]  The Debtors shall have the right to terminate Blackstone's engagement solely with respect to the Facilities Sale Process, with or without cause, on 30 days' written notice to Blackstone and the Committee.  Blackstone will be entitled to a Facilities Sale Fee for any Facilities Sale Transaction consummated prior to the effectiveness of such termination.  In the event the Debtors terminate Blackstone's engagement as advisor with respect to the Facilities Sale Process, Blackstone will remain entitled to any Facilities Sale Fee in respect of any Facilities Sale Transaction consummated during the period up to one year following the date of such termination; provided, that

For the avoidance of doubt, only one Facilities Sale Fee shall be payable to Blackstone and such fee shall be calculated based on the aggregate Consideration received from all Facilities Sale Transactions. The Facilities Sale Fee shall be payable to Blackstone pursuant to section II.(d)(iv) of the Settlement Agreement, as approved by the Settlement Order.

22.     In addition to the above, and so that Blackstone can assist the Debtors in the Facilities Sale Process, Blackstone will be providing its services related to the Facilities Sale Process (and only related thereto) jointly to the Debtors and the Committee, including any analyses and reports, and will therefore be available to both estate fiduciaries with respect to the Facilities Sale Process, subject to appropriate privilege and confidentiality arrangements.[11]

23.     Other than those modifications specifically identified above, the Committee is seeking no further changes to the existing compensation structure in the Engagement Letter, as approved by the Original Retention Order. Except as set forth in this Application, all other terms and conditions set forth in the Engagement Letter and the Original Retention Order shall remain the same pursuant to this Application, including any of the Debtors' indemnification and contribution obligations to Blackstone and other indemnified parties.

24.     The Facilities Sale Fee Structure is reasonable and appropriate in light of the expanded scope of services that Blackstone will provide, and is comparable to those generally charged by financial advisory firms of similar stature to Blackstone and for comparable engagements. Notably, the Facilities Sale Fee Structure was negotiated at arm's length by Blackstone, the Committee, the Debtors and the Lease Trustee. Further, the graduated percentages earned by Blackstone under the Facilities Sale Fee Structure appropriately

---

Blackstone will not be entitled to a Facilities Sale Fee for any Facilities Sale Transaction consummated following such termination that is a liquidation by the Debtors of their assets.

[11]   For the avoidance of doubt, except as modified herein, nothing in the Motion or the proposed order is intended to grant any additional rights to the Debtors under the Engagement Letter or the Indemnification Agreement.

incentivize Blackstone to maximize value for the Debtors' estates and align the interests of Blackstone with the Debtors' stakeholders.  Importantly, Blackstone will not receive any additional fees if no Facilities Sale Transaction is consummated.

## VI. RESERVATION OF RIGHTS

25.     Should this Court determine not to approve this Application for any reason, then the Engagement Letter, as approved in the Original Retention Order, shall remain in full force and effect, without interruption.  The Committee and Blackstone (along with the Debtors solely with respect to the Facility Sale Transaction matters) hereby reserve any and all of their rights to further amend, restate or terminate the Engagement Letter pursuant to such agreement's terms, and subject to any necessary Court approval.

## VII. NOTICE

26.     Notice of this Motion has been given to: (i) the Office of the United States Trustee for Region 2; (ii) the Debtors, (iii) counsel to the Debtors, Sidley Austin LLP; (iv) all those parties included on the Special Service List as defined in the Case Management Procedures approved by this Court; and (vi) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  Based on the foregoing, the Committee respectfully submits that no further notice is needed.

WHEREFORE, the Debtors and the Committee respectfully requests that the Court enter an order authorizing (i) Blackstone to lead the efforts to market and sell the Facilities pursuant to the terms of the Engagement Letter as modified by this Application, (ii) the continued payment and reimbursement of Blackstone's fees and disbursements, subject to interim and final allowance pursuant to sections 328(a) and 1103 of the Bankruptcy Code (or as otherwise ordered by the Court in the Original Retention Order) and subject to the terms of the Engagement Letter as modified by this Application, and (iii) granting such other relief as may be just and proper.

Dated:      New York, New York
            July 17, 2012

                                    AKIN GUMP STRAUSS HAUER & FELD LLP


                          By:    */s/ Ira S. Dizengoff*
                                 Ira S. Dizengoff
                                 Arik Preis
                                 Brad M. Kahn
                                 Akin Gump Strauss Hauer & Feld LLP
                                 One Bryant Park
                                 New York, New York 10036
                                 (212) 872-1000 (Telephone)
                                 (212) 872-1002 (Facsimile)
                                 idizengoff@akingump.com
                                 apreis@akingump.com
                                 bkahn@akingump.com

                                 *Counsel for the Official Committee of*
                                 *Unsecured Creditors*

## EXHIBIT A

**Engagement Letter**



November 18, 2011

Members of the Official Committee of
Unsecured Creditors of Dynegy Holdings, LLC
as listed in Exhibit A

Dear Members:

This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Partners L.P. ("Blackstone") and the Official Committee of Unsecured Creditors (the "Committee") of Dynegy Holdings, LLC (together with any co-debtor affiliates and subsidiaries, the "Company", and together with any non-debtor affiliates and subsidiaries, "Dynegy"), in cooperation with Akin Gump Strauss Hauer & Feld LLP as counsel to the Committee, regarding the retention of Blackstone on an exclusive basis by the Committee effective as of November 18, 2011 (the "Effective Date") as its financial advisor for the purposes set forth herein.

Under this Agreement, Blackstone will provide financial advisory services to the Committee in connection with a possible restructuring of certain liabilities of the Company and will assist the Committee in analyzing, structuring, negotiating and effecting a Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "Restructuring" shall mean, collectively, (i) any restructuring, reorganization, recapitalization and/or sale or other disposition of substantially all of the assets of the Company (whether or not pursuant to Chapter 11 of the United States Bankruptcy Code) affecting existing or potential debt obligations or other claims and interests, including, without limitation, senior debt, junior debt, trade claims and general unsecured claims (collectively, the "Obligations") and/or (ii) any complete or partial repurchase, refinancing, extension of repayment by the Company or any of its affiliates of any of the Obligations.

The financial advisory services to be rendered by Blackstone will include the following:

(a)     Assist in the evaluation of Dynegy's businesses and prospects;

(b)     Analyze Dynegy's long-term business plan and related financial projections;

(c)     Evaluate Dynegy's financial liquidity, debt capacity and capital structure and evaluate alternatives to improve such liquidity;

(d)     Assist in the development of financial data and presentations to the Committee;

(e)     Value any consideration offered by either the Company or Dynegy to unsecured creditors (the "Unsecured Creditors") of the Company in connection with a Restructuring;

The Blackstone Group LP
345 Park Avenue  New York NY  10154
T 212 583 5000  F 212 583 5749
www.blackstone.com

Page   2

     (f)     Analyze various restructuring scenarios and the potential impact of these scenarios on recoveries for Unsecured Creditors;

     (g)     Participate in negotiations among the Committee, the Company, Dynegy and its other creditors, suppliers, lessors and other interested parties;

     (h)     Assist in evaluating the treatment of leases by the Company;

     (i)     Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services, if requested by the Committee; and

     (j)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management."

It is agreed, subject to Bankruptcy Court approval, that the Company will pay the following fees to Blackstone for its financial advisory services under this Agreement (all fees and expenses payable to Blackstone pursuant to this Agreement shall be payable solely by the Company).

     (i)     a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date.  Fifty percent of all Monthly Fees beginning with the seventh Monthly Fee payment shall be credited against the Restructuring Fee described below;

     (ii)     an additional fee (the "Restructuring Fee") equal to $3,750,000.  Except as otherwise provided herein, a Restructuring shall be deemed to have been completed upon the confirmation of a plan pursuant to an order of the Bankruptcy Court, or in the case of a sale or other disposition of substantially all of the assets of Dynegy, upon an order of the Bankruptcy Court approving such sale or other disposition.  The Restructuring Fee will be earned on completion of a Restructuring and will be payable, in cash, on the consummation of a Restructuring, and

(iii)    reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The Committee shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Company's Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 328 and 1103 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Committee under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code, provided that Blackstone's retention may be subject to review by the U.S. Trustee under section 330. The Committee shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that Blackstone shall only be required to maintain daily records which shall indicate total hours incurred by each professional for each day and a brief description of the nature of the work performed each day and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75.

The Committee acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Committee during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Committee of Blackstone's services hereunder will not be able to be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services.   The Committee also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak

11-38111-cgm    Doc 177    Filed 12/10/12    Entered 12/10/12 17:15:08    Main Document
Pg 49 of 61

Page    4

load" issues for the firm.   In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Committee acknowledges and agrees that the fee arrangements hereunder (including the Monthly Fee and the Restructuring Fee) are reasonable.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement.   The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process and except as might be specifically and separately agreed to, for a period of one year from the date hereof, Blackstone shall keep confidential all material non-public information provided to it by or at the request of the Company or the Committee, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Committee will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information").   The Committee recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company or the Committee is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's, or the Committee's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Committee's other professional advisors or, if appropriate in the Committee's judgment, in any

filings in a Chapter 11 proceeding) without the prior written consent of Blackstone.  All services, advice and information and reports provided by Blackstone to the Committee in connection with this assignment shall be for the sole benefit of the Committee and shall not be relied upon by any other person.

The Company will indemnify Blackstone and its agents, representatives, members and employees.  A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

We also agree that neither Blackstone nor any of its agents, representatives, members, or employees shall have any liability (whether direct or indirect, in contract or tort or otherwise), to the Committee for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.

In the event that, as a result of or in connection with Blackstone's engagement for the Committee, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company (and not any members of the Committee) will reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request.  Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Committee or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee in the event that at any time prior to the expiration of 12 months following the termination of this Agreement a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated.

Neither the Company nor any of the members of the Committee appears on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor are they prohibited parties according to other U.S. government regulatory or enforcement agencies.

11-38111-cgm Doc 870 Filed 12/10/11 Entered 12/10/11 17:15:08 Main Document Pg 8 of 61

Page    6

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this letter shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of The Blackstone Group L.P., provided that the Confidential Information is not made available to representatives of The Blackstone Group L.P. and its affiliates who are not involved in the restructuring advisory business of The Blackstone Group L.P.  Should the Confidential Information be made available to a Representative of The Blackstone Group L.P. and its affiliates who is not involved in restructuring advisory business of The Blackstone Group L.P., such Representative shall be bound by this letter in accordance with its terms.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Committee hereby agrees that any action or proceeding brought against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought in the Bankruptcy Court handling such case.  The Committee irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings.  The Committee hereby irrevocably waives, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY PARTNERS L.P.

By: _____

Name:    Michael J. Genereux
Title:    Senior Managing Director

Accepted and Agreed to as
of the date first written above:

By: AKIN GUMP STRAUSS HAUER
& FELD LLP, solely in its capacity as legal
counsel to the Committee

By: _____

Name:    Ira S. Dizengoff
Title:    Partner

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF DYNEGY
HOLDINGS, LLC, ET AL.

By: CENTRAL HUDSON GAS & ELECTRIC
CORPORATION, solely in its capacity as Chair
of the Committee and not in its individual capacity

By: _____  12-8-2011

Name:    Paul A. Colbert
Title:    Associate General Counsel –
Regulatory Affairs

ATTACHMENT A

November 18, 2011

Blackstone Advisory Partners L.P.
345 Park Avenue
New York, NY  10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that the Official Committee of Unsecured Creditors (the "Committee") (as defined in the Engagement Letter) has engaged Blackstone Advisory Partners L.P. ("Blackstone") to advise and assist in connection with the matters referred to in the letter of agreement dated as of November 18, 2011 (the "Engagement Letter").   In consideration of Blackstone's agreement to act at the Committee's request in connection with such matters, the Committee agrees that the Company (as defined in the Engagement Letter) shall indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by the Company or the Committee.   The Company will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto), in such proportion as is

appropriate to reflect the relative fault of each of you and the Company, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter.

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not the Company or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding. In the event that the Company seeks to settle or compromise or consent to the entry of any Judgment, the Company agrees that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify the Company will not relieve the Company from any liability which the Company may have hereunder or otherwise, except to the extent that such failure materially prejudices the Company's rights.  If the Company so elects or is requested by such Indemnified Party, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the Company fails to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to the Company to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of the Company (as defined in the Engagement Letter) under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and

11-38111-cgm Doc 770 Filed 12/10/11 Entered 12/10/11 17:15:08 Main Document Pg 95 of 61

Page 3

inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and such Indemnified Party.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This Agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

EXHIBIT A


*WELLS FARGO BANK, N.A.*

**James R. Lewis**
Vice President, Corporate Trust Services
45 Broadway
12th Floor
New York, NY 10006


*WILMINGTON TRUST, N.A.*

**Steven Cimalore**
Vice President, Corporate Capital Markets
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-1615


*U.S. BANK NATIONAL ASSOCIATION*

**James J. McGinley**
Managing Director
461 Fifth Avenue
25th Floor
New York, NY 10017


*PUBLIC SERVICE ENTERPRISE GROUP (ROSETON OL, LLC)*

**Scott S. Jennings**
President of PSEG Global L.L.C., Vice President of M&A and Development of PSEG Services
80 Park Plaza, T20
Newark, NJ 07102


*CENTRAL HUDSON GAS & ELECTRIC CORPORATION*

**Paul A. Colbert**
284 South Avenue
Poughkeepsie, NY 12601
Associate General Counsel – Regulatory Affairs

**EXHIBIT B**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re                                                            :    Chapter 11 Case
                                                                 :
DYNEGY HOLDINGS, LLC, *et al.*[1]                                :    Case No. 11-38111 (CGM)
                                                                 :
        Debtors.                                                 :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- x

### ORDER GRANTING APPLICATION FOR AMENDMENT TO TERMS OF RETENTION OF BLACKSTONE ADVISORY PARTNERS L.P. AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Upon the application (the "Application")[2] of the Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and the Debtors for entry of an order (the "Order"), pursuant to sections 328(a) and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing an amendment to the terms of retention previously approved for Blackstone Advisory Partners L.P. ("Blackstone") as financial advisor to the Committee; this Court having reviewed (i) all prior retention applications filed by the Committee to date with respect to Blackstone and (ii) the Application; and it appearing that proper notice of the Application has been given, and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing, it is hereby:

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299).

[2]   All capitalized terms used but not otherwise defined herein shall have those meaning ascribed to them in the Application.

ORDERED that the Application is hereby granted in its entirety and in all respects; and it is further

ORDERED that solely for purposes of the Facilities Sale Process and all matters related thereto, Blackstone will serve as advisor to the Debtors;[3] and it is further

ORDERED that the scope of Blackstone's services will be amended to include, without limitation, the following:

(a)    leading the process of identifying and evaluating candidates for a potential Facilities Sale Transaction;[4]

(b)    advising the Debtors in connection with negotiations regarding a Facilities Sale Transaction; and

(c)    assisting in all aspects of the Facilities Sale Process, including the consummation of a Facilities Sale Transaction; and it is further

ORDERED that Blackstone's compensation structure will be modified pursuant to the Application as follows:

(a)    Monthly Fee:  Blackstone will not receive an additional Monthly Fee (as defined in the Original Retention Order) above that already approved in the Original Retention Order.  For the avoidance of doubt, the Monthly Fee shall (1) be earned and payable only pursuant to the Original Retention Order and (2) not be credited against any Facilities Sale Fee (as defined below).

(b)    Facilities Sale Fee: Blackstone will receive a fee (a "Facilities Sale Fee") payable upon the consummation of a Facilities Sale Transaction, which fee will be calculated as follows:

---

[3]    To be clear, although Blackstone will be advising the Debtors in connection with the Facilities Sale Process, Blackstone will continue to advise the Committee as well in the exercise of the Committee's fiduciary duties.  In light of the fact that the interests of the Debtors and unsecured creditors are aligned with respect to maximizing value in the Facilities Sale Process, this does not present any issue or concern.

[4]    A "Facilities Sale Transaction" means any transaction or series of transaction involving any transfer to, or any purchase or acquisition, directly or indirectly, by a buyer or buyers of the Facilities (as that term is defined in the Settlement Agreement) or any portion thereof.

2

(i)  $1,000,000 for any Facilities Sale Transaction in which the Consideration[5] exceeds the liquidation value of the Facilities (which liquidation value, for the purposes of calculating the Facilities Sale Fee shall be $0); *plus*

(ii)  1.5% of the amount by which the Consideration exceeds $20,000,000 (up to Consideration of $50,000,000); *plus*

(iii)  2.5% of the amount by which the Consideration exceeds $50,000,000 (up to Consideration of $100,000,000); *plus*

(iv)  3.5% of the amount by which the Consideration exceeds $100,000,000.[6]

For the avoidance of doubt, only one Facilities Sale Fee shall be payable to Blackstone and such fee shall be calculated based on the aggregate Consideration received from all Facilities Sale Transactions.  The Facilities Sale Fee shall be payable to Blackstone pursuant to section II.(d)(iv) of the Settlement Agreement, as approved by the Settlement Order[7]; and it is further

ORDERED that Blackstone will be providing its services related to the Facilities Sale Process (and only related thereto) jointly to the Debtors and the Committee, including any analyses and reports, and will therefore be available to both estate fiduciaries with respect to the

---

[5]  "Consideration" shall mean the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Facilities Sale Transaction.  Consideration shall also include the value of any long term liabilities consistent with generally accepted accounting principles (including the principal amount of any indebtedness for borrowed money, preferred stock obligations, any net pension liabilities and guarantees) directly or indirectly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Facilities Sale Transaction.  Consideration shall include all amounts paid into escrow and all contingent payments payable in connection with the Facilities Sale Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such contingent payments are made.

[6]  The Debtors shall have the right to terminate Blackstone's engagement solely with respect to the Facilities Sale Process, with or without cause, on 30 days' written notice to Blackstone and the Committee.  Blackstone will be entitled to a Facilities Sale Fee for any Facilities Sale Transaction consummated prior to the effectiveness of such termination.  In the event the Debtors terminate Blackstone's engagement as advisor with respect to the Facilities Sale Process, Blackstone will remain entitled to any Facilities Sale Fee in respect of any Facilities Sale Transaction consummated during the period up to one year following the date of such termination; provided, that Blackstone will not be entitled to a Facilities Sale Fee for any Facilities Sale Transaction consummated following such termination that is a liquidation by the Debtors of their assets.

[7]  For the avoidance of doubt, no entity other than Dynegy Roseton, Dynegy Danskammer, Hudson Power, L.L.C., or Dynegy Northeast Generation, Inc. shall be responsible for payment of the Facilities Sale Fee.

3

Facilities Sale Process, subject to appropriate privilege and confidentiality arrangements;[8] and it is further

ORDERED that effective as of the date of this Order, the retention and employment of Blackstone as financial advisor to the Committee shall continue, without interruption, pursuant to the terms of the Engagement Letter, as amended by the Application; and it is further

ORDERED that the Facilities Sale Fee shall be subject to the standard of review set forth in Bankruptcy Code section 328(a) and shall not be subject to the standard of review set forth in Bankruptcy Code section 330; provided, however, that the United States Trustee shall be entitled to object to, and whether or not any objection is filed, the Court retains the power to review, applications by Blackstone for payment of the Facilities Sale Fee under the standards set forth in Bankruptcy Code section 330; and it is further

ORDERED that Blackstone shall continue to be compensated in accordance with the terms set forth in the Engagement Letter, as amended by the Application, and pursuant to Bankruptcy Code sections 328(a) and 1103 (or as otherwise set forth in the Original Retention Order), and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

---

[8] For the avoidance of doubt, except as modified herein, nothing in the Application or the proposed order is intended to grant any additional rights to the Debtors under the Engagement Letter or the Indemnification Agreement.

4

Dated: _____, 2012


_____
THE HONORABLE CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE